UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

NATIONAL CREDIT UNION : Case No. 14-cv-8919-SHS
ADMINISTRATION BOARD, et al., :
:
Plaintiffs, :
:
-against- :
:
DEUTSCHE BANK NATIONAL TRUST :
COMPANY, :
:
Defendant. :
-------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE MOTION TO DISMISS OF DEFENDANT
<u>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE</u>**

Bernard J. Garbutt III, Esq.
Grant R. MacQueen, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel:(212) 309-6000
Fax:(212) 309-6001
bgarbutt@morganlewis.com
gmacqueen@morganlewis.com

Ashley Krupski, Esq. (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:(415) 442-1000
Fax:(415) 442-1001
akrupski@morganlewis.com

Attorneys for Defendant
Deutsche Bank National Trust Company, as Trustee

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

I.   NCUA LACKS STANDING TO SUE ON BEHALF OF THE NGN TRUSTS .............. 1

    A.   NCUA's Claims Are Direct, Not Derivative ......................................................... 2

    B.   BNYM's "Consent" Does Not Provide NCUA with Derivative Standing ........... 4

    C.   NCUA Failed To Satisfy Its Burden To Establish Standing ................................. 5

II.  NCUA'S BREACH OF CONTRACT CLAIM FAILS ........................................................ 5

    A.   NCUA Lacks Standing To Enforce The GAs For 27 Trusts ................................. 5

        1.   NCUA Tacitly Agrees That The Negating Clauses Are Controlling ........ 6

        2.   Litigation Authorization Does Not Cure NCUA's Lack of Standing ........ 6

    B.   NCUA's Breach Of Contract Claim Fails As To All Of The Trusts
        Because NCUA Fails To Allege Facts Necessary To Support That Claim
        And Because The Facts NCUA Does Allege Are Contradicted By The
        Terms Of The GAs ............................................................................................... 7

        1.   NCUA Fails To State A Claim For Breach Of Post-EoD
            Obligations ............................................................................................... 7

            a.   The Prevention Doctrine Is Inapplicable Here .............................. 7

            b.   NCUA Fails To Allege "Actual Knowledge" Of An EoD ............ 8

            c.   The Trustee Did Not Have An Obligation To Provide
                Notice To Servicers Of An Event That Could Ripen Into
                An EoD ........................................................................................... 9

        2.   NCUA Fails To Allege An EoD Under The PSAs That Was
            Caused By Failures To Deliver Complete Mortgage Loan Files ............. 10

        3.   NCUA Has Not Alleged An EoD Under the Indentures ......................... 11

        4.   NCUA's Claim For Breach Of The Trustee's Pre-EoD Obligations
            Fails Because The Trustee Does Not Have The Obligations
            Alleged .................................................................................................... 11

            a.   NCUA Fails To State A Claim Based On The Trustee's
                Breach Of Alleged Pre-EoD Duties To Take Possession Of
                Mortgage Loan Files And To Take Title To Mortgage
                Loans ........................................................................................... 11

            b.   NCUA's Allegations That The Trustee  Breached Its Pre-
                EoD Obligation To Enforce R&Ws Conflicts With The
                Plain Terms Of The GAs For 63 Trusts ...................................... 12

# TABLE OF CONTENTS
(continued)

**Page**

       c.      NCUA Fails To Allege Facts Supporting A Plausible Inference That The Trustee Had "Actual Knowledge" Of Loan-Level Breaches Of R&Ws, As Required Under The GAs ........................................................................................... 13

    C.    NCUA Fails To State A Claim Based Upon Regulation AB .............................. 14

    D.    The No-Action Clauses Bar NCUA's Breach of Contract Claims ..................... 15

III.    NCUA'S NON-CONTRACT COMMON LAW CLAIMS FAIL ................................. 15

IV.    NCUA'S STREIT ACT CLAIM FAILS ........................................................................ 17

    A.    The Streit Act Does Not Apply to the Trusts ...................................................... 17

    B.    The Streit Act Does Not Provide For A Private Right of Action ........................ 19

    C.    NCUA Fails to State a Claim Under the Streit Act ............................................. 20

V.    NCUA'S TRUST INDENTURE ACT CLAIM FAILS ................................................. 20

CONCLUSION ..................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

10 Ellicott Square Corp. v. Mountain Valley Indem. Co.,
  634 F.3d 112 (2d Cir. 2011)..................................................................................2

AG Capital Funding Ptrs., L.P. v. State St. Bank & Trust Co.,
  11 N.Y.3d 146 (2008) ........................................................................................16

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
  671 F.3d 140 (2d Cir. 2011).................................................................................5

Amron v. Morgan Stanley Inv. Advisors, Inc.,
  464 F.3d 338 (2d Cir. 2006)...............................................................................13

Applestein v. Province of Buenos Aires,
  415 F.3d 242 (2d Cir. 2005)............................................................................6, 7

Arrowgrass Master Fund Ltd. v. Bank of New York Mellon,
  2012 WL 8700416 (Sup. Ct. N.Y. Cty. Feb. 24, 2012) .........................................14

Beck v. Mfrs. Hanover Trust Co.,
  632 N.Y.S.2d 520 (1st Dept. 1995) ......................................................................20

BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n,
  14-cv-9401-KBF, 2015 WL 2359319 (S.D.N.Y. May 18, 2015) .............................4

Cruden v. Bank of New York,
  957 F.2d 961 (2d Cir. 1992)...............................................................................15

Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.,
  918 N.Y.S.2d 73 (1st Dep't 2011) .......................................................................6

Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,
  838 F.2d 66, 71 (2d Cir. 1988)...........................................................................16

FHFA v. HSBC N.A. Holdings, Inc.,
  No. 11-cv-6189-DLC, 2014 WL 3702587 (S.D.N.Y July 25, 2014) ......................14

Galli v. Metz,
  973 F.2d 145 (2d Cir. 1992).................................................................................7

Harper v. Larchmont Yacht Club,
  38 N.Y.S.2d 505 (Sup. Ct. N.Y. Cty. 1942) .........................................................19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.,
    No. 11-cv-5832-AJN, 2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012) ...................................15

In re Bankers Trust Co.,
    450 F.3d 121 (2d Cir. 2006)............................................................................................8

In re Lehman Bros. Holdings Inc.,
    479 B.R. 268 (S.D.N.Y. 2012), aff'd, 513 F.App'x 75 (2d Cir. 2013).....................................6

Karabu v. Pension Benefit Guar. Corp,
    96-cv-4960-BSJ, 1997 WL 759462 (S.D.N.Y. Dec. 10, 1997) .................................................8

Knights of Columbus v. The Bank of New York Mellon,
    No. 651442/11 (N.Y. Sup. Ct. N.Y. Cty.).....................................................................9

Nat'l Credit Un. Admin. Bd. v. HSBC Bank USA, Nat'l Ass'n,
    15-cv-2144-SAS, 2015 WL 4429265 (S.D.N.Y. July 20, 2015) ...............................................4

Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n,
    14-cv-9928-KBF, 2015 WL 2359295 (S.D.N.Y. May 18, 2015)................................... passim

Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.,
    98-cv-6907-MBM, 2000 WL 877004 (S.D.N.Y. June 30, 2000)...........................................16

Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of Am.,
    943 F.Supp.2d 428 (S.D.N.Y. 2013)...............................................................................9, 14

Prudence Realization Corp. v. Atwell,
    35 N.Y.S.2d 1001 (1st Dep't 1942), aff'd, 290 N.Y. 597 (1943)..........................................17

Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.,
    14 N.Y.3d 419 (2010) .............................................................................................15, 17

Rajamin v. Deutsche Bank Nat'l Trust Co.,
    757 F.3d 79 (2d Cir. 2014)..............................................................................................12

Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon,
    775 F.3d 154 (2d Cir. 2014) ...............................................................................9, 13, 17, 20

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Assoc.,
    14-cv-8175-SAS, 2015 WL 3466121 (S.D.N.Y. June 1, 2015) ...................................... passim

Springwell Navigation Corp. v. Sanluis Corporacion, S.A.,
    917 N.Y.S.2d 560 (1st Dep't 2011) ..................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Stratte-McClure v. Morgan Stanley,
  776 F.3d 94 (2d Cir. 2015) ........................................................................14

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
  845 A.2d 1031 (Del. 2004) ......................................................................2, 4

Williams v. Cont'l Stock Transfer & Trust Co.,
  1 F.Supp.2d 836 (N.D. Ill. 1998) ...............................................................12

Yudell v. Gilbert,
  949 N.Y.S.2d 380 (1st Dep't 2012) ..............................................................2

**STATUTES**

12 U.S.C. § 1787 ...........................................................................................1

26 U.S.C. § 860 ...........................................................................................18

IRC § 860D ...................................................................................................4

Del. Code tit. 12 § 3816(e)............................................................................5

28 N.Y. Prac., Contract Law § 26:34.........................................................18

**OTHER AUTHORITIES**

FRCP 9(b) ....................................................................................................16

NCUA's claims fail because, <u>inter alia</u>, they are precluded by the GAs.[1]  In opposition, NCUA cites only to its allegations characterizing the GAs, rather than the GAs themselves, which sharply circumscribe the Trustee's duties.  The reason?  The GAs do not support NCUA's claims.  For example, under the GAs, prior to an EoD, the Trustee has only express, limited duties, and has no duty to investigate any of the general circumstances alleged in the Complaint.

Moreover, NCUA's attempts to establish standing to bring claims for the NGN Trusts must be rejected.  NCUA's Complaint establishes that those claims are direct, not derivative.

## I.    <u>NCUA LACKS STANDING TO SUE ON BEHALF OF THE NGN TRUSTS</u>

NCUA contradicts itself and walks away from the allegations of its own <u>amended</u> complaint.[2]  NCUA now argues it can sue <u>derivatively</u> on behalf of the NGN Trusts, yet the Complaint does not use any form of the word derivative to describe NCUA's claims.  Although it alleged just the opposite (¶ 43), NCUA now concedes that it does **not** have standing to sue for the NGN Trusts: (1) under 12 U.S.C. § 1787; **or** (2) as a third-party beneficiary of the GAs.  Opp., pp. 15-16.  NCUA now limits its basis for such standing to derivative standing.  Abandoning its allegations of demand futility, NCUA attempts to show standing with a new theory:  that Bank of New York Mellon ("BNYM"), trustee of the NGN Trusts, "consented" to NCUA suing derivatively.  Opp., pp. 11-16.  This incorrect theory is legally irrelevant.  NCUA

---

[1]      Cites to "Memo" are to the Trustee's memorandum of law, Dkt.# 47.  Cites to "Opp." are to NCUA's opposing memorandum of law, Dkt.# 52.  All capitalized terms, and citing and quoting conventions, are as described in the Memo, p. 1, n.1.  **Notably**, NCUA does not dispute that its claims as to the AHM 2006-2 and SAST 2006-3 trusts fail because DBNTC was <u>never</u> trustee for those Trusts.  Memo, p. 4, n.4.

[2]      When it filed the amended complaint on March 5, 2015, NCUA added many allegations concerning the NGN Trusts and its alleged standing to sue on their behalf.  <u>See</u> Declaration of Bernard J. Garbutt III, dated August 7, 2015, Exhibit ("GarbEx.") 42.  At that time, NCUA was already on notice of the defects in its standing to sue on behalf of the NGN Trusts.  On February 20, 2015, in <u>Nat'l Credit Union Admin. Bd. v. Wells Fargo Bank, N.A.</u>, 14-cv-10067-RMB (S.D.N.Y.), Dkt.# 24, Wells Fargo raised the NCUA/NGN Trust derivative standing issue in a  letter to the court.  GarbEx. 43.  And, on February 27, 2015, in <u>Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n</u>, 14-cv-9928-KBF (S.D.N.Y.), Dkt.# 60, U.S. Bank raised the same issue in a motion to dismiss.  GarbEx. 44.

asserts <u>direct</u> claims, which dooms NCUA's asserted derivative standing for the NGN Trusts.

**A.      NCUA's Claims Are Direct, Not Derivative**

Prior to addressing any of NCUA's assertions about BNYM's alleged "consent," this Court must first determine whether NCUA's claims are direct or derivative.[3]  If the Court determines that NCUA's claims are direct, it need not even consider any "consent."

To conclude whether a claim is direct or derivative, a court must determine (i) who suffered the injury and (ii) who will receive the recovery.  <u>Tooley</u>, 845 A.2d at 1035.[4]  Putting aside, without conceding, who suffered the alleged injury here, it is clear that any recovery would **<u>not</u>** go the NGN Trusts because NCUA seeks recovery "exclusively" for itself.  ¶ 30.[5]  Thus, NCUA's claims are not derivative.  <u>Tooley</u>, 845 A.2d at 1036 ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation.").

NCUA attempts to sidestep its own allegation (¶ 30) that any recovery will benefit NCUA <u>exclusively</u> (Memo, pp. 11, 13) by arguing that ¶ 30 actually means the opposite of what it says.  Opp., p. 15.  NCUA asserts that because it purports to bring claims "on behalf of the NGN Trusts" and includes references to "any recovery the NGN Trusts receive," its claim is derivative.  Opp., p. 15 (citing ¶¶ 42-43).  This argument must fail.  NCUA's allegations and arguments are consistent with its assertion of being the exclusive beneficiary of any recovery.

---

[3]      <u>Tooley v. Donaldson, Lufkin, & Jenrette, Inc.</u>, 845 A.2d 1031, 1036 (Del. 2004) ("whether an action is derivative or direct ... has many legal consequences ....  For example, if an action is derivative, the plaintiffs are **then** required to comply with the requirements … that the stockholder ... make presuit demand on the board").

[4]      The <u>Tooley</u> test has been adopted by a New York appellate court.  <u>Yudell v. Gilbert</u>, 949 N.Y.S.2d 380, 381 (1st Dep't 2012).  A federal court must follow an intermediate appellate court decision unless it finds persuasive evidence that the New York Court of Appeals would reach a different conclusion.  <u>10 Ellicott Square Corp. v. Mountain Valley Indem. Co.</u>, 634 F.3d 112, 120 (2d Cir. 2011).

