# Morgan Lewis

**Bernard J. Garbutt III**
+1.212.309.6084
bernard.garbutt@morganlewis.com

August 5, 2016

<u>VIA ECF</u>

Hon. Sidney H. Stein, U.S.D.J.
United States District Court, S.D.N.Y.
500 Pearl Street, Room 1010
New York, NY 10007

Re:     *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-8919

Dear Judge Stein:

We represent the Trustee[1] in the above-referenced case and write in response to the letter from Plaintiff National Credit Union Administration Board ("NCUA") to this Court, dated July 22, 2016, Dkt.# 82 (the "NCUA 7/22 Letter"), which responded to the Trustee's letter dated July 12, 2016, Dkt.# 81 (the "Trustee 7/12 Letter").

<u>First</u>, NCUA entirely mischaracterizes the decision of the New York Appellate Division, First Department (the "First Department") in <u>Commerce Bank v. Bank of N.Y. Mellon</u>, --- N.Y.S.3d ----, 2016 WL 3582630 (1st Dep't July 5, 2016) ("<u>Commerce/BNYM</u>"), deeming it "cryptic." NCUA 7/22 Letter, p. 2. The decision should not be cryptic to NCUA as a result of the Trustee's prior filings in this case. NCUA knows very well the allegations and background facts in those cases, and the lower court's holdings. <u>Knights of Columbus v. Bank of N.Y. Mellon</u>, 2015 WL 4501196 (N.Y. Sup. Ct. N.Y. Cty. July 10, 2015) ("<u>Knights of Columbus</u> Trial Decision"), <u>aff'd</u> in <u>part</u> <u>and</u> <u>modified</u> in <u>part</u>, <u>Commerce/BNYM</u>; <u>Commerce Bank v. Bank of N.Y. Mellon</u>, 2015 WL 5770467 (N.Y. Sup. Ct. N.Y. Cty. Oct. 2, 2015) ("<u>Commerce Bank</u> Trial Decision"), <u>aff'd</u> in <u>part</u> <u>and</u> <u>modified in part</u>, <u>Commerce/BNYM</u>. In particular, the Trustee examined the <u>Knights of Columbus</u> Trial Decision in the Trustee's Reply, p. 9, and subsequently wrote to the Court

---

[1]     All capitalized terms, and citing conventions, used herein are as described in the Trustee's memorandum of law in support of its motion to dismiss, dated May 1, 2015, Dkt.# 47 (the "Trustee's Memo"). "Trustee's Reply" refers to the Trustee's reply memorandum of law in support of its motion to dismiss, dated August 7, 2015, Dkt.# 62.

**Morgan, Lewis & Bockius** LLP

101 Park Avenue
New York, NY  10178-0060
United States
☏ +1.212.309.6000
🖷 +1.212.309.6001

about the <u>Commerce Bank</u> Trial Decision, explaining in detail the background facts and underlying allegations, and their application to this case. <u>See</u> Dkt.# 74. NCUA even responded to that letter. <u>See</u> Dkt.# 75. The lower court's decisions make clear that the court is ruling on allegations similar to those at issue here, such as that the trustees there purportedly had knowledge of Events of Default from "widespread knowledge of alleged improper servicing" and yet failed to give notice, and that the trustees allegedly failed to give notice of breaches of representations and warranties about loans ("R&Ws"). <u>Commerce Bank</u> Trial Decision, 2015 5770467, at *3-5; <u>Knights of Columbus</u> Trial Decision, 2015 WL 4501196, at *3-4. Moreover, as the Trustee argued in the Trustee 7/12 Letter, <u>Commerce/BNYM</u> clarifies that an RMBS trustee's role is narrowly circumscribed by the language of the relevant governing agreements, and the Trustee does not have a duty to monitor other deal parties or "nose to the source." <u>Id.</u>, 2016 WL 3582630, at *2-3.

<u>Second</u>, contrary to NCUA's assertions (<u>see</u> NCUA 7/22 Letter, pp. 2-3), <u>Commerce/ BNYM</u> supports dismissal of NCUA's breach of contract claims based on alleged breaches of R&Ws by Warrantors concerning the loans in the Trusts at issue in this case. In <u>Commerce/BNYM</u>, the First Department reversed the trial court's decisions that the plaintiffs in those cases had adequately alleged that the trustee had knowledge of breaches of R&Ws. <u>See</u> <u>Commerce Bank</u> Trial Decision, 2015 WL 5770467, at *3; <u>Knights of Columbus</u> Trial Decision, 2015 WL 4501196, at *3. The plaintiffs' allegations in those cases were based upon generalized public information and information pertaining to trusts not at issue in each of the respective cases, and not knowledge of specific breaches of R&Ws as to the loans in the trusts at issue in those cases. <u>See</u> <u>Commerce Bank</u> Trial Decision, 2015 WL 5770467, at *3; <u>Knights of Columbus</u> Trial Decision, 2015 WL 4501196, at *3. The First Department dismissed such claims, emphasizing that plaintiffs had <u>not</u> alleged that the defendant had knowledge of specific breaches of R&Ws as to the loans in the trusts at issue there. <u>Commerce/BNYM</u>, 2016 WL 3582630, at *2. Similarly, here, as the Trustee has demonstrated, NCUA has not alleged that the Trustee had knowledge of specific breaches of R&Ws as to the loans in the Trusts at issue in this case. Trustee's Memo, pp. 31-33; Trustee's Reply, pp. 13-14.[2] Here, NCUA's allegations about the Trustee's alleged knowledge of breaches of R&Ws are based solely upon generalized allegations about industry and warrantor practices, default rates, delinquencies, and ratings downgrades, and litigation involving other RMBS trusts (NCUA 7/22 Letter, p. 2), none of which are sufficient to allege the Trustee's knowledge under <u>Commerce/BNYM</u>.[3] Given

---

[2]     The Trustee does not contend that NCUA must identify, at the motion to dismiss stage, each alleged breach of an R&W as to each loan in the Trusts at issue. However, because Plaintiff must ultimately prove breaches of R&Ws on a "loan-by-loan and trust-by-trust" basis, <u>Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon</u>, 775 F.3d 154, 162 (2d Cir. 2014), it must at least allege facts from which it is reasonable to infer that the Trustee had actual – and not constructive – knowledge of breaches of R&Ws. <u>See</u> <u>Amron v. Morgan Stanley Inv. Advisors, Inc.</u>, 464 F.3d 338, 344 (2d Cir. 2006) ("a plaintiff's allegations, accepted as true, must be sufficient to establish liability").

[3]     A recent ruling on the record during a hearing in <u>Fixed Income Shares: Series M. v. Citibank N.A.</u>, No. 653891/15 ("<u>Fixed Income/Citibank</u>"), (N.Y. Sup. Ct. N.Y. Cty. June 22, 2016) (excerpts from the transcript of the hearing are attached hereto as "Exhibit A"), also supports the Trustee's argument. The court ruled that generalized allegations of originator misconduct were insufficient to plead actual knowledge of

that New York law controls here, to the extent that other federal courts in this District have held that allegations like NCUA's are sufficient to state a claim at the pleading stage, those cases were decided before <u>Commerce/BNYM</u> and thus are no longer good law on this point.[4]

<u>Third</u>, NCUA argues that the First Department's decision affirming dismissal of plaintiffs' claims against the defendant for failure to give notice of Events of Default is inapplicable to 63 of the 97 Trusts at issue here (conceding that the GAs for 34 trusts do require written notice).  According to NCUA, this is because the PSAs (or governing agreements, the "GAs") at issue in <u>Commerce/BNYM</u> "stated a trustee does not have knowledge of an Event of Default until it receives written notice," and these 63 Trusts do not have such a written notice requirement.  NCUA 7/22 Letter, p. 3.  However, NCUA ignores that, here, as in <u>Commerce/BNYM</u>, under the GAs for 95 of the 97 Trusts at issue, the Trustee has <u>no</u> duty to give notice of servicers' mere breaches of GAs that <u>could ripen</u> into Events of Default.  <u>See</u> Trustee's Memo, pp. 21-23; Trustee's Reply 9-10.[5]  The holding in <u>Commerce/BNYM</u> is therefore directly on point.  NCUA also ignores that the First Department, relying upon the plain language of the GAs at issue there, held that "events, that with time, might ripen into Events of Default" are not synonymous with Events of Default.  <u>Id.</u>, 2016 WL 3582630, at *2.  <u>Commerce/BNYM</u> thus supports the Trustee's argument as to <u>all</u> Trusts that an "Event of Default" is a contractually defined event that is <u>not</u> synonymous with a mere servicer breach of the GAs.  Trustee's Memo, pp. 17-19 & 23-24.

Additionally, NCUA's assertion that it has adequately alleged that the Trustee received written notice of Events of Default for the 34 Trusts that have a written notice requirement also fails.  NCUA asserts that the Trustee received "written notice via reports from servicers that demonstrated the servicers were not reporting breaches of representations and warranties as required by the PSAs."  NCUA 7/22 Letter, at 4; <u>see also</u> Am. Comp., ¶ 512.  Under <u>Commerce/BNYM</u> and the GAs here, such notices amount to, at best, notices of events that might ripen into an Event Default – not formal written notice of an Event of Default (as that term is defined in the GAs) and as required by the GAs.

---

breaches of representations and warranties.  Addressing plaintiff's allegation that defendant had learned of breaches of R&Ws through government settlements involving originators generally, the court stated:  "That's nonsense. . . . . I don't care what these settlements were. . . . I want to know about . . . a specific representation or allegation in the complaint that this trustee . . . knew that there were breaches. . . not that there was a problem being reported in the newspapers." <u>Id.</u>, at 37-38.  The court later reiterated that, "You can't just say generally speaking, there are a lot of bad loans out there."  <u>Id.</u>, at 41.

[4]      A federal court sitting in New York must follow a decision from a New York intermediate appellate court unless it finds persuasive evidence that the New York Court of Appeals would reach a different conclusion.  <u>10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.</u>, 634 F.3d 112, 120 n.10 (2d Cir. 2011).

[5]      The court in <u>Fixed Income/Citi</u> also found that the trustee was not obligated to notify the servicer of breaches and trigger an Event of Default under the GAs at issue in that case.  Ex. A, at 29-30.

NCUA further asserts that for the 63 Trusts that require "actual knowledge" of an Event of Default, it has adequately alleged that the Trustee had such actual knowledge based upon allegations of general servicing misconduct untied to the specific Trusts or loans at issue here.  NCUA 7/22 Letter, p. 4.  But NCUA completely ignores that in Commerce/BNYM, the First Department affirmed the trial court's holding that plaintiffs "failed to plead any specific failure by the Master Servicer, of which there was notice, written or otherwise, sufficient to constitute an Event of Default" because plaintiffs only relied on "widespread knowledge of alleged improper servicing."  Commerce Bank Trial Decision, 2015 WL 5770467, at *5; Knights of Columbus Trial Decision, 2015 WL 4501196, at *4; see also Commerce/BNYM, 2016 WL 3582630, at *2.

Fourth, NCUA's argument that the Second Circuit's decision in Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortgage Capital, Inc., 821 F.3d 297, 310 (2d Cir. 2016) broadly "articulated the standard for determining when a party 'discovers' breaches of representations and warranties" is plainly wrong.  NCUA 7/22 Letter, p.5.  Unlike here, that case involved a servicer's obligations under a Mortgage Loan Purchase Agreement, and did not involve a RMBS trustee or a provision that expressly relieved the defendant of any duty to investigate.[6]  Moreover, the Second Circuit did not endorse the district court's statement that "once a party becomes aware of the relevant facts, a duty arises . . . to pick up the scent and nose to the source."  Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc., No. 11-cv-0505, 2013 WL 3146824, at *19 (S.D.N.Y. June 19, 2013).[7]

To the extent NCUA relies on Policemen's Annuity & Benefit Fund of Chicago v. Bank of America, N.A., 907 F. Supp. 2d 536, 553 (S.D.N.Y. 2012) in arguing that the Trustee has a duty to nose to the source regarding breaches of R&Ws, such reliance is specious.  NCUA fails to disclose that defendants in that case moved for reconsideration, and instead of reiterating a "nose to the source" duty, the court clarified that (i) "[i]t is certainly true that, as defendants argue, actual knowledge requires just that – actual notice, not constructive notice;" and (ii) "[t]he PSA here, similar to other PSAs, shields the Trustee from a mandate to conduct an investigation, except under limited circumstances that are difficult to achieve: actual notice of an event of default or a request by 25% or more of the Certificate Holders."  See Policemen's Annuity & Ben. Fund of Chi., 943 F. Supp. 2d 428, 436-437, 443 (S.D.N.Y. 2013).

NCUA is also wrong when it asserts that Commerce/BNYM's holding that a RMBS trustee does not have a duty to nose to the source is limited to investigations involving servicer Events of Default.  As the Trustee has demonstrated, the Trustee has no duty to conduct an investigation into any facts, matters, or documents, which includes alleged

---

[6]　　NCUA's reliance on Morgan Guaranty Tr. Co. v. Bay View Franchise Mortg. Acceptance Co., No. 00-cv-8613, 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002) is misplaced for the same reason.

[7]　　Even if these cases were applicable to RMBS trustees, in light of Commerce/BNYM, they would no longer be good law.

breaches of R&Ws, absent written direction and indemnification by certificateholders with the required percentage of voting rights.  Trustee's Memo, pp. 7-9 & 30-31.  The First Department's holding regarding "no duty to nose to the source," Commerce/BNYM, 2016 WL 3582630, at *3, is just another way of articulating this broad and clear contractual language.

Furthermore, NCUA's attempt to rely on statements by Deutsche Bank National Trust Company ("DBNTC"), as trustee for other RMBS trusts, in repurchase litigation brought by DBNTC, necessarily fails.  NCUA argues that DBNTC has asserted that "discovery" for any RMBS deal party means "known or should have known."  NCUA 7/22 Letter, pp. 6-7.  But those cases concern Warrantors' knowledge regarding breaches of R&Ws (as the parties that made the R&Ws in the first place), and do not concern the knowledge of a party like a RMBS trustee, which, prior to an Event of Default, has no contractual duty to investigate unless directed and indemnified by certificateholders with the required percentage of voting rights.  Contrary to NCUA's argument, this distinction does not derive from any contractual ambiguities – it is based upon the clear, express language of the GAs.

Finally, NCUA argues that Commerce/BNYM does not "undermine[] . . . [its] negligence claims" because it has adequately pled conflicts of interest.  NCUA 7/22 Letter, p. 7.  But, as the Trustee has demonstrated, NCUA's claims that the Trustee was economically beholden to other RMBS deal parties are conclusory at best (Trustee's Reply, pp. 15-16), and do not allege a "quid pro quo situation."  Commerce/BNYM, 2016 WL 3582630, at *3.

For all the foregoing reasons, and the reasons set forth in the Trustee's Memo and the Trustee's Reply, the Trustee's motion to dismiss should be granted.

Respectfully submitted,


/s/ Bernard J. Garbutt III

cc:      Counsel of Record (via ECF)

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CIVIL TERM : PART 53
----------------------------------------X
FIXED INCOME SHARES: SERIES M, *et al.*,

                    Plaintiff,

                                        Index No.
            -against-                   653891/2015

CITIBANK N.A.,

                    Defendant.
----------------------------------------X
Transcript of Motion Proceedings
                        New York Supreme Court
                        60 Centre Street
                        New York, New York 10007
                        June 22, 2016


B E F O R E :

        HON. CHARLES E. RAMOS, Justice of the Supreme Court


A P P E A R A N C E S :

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP
Attorneys for the Plaintiff
12481 High Bluff Drive, Suite 300
San Diego, CA 92130-3582
BY: TIMOTHY A. DELANGE, ESQ.
    LUCAS E. GILMORE, ESQ.


MAYER BROWN LLP
Attorneys for the Defendant
1221 Avenue of the Americas
New York, New York 10020-1001
BY: CHRISTOPHER J. HOUPT, ESQ.
    MATTHEW D. INGBER, ESQ.
        *   *   *   *   *   *   *   *   *   *   *   *
                    LAURA L. LUDOVICO
                    Senior Court Reporter
            60 Centre Street - Room 420
                New York, New York 10007

| | Proceedings |
|---|---|
| 1 | |
| 2 | MR. DELANGE: Yes. Citibank's duty to provide |
| 3 | notice to servicers upon known servicer breaches. |
| 4 | THE COURT: Hang on. Hang on. |
| 5 | (Brief pause in the record.) |
| 6 | THE COURT: Chart three. |
| 7 | MR. DELANGE: Okay. And what we provided here, |
| 8 | Your Honor, is a specific provision from one trust and then |
| 9 | identified the remaining trusts that had substantially -- |
| 10 | THE COURT: Hang on. Let me read this from the |
| 11 | trust itself. |
| 12 | MR. DELANGE: Okay. |
| 13 | THE COURT: All right. That just tells me what |
| 14 | an event of default is. What about the obligation of the |
| 15 | trustee? |
| 16 | MR. DELANGE: Your Honor, it's in the last |
| 17 | clause, which says: "Shall have been given to the master |
| 18 | servicer by the trustee or to the master servicer and the |
| 19 | trustee by holders of certificates entitled to at least |
| 20 | 25 percent of the voting rights." |
| 21 | THE COURT: But there's no obligation on the |
| 22 | trustee to act. |
| 23 | MR. DELANGE: There is. It says, the notice |
| 24 | shall have been given. And if you look at Judge Furman's |
| 25 | opinion in the parallel federal action involving these |
| 26 | exact same parties, he found -- |

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT: I make up my own mind on these |
| 3 | things. |
| 4 | MR. DELANGE: I understand, but I'm providing you |
| 5 | citations to other decisions, which find this provision, |
| 6 | which specifically says that that notice shall have been |
| 7 | given by the trustee. |
| 8 | THE COURT: All right. Defendant, what he's |
| 9 | saying is the word "shall" is mandatory. |
| 10 | MR. HOUPT: Right. It's mandatory if the subject |
| 11 | of the sentence is the trustee and the verb is shall. The |
| 12 | trustee shall give the notice. That describes a duty. |
| 13 | What this is describing is the way that you get to an event |
| 14 | of default. An event of default occurs if a notice shall |
| 15 | have been given by the trustee. |
| 16 | If they're right that this imposes a duty on the |
| 17 | trustee, it also says shall have been given by the trustee |
| 18 | or by the holders of certificates, well, it's certainly not |
| 19 | imposing a duty on the holders of the certificates who are |
| 20 | not even parties to the contract to send a notice of an |
| 21 | event of default. |
| 22 | THE COURT: Plaintiff, you got a problem here. I |
| 23 | don't have a dog in this fight, I'm just a judge. Frankly, |
| 24 | I don't care who wins or loses. I don't rewrite |
| 25 | agreements. I mean, these are sophisticated documents. |
| 26 | That PSA is probably the size of a telephone book. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. DELANGE:  It is, Your Honor. |
| 3 | MR. HOUPT:  And if I may add, Your Honor, there |
| 4 | are two decisions from New York State Courts addressing |
| 5 | this exact issue.  This is a question of New York State |
| 6 | Contract Law. |
| 7 | THE COURT:  Yes. |
| 8 | MR. HOUPT:  Those are from Justice Kapnick and |
| 9 | Justice Scarpulla; Knights of Columbus and Commerce Bank. |
| 10 | THE COURT:  I'm aware of them. |
| 11 | MR. HOUPT:  Okay.  Unfortunately, many of the |
| 12 | Federal Courts don't seem to care about them.  They're not |
| 13 | cited or they're mentioned as "but sees."  On the question |
| 14 | of New York Contract Law, the State Court decisions are |
| 15 | cited at "but sees" with no effort to distinguish them, no |
| 16 | effort to reconcile them. |
| 17 | THE COURT:  We have our rules, they have theirs. |
| 18 | Plaintiff, this is a problem. |
| 19 | MR. DELANGE:  Your Honor, can I address it |
| 20 | quickly? |
| 21 | THE COURT:  Sure, please. |
| 22 | MR. DELANGE:  Please.  Thank you. |
| 23 | THE COURT:  That's why I'm bugging you. |
| 24 | MR. DELANGE:  The first point I want to make, |
| 25 | Your Honor, is we're talking about the event of default, |
| 26 | which is one of the four contractual obligations that we |

| | |
|---|---|
| 1 | Proceedings |
| 2 | allege have been breached.  This argument has nothing to do |
| 3 | with the first three categories that I walked Your Honor |
| 4 | through. |
| 5 | THE COURT:  Good point.  The first one was |
| 6 | disclosure.  How do we deal with that? |
| 7 | MR. HOUPT:  Sure.  Again, we can point to the |
| 8 | relevant contract language.  The duty to give notice, it's |
| 9 | not a duty to give notice to the holder, it's a duty to |
| 10 | give notice to the other parties to the contract.  This |
| 11 | condition that occurs upon discovery by the trustee or by |
| 12 | any of the other parties of a loan specific breach of rep |
| 13 | and warranty.  And what that means -- I don't think -- we |
| 14 | it spent a lot of pages in our opening brief -- |
| 15 | THE COURT:  Wouldn't that be a factual issue as |
| 16 | to whether or not the trustee was made aware of this breach |
| 17 | by the borrower? |
| 18 | MR. HOUPT:  It's a factual issue, but it has to |
| 19 | be pleaded in the complaint.  This is the point that |
| 20 | Justice Kornreich made in the Arrowgrass Master Fund, which |
| 21 | with was affirmed by the First Department.  She said: |
| 22 | "There are two different questions here.  There is a |
| 23 | question of whether the issuer has committed a breach --" |
| 24 | which is analogous to the servicer breach or the |
| 25 | underwriting breach here. |
| 26 | THE COURT:  Right. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. HOUPT: "There's a separate question of |
| 3 | whether the trustee had actual knowledge of that breach, |
| 4 | and if the complaint --" |
| 5 | THE COURT: The knowledge would trigger an |
| 6 | obligation. |
| 7 | MR. HOUPT: Exactly. The obligation is |
| 8 | conditioned on that loan-specific discovery. |
| 9 | "If all that the complaint has is public |
| 10 | information that supports an inference that there was a |
| 11 | breach by another party and it doesn't have anything about |
| 12 | how the trustee discovered the specific breaches in the |
| 13 | specific --" |
| 14 | THE COURT: You mean because some congressman who |
| 15 | decided to talk about what the banks did or didn't do in |
| 16 | the RMBS stuff, that's not going to be notice of anything? |
| 17 | Come on. |
| 18 | MR. HOUPT: Right. The notice that the trustee |
| 19 | has to provide is not a letter that says, Dear Originator, |
| 20 | you know, we've read an article that suggests that you're a |
| 21 | bad originator and we're kind of suspicious that there |
| 22 | might be breaches in these cases. I think Your Honor is |
| 23 | familiar, I think you had the Ambac vs. EMC case, which |
| 24 | involved a sole remedy provision. The sole remedy that the |
| 25 | trustee has under the contract is to identify the specific |
| 26 | loan that has a breach and put it back to the originator. |

| | |
|---|---|
| 1 | Proceedings |
| 2 | So unless the trustee has discovered specific breaches -- |
| 3 | THE COURT: How can he put it back? |
| 4 | MR. HOUPT: -- how can he put it back? And all |
| 5 | the trustee is doing is something that's not even required |
| 6 | to do, which is read every newspaper article, every |
| 7 | congressional report, everything in the world -- |
| 8 | THE COURT: Since we're beating up on the |
| 9 | Plaintiff, let me go to the Plaintiff. How do we trigger |
| 10 | the duty if we don't know that the trustee has been made |
| 11 | aware of the fact that there's a problem with the servicer |
| 12 | in the reps and warranties? |
| 13 | MR. DELANGE: First of all, I'm going to give you |
| 14 | the specific citations and allegations in the complaint, |
| 15 | but I want to make a correction. No. 1, the pleading |
| 16 | standard that they are advocating for is not the pleading |
| 17 | standard. This is a breach of contract claim. CPLR 3013 |
| 18 | applies; particularity is not required. There have been |
| 19 | numerous courts that have upheld -- |
| 20 | THE COURT: But again, I haven't read the |
| 21 | complaint, I just saw it right now. Do you have an |
| 22 | allegation that the trustee was aware of specific breaches |
| 23 | of reps and warranties? |
| 24 | MR. DELANGE: The answer, Your Honor, is yes. |
| 25 | The entire complaint is -- and again, they want to elevate |
| 26 | this pleading standard that you have to identify a |

| | |
|---|---|
| 1 | Proceedings |
| 2 | particular loan.  That is not the standard at the pleading |
| 3 | stage. |
| 4 | THE COURT:  Because it's a breach of contract |
| 5 | case, not a fraud case? |
| 6 | MR. DELANGE:  Breach of contract, and you have to |
| 7 | identify the contract and the transactions are -- |
| 8 | THE COURT:  All right.  He's -- |
| 9 | MR. DELANGE:  Particularity is not required. |
| 10 | THE COURT:  He's making a good point.  All he had |
| 11 | to do is allege that the trustee knew or had reason to know |
| 12 | that there was a breach by the issuer. |
| 13 | MR. HOUPT:  Exactly.  He's making a good point |
| 14 | because he's attacking a strawman.  We're not saying that |
| 15 | they need to allege in the complaint that the trustee |
| 16 | discovered a breach on, you know, the Ingber loan and the |
| 17 | Ramos loan, which loan the trustee knew about. |
| 18 | THE COURT:  Right. |
| 19 | MR. HOUPT:  But they have to allege facts that |
| 20 | support an inference that the trustee discovered, not a |
| 21 | risk that there might have been breaches somewhere, but |
| 22 | that the trustee discovered breaches on specific loans. |
| 23 | They could allege, for example -- |
| 24 | THE COURT:  And you're saying they didn't allege |
| 25 | that. |
| 26 | MR. HOUPT:  Right. |

|    |                                                              |
|----|--------------------------------------------------------------|

1                   Proceedings

2         THE COURT:  But you say you did.  Where?

3         MR. DELANGE:  There are specifics -- so I can I

4  tell you -- let me explain to you how --

5         THE COURT:  By the way, if it's a problem with

6  pleading like this, I'll always let you replead.

7         MR. DELANGE:  Your Honor, it's not a problem with

8  pleading.  We have more that satisfied the pleading

9  standard, more that satisfied CPLR 3013.

10        THE COURT:  Now that I have my copy of the

11 complaint, where would I find the allegation?

12        MR. DELANGE:  So I'm going to tell you how

13 because it's categories of allegations, okay?  And it is --

14        THE COURT:  Are you telling me that it's not

15 pled?

16        MR. DELANGE:  I'm sorry, Your Honor?

17        THE COURT:  Are you telling me --

18        MR. DELANGE:  I do not identify a specific loan,

19 no.

20        THE COURT:  No, you don't have to identify a

21 specific loan, but are you alleging, generally speaking,

22 that the trustee knew of violations by the issuer of the

23 reps and warranties?

24        MR. DELANGE:  That the trustee discovered, Your

25 Honor?

26        THE COURT:  Yes.

| | |
|---|---|
| 1 | Proceedings |
| 2 | MR. DELANGE: Okay. |
| 3 | THE COURT: Did you? |
| 4 | MR. DELANGE: You said knew and I want to |
| 5 | clarify. |
| 6 | THE COURT: Know or should have known. |
| 7 | MR. DELANGE: Okay. So, yes, Your Honor. And |
| 8 | there are trust specific allegations, and I'll point you to |
| 9 | paragraph 156 of the complaint. |
| 10 | THE COURT: Hang on. |
| 11 | MR. DELANGE: And specifically -- |
| 12 | THE COURT: Hang on. Hang on. |
| 13 | Let me read this into the record. Paragraph 156, |
| 14 | this is the problem I have: "Recent landmark settlements |
| 15 | between the government and major financial institutions |
| 16 | have further detailed a systematic and pervasive disregard |
| 17 | of underwriting standards by lenders during the relevant |
| 18 | time period and have confirmed that these practices |
| 19 | infiltrated the trust." |
| 20 | That's nonsense. That's not the allegation. And |
| 21 | it's a simple allegation. You can make it. You can allege |
| 22 | upon information and belief that the trustee had |
| 23 | information that there were breaches of the reps and |
| 24 | warranties by issuers. You're just dancing around it. You |
| 25 | try to put that into evidence, I'm going to throw it out. |
| 26 | I don't care what these settlements were. Half of these |

1                          Proceedings

2      banks got money at almost zero percent for years.  They're

3      laughing all the way to their banks.  Of course they make

4      settlements with the government.  They make the government

5      happy, the government makes them wealthy.

6              I want to know about a specific -- doesn't have

7      to be like 3016, but at least a specific representation or

8      allegation in the complaint that this trustee, Citibank,

9      knew that there were breaches by the issuers, not that

10     there was a problem being reported in the newspapers.

11             MR. DELANGE:  Your Honor, paragraph six, the

12     first sentence.

13             THE COURT:  Paragraph?

14             MR. DELANGE:  Paragraph six, the first sentence.

15             THE COURT:  Six?

16             MR. DELANGE:  Six, yes, in the introduction.

17             THE COURT:  Okay.

18             MR. DELANGE:  That has that exact allegation that

19     you asked for.

20             THE COURT:  Okay.

21             MR. DELANGE:  I was trying to provide the

22     supporting allegations as to how we get to that.

23             THE COURT:  That's nonsense.  Come on.

24             All right.  Paragraph six:  "Citibank knew that

25     the pools of loans backing the trusts were filled with

26     defective mortgages that materially breached seller

1              Proceedings

2   representations and warranties."

3           That's pretty clear.  That's the allegation I'm

4   looking for.  Now, you can take their deposition and say,

5   well, what's the basis of that allegation?  Well, there

6   were newspaper articles.  Okay.  Then you got a good

7   defense, but for pleading purposes, this is not sufficient.

8           MR. HOUPT:  No, at the pleading stage the Court

9   does not have to credit conclusory allegations that just

10  parrot the requirements of the contract and says this is

11  what the contract says and we breached this.  We know what

12  this allegation is based on.  We don't have to take their

13  deposition because the same paragraph goes on say that it's

14  not based on any discovery of loan-specific information.

15  The conclusion that the trustee discovered breaches --

16          THE COURT:  Hold on one second.

17          (Brief pause in the record.)

18          THE COURT:  Sorry.

19          MR. HOUPT:  The facts that are alleged in support

20  of this conclusory allegation make clear that they're

21  really relying on a constructive notice standard.  They

22  don't identify any mechanism by which the trustee could

23  have possibly identified loan specific breaches.  For

24  example --

25          THE COURT:  Look, if all the Plaintiff's going to

26  rely on is the nonsense we've seen in so many other

| | |
|---|---|
| 1 | Proceedings |
| 2 | complaints, you're right, you're going to win on summary |
| 3 | judgment, but from a pleading perspective, I have to give |
| 4 | some credit to the fact that that first sentence standing |
| 5 | alone is sufficient, it does allege that the bank knew |
| 6 | about these failures by the issuers. |
| 7 | So I think I'm going to sustain this complaint. |
| 8 | MR. HOUPT: Okay. If I could say one more thing. |
| 9 | THE COURT: Sure. |
| 10 | MR. HOUPT: Even if you don't believe that the |
| 11 | conclusions have to be well pleaded, that their conclusory |
| 12 | allegation is enough, look at what this sentence actually |
| 13 | says. It doesn't say Citibank identified specific loans |
| 14 | that had breaches. It says that Citibank knew that the |
| 15 | pools of loans backing the trust were filled with defective |
| 16 | mortgage loans. You can learn that from reading a |
| 17 | newspaper article. The Plaintiffs can learn that by |
| 18 | conducting their own investigation or watching the |
| 19 | performance of the trusts or whatever. Knowing that the |
| 20 | trusts are filled with defective loans doesn't mean that |
| 21 | you know which loans have breaches so that you can send a |
| 22 | notice to the seller and demand that the seller repurchase |
| 23 | the loan. |
| 24 | THE COURT: So you're saying they'd have to |
| 25 | allege that Citibank had sufficient knowledge to be able to |
| 26 | issue the required notices? |

MR. HOUPT:  Exactly.  They have to allege that Citibank knew which loans had breaches.

THE COURT:  He's making a good point, but I'll let you replead.  You've got to give me something to satisfy the conditions of the PSA.

MR. DELANGE:  Your Honor, we do.  I mean, they --

THE COURT:  No, no --

MR. DELANGE:  -- received --

THE COURT:  But that doesn't do it.  He's right.

MR. DELANGE:  I can certainly --

THE COURT:  This is generalized knowledge.  No, you've got to allege that they had specific -- you don't have to allege specific knowledge, but you have to allege generally that they had sufficient specific knowledge to be able to go to these issuers and say this loan or these loans were in violation of the reps and warranties.  You can't just say generally speaking, there are a lot of bad loans out there.  There are always bad loans.  We're talking billions of dollars worth of loans here.

MR. DELANGE:  And to be clear, Your Honor, you're not asking us to replead and identify a particular loan by loan number?

THE COURT:  No, no, no, because that kind of particularity is not required in a breach of contract case.  You're absolutely right.  But this allegation -- and you

1                        Proceedings

2     know something?  I'll let him just replead by pleading that

3     paragraph.  I don't want to make him go through all of that

4     nonsense.  But I really think that, as we've talked about

5     it, replead, it will be sufficient, then you can go to

6     town.  You know, well, what did they know, what's the basis

7     of this allegation, and we can some real fun, or you can

8     have some fun.

9         But I think I would sustain that kind of an

10    allegation and I think that they are quite capable of

11    making that allegation.  Whether they can defend it or not,

12    that's the issue.

13        MR. HOUPT:  Well, I mean, I guess once they

14    replead we'll see what they replead.  I think there may be

15    a difference of understanding of what kind of good faith

16    basis you have to have to put it back in the complaint.

17    This is actually a problem that I'll get to it if --

18        THE COURT:  Well, you're raising an interesting

19    point.  You know, a lot of these cases are being dismissed,

20    an awful lot, at least in New York.  Not many of them are

21    going very far.  There's a lot of settlements, but other

22    than the settlements, those banks that are holding out are

23    doing okay.

24        MR. HOUPT:  You know, if you're asserting a claim

25    against the party, you can say on information and belief

26    the Defendant conducted due diligence on the loan files.  I

| | |
|---|---|
| 1 | Proceedings |
| 2 | mean, then you have a plausible reason and a good faith |
| 3 | reason for thinking that the Defendant discovered loan law |
| 4 | breaches, but when you're dealing with an indentured |
| 5 | trustee that not only has no duty to conduct due diligence, |
| 6 | but explicitly has no duty to investigate, not duty to, you |
| 7 | know, do this or that or the other thing, it's going to be |
| 8 | very hard to -- |
| 9 | THE COURT: I get it. I'm going to let the |
| 10 | Plaintiff replead, as I've indicated. We'll see you again |
| 11 | soon, I'm sure. |
| 12 | MR. DELANGE: Your Honor? |
| 13 | THE COURT: Yes. |
| 14 | MR. DELANGE: Can I just discuss mechanically and |
| 15 | time wise the amendment? |
| 16 | THE COURT: Sure. |
| 17 | MR. DELANGE: We're happy to do that, and if Your |
| 18 | Honor's direction is just to amend that paragraph, we are |
| 19 | happy to do that and we can do that relatively quickly. |
| 20 | THE COURT: Well, do we have that problem with |
| 21 | regard to all of the allegations or is that knowledge |
| 22 | sufficient to satisfy all four categories? |
| 23 | MR. DELANGE: We would have to also amend with |
| 24 | respect to their knowledge of servicing violations. |
| 25 | THE COURT: Okay. Then do it. |
| 26 | MR. DELANGE: And we'll do that as well, Your |

Laura L. Ludovico, SCR

1          Proceedings

2    Honor.

3              THE COURT:  Give me something so that I could say

4    to the Appellate Division, look, they've got enough to get

5    by a 3211 motion.

6              MR. DELANGE:  Your Honor, one last point of

7    clarification.  I know you've given us a lot of your time

8    and I appreciate that.

9              You made a comment that a lot of these cases have

10   been dismissed, and I want to correct Your Honor's

11   understanding.  There is not a single case against the

12   trustee that has been dismissed.  There are other cases

13   involving other parties to the transaction that have been

14   dismissed.

15             THE COURT:  But the trustee cases are the last

16   tranche of cases coming through now.

17             MR. DELANGE:  That's correct, and none of them

18   have been dismissed.  Don't celebrate too soon, Your Honor.

19             THE COURT:  Okay.  Thanks for coming in.  I know

20   we'll see you again.

21             MR. DELANGE:  Thank you, Your Honor.

22             THE COURT:  And next time give me a copy of the

23   complaint.

24             MR. HOUPT:  Okay.

25             MR. DELANGE:  And, Your Honor, I'll bring a

26   larger copy for you next time.

                    Laura L. Ludovico, SCR