KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
——
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 6, 2018

**VIA ECF**
Honorable Sidney H. Stein
Southern District of New York
500 Pearl Street
New York, NY 10007

　　Re:　*NCUA v. Deutsche Bank National Trust Co.*, No. 14-cv-8919-SHS

Dear Judge Stein:

　　Plaintiff National Credit Union Administration Board, as liquidating agent for insolvent corporate credit unions ("NCUA"), respectfully submits the following updates in light of the Court's recent order setting oral argument for July 13, 2018 (Dkt. 90).  NCUA opposes Deutsche Bank's request to adjourn that argument *sine die* (Dkt. 91), and respectfully requests that the hearing be rescheduled for July 25, 26, or 31 as requested in Deutsche Bank's fallback position.

　　The original briefing on Deutsche Bank's motion to dismiss was completed on August 7, 2015, and both parties have submitted multiple notices of supplemental authority.  NCUA's submission here is to further update the record with respect to supplemental authorities; report subsequent factual events; and organize the current state of the case law on primary issues in order to be helpful to the Court by enabling the argument to proceed efficiently and productively.

　　**1.　*Breach-of-Contract and Conflict-of-Interest Claims*.**  NCUA's primary claim is for breach of contract based on Deutsche Bank's alleged violations of the governing trust agreements for residential mortgage-backed securities ("RMBS") trusts.  As a corollary, NCUA also alleges a breach of the common-law duty for a trustee to avoid conflicts of interest.  The complaint alleges other legal theories, but these two are the main legal claims.

　　Three decisions from this District have denied motions to dismiss similar breach-of-contract claims against Deutsche Bank as an RMBS Trustee.[1]  Numerous additional decisions likewise have declined to dismiss breach-of-contract claims against other RMBS trustee

---

[1] *See Royal Park v. Deutsche Bank*, 2016 WL 439020, at *2-8 (S.D.N.Y. Feb. 3, 2016) (Nathan, J.); *Phoenix Light v. Deutsche Bank*, 172 F. Supp. 3d 700, 711-17 (S.D.N.Y. 2016) (Koeltl, J.); *BlackRock v. Deutsche Bank*, No. 14 Civ. 9367, Tr. 2:17-5:16 (S.D.N.Y. Feb. 2, 2017) (Furman J.) (*see* Dkt. 89-2) ("*BlackRock* Tr.").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Honorable Sidney H. Stein, U.S.D.J.
July 6, 2018
Page 2

defendants.[2]  The sole case cited by Deutsche Bank in its favor, *Commerce Bank v. BNYM*, 35 N.Y.S.3d 63 (App. Div. 2016), concerned a complaint lacking key allegations that are well developed in NCUA's Amended Complaint.[3]  Accordingly, three decisions from this District have rejected the same erroneous reading of *Commerce Bank* that Deutsche Bank advances here; none has adopted it.[4]

Two decisions from this District have also allowed conflict-of-interest claims to proceed against Deutsche Bank, because "[w]hether Deutsche Bank was in fact subject to a conflict of interest arising from its own actions and association with mortgage loan originators is an issue that cannot be resolved on a motion to dismiss."[5]  Many other decisions have allowed conflict-of-interest claims against different RMBS trustees likewise to proceed because, "[i]f a [trustee] is alleged to have turned a blind eye to breaches of R&Ws [representations and warranties] in the hopes that counterparties would later 'return a favor,' courts will find that the defendant personally benefited from its decision not to act with regard to the known breaches, which constitutes a conflict of interest."[6]

---

[2] *See Commerzbank v. U.S. Bank*, 277 F. Supp. 3d 483, 491-96 (S.D.N.Y. 2017) (Pauley, J.); *BlackRock, NCUA et al. v. Wells Fargo*, 247 F. Supp. 3d 377, 389-94 (S.D.N.Y. 2017) (Failla, J.) ("*Wells Fargo I*"); *Commerzbank v. Bank of N.Y. Mellon (BNYM)*, 2017 WL 1157278, at *4-5 (S.D.N.Y. Mar. 21, 2017) (Daniels, J.); *BlackRock v. BNYM*, 180 F. Supp. 3d 246, 258-60 (S.D.N.Y. 2016) (Daniels, J.); *Royal Park  v. BNYM*, 2016 WL 899320, at *3-6 (S.D.N.Y. Mar. 2, 2016) (Woods, J.); *BlackRock v. U.S. Bank*, 165 F. Supp. 3d 80, 91-105 (S.D.N.Y. 2016) (Forrest, J.); *Phoenix Light v. BNYM*, 2015 WL 5710645, at *3-6 (S.D.N.Y. Sept. 29, 2015) (Caproni, J.); *Fixed Income Shares v. Citibank*, 130 F. Supp. 3d 842, 853-56 (S.D.N.Y. 2015) (Furman, J.); *Royal Park v. HSBC Bank*, 109 F. Supp. 3d 587, 600-07 (S.D.N.Y. 2015) (Scheindlin, J.); *Policemen's Annuity v. Bank of America*, 943 F. Supp. 2d 428, 440-43 (S.D.N.Y. 2013) (Forrest, J.) (subsequent history omitted).

[3] *See* NCUA July 22, 2016 Letter at 2-4 (Dkt. 82).

[4] *See Wells Fargo I*, 247 F. Supp. 3d at 391-93 (refusing to "read *Commerce Bank* to conflict with the very case law from this District that the First Department cited therein as 'persuasive' in its analysis of pleading sufficiency"); *Commerzbank v. BNYM*, 2017 WL 1157278, at *4 (noting the SDNY's "approach is consistent with previous decisions by the New York Appellate Division" including *Commerce Bank*); *BlackRock* Tr. 3:2-21 (holding *Commerce Bank* "is not enough, in my view to overcome the weight of authority . . . rejecting arguments put forward by defendants to warrant coming out the other way here").

[5] *Phoenix Light v. Deutsche Bank*, 172 F. Supp. 3d at 720; *see also Royal Park v. Deutsche Bank*, 2016 WL 439020, at *9.

[6] *Wells Fargo I*, 247 F. Supp. 3d at 397 (alterations and quotation marks omitted); *see also Commerzbank v. U.S. Bank*, 277 F. Supp. 3d at 496-98; *Commerzbank v. BNYM*, 2017 WL 1157278, at *6; *Royal Park v. BNYM*, 2016 WL 899320, at *7; *Fixed Income Shares*, 130 F. Supp. 3d at 857-58; *Royal Park v. HSBC*, 109 F. Supp. 3d at 610.  *But see BlackRock* Tr. 5:17-6:16 (dismissing conflict-of-interest claim as overlapping with damages from breach of contract).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Honorable Sidney H. Stein, U.S.D.J.
July 6, 2018
Page 3

**2.  *Non-Jurisdictional Derivative Standing.***  In 2010 and 2011, NCUA re-securitized many of the RMBS certificates from the insolvent credit union estates into so-called NCUA Guaranteed Notes Trusts ("NGN Trusts").  The purpose of those re-securitizations was to generate necessary and immediate cash flows in the wake of the financial crisis.[7]  The NGN Trusts were structured to last for a period of years until NGN investors were fully paid and then unwind, with the underlying RMBS certificates returned to NCUA.  *See* NCUA Opp. (Dkt. 52) at 3-6 (June 30, 2015).  NCUA thus retained a significant beneficial interest in NGN Trust assets, and on that basis sued derivatively on behalf of the NGN Trusts.  *See* Am. Compl. (Dkt. 38) ¶ 31 (Mar. 5, 2015).

Deutsche Bank challenges NCUA's standing to sue derivatively on certificates held by NGN Trusts.  *See* DB Br. (Dkt. 47) at 10-13 (May 1, 2015); NCUA Opp. at 11-16.  One decision from this District held that NCUA has derivative standing,[8] but two others held that NCUA does not.[9]  The derivative standing issue is on appeal to the Second Circuit; oral argument was held March 8, 2018; and a decision is pending.  *See NCUA v. U.S. Bank*, No. 17-756 (2d. Cir.).

In light of the pending appeal, NCUA respectfully requests that the Court hold argument on the merits and defer assessment of the non-jurisdictional derivative standing issue until the Second Circuit has ruled.  If NCUA wins the appeal, then its complaint should be sufficient as drafted to allege derivative standing.  If NCUA loses the appeal, then the solution will be for the NGN Indenture Trustee to appoint a separate trustee to bring the claims for certificates held by NGN Trusts, and for NCUA minimally to amend the complaint to achieve that result.  NCUA raised this possibility by letter dated July 22, 2016 (Dkt. 83 at 2-3).

Judge Failla adopted this same approach.  After first holding that NCUA lacked derivative standing, the court allowed substitution of a separate NGN trustee and amendment to cure the perceived derivative standing defect.  *See Blackrock, NCUA et al. v. Wells Fargo Bank*, 2017 WL 3610511, at *15-21 (Aug. 21, 2017) ("*Wells Fargo II*").  The court found that such substitution was "merely formal" because "[a]mending a pleading to allege new facts relating only to the authorization to litigate is different from amending a pleading to allege new facts that

---

[7] *See* Larry Fazio, *NCUA Offers Progress Report on Corporate Resolution Costs*, Credit Union J. (July 20, 2015) ("At the height of the crisis in 2009, the total unpaid principal balance for the distressed securities was $52.7 billion, but their market value was less than $22 billion.  Thus, market losses from the five failed corporate[] [credit unions] would have exceeded $30 billion, an amount far in excess of the Share Insurance Fund's then $11 billion balance available to cover those losses.  Consider the potential impact on the credit union system with losses of that size cascading through individual credit union balance sheets.  The agency's securitization strategy prevented that scenario."), https://www.cujournal.com/opinion/ncua-offers-progress-report-on-corporate-resolution-costs.

[8] *NCUA v. HSBC Bank*, 117 F. Supp. 3d 392, 399-400 (S.D.N.Y. 2015) (Scheindlin, J.).

[9] *Wells Fargo I*, 247 F. Supp. 3d at 409-15; *NCUA v. U.S. Bank N.A.*, 2016 WL 796850, at *8-10 (S.D.N.Y. Feb. 25, 2016) (Forrest, J.).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Honorable Sidney H. Stein, U.S.D.J.
July 6, 2018
Page 4

go to the constitutionality of a litigation or the merits of the underlying claims." *Id.* at *17, 18. The *Wells Fargo* court found that "this case is a classic example of the circumstances that Rule 17(a) was designed to address, namely, to avoid forfeiture in situations in which it is unclear at the time the action is filed who had the right to sue and it is subsequently determined that the right belonged to a party other than the party that instituted the action." *Id.* at *17 (quotation marks omitted). This Court should allow a similar substitution in the event the Second Circuit rules against NCUA's derivative standing.

The "interests of efficiency and judicial economy," Deutsche Bank Ltr. (Dkt. 91) at 1, will not be served by adjourning oral argument entirely because this case will ultimately proceed to the merits regardless of the Second Circuit's decision. NCUA's *directly* held claims will not be impacted by the Second Circuit's decision on derivative standing. Similarly, because the claims currently held by the NGN Trusts may plainly be brought by *some* plaintiff with standing — whether NCUA derivatively or a separate trustee directly — they should also be resolved.

There is no reason to defer resolution on the merits of these viable claims. Even if substitution of a separate trustee later becomes necessary, that substitution can be accomplished seamlessly *after* a ruling on the defendant's motion to dismiss so that discovery can proceed, as in *NCUA v. Wells Fargo*. Awaiting the Second Circuit's decision, by contrast, would needlessly delay merits discovery and risk loss of evidence with the passage of time.

**3. *Direct Standing for Claims on Certificates Returned from NGN Trusts to NCUA.*** The significance of the derivative standing issues in fact has decreased over time in terms of certificates affected. Since this case was filed, four NGN Trusts relevant to this case have unwound and re-conveyed their certificates back to NCUA. NCUA reported the unwinding of two NGN Trusts by letter dated July 22, 2016 (Dkt. 83 at 1-2). Subsequently, two more NGN Trusts relevant to this case have unwound and re-conveyed their RMBS certificates back to NCUA. (The remaining NGN Trusts are all set to unwind in 2020 and 2021, which by then would make NCUA the direct holder of all RMBS certificates relevant here.)

NCUA has direct standing to sue as the real party in interest for each of the now re-conveyed RMBS certificates, as the *Wells Fargo* court has twice held in similar litigation with respect to unwinding of the same four NGN Trusts. *See* Memo Endorsement, *NCUA v. Wells Fargo*, No. 1:14-cv-10067, Dkt. 392 (S.D.N.Y. Dec. 2, 2017) ("*Wells Fargo III*"); *Wells Fargo II*, 2017 WL 3610511, at *19 ("[F]or the reasons explained in [*Wells Fargo I*], the Court will permit the NCUAB to substitute itself as direct Plaintiff for the re-conveyed certificates from both the R5 and R6 trusts."); *Wells Fargo I*, 247 F. Supp. 3d at 415-16 ("NCUAB's substitution of itself as the direct claimant for itself as a derivative claimant would only replace an incorrect party with the real party in interest. The Court does not expect that substitution would alter the original complaint's factual allegations as to the events or the participants.") (alteration omitted); *see also id.* (explaining that NCUA's beneficial interest in NGN Trusts gave it "Article III standing," and derivative standing implicates only a "prudential" "real-party-in-interest status").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Honorable Sidney H. Stein, U.S.D.J.
July 6, 2018
Page 5

NCUA's Amended Complaint filed in March 2015 (Dkt. 38) alleges claims concerning 97 RMBS trusts, and Exhibit A (Dkt. 38-1) identified the holders of certificates in those trusts at that time.  Exhibit A hereto identifies those certificates for which NCUA is now a direct claimant as a result of unwound NGN Trusts.  In sum, NCUA is now a direct claimant for certificates in 49 of the 97 trusts, and it brings claims based on certificates in 64 trusts as a derivative plaintiff, subject to any substitution of a separate trustee as plaintiff for those claims depending on how the Second Circuit rules on the pending appeal.  Two courts have authorized NCUA to amend its operative complaint by ministerial interlineation (line edits to a paragraph or two and a similar Exhibit A) to reflect that NCUA became the direct holder of additional certificates when NGN Trusts have unwound.  *See* Order, *NCUA v. HSBC*, No. 1:15-cv-02144, Dkt. 308 (S.D.N.Y. Jan. 11, 2018) (Schofield, J.); *Wells Fargo III* (Failla, J.).  NCUA respectfully submits that a similar approach is appropriate here.

**4.  *Reduction of Trusts at Issue*.**  Rulings in related litigation against other RMBS trustees and further factual developments make it likely that NCUA will reduce the number of trusts at issue here by voluntarily dismissing its claims concerning certain trusts.  NCUA currently is reviewing the trusts at issue and will work with Deutsche Bank at the proper time to file a joint stipulation pursuant to Federal Rule of Civil Procedure 41(a).  Such a reduction of the total number of trusts at issue will not reduce the issues for the Court to decide on Deutsche Bank's motion to dismiss and thus does not warrant any adjournment.  Indeed, the allegations against Deutsche Bank on NCUA's claims alleging breach of contract, conflict of interest, and other legal theories are materially similar across all 97 trusts.

*****

In conclusion, the Court should hold oral argument and deny Deutsche Bank's pending motion to dismiss the breach-of-contract and conflict-of-interest claims on the merits, consistent with the overwhelming weight of case law in analogous cases.  Subsequently, once the Second Circuit rules on NCUA's derivative standing, if need be the Court should allow NCUA to effectuate appointment and substitution of a separate trustee as plaintiff for claims based on certificates held by the NGN Trusts; and at that same future time the Court should allow NCUA to amend its complaint ministerially by interlineation, as two other judges in this District have already permitted, to reflect NCUA's direct standing for certificates re-conveyed by NGN Trusts.

Respectfully submitted,

*/s/ Scott K. Attaway*
*Counsel for National Credit Union*
*Administration Board, as liquidating agent*

Attachment
cc: All counsel of record (*via ECF*)