[5]      NCUA alleges that "[i]t is not known at this time whether specific **claims** will be asserted **by the NCUA in respect of the [Certificates]**, … .  **Any damages or other amounts** recovered by the NCUA in connection with **any such claims** will **not** be a part of the Trust Estate and **will not be used to make payments on the Offered Notes.  Any such recoveries will benefit [NCUA] exclusively**."  ¶ 30.

NCUA alleges that it is the sole holder of the "Owner Trust Certificates." ¶ 29.  NCUA then explains its "direct" interest as the holder of the Owner Trust Certificates:  "[a]ny recovery the NGN Trusts receive as a result of the claims for relief in this complaint **directly** increases the value of the Owner Trust Certificates." ¶ 42.  NCUA now argues that it will obtain an "indirect recovery based on its NGN Trust interests." Opp., p. 15.  Yet nowhere does NCUA explain who else might share in any recovery.  NCUA's allegations and arguments confirm that it would be the exclusive beneficiary of any recovery.  Thus, NCUA's claims are direct, not derivative.

Judge Forrest recently agreed.  In a separate action brought by NCUA against a different RMBS trustee, Judge Forrest held that identical claims were direct and thus dismissed the derivative claims.  Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 14-cv-9928-KBF, 2015 WL 2359295, *5 (S.D.N.Y. May 18, 2015) ("NCUA/U.S. Bank").  Judge Forrest found that "paragraph 30 of the Amended Complaint makes it clear that NCUA is seeking recovery for itself … not for the NGN Trusts." Id., *5.  There, like here, "NCUA argue[d] in its opposition that defendants 'misinterpreted' paragraph 30 and that any recovery from this action will in fact go to the NGN Trusts." Id., *5 n.4.  Judge Forrest rejected this argument, stating that "paragraph 30 is clear that 'any recovery' . . . in this action would benefit NCUA 'exclusively.'"  Having so held, Judge Forrest found that "NCUA cannot purport to sue on behalf of a trust and, at the same time, seek to keep any recovery for itself" because in a derivative suit, "any recovery would necessarily go to those Trusts." Id., *5 (citing Tooley, 845 A.2d at 1036).

Even assuming, arguendo, that NCUA will not benefit "exclusively" from any recovery, based upon its vague allegations, the only apparent alternative is that both NCUA and the note holders of the NGN Trusts will share in any recovery.  Even in this scenario, the NGN Trusts themselves would not retain any recovery.  Indeed, the trusts cannot because, as pass-through

vehicles, any payments to the trusts are then paid over to the note holders in the next monthly distribution.[6]  Thus, any recovery would pass promptly to NCUA and the NGN Trusts' note holders, making NCUA's claim direct, not derivative.  See Tooley, 845 A.2d at 1036.  In Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Assoc., 14-cv-8175-SAS, 2015 WL 3466121 (S.D.N.Y. June 1, 2015) ("RPI/HSBC"), Judge Scheindlin applied the Tooley test to find that similar claims by an RMBS investor were direct, not derivative, because recovery would simply pass through the trusts to the beneficiaries of the trusts.  RPI/HSBC, *15-16; see also BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n, 14-cv-9401-KBF, 2015 WL 2359319, *6 (S.D.N.Y. May 18, 2015) ("BlackRock/U.S. Bank") (same).

NCUA asks this Court to follow Nat'l Credit Un. Admin. Bd. v. HSBC Bank USA, Nat'l Ass'n, 15-cv-2144-SAS, 2015 WL 4429265 (S.D.N.Y. July 20, 2015) ("NCUA/HSBC") rather than both NCUA/U.S. Bank and RPI/HSBC.  This should be refused.  In NCUA/HSBC, Judge Scheindlin found, without support in the text, that ¶ 30 referred to "claims asserted in other cases, brought against different defendants."  NCUA/HSBC, *4, n.45.  As demonstrated above, this is incorrect, and such claims would benefit NCUA exclusively.  And, even if NCUA would not benefit exclusively, any recovery would simply pass through the NGN Trusts to their beneficiaries.  Judge Scheindlin ignored the Tooley test, under which NCUA's claims are direct. Indeed, in RPI/HSBC, Judge Scheindlin herself found that any recovery would pass through the trusts to the beneficiaries, making the claims direct, not derivative.  RPI/HSBC, *15-16.

### B.    BNYM's "Consent" Does Not Provide NCUA with Derivative Standing

The sole basis for derivative standing asserted by NCUA, that BNYM "consented" to NCUA's derivative claim on behalf of the NGN Trusts, is legally irrelevant because NCUA's

---

[6]    NGN 2011-R4 Off. Mem., Dkt.# 48-38, at 23-24 (describing monthly distribution of all available funds).

claims are direct.  In any event, BNYM's "consent" would **only** arguably cure NCUA's failure to allege that BNYM wrongfully refused NCUA's demand to sue.  Moreover, NCUA's "consent" argument fails because BNYM's decision not to sue is protected by the business judgment rule.  NCUA argues that BNYM's decision is not entitled to deference because BNYM allegedly consented to NCUA's suit.  Opp., pp. 11-14.  However, in <u>NCUA/U.S. Bank</u>, the court noted that "NCUA made a demand on BNYM and that BNYM declined to bring this suit … ." <u>Id.</u>, *6, n.7.  The court then rejected BNYM's consent, holding that BNYM's decision was protected by the business judgment rule and finding that "NCUA has not pled any facts that [BNYM's] decision not to bring suit was made in bad faith or was based on an unreasonable investigation." <u>Id.</u>  Here, BNYM's decision not to sue is protected by the business judgment rule.

### C.     NCUA Failed To Satisfy Its Burden To Establish Standing

Under Delaware Law, which governs the NGN Trusts, a "beneficial owner's right to bring a derivative action may be subject to such additional standards and restrictions, if any, as are set forth in <u>the governing instrument</u> of the statutory trust[.]"  Del. Code tit. 12 § 3816(e).  NCUA did not attach those instruments to its Complaint, or allege what those instruments provide.  Thus, the Court cannot evaluate NCUA's alleged basis for standing.  <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011).  Because NCUA bears the burden of establishing its standing (Memo, p. 11, n.17), these claims should be dismissed.

## II.     NCUA'S BREACH OF CONTRACT CLAIM FAILS

### A.     NCUA Lacks Standing To Enforce The GAs For 27 Trusts

NCUA's contract claims as to 27 of the Trusts fails because the negating clauses in the GAs for those Trusts preclude anyone other than the specific, identified parties from enforcing

the GAs.  NCUA is not one of the parties identified, and therefore lacks standing.[7]

### 1.  NCUA Tacitly Agrees That The Negating Clauses Are Controlling

NCUA does not refute that the negating clauses control.  Memo, pp. 14-16; Opp., pp. 16-17.  NCUA's only response is that enforcing the negating clauses would be illogical.  Opp., pp. 16-17.  NCUA argues that if "only Cede & Co. ["Cede"] . . . could bring suit," no one would have standing because even though Cede is the Certificateholder, it has no financial interest here.  NCUA then argues that if no one would have standing, that would either lead to an "untenable result," or would mean that NCUA has standing because a third party can enforce a contract when no one else can.  Id., p. 16.  These assertions ignore two facts.  First, Certificateholders, signatories to the GAs, and other parties listed in the negating clauses can all bring suit.[8]  Second, the GAs provide a mechanism for Certificate<u>owners</u> to become Certificate<u>holders</u>.  <u>See</u>, <u>e.g.</u>, Comp., Exh. B [SAST 2007-2 § 5.2(e)].  Thus, the negating clauses bar NCUA's claims.[9]

### 2.  Litigation Authorization Does Not Cure NCUA's Lack of Standing

Relying upon RPI/HSBC, NCUA argues that it has the ability to cure its lack of standing by obtaining authorization to sue from Cede, the Certificateholder.  Opp., p. 17.  The RPI/HSBC court, relying upon Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), held that although certificate<u>owners</u> do <u>not</u> have standing to sue, they may obtain litigation authority from certificateholders in order to cure this defect.  RPI/HSBC, *11.  However, that court did not analyze the differences between the agreements at issue in Applestein and the GAs.  In

---

[7]     As stated in <u>NCUA/U.S. Bank</u>, the "provisions of the PSAs themselves do not allow for third-party beneficiary status to extend beyond <u>direct</u> certificateholders."  <u>Id.</u>, *5 (emphasis in original).

[8]     <u>See</u>, <u>e.g.</u>, Dkt.## 48-5, 48-19 [DLSA 2007-AR1 § 12.10; SVHE 2005-OPT4 § 11.11].

[9]     NCUA cites <u>Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.</u>, 918 N.Y.S.2d 73, 75 (1st Dep't 2011), to argue that a grant of rights to a third party trumps a negating clause.  Opp., p. 17.  That case has not been followed.  <u>In re Lehman Bros. Holdings Inc.</u>, 479 B.R. 268, 277, n.2 (S.D.N.Y. 2012), <u>aff'd</u>, 513 F.App'x 75 (2d Cir. 2013) (case is contrary to New York law that contracting parties may both "elect to confer a benefit or right upon a third party and to limit that right, including by limiting the third party's enforcement powers.").

_Applestein_, the agreements did not have a negating clause, and expressly allowed certificateholders to grant a proxy or litigation authority to certificateowners.  See, e.g., _Applestein_, 415 F.3d at 243-44 (contracts provide that "DTC . . . may grant proxies or otherwise authorize" beneficial owners "to exercise any rights of a holder").[10]  _Applestein_ is inapplicable here because the GAs do have negating clauses, and the GAs do not allow a certificateholder to grant a proxy or litigation authority.  To the contrary, the GAs here specifically provide a way for certificateowners to become certificateholders (and thus be able to sue), upon satisfaction of certain conditions, none of which are alleged to have been fulfilled.  Comp., Exh. B [SAST 2007-2 § 5.2(e)].  Further, the negating clauses, read together with the clauses that allow for certificateowners to become certificateholders, act to prohibit assignment; otherwise, the clauses would be rendered meaningless.  See _Galli v. Metz_, 973 F.2d 145, 149 (2d Cir. 1992).[11]

> **B.**    **NCUA's Breach Of Contract Claim Fails As To All Of The Trusts Because NCUA Fails To Allege Facts Necessary To Support That Claim And Because The Facts NCUA Does Allege Are Contradicted By The Terms Of The GAs**

> **1.**    **NCUA Fails To State A Claim For Breach Of _Post_-EoD Obligations**

NCUA's contract claim fails because NCUA does not allege that Servicers were given notice of a material breach of the GAs or an opportunity to cure, as required to allege an EoD.  Memo, pp. 17-19.  NCUA essentially concedes this point.  Opp., pp. 28-29.

> **a.    The Prevention Doctrine Is Inapplicable Here**

As NCUA concedes that notice was not provided to Servicers so as to trigger an EoD, it

---

[10]     NCUA incorrectly asserts that one of the Trustee's cases supports the contention that recognizing litigation authority is appropriate.  Opp., p. 17, n.13.  In a later decision in that case, _Springwell Navigation Corp. v. Sanluis Corporacion, S.A._, 917 N.Y.S.2d 560, 561 (1st Dep't 2011), the court found that the "indenture expressly permits the registered holder to assign its right to institute any legal action to an appointed proxy."  The GAs do not allow certificateholders to grant proxies.  Thus, _Springwell_ stands only for the rule that the terms of a contract govern.

[11]     NCUA asserts that it could join Cede as a "nominal defendant" (Opp., p. 18, n.14), but fails to explain how that would cure NCUA's lack of standing to bring the claims herein.

now instead argues that this element of an EoD is excused, ostensibly because of the "prevention doctrine."  The prevention doctrine provides that a defendant cannot rely upon noncompliance with a condition precedent if it had the affirmative duty to fulfill that condition and did not. Opp., pp. 28-29.  However, the Trustee did <u>not</u> have an affirmative duty to provide the pre-EoD notice to the Servicers regarding material breaches that, <u>after</u> notice and the passage of time, could <u>ripen</u> into EoDs.  Memo, pp. 17-19.  As explained in <u>Bankers Trust</u>:

> If the promisor <u>is under a duty</u> to the promisee to do what it can to bring about the realization of the condition, the failure to do so…would seem to breach that duty and waive the condition.  In contrast, <u>if the seller has no duty</u>…with respect to [the] realization of the condition…<u>the promisor's frustration of the occurrence of the condition, even by active conduct, should not occasion a waiver</u>.

<u>In re Bankers Trust Co.</u>, 450 F.3d 121, 128, n.4 (2d Cir. 2006).  A party does not waive a condition by failing to do something it was never required to do.  In <u>Bankers Trust</u>, the court only applied the prevention doctrine because of the defendant's "failure to fulfill <u>its affirmative duty</u> to inspect the certificates [which] unjustly prevented the performance" of the conditions. <u>Id.</u>, at 129.  Here, the Trustee did <u>not</u> have the affirmative duty to give notice.  Moreover, the Trustee was only one of <u>several</u> entities that <u>could</u> have given notice, and, thus, by itself could not prevent it.[12]  Thus, the Trustee's failure to give notice was not a waiver of the condition.

### b.  NCUA Fails To Allege "Actual Knowledge" Of An EoD

For all 97 GAs, NCUA fails to allege that a "Responsible Officer" of the Trustee had "actual knowledge" or "written notice" of an EoD as <u>required</u> to trigger any <u>post</u>-EoD

---

[12]     <u>See</u>, <u>e.g.</u>, <u>Karabu v. Pension Benefit Guar. Corp</u>, 96-cv-4960-BSJ, 1997 WL 759462, *10 (S.D.N.Y. Dec. 10, 1997) (doctrine inapplicable; responsible party did not "'prevent,' render impossible, or eve[n] substantially hinder issuance of a default notice" because many <u>other</u> entities could have provided the notice).

This Court should not follow <u>RPI/HSBC</u>, *9, to the extent it supports application of the prevention doctrine.  Judge Scheindlin, while explicitly noting that it was "<u>unclear</u> whether [trustee] HSBC had <u>a duty to give notice</u>" under the PSAs, then failed to adequately analyze the fact that multiple other entities also had the ability to give notice.  It is clear that the Trustee has no duty to give notice.  Unless there is an affirmative duty, the condition is not waived, <u>Bankers Trust</u>, 450 F.3d at 129, and, here, the Trustee was not the only entity that could give notice.

obligations.  Memo, pp. 20-21.[13]  NCUA erroneously relies upon <u>RPI/HSBC</u> to suggest that its

allegations are sufficient to establish actual knowledge.  <u>First</u>, under applicable standards, the

allegations in <u>RPI/HSBC</u> are insufficient to establish actual knowledge.  <u>Second</u>, NCUA never

shows that its allegations are similar to those in <u>RPI/HSBC</u>.  <u>Third</u>, the Complaint paragraphs

NCUA cites to attempt to show that the Trustee had "actual knowledge" (¶¶ 452-494),

concerning servicer conduct generally, show the opposite; NCUA never alleges that the Trustee

had knowledge of any of the circumstances alleged in those paragraphs.  Moreover, after

providing only these general servicer allegations (that are **<u>not</u>** tied to any of the Trusts at issue

here), NCUA then argues that the Trustee had actual knowledge of EoDs as to the specific

Trusts.  This is not the same as alleging facts supporting the inference that the Trustee did, in

fact, have actual knowledge of EoDs as to the specific Trusts.  Indeed, in <u>Knights of Columbus</u>

<u>v. The Bank of New York Mellon</u>, No. 651442/11 (N.Y. Sup. Ct. N.Y. Cty.), Doc. No. 115 (July

24, 2015) (GarbEx. 45), the court, in dismissing similar claims, held that "widespread

knowledge" based upon "generalized public information" about improper servicing did not

constitute notice of any specific breach by the servicer.  That court found that the plaintiffs failed

to plead that the trustee received notice of an EoD, as required by the GAs.  <u>Id.</u>, at 8-9.[14]

### c.  The Trustee Did Not Have An Obligation To Provide Notice To Servicers Of An Event That *Could* Ripen Into An EoD

NCUA's claims also fail because, contrary to its allegations, all but two of the GAs do

---

[13]     The GAs all require one of the following before the Trustee is required to take action:  (1) "actual knowledge" of an EoD by a "Responsible Officer" of the Trustee; (2) a "Responsible Officer" of the Trustee must receive written notice of an EoD; or (3) <u>either</u> "actual knowledge" or written notice.  Dkt.# 48-26 (listing GAs).

[14]     Moreover, NCUA's "nose to the source" argument (Opp., p. 31) is entirely without merit because it is inconsistent with the express terms of the GAs and controlling Second Circuit authority.  The decision that contained that language is no longer good law.  <u>See</u> <u>Policemen's Annuity & Ben. Fund of City of Chi. v. Bank of Am.</u>, 943 F.Supp.2d 428, 430, 442 (S.D.N.Y. 2013) ("<u>Policemen's Annuity</u>"), <u>abrogated</u> <u>in</u> <u>part</u>, <u>Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon</u>, 775 F.3d 154 (2d Cir. 2014) ("<u>PABF</u>").

not impose upon the Trustee an obligation to provide written notice to the Servicers of a material breach of the GAs that could ripen into an EoD.  Dkt.# 48, ¶ 38.  NCUA is incorrect that the GAs impose a duty upon the Trustee to give notice of any breach for 90 of the Trusts.  Opp., p. 31.[15] The GA passage NCUA cites does not obligate the Trustee to act, but simply sets forth a right of the Trustee.  Memo, pp. 21-23.[16]

### 2.    NCUA Fails To Allege An EoD Under The PSAs That Was Caused By Failures To Deliver Complete Mortgage Loan Files

NCUA concedes that Depositors' alleged failures to deliver complete mortgage loan files are not EoDs under the GAs.  Opp., p. 20.  NCUA now conjures up an argument, unsupported by its Complaint and based upon several suppositions, that EoDs occurred when Servicers became aware of missing loan files, failed to notify other parties, yet the Trustee knew that the Servicers had become so aware and failed to notify anyone else.  Opp., pp. 20-21.

First, missing documents do not constitute an EoD under the GAs, which specifically contemplate that mortgage loan files might be incomplete at the time of the initial transfer, and provide that "[t]he Servicer shall promptly deliver to the Trustee or the Custodian on its behalf ... documents ... constituting the Mortgage File as come into the possession of the Servicer **from time to time**."  Comp., Exh. B [SAST 2007-2 § 2.2].  This provision would be meaningless if an EoD could occur from missing documents.  Second, NCUA's actual allegations in the cited Complaint paragraphs do not support its argument, and NCUA fails to point to provisions in the GAs that support its theory.  Third, NCUA's argument is circular:  it fails to first adequately allege that Servicers had knowledge of missing documents, then relies upon the Servicers' failure

---

[15]    Dkt.# 48-27 (listing GAs for these 90 Trusts that contain such language, with section references).

[16]    Specifically, Section 7.1(ii) provides that the Trustee or the Depositor can give notice to the Servicer, or certificateholders can provide notice to the Trustee and Servicer.  Comp., Exh. B [SAST 2007-2 §7.1].  The GAs clearly state that rights of the Trustee are not to be construed as duties.  See Comp., Exh. B [SAST 2007-2 PSA § 8.2(xi) ("the right of the Trustee to perform any discretionary act ... shall not be construed as a duty").

to notify anyone about this, and then posits that the Trustee somehow knew about these hidden issues. Opp., p. 21. Even if missing documents <u>could</u> somehow ripen into an EoD, NCUA's claim still fails because it does not demonstrate that the Trustee had actual knowledge of a breach and gave the Servicer notice and an opportunity to cure.

As to NCUA's argument that Servicers "fabricated loan documents needed to foreclose," Opp., p. 21, NCUA's cite does not support this proposition. <u>See</u> ¶ 495. In any event, NCUA cites no fact that would give rise to a plausible inference that the Trustee had actual knowledge of fabrications as they relate to specific foreclosures of loans held in any of the Trusts.

### 3. NCUA Has Not Alleged An EoD Under the Indentures

NCUA concedes that, as to the AHM 2007-1 and AHM 2007-2 Trusts, only the Issuers' conduct can constitute an EoD, yet asserts that the alleged conduct of Warrantors and Servicers can be imputed to the Issuers, and cites to <u>RPI/HSBC</u>, *8-9, in support. Opp., p. 32. This Court should decline to follow <u>RPI/HSBC</u> because NCUA's Complaint never mentions Issuers, or any misconduct by them. NCUA cannot rely upon allegations about <u>others</u> to support claims that require misconduct by <u>Issuers</u>. NCUA also fails to allege that a "Responsible Officer" of the Trustee had actual knowledge or written notice of an EoD. Memo, pp. 23-24.

### 4. NCUA's Claim For Breach Of The Trustee's *Pre*-EoD Obligations Fails Because The Trustee Does Not Have The Obligations Alleged

#### a. NCUA Fails To State A Claim Based On The Trustee's Breach Of Alleged *Pre*-EoD Duties To Take Possession Of Mortgage Loan Files And To Take Title To Mortgage Loans

NCUA's argument that the Trustee had a duty to take <u>possession</u> of mortgage loan files and that the failure to do so meant that the Trustee did not take <u>title</u> to the mortgage loans (Opp., pp. 19-20) cannot support a <u>pre</u>-EoD claim. <u>First</u>, NCUA does not cite any GA provision that supports its assertion that the Trustee has a duty to take "full possession" of the files. Memo, p.

34; Opp., pp. 19-20.[17]  Indeed, the GAs provide that it is the <u>Depositor</u> who has the duty to transfer the files to the Trustee.  Comp., Exh. B [SAST 2007-2 § 2.1].[18]  Thus, under the plain terms of the GAs, NCUA's argument fails.[19]  <u>Second</u>, NCUA fails to address <u>Rajamin v. Deutsche Bank Nat'l Trust Co.</u>, 757 F.3d 79, 91-92 (2d Cir. 2014) (breaches of GA provisions concerning delivery of mortgage loan files have no impact upon the conveyance of title to those loans), thus the argument that the Trustee failed to take <u>title</u> to the loans fails.  Memo, p. 34.

### b.  NCUA's Allegations That The Trustee Breached Its *Pre*-EoD Obligation To Enforce R&Ws Conflicts With The Plain Terms Of The GAs For 63 Trusts

NCUA's claims based upon the Trustee's alleged failure to enforce the Warrantors' R&Ws should be dismissed as to 63 Trusts because those Trusts' GAs either:  (1) do not require the Trustee to enforce alleged R&W breaches, including repurchase obligations; <u>or</u> (2) do not require the Trustee to enforce alleged R&W breaches under the circumstances pled by NCUA.

NCUA concedes that "another party has the initial obligation to enforce repurchase obligations" for 19 of the Trusts at issue.  Opp., p. 22.[20]  NCUA asserts that the Trustee <u>should</u> have enforced the Warrantor's repurchase obligations anyway.  <u>Id.</u>  In addition to the fact that the Trustee had no obligation to do so, NCUA did not adequately allege circumstances where the Trustee would have had actual knowledge of loan-level breaches.  <u>See</u> Memo, pp. 24-32; <u>see also</u> <u>NCUA/U.S. Bank</u>, *3 (none of the trustee's powers implies a duty to exercise those powers,

---

[17]    NCUA purports to rely on Sections I and II in Exhibit F-1 to the Complaint to support these allegations. However, such sections belie NCUA's argument, as none of the GA provisions cited therein contains such a duty.

[18]    The GAs also provide that the Trustee does not have "any duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face."  Comp., Exh. B [SAST 2007-2 § 2.2].

[19]    NCUA's attempt to distinguish <u>Williams v. Cont'l Stock Transfer & Trust Co.</u>, 1 F.Supp.2d 836 (N.D. Ill. 1998) (Opp., pp. 19-20) fails because, as shown through the actual GAs, the Trustee does not have a duty to do more than assert that the documents appear regular on their face.  Comp., Exh. B [SAST 2007-2 §2.2].

[20]    Trust NCHET 2005-C was erroneously included on the list found at Dkt.# 48-29.

absent certificateholder instruction to act and indemnity).  Because any repurchase enforcement must necessarily be at the loan level, any action on the Trustee's part would have required an investigation by the Trustee, which the GAs do not require.  NCUA/U.S. Bank, *3.

NCUA also provides no support for its contention that the Trustee's "obligation to enforce the Sellers' repurchase obligations arose irrespective of whether it received notice from the Depositor."  Opp., p. 22.  The GAs circumscribe the Trustee's obligations, and obligations cannot be read into the GAs where none exist.[21]  The GAs for these Trusts require dismissal.

### c. NCUA Fails To Allege Facts Supporting A Plausible Inference That The Trustee Had "Actual Knowledge" Of Loan-Level Breaches Of R&Ws, As Required Under The GAs

NCUA misconstrues the Trustee's argument regarding actual knowledge of R&W breaches, asserting it need not identify each breaching loan at this stage.  Opp., pp. 23-26.  That is not what the Trustee is arguing.  However, NCUA must allege facts supporting a plausible inference that the Trustee had actual knowledge of R&W breaches on a loan-by-loan basis.

As was made clear in PABF, 775 F.3d at 162, breaches of a trustee's duties with respect to R&Ws must be shown on a "loan-by-loan and trust-by-trust" basis.  See also BlackRock/U.S. Bank, *4 ("Contrary to plaintiffs' assertion, the misconduct alleged in the complaint must be established 'loan-by-loan and trust-by-trust' by reference to the documents underlying each trust and loan.").  NCUA's argument that PABF does not concern pleading is beside the point, given that "a plaintiff's allegations, accepted as true, must be sufficient to establish liability."  Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 344 (2d Cir. 2006).  Here, they are not.

Given this requirement, NCUA has not alleged facts supporting a plausible inference that

---

[21]      Comp., Exh. B [SAST 2007-2 PSA §§ 8.1(i) ("no implied covenants or obligations shall be read into this Agreement against the Trustee"), 8.2(xi) ("the right of the Trustee to perform any discretionary act . . . shall not be construed as a duty")]; see also BlackRock/U.S. Bank, *2 (no implied obligations read into GAs against trustee and trustee not required to demand repurchase of defective loan unless it discovers loan or receives notice of defect).

the Trustee had actual knowledge of R&W breaches on a loan-by-loan basis.[22]  NCUA ignores

this deficiency and urges the Court to follow Policemen's Annuity, 943 F.Supp.2d 428 (Opp., p.

24), without showing how its allegations are similar to those in that case.  NCUA also argues that

general public information provided the Trustee with actual knowledge of R&W breaches.  Opp.,

p. 24.  This is wrong.  Memo, p. 32.  None of the sources NCUA points to disclosed information

about specific loans in the specific Trusts at issue here, let alone specific breaches of R&Ws.

The only way the Trustee could have gained such "actual knowledge" would be to conduct an

investigation based upon that public information, which it had no duty to do.  See, e.g., Comp.,

Exh. B [SAST 2007-2 PSA §§ 8.1, 8.2, 8.3]; see also Ellington, 837 F.Supp.2d at 189.[23]

### C.   NCUA Fails To State A Claim Based Upon Regulation AB

Reg AB does not provide a private right of action.  Memo, pp. 35-36, & n.52.  NCUA

fails to refute this, nor does it cite a case adopting a recovery theory based upon a Reg AB

violation.  NCUA's reliance on Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 103 (2d Cir.

2015) (Opp., p. 33) is misplaced because that court dismissed all claims.  Id., at 96.  The court

did hold that an "omission [ ] can serve as the basis for a Section 10(b) securities fraud claim,"

id., at 100, but NCUA does not explain how a 10(b) case is relevant here.[24]

NCUA's Reg AB claim fails for another reason:  NCUA fails to detail how the reports

were inaccurate.  Even NCUA's opposition is vague in its assertion of violations.  Opp., p. 33.

---

[22]      NCUA attempts to distinguish FHFA v. HSBC N.A. Holdings, Inc., 33 F.Supp.3d 455, 477, 480 (S.D.N.Y. 2014) ("FHFA/HSBC") solely because it was a summary judgment decision.  Opp., pp. 25-26.  NCUA fails to address the substance of FHFA/HSBC:  generalized knowledge about a population of loans is insufficient to show actual knowledge on a loan-by-loan basis.  FHFA/HSBC, 33 F.Supp.3d at 480.

[23]      See also NCUA/U.S. Bank, *3; Arrowgrass Master Fund Ltd. v. Bank of New York Mellon, 2012 WL 8700416, *9 (Sup. Ct. N.Y. Cty. Feb. 24, 2012) (trustee "had no independent duty to inquire as to whether . . . any default had occurred under the Indenture, and, in fact, was permitted to assume no default had occurred").

[24]      NCUA also does not address the fact that Reg AB cannot apply to the 32 Trusts that closed on or before December 31, 2005.  Dkt. # 48-32 (identifying the 32 Trusts).  Such claims as to those trusts must be dismissed.

Additionally, as NCUA alleges, it is the Servicers who provide information to the Trustee to include in the reports (¶ 71); however, the GAs do not require the Trustee to "confirm or verify the contents of any reports or certificates of the Servicer."  Comp., Exh. B [SAST 2007-2 § 8.1(v)].  Thus, a failure to verify information in the reports cannot be a breach of contract. Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A., 14 N.Y.3d 419, 425 (2010).

> ### D.      The No-Action Clauses Bar NCUA's Breach of Contract Claims

NCUA ignores the Trustee's severability argument and relies solely on Cruden v. Bank of New York, 957 F.2d 961, 968 (2d Cir. 1992) to argue that no-action clauses are not enforced. Opp., p. 34.  Cruden, however, did not examine whether it would be proper to sever the pre-suit demand clause from the remaining two clauses, which this Court should do.  Memo, pp. 36-37.

## III.    NCUA'S NON-CONTRACT COMMON LAW CLAIMS FAIL

NCUA admits that its implied covenant claim is duplicative of its contract claim (Memo, p. 38) when it states "Plaintiffs merely seek to hold DBNTC accountable for its obligations as trustee."  Opp., p. 36.  NCUA's mischaracterizations of the Trustee's cases cannot save its claim. Opp., p. 36.  For example, Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11-cv-5832-AJN, 2012 WL 3542196, *7 (S.D.N.Y. Aug. 15, 2012) (Memo, p. 38) holds that the implied covenant cannot be used to impose obligations "beyond those intended and stated in the language of the contract."  This is exactly what NCUA urges this Court to do.

NCUA's duplicative tort claims (Memo, pp. 38-39) cannot be saved by its invocation of two narrow, extra-contractual pre-EoD duties:  the duty to avoid conflicts and the duty to perform ministerial tasks with due care.  NCUA has not adequately alleged a breach of either duty.  As to conflicts, NCUA argues that the Trustee "was economically intertwined with the parties it was supposed to police."  Opp., p. 40.  However, a conflict cannot "be inferred solely from a relationship between an issuer and an indenture trustee that is mutually beneficial and

increasingly lucrative." Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 98-cv-6907-MBM, 2000 WL 877004, *2 (S.D.N.Y. June 30, 2000).  As to ministerial tasks, NCUA fails to identify any breaches of the Trustee's alleged duty to perform those tasks with due care.

NCUA's negligence claims also fail because the Trustee's duties are defined by the GAs. Memo, pp. 40-41; RPI/HSBC, *12 (dismissing negligence claim as duplicative).  NCUA responds that the GAs do not relieve the Trustee of liability for negligence.  Opp., p. 40.  NCUA omits, however, that the same section of the GAs states that unless the Trustee has actual knowledge of an EoD (which NCUA has not alleged), the Trustee is not liable for duties not expressly provided.  Comp., Exh. B [SAST 2007-2 PSA § 8.1(i)].[25]

NCUA's fiduciary duty claim also fails.  Memo, pp. 39-40.  NCUA argues that its conflict of interest allegations state a pre-EoD fiduciary duty claim.  Opp., pp. 39-40.  This is wrong.  AG Capital Funding Ptrs., L.P. v. State St. Bank & Trust Co., 11 N.Y.3d 146, 156 (2008); RPI/HSBC, *12 (duty to avoid conflict is not a fiduciary duty).  So, too, is NCUA's argument that the Trustee assumed fiduciary duties upon an EoD.  RPI/HSBC, *3 (even after an EoD, the trustee's obligations are "still circumscribed by the indenture").

NCUA's negligent misrepresentation claim (which is subject to FRCP 9(b), Memo, p. 41) fails because NCUA fails to allege:  (1) a special relationship; and (2) justifiable reliance. Memo, pp. 41-43; RPI/HSBC, *12 (dismissing negligent misrepresentation claim).  Contrary to NCUA's assertion (Opp., pp. 41-42), Elliott Assocs. v. J. Henry Schroder Bank & Trust Co. held that there is no special relationship with trustees, and that courts have "consistently rejected the imposition of additional duties on the trustee."  838 F.2d 66, 71 (2d Cir. 1988).  NCUA's justifiable reliance theory is premised on the Trustee's "duties to provide accurate certifications

---

[25]     For all the foregoing reasons, NCUA's tort claims are also barred by the economic loss doctrine (Memo, p. 39) because NCUA's only response is that it adequately alleged breaches of tort duties.  Opp., pp. 38-39.

and distribution reports."  Opp., p. 42.  But such reliance and duties were specifically disclaimed

in the GAs.  Memo, pp. 42-43; see also Racepoint Partners, LLC, 14 N.Y.3d at 425

(requirements that trustees distribute reports "do not create contractual duties on the part of the

trustee to assure that the information contained in any report filed is true and accurate");

NCUA/U.S. Bank, *3 (trustee is entitled to rely upon servicers' certifications).[26]

## IV.   NCUA'S STREIT ACT CLAIM FAILS

### A.   The Streit Act Does Not Apply to the Trusts

The Streit Act does not apply to the Trusts because the Certificates are not "mortgage

investments" as defined in the Streit Act, because, inter alia, the Certificates are not "secured" by

the mortgages held by the Trusts.  Memo, pp. 43-46.  NCUA's responses each fail.

First, NCUA cannot distinguish Prudence Realization Corp. v. Atwell, 35 N.Y.S.2d 1001

(1st Dep't 1942), aff'd, 290 N.Y. 597 (1943).  Opp., p. 44.  The finding in PABF, 775 F.3d at

162, that RMBS are certificates of interest in mortgage **loans**, is consistent with the Trusts being

collateral trusts.  Like the bonds held by the collateral trusts in Prudence, the Certificates are not

direct interests in real property but are interests in **notes**, and it is the notes (**not** the Certificates),

that are secured by mortgages on real property.  Indeed, NCUA alleges that the "residential

mortgage **loans** are the assets underlying the RMBS" (¶ 62; see also ¶¶ 2, 61), not real property.

Second, NCUA argues that, because each note held by the Trusts was required to be

endorsed in blank or to the Trustee for the benefit of the Certificateholders, and the Trustee was

entitled to foreclose on the mortgages, the Certificates are "secured by" the mortgages.  Opp., p.

---

[26]       NCUA's theory is further contradicted by the GAs, which provide that the reports are to be created by a party **other than** the Trustee.  See, e.g., GarbExs. 46 & 47 [HVMLT 2006-8 § 5.04 ("on each Distribution Date, the Securities Administrator shall make available to the Trustee . . . a statement . . .as to the distributions to be made"); [MSM 2004-11AR § 4.05 ("Securities Administrator shall have prepared and shall make available to the Trustee . . . a written report")].  Moreover, the GAs provide that the Trustee may rely upon others' reports.  See, e.g., GarbEx. 47 [MSM 2004-11AR § 6.02(iv); § 6.01(h) (Trustee has no duty to "confirm or verify the contents of any reports or certificates . . . believed by the Trustee . . . to be genuine")].

43.  NCUA also argues that the Certificates are investments "secured by" an evidence of interest in real property.  Id.  These arguments fail because the Certificates are not "secured."  A security interest is a form of relief available upon non-payment of monies owed and is unrelated to the source of the monies owed.[27]  NCUA itself alleges that Certificateholders merely collect "fixed principal and interest payments" on the notes held by the trusts and "do not have access to the mortgage loan files or the power to remedy or replace any defective loans."  ¶¶ 2, 4, 61, 65.  Because Certificateholders may not foreclose upon anything, the Certificates are not "secured."

Third, NCUA asserts that the Certificates are "mortgage investments" because the Certificates state that they are interests in a real estate mortgage investment conduit.  Opp., p. 43.  This argument also fails because the term "mortgage investment" as used on the Certificates is defined differently from "mortgage investments" under the Streit Act.[28]  Moreover, that the Certificates are interests in an investment "conduit" is crucial—Certificateholders are removed from the mortgage loans held by the Trusts and, as explained above, in no instance can Certificateholders foreclose on the real property securing the mortgage loans held by the Trusts.

Finally, the Streit Act's legislative history indicates that in order for it to apply, the trustee must hold real property that itself secures the "shares and interests" contemplated under the Streit Act.  The Streit Act was directed at the "wasteful administration" of real property that, upon an event of default with respect to the investment share or interest, is within the trustee's control.  Dkt.# 48-40, at 5.  NCUA claims a broader purpose to the Streit Act (Opp., pp. 44-45),

---

[27]     28 N.Y. Prac., Contract Law § 26:34 ("A secured creditor has two rights:  the contractual right to the repayment of the debt owed and the property right to the collateral that secures the debt" upon default).

[28]     Far from defining themselves as "mortgage investments" under the Streit Act, the Certificates expressly state that their use of the term is "as [the] term[] [is] defined" in the Internal Revenue Code of 1986.  Dkt.# 53-7.  The tax code, unlike the Streit Act, does not define the term "mortgage investment" as including only shares and interests that are secured investments.  See 26 U.S.C. §§ 860D, 860G.

but its authorities are inapposite.[29]  Moreover, NCUA's allegations have nothing to do with the Trustee's administration of real property in its possession as a security interest, but rather concern the Trustee's alleged failure to perform duties related to the loans secured by real property.  Neither the Streit Act's language nor its legislative history address these concerns.

**B.**     **The Streit Act Does Not Provide For A Private Right of Action**

A private right of action is inconsistent with the Streit Act's legislative scheme.  Memo, pp. 46-48.  NCUA relies upon quotes from the legislative history (Opp., p. 47) that are equally applicable in a legislative scheme contemplating enforcement by the Attorney General.  NCUA argues that the Streit Act must contain a private right of action because the Legislature "intended to create a deterrent for RMBS trustees" who fail to perform their duties.  Opp., p. 47.  Initially, it is impossible for the Legislature to have intended anything towards "RMBS trustees" in the 1930s.  Moreover, the Streit Act merely requires that indentures contain certain provisions.  The legislative scheme, therefore, allows investors to protect their rights through contract actions if a trustee fails to perform.  NCUA's case (Opp., p. 47) did not consider whether a private right of action exists, and underscores that the Streit Act allows investors to protect their rights through contract claims.  Harper v. Larchmont Yacht Club, 38 N.Y.S.2d 505, 508-09 (N.Y. Sup. Ct. N.Y. Cty. 1942) (act "prohibits the contracting parties in the trust indenture from deviating" from a certain standard of care upon an EoD).  Finally, NCUA's argument that a private right of action is appropriate because the Legislature did not provide for public enforcement of the law is false, given the Act's contemplated enforcement by the Attorney General.  Memo, p. 47.

---

[29]     For example, NCUA cites the Streit Committee's Third Report, which focused on "the methods of operation by the original houses of issue and recommendations as to the future sale of unguaranteed mortgage bonds and participations."  Dkt.# 53-8.  The "Recommendations" said nothing about a trustee's duties.  Id., at 10-11.

### C.   NCUA Fails to State a Claim Under the Streit Act

The Streit Act does not impose a duty of care, but rather requires that indentures contain certain provisions regarding a trustee's duties after an EoD.  Memo, p. 48 & n. 71.  NCUA's quote from sub-section 126.1, Opp., p. 48, omits critical language from the preface to that sub-section, § 126:  "[n]o trustee shall hereafter accept a trust under any trust indenture . . . or act as trustee thereunder unless the instrument creating the trust shall contain the following provisions ... ."  NYRPL § 126.  Thus, Section 126 does not create an independent duty of care.[30]

## V.   NCUA'S TRUST INDENTURE ACT CLAIM FAILS

NCUA admits that PABF, 775 F.3d at 163, precludes its TIA claim as to all 92 PSA Trusts.  Opp., p. 49, n.31.  NCUA's claims as to the Indenture Trusts also fail.  First, NCUA confirms that it did not allege violations of § 315(a).  Opp., p. 49.  Second, NCUA argues that the Trustee violated § 316(b), but this claim fails because bondholders do not have unconditional rights to payment.  Memo, pp. 49-50.  NCUA's reliance on RPI/HSBC, *14-15 (Opp., p. 50) is misplaced because that court did not consider the debt restructuring argument, and the Trustee's cases do support its position.  Third, NCUA's TIA claim fails as to the AHM 2007-1 and AHM 2007-2 trusts because it has not alleged any defaults under those Indentures.  Memo, pp. 23-24.  Moreover, § 315(b) requires notice only of "known" defaults. Opp., p. 49.  NCUA does not even plead Issuer defaults, let alone that such defaults were known to the Trustee.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: New York, New York
      August 7, 2015

         Respectfully submitted,

         MORGAN, LEWIS & BOCKIUS, LLP
         By: /s/ *Bernard J. Garbutt III*

---

[30]   NCUA's cites to dicta in two cases (Opp., p. 48) are to no avail; neither case involved Streit Act claims. See, e.g., Beck v. Mfrs. Hanover Trust Co., 632 N.Y.S.2d 520 (1st Dept. 1995) (breach of fiduciary duty).