# Exhibit 1.F

August 29, 2018

<u>VIA U.S. MAIL</u>

The Bank of New York Mellon, as Indenture Trustee
101 Barclay Street, 21 West
New York, NY 10286
Attn: Alison Kowalski-Mingione

Re:   *NCUA Board, et al. v. Deutsche Bank National Trust Co.*, Case No. 14-cv-8919
      **(S.D.N.Y.); (the "<u>NCUA Suit</u>")**

Dear Ms. Kowalski-Mingione

     The Bank of New York Mellon is the indenture trustee (the "<u>Indenture Trustee</u>") for each
of the NCUA Guaranteed Notes Trusts referenced on <u>Exhibit A</u> hereto (collectively, the "<u>NGN</u>
<u>Trusts</u>") pursuant to the Indentures and Master Indentures referenced in clauses 1 through 6
below (collectively, the "<u>NGN Indentures</u>").  The undersigned (the "<u>Guarantor</u>") is the Guarantor
in relation to each of the transactions contemplated by the NGN Indentures and the related Trust
Agreements and Guaranty Agreements referenced in <u>clauses 1</u> through <u>6</u> below (collectively, the
"<u>NGN Transactions</u>").   The undersigned provides this written request for cooperation and
indemnity (the "<u>Request and Indemnity Letter</u>") in its capacity as Guarantor in relation to the
NGN Transactions.

     Reference is made to the following:

1.    NCUA Guaranteed Notes Trust 2010-R1, and the associated (i) Indenture dated as
of October 27, 2010 (the "<u>NGN 2010-R1 Indenture</u>"), by and between the NCUA
2010-R1 Trust, as issuer, and the Indenture Trustee, (ii) Trust Agreement dated as
of October 27, 2010, by and among the NCUA Board in its Capacity as
Liquidating Agent, Wells Fargo Delaware Trust Company, N.A. ("<u>Wells Fargo</u>"),
in its capacity as Owner Trustee, and BNY Mellon, as Certificate Registrar and
the Certificate Paying Agent, and (iii) Guaranty Agreement dated as of October
27, 2010, by and among the Guarantor, the NCUA 2010-R1 Trust, as issuer, and
the Indenture Trustee, not in its individual capacity, but solely as indenture trustee
under the NGN 2010-R1 Indenture for the benefit of the Guarantor, the holders of
the Owner Trust Certificates, and the holders from time to time of the senior notes
issued by the issuer pursuant to the NGN 2010-R1 Indenture.

2.    NCUA Guaranteed Notes Trust 2010-R2, and the associated (i) Indenture dated as
of November 17, 2010 (the "<u>NGN 2010-R2 Indenture</u>"), by and between the
NCUA 2010-R2 Trust, as issuer, and the Indenture Trustee, (ii) Trust Agreement
dated as of November 17, 2010, by and among the NCUA Board in its Capacity
as Liquidating Agent, Wells Fargo, in its capacity as Owner Trustee, and BNY
Mellon, as Certificate Registrar and the Certificate Paying Agent, and (iii)
Guaranty Agreement dated as of November 17, 2010, by and among the

Guarantor, the NCUA 2010-R2 Trust, as issuer, and the Indenture Trustee, not in its individual capacity, but solely as indenture trustee under the NGN 2010-R2 Indenture for the benefit of the Guarantor, the holders of the Owner Trust Certificates, and the holders from time to time of the senior notes issued by the issuer pursuant to the NGN 2010-R2 Indenture.

3.    NCUA Guaranteed Notes Trust 2010-R3, and the associated (i) Indenture dated as of December 9, 2010 (the "NGN 2010-R3 Indenture"), by and between the NCUA 2010-R3 Trust, as issuer, and the Indenture Trustee, (ii) Trust Agreement dated as of December 9, 2010, by and among the NCUA Board in its Capacity as Liquidating Agent, Wells Fargo, in its capacity as Owner Trustee, and BNY Mellon, as Certificate Registrar and the Certificate Paying Agent, and (iii) Guaranty Agreement dated as of December 9, 2010, by and among the Guarantor, the NCUA 2010-R3 Trust, as issuer, and the Indenture Trustee, not in its individual capacity, but solely as indenture trustee under the NGN 2010-R3 Indenture for the benefit of the Guarantor, the holders of the Owner Trust Certificates, and the holders from time to time of the senior notes issued by the issuer pursuant to the NGN 2010-R3 Indenture.

4.    NCUA Guaranteed Notes Trust 2011-R1, and the associated (i) Indenture dated as of January 27, 2011 (the "NGN 2011-R1 Indenture"), by and between the NCUA 2011-R1 Trust, as issuer, and the Indenture Trustee, (ii) Trust Agreement dated as of January 27, 2011, by and among the NCUA Board in its Capacity as Liquidating Agent, Wells Fargo, in its capacity as Owner Trustee, and BNY Mellon, as Certificate Registrar and the Certificate Paying Agent, and (iii) Guaranty Agreement dated as of January 27, 2011, by and among the Guarantor, the NCUA 2011-R1 Trust, as issuer, and the Indenture Trustee, not in its individual capacity, but solely as indenture trustee under the NGN 2011-R1 Indenture for the benefit of the Guarantor, the holders of the Owner Trust Certificates, and the holders from time to time of the senior notes issued by the issuer pursuant to the NGN 2011-R1 Indenture.

5.    NCUA Guaranteed Notes Trust 2011-R2, and the associated (i) Indenture dated as of February 11, 2011 (the "NGN 2011-R2 Indenture"), by and between the NCUA 2011-R2 Trust, as issuer, and BNY Mellon, as Indenture Trustee, (ii) Trust Agreement dated as of February 11, 2011, by and among the NCUA Board in its Capacity as Liquidating Agent, Wells Fargo, in its capacity as Owner Trustee, and BNY Mellon, as Certificate Registrar and the Certificate Paying Agent, and (iii) Guaranty Agreement dated as of February 11, 2011, by and among the Guarantor, the NCUA 2011-R2 Trust, as issuer, and the Indenture Trustee, not in its individual capacity, but solely as indenture trustee under the NGN 2011-R2 Indenture for the benefit of the Guarantor, the holders of the Owner Trust Certificates, and the holders from time to time of the senior notes issued by the issuer pursuant to the NGN 2011-R2 Indenture.

6.     NCUA Guaranteed Notes Master Trust, and the associated (i) Master Indenture dated as of June 16, 2011 (the "NGN 2011-M1 Indenture"), by and between the NCUA 2011-M1 Trust, as issuer, and the Indenture Trustee, (ii) Indenture Supplement dated as of June 16, 2011, by and between the NCUA 2011-M1 Trust, as issuer, and BNY Mellon, (iii) Master Trust Agreement dated as of June 16, 2011, by and among the NCUA Board in its Capacity as Liquidating Agent, Wells Fargo, in its capacity as Owner Trustee, and BNY Mellon, as Certificate Registrar and the Certificate Paying Agent, and (iv) Guaranty Agreement dated as of June 16, 2011, by and among the Guarantor, the NCUA 2011-M1 Trust, as issuer, and the Indenture Trustee, not in its individual capacity, but solely as indenture trustee under the NGN 2011-M1 Master and Supplemental Indentures for the benefit of the Guarantor, the holders of the Owner Trust Certificates, and the holders from time to time of the senior notes issued by the issuer pursuant to the NGN 2011-M1 Master and Supplemental Indentures.

Reference is also hereby made to the Declaration of Loretta A. Lundberg, dated as of July 13, 2015 (the "Declaration"), with respect to the NGN Trusts. For all purposes under this Request and Indemnity Letter, the execution and delivery of the Declaration by BNYM shall be deemed to be in response to a request to do so hereunder.

Pursuant to the applicable provision in each of the NGN Indentures which provides that the Indenture Trustee is required to "cooperate in all respects with any reasonable request by the Guarantor for action to preserve or enforce the Guarantor's rights or interests under th[e NGN Indentures],"[1] and "take such other action necessary or advisable to . . . enforce any of the items of Collateral or other instruments or agreements included in the Trust Estate,"[2] the Guarantor hereby requests that the Indenture Trustee appoint Mr. Graeme Bush, pursuant to documentation acceptable to the Indenture Trustee in its reasonable sole discretion (such documentation, the "Instrument of Appointment") and subject to the applicable provisions in each of the NGN Indentures, as a separate trustee for each of the NGN Trusts to evaluate and, if such separate trustee determines that it is appropriate to do so, to jointly or separately pursue the claims set forth in the NCUA Suit (the "Claims"), or substantively similar claims, on behalf of the NGN Trusts. The Guarantor acknowledges and agrees that the appointment of a separate trustee as contemplated hereby is for the purpose of meeting legal requirements applicable to the Indenture Trustee in the performance of the Indenture Trustee's duties under the NGN Indentures.

The Guarantor covenants that any recoveries on claims brought on behalf of the NGN Trusts, less any court-approved fees, costs, and expenses (to the extent such deduction is permitted by the NGN Indentures or is ordered by a court of competent jurisdiction), will be remitted to the NGN Indenture Trustee for deposit into the NGN Trust accounts.

Nothing in this Request and Indemnity Letter requires the Indenture Trustee to take or omit any action which the Indenture Trustee reasonably believes in good faith may be unlawful or in breach of any agreement or applicable law.

---

[1] *See, e.g.*, NCUA Guaranteed Notes Trust 2011-R1 Indenture § 11.05

[2] *Id.* § 9.05(iv).

In order to implement the foregoing, the Guarantor agrees to: (i) indemnify and hold harmless the Indenture Trustee and each director, officer, employee, counsel, affiliate and agent of the Indenture Trustee (each solely in their respective capacities as such) (the Indenture Trustee and each such other person being an "Indemnified Person") on a current and ongoing basis from and against any and all losses, liabilities, claims, causes of action, litigation, reasonable hourly administrative fees charged by the Indenture Trustee, reasonable costs and expenses (including fees and disbursements of legal counsel, employees, agents and persons not regularly in the Trustee's employ, incurred in connection therewith) (collectively referred to herein as "Losses") paid, incurred or suffered by an Indemnified Person in any way, directly or indirectly, arising out of, or related to (A) the Declaration, (B) the taking, by the Indenture Trustee, of action (or forbearance from or omission of action) in accordance with or as provided in this Request and Indemnity Letter (the "Indemnity"), including, the enforcement of the Indemnity, or the Instrument of Appointment and/or (C) the taking, by the separate trustee appointed pursuant hereto, of action (or forbearance from or omission of action) in accordance with or as provided in the Instrument of Appointment or otherwise; and (ii) reimburse the Indenture Trustee for any Losses within 30 days of receipt of an invoice for any Losses.

Notwithstanding anything herein to the contrary, the Guarantor's obligations with respect to the Indemnity shall not be applicable to any Losses suffered or incurred by an Indemnified Person as a result of an Indemnified Person's failure to comply with the terms of this Request and Indemnity Letter or for negligence or willful misconduct as determined by a final judgment of a court that is binding upon such Indemnified Person.  For purposes of the Indemnity, the compliance by the Indenture Trustee or any other Indemnified Person with the express terms and conditions of this Request and Indemnity Letter, including the appointment of any person selected by the Guarantor (and approved by the Indenture Trustee) as a separate trustee under the NGN Indentures, and the execution and delivery of the Declaration, shall be deemed to not constitute negligence or willful misconduct.

In the event the Guarantor fails to pay any Indemnity within 30 days of a demand by the Indenture Trustee as provided above (an "Indemnity Default"), the Indenture Trustee may, in its sole discretion, discontinue acting in accordance with this Request and Indemnity Letter, it being understood that the Guarantor shall remain liable under the Indemnity in accordance with the terms hereof, whether incurred or suffered before or after such Indemnity Default.

The Indemnity authorized herein shall be in addition to any other remedies, relief or indemnification available to the Indemnified Persons, including, without limitation, indemnification under the NGN Indentures or other related transaction documents. The rights and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the subsequent exercise of such right or remedy.

The Guarantor hereby (a) represents and warrants that this Request and Indemnity Letter has been duly authorized, executed and delivered on its behalf and constitutes its legal, valid and binding obligation enforceable in accordance with the terms hereof, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity, and (b) waives any defenses based upon the

4

invalidity of such representations and warranties.

This Request and Indemnity Letter and the representations and warranties contained herein shall be binding upon the Indenture Trustee, the Guarantor and their successors and assigns. The Indemnity shall be binding on any successors to the Guarantor. For the avoidance of doubt, unless consented to in writing by the Indenture Trustee, no sale, transfer, conveyance, assignment, exchange or termination of any of the Guarantor's rights, interests or obligations (including its obligations as guarantor) under any NGN Indenture will release the undersigned Guarantor from its obligations hereunder.

The parties agree that if the separate trustee elects to pursue the Claims on behalf of the NGN Trusts, the separate trustee will engage a law firm to act as special litigation counsel to the separate trustee which law firm must be acceptable to each of the Indenture Trustee and the Guarantor (it being understood that the Guarantor may propose to the separate trustee law firms for this purpose and the Indenture Trustee's consent will not be unreasonably withheld). The parties further agree that the Guarantor and the NCUA Board as liquidating agent, as applicable, shall have the right to direct the time, place, and manner of any litigation instigated or continued by the separate trustee; provided, however, that no Claim brought by the separate trustee may be settled or dismissed without the prior written consent of the Indenture Trustee if such settlement or dismissal contains a stipulation to, confession of judgment with respect to, or admission or acknowledgement of, any liability or wrongdoing on the part of the Indenture Trustee or any other Indemnified Person.

Any provision of this Request and Indemnity Letter may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by the parties hereto, or in the case of a waiver, by the party against whom the waiver is to be effective. No termination of this Request and Indemnity Letter or revocation of any of the terms hereunder shall be given effect without the prior written consent of the parties hereto.

The Indenture Trustee shall be permitted to notify the Noteholders under the NGN Trusts of this Request and Indemnity Letter.

The terms of this Request and Indemnity Letter will be governed by and construed in accordance with the laws of the State of New York, without reference to its choice of law rules. The effective date of this Request and Indemnity Letter shall be the date hereof. The signature pages to this Request and Indemnity Letter may be executed by the parties hereto, as the case may be, in separate counterparts and the Indenture Trustee is hereby instructed to accept the signature pages as such counterparts. Facsimile signatures and signature pages provided in the form of a "pdf" or similar imaged document transmitted by electronic mail shall be deemed original signatures for all purposes hereunder.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the undersigned have executed this Request and Indemnity Letter as of the date written below.

Dated as dated first above written.

**NATIONAL CREDIT UNION ADMINISTRATION, as Guarantor**

By: _____

Larry Fazio, Authorized Representative

Acknowledged and agreed to by:

**THE BANK OF NEW YORK MELLON, in its capacity as the Indenture Trustee for the NGN Trusts listed on Exhibit A**

By: _____

    Name:  Loretta A. Lundberg

    Title:   Managing Director

IN WITNESS WHEREOF, the undersigned have executed this Request and Indemnity Letter as of the date written below.

Dated as dated first above written.

**NATIONAL CREDIT UNION ADMINISTRATION, as Guarantor**


By:_____
        Larry Fazio, Authorized Representative



Acknowledged and agreed to by:

**THE BANK OF NEW YORK MELLON, in its capacity as the Indenture Trustee for the NGN Trusts listed on Exhibit A**

By: *[signature]*
        Name:  Alison Kowalski-Mingione
        Title:    Vice President

## Exhibit A

## NGN Trusts

NCUA Guaranteed Notes Trust 2010-R1

NCUA Guaranteed Notes Trust 2010-R2

NCUA Guaranteed Notes Trust 2010-R3

NCUA Guaranteed Notes Trust 2011-R1

NCUA Guaranteed Notes Trust 2011-R2

NCUA Guaranteed Notes Master Trust

## INSTRUMENT OF APPOINTMENT AND ACCEPTANCE

(NCUA Board vs. Deutsche Bank National Trust Co.)

This INSTRUMENT OF APPOINTMENT AND ACCEPTANCE, dated as of August 29, 2018 (the "Agreement"), is between THE BANK OF NEW YORK MELLON ("BNYM"), as indenture trustee (the "Indenture Trustee"), Mr. Graeme Bush ("Mr. Bush"), as separate trustee (the "Separate Trustee"), and the National Credit Union Administration Board in its capacity as liquidating agent for each of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union (collectively in such capacity, "NCUA").

### Witnesseth:

WHEREAS, the Indenture Trustee is a party to the Indentures listed on Schedule I attached hereto which Schedule I may be supplemented, amended or modified from time to time in accordance with Section 1.9 hereunder (each an "Indenture" and collectively the "Indentures");

WHEREAS, the Indenture Trustee is a party to the Indentures not in its individual capacity, but solely as Indenture Trustee of the trust party to each Indenture;

WHEREAS, securities were issued to certain NGN Trust[1] beneficiaries (the "Holders," including the Certificateholders and Noteholders, as each term is defined in the Indentures);

WHEREAS, the Underlying Securities (as defined in the Indentures) are part of a lawsuit styled as *NCUA Board, et al. vs. Deutsche Bank National Trust Co.*, Case No. 14-cv-8919 (S.D.N.Y.) (the "Action") that was filed by the NCUA derivatively, in part, on behalf of the NGN Trusts;

WHEREAS, the NCUA desires to supplement and/or amend the operative complaint filed in connection with the Action (the "Complaint") to add the Separate Trustee as a substituted or additional plaintiff, as the court may require, to assert any claims on behalf of the Indenture Trustee or the NGN Trusts (the "Separate Trustee Claims");

WHEREAS, the Indenture Trustee agrees to appoint the Separate Trustee pursuant to Section 5.13 of the Indentures for purposes of exercising any and all of the Indenture Trustee's powers, rights and authorities and/or fulfilling any and all of the Indenture Trustee's duties for the benefit of the Holders under each applicable Indenture with respect to the Separate Trustee Claims;

---

[1] The NGN Trusts are: NCUA Guaranteed Notes Trust 2010-R1; NCUA Guaranteed Notes Trust 2010-R2; NCUA Guaranteed Notes Trust 2010-R3; NCUA Guaranteed Notes Trust 2011-R1; NCUA Guaranteed Notes Trust 2011-R2; and NCUA Guaranteed Notes Master Trust.

WHEREAS, the Separate Trustee agrees to accept such appointment with respect to each applicable Indenture as of the Effective Date (as defined below) applicable to such Indenture upon and subject to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the covenants contained herein and other consideration, the receipt and sufficiency of which is hereby acknowledged, the Indenture Trustee and the Separate Trustee have entered into, executed and delivered this Agreement for the benefit of the Holders under each applicable Indenture and for the uses and purposes hereinafter expressed as follows:

## ARTICLE I

## INDENTURE TRUSTEE & SEPARATE TRUSTEE

Section 1.1    Appointment and Purpose of the Separate Trustee.  Upon the Effective Date, the Indenture Trustee appoints the Separate Trustee pursuant to Section 5.13 of the Indentures and shall transfer to the Separate Trustee, and the Separate Trustee shall assume any and all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee, including pursuit of the Separate Trustee Claims as set forth on Schedule II to this Agreement (the "Separate Trustee Powers") in connection with the Separate Trustee Claims.  From and after the Effective Date, the Separate Trustee shall have full authority to exercise and perform the Separate Trustee Powers for the benefit of the Holders under each Indenture pursuant to the terms and conditions set forth herein.

Section 1.2    Effective Date.  The effective date for the appointment of the Separate Trustee hereunder (the "Effective Date") shall be August 29, 2018.

Section 1.3    Limitation of Liability of the Indenture Trustee and the Separate Trustee. Neither the Indenture Trustee nor the Separate Trustee shall be personally liable by reason of any act or omission of the other or another trustee under each applicable Indenture.

Section 1.4    Rights and Protections of the Separate Trustee.  Pursuant to the provisions under each applicable Indenture, the Separate Trustee shall be afforded all of the same protections, immunities and indemnities, and all of the same powers, rights, authority, and benefits relating to the Separate Trustee Powers, as afforded the Indenture Trustee and as afforded a separate trustee under each applicable Indenture.  Notwithstanding anything contained herein to the contrary, the Separate Trustee shall have no liability or responsibility under each applicable Indenture or any related agreement or transaction, for any period prior to the Effective Date or for any act or omission of the Indenture Trustee under or in connection with each applicable Indenture and any related agreement or transaction.

Section 1.5    Delivery of Documents.  The Indenture Trustee shall deliver to the Separate Trustee all documents and other information reasonably requested by the Separate Trustee that are in the possession of the Indenture Trustee in order for the Separate Trustee to exercise and perform the Separate Trustee Powers.

Section 1.6    Consent to Disclosure.  Each of the Separate Trustee and the Indenture Trustee acknowledges and agrees that the Indenture Trustee or the Separate Trustee may disclose

2

the Separate Trustee's role as separate trustee to exercise and perform the Separate Trustee Powers under this Agreement to regulators, clients and such other interested parties (including, without limitation, the press) as the Indenture Trustee or the Separate Trustee in its or his sole determination deems appropriate.

Section 1.7    Reports, Records and Security Policies. The Separate Trustee shall maintain and provide to the Indenture Trustee upon written request copies (or summaries thereof) of accurate records, reports, documents and accounts of the Separate Trustee Powers exercised or performed by the Separate Trustee. The Separate Trustee will retain all information obtained or created in the course of performance hereunder in accordance with the longer of the Indenture Trustee's records retention guidelines in existence from time to time (currently seven (7) years) and timely communicated to the Separate Trustee (including its provisions regarding the timely destruction of such records), or as is required by applicable federal and state law (including the Sarbanes-Oxley Act), unless the Indenture Trustee has timely requested, in writing, that the Separate Trustee hold any such records for a different period due to litigation obligations or concerns. Such seven (7) year period shall commence upon the termination or resignation of Separate Trustee in accordance with Section 5.12 hereunder.

Notwithstanding the foregoing, upon termination of this Agreement, the Separate Trustee will not be required to maintain such records for longer than a period of seven (7) years unless required by applicable federal and state law and shall notify the Indenture Trustee in writing prior to the destruction of such records before the end of such seven (7) year period. Before the end of the applicable period, upon written request to the Separate Trustee, the Indenture Trustee shall have the opportunity, to secure copies of such records before the Separate Trustee destroys such records. The parties agree that any such records maintained and produced by the Separate Trustee under this Agreement will be available, upon prior written notice during reasonable business hours, for examination and audit by governmental agencies having jurisdiction over the Indenture Trustee's and the Separate Trustee's respective business, including all United States government agencies having regulatory jurisdiction over the Indenture Trustee or the Separate Trustee. The Separate Trustee will notify the Indenture Trustee as soon as possible of any formal request by an authorized governmental agency to examine the records of the Separate Trustee Powers on behalf of the Indenture Trustee that are maintained by the Separate Trustee, if the Separate Trustee shall determine that he is permitted to make such a disclosure to the Indenture Trustee under applicable law or regulation. The Indenture Trustee agrees that the Separate Trustee is authorized to provide all such described records, upon advance written notice to the Indenture Trustee if permissible and reasonably practicable, when requested or required to do so by an authorized governmental agency.

Section 1.8    Further Assurances. Each of the Separate Trustee and the Indenture Trustee agrees to cooperate with each other in respect of fulfilling their respective duties under this Agreement, any applicable Indenture or any applicable federal and state laws and regulations.

Section 1.9    Modification of Schedule I. From time to time, the Indenture Trustee and the Separate Trustee may agree in writing to add a supplement to Schedule I to this Agreement (which shall be incorporated into this Agreement) supplementing, amending or modifying Schedule I for purposes of adding any Indenture to or removing any Indenture from Schedule I.

Section 1.10   No Implied Duties for Separate Trustee.  Except as herein expressly provided, no duties, responsibilities or liabilities are assumed by the Separate Trustee by reason of this Agreement other than as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Separate Trustee; and this Agreement is executed and accepted by the Separate Trustee subject to all the terms and conditions set forth in this Agreement.

Section 1.11   No Implied Duties for the Indenture Trustee.  Except as herein expressly provided, no duties, responsibilities or liabilities are assumed by the Indenture Trustee by reason of this Agreement other than as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Indenture Trustee; and this Agreement is executed and accepted by the Indenture Trustee subject to all the terms and conditions set forth in this Agreement.

Section 1.12   Engagement of Counsel.  In the event that the Separate Trustee appoints legal counsel in order to exercise or perform the Separate Trustee Powers, the Separate Trustee shall execute an engagement letter for each such legal counsel.

Section 1.13   Litigation.  In the event that the Separate Trustee pursues any claims or litigation in connection with the exercise or performance of the Separate Trustee Powers, the Separate Trustee shall pursue such claims or litigation in the name of the Separate Trustee pursuant to the appointment by the Indenture Trustee, except as may otherwise be required by law or applicable court order.

## ARTICLE II

## CONCERNING THE SEPARATE TRUSTEE AND THE INDENTURE TRUSTEE

Section 2.1   Exculpatory Provisions.

(a)   The Separate Trustee shall not be required to ascertain or inquire as to the performance by the Indenture Trustee of any of the covenants or agreements contained herein or in any Indenture or related transaction document and shall be under no obligation to monitor, supervise or perform the functions of the Indenture Trustee, and shall be entitled to assume that the Indenture Trustee is properly performing its functions and obligations under this Agreement, any Indenture or related transaction documents.

(b)   The Indenture Trustee shall not be required to ascertain or inquire as to the performance by the Separate Trustee of any of the covenants or agreements contained herein or in any Indenture or related transaction document and shall be under no obligation to monitor, supervise or perform the functions of the Separate Trustee, and shall be entitled to assume that the Separate Trustee is properly performing its functions and obligations under this Agreement, any Indenture or related transaction documents.

(c)   The Separate Trustee shall not be liable to the Indenture Trustee, or any of its officers, directors employees or affiliates, under or in connection with this Agreement for punitive, special, indirect or consequential losses or damages, even if the Separate Trustee has

4

been advised of the possibility thereof and regardless of the form of action in which such damages are sought.

(d)     The Indenture Trustee shall not be liable to the Separate Trustee, or any of its officers, directors, employees, or affiliates, under or in connection with this Agreement for punitive, special, indirect or consequential losses or damages, even if the Indenture Trustee has been advised of the possibility thereof and regardless of the form of action in which such damages are sought.

(e)     At the expense of the applicable trust to the extent reimbursable under the terms of the applicable Indenture, the Separate Trustee shall have the right at any time to seek instructions from a court concerning the administration of the Separate Trustee Powers and the Separate Trustee's rights, duties or obligations under the relevant Indenture.

## ARTICLE III

## SEPARATE TRUSTEE'S FEES, EXPENSES & INDEMNIFICATION

Section 3.1     Fees & Expenses.  The Separate Trustee shall be paid fees and other amounts (the "Separate Trustee Fees") as set forth in a separate fee schedule agreed to between the Separate Trustee and NCUA.  After the Effective Date, the Separate Trustee shall be entitled to reimbursement by NCUA of all commercially reasonable fees and expenses incurred by the Separate Trustee under or in connection with this Agreement or the Indentures, including, without limitation, in connection with the Separate Trustee Powers.  Such fees and expenses shall be reimbursed upon receipt by NCUA of an invoice with reasonably detailed information as to the nature of the fees and expenses and the identity of the applicable Indenture. If, with respect to the administration of any particular Indenture, it is determined by a court in an order that is final and no longer subject to appeal that the Separate Trustee was negligent in the exercise or performance of the Separate Trustee Powers or acted in bad faith or with willful misconduct, the Separate Trustee will reimburse NCUA for any and all fees and expenses paid by NCUA to the Separate Trustee pursuant to this Section 3.1 to the extent that such fees and expenses relate to the Separate Trustee's negligence, bad faith or willful misconduct.  In the case of negligence, the Separate Trustee liability under this Section 3.1 is limited to the reimbursement of all fees and expenses paid by NCUA.

Section 3.2     Transaction Indemnification.  Pursuant to the provisions under each applicable Indenture, the Separate Trustee shall be afforded the same protections, limitations on liability, and indemnities afforded to the Indenture Trustee under the applicable Indenture. Additionally, in the event that the Separate Trustee enters into a direction and indemnity letter with the requisite directing Holders in accordance with the applicable Indenture, the Separate Trustee shall be afforded the protection of any indemnification contained in such direction and indemnity letter.  If it is determined by a court in an order that is final and no longer subject to appeal that the Separate Trustee was negligent in the exercise or performance of the Separate Trustee Powers or acted in bad faith or with willful misconduct, the Separate Trustee will reimburse the related trust for any fees and expenses paid by the trust to the Separate Trustee pursuant to this Section 3.2 to the extent that such fees and expenses relate to the Separate Trustee's negligence, bad faith or willful misconduct.

Section 3.3    NCUA Indemnification of Separate Trustee.  In addition to the rights, benefits, protections, limitations on liability and indemnifications afforded to the Separate Trustee in Section 3.2 hereunder with respect to each applicable Indenture, NCUA shall indemnify and hold harmless the Separate Trustee and his affiliates, including Zuckerman Spaeder LLP and its professionals, employees and agents (the "Indemnified Parties") from and against any and all claims, liabilities, actions, suits, costs (including the reasonable fees and expenses of counsel and expenses incurred by the Separate Trustee in enforcing this Section 3.3), damages or proceedings arising out of or incurred by the Indemnified Parties in connection with (i) the Indenture Trustee's performance (or non-performance) under the Indentures, except with respect to the Separate Trustee Powers from and after the Effective Date, (ii) the breach, as determined by a court in an order that is final and no longer subject to appeal, by the Indenture Trustee of any of its representations, warranties or covenants hereunder, provided that any such breach was not directly caused by a breach by the Separate Trustee of its representations, warranties or covenants, or (iii) any litigation pending or hereafter brought by any third person relating to the transactions contemplated hereunder, including, without limitation, the Separate Trustee Powers; except any claim, liability, action, suit, cost, damage or proceeding arising out of or incurred by the Indemnified Party due to its negligence, bad faith or willful misconduct as determined by a court in an order that is final and no longer subject to appeal.  The indemnification obligations of NCUA under this Section 3.3 shall not apply to any obligation or action taken or not taken by or on behalf of the Separate Trustee in accordance with the terms of any applicable direction and indemnification agreement between Separate Trustee and directing Holders.  If, with respect to the administration of any particular Indenture, it is determined by a court in an order that is final and no longer subject to appeal that the Separate Trustee was negligent in the exercise or performance of the Separate Trustee Powers or acted in bad faith or with willful misconduct, the Separate Trustee will reimburse NCUA for any and all fees and expenses paid by NCUA to the Separate Trustee pursuant to this Section 3.3 to the extent that such fees and expenses relate to the Separate Trustee's negligence, bad faith or willful misconduct.  In the case of negligence, the Separate Trustee liability under this Section 3.3 is limited to the reimbursement of all fees and expenses paid by NCUA.

Section 3.4    Liability of the Indenture Trustee.  In no event shall any provision of this Agreement be construed as requiring the Indenture Trustee to (a) pay any fee or reimburse any expense of the Separate Trustee or (b) indemnify the Separate Trustee, NCUA or any other person for any loss, liability or expense.

Section 3.5    Survival.  The provisions of this Section 3 shall survive termination of this Agreement and the Indentures.

## ARTICLE IV

## NOTICES

Section 4.1    Indenture Trustee's Address.  The Indenture Trustee hereby designates its notice address as The Bank of New York Mellon, 101 Barclays Street, 21 West, New York, NY 10286; Attention: Default Administration Group, or at such other address as the Indenture Trustee may designate from time to time.

Section 4.2    Separate Trustee's Address. The Separate Trustee hereby designates its notice address as Mr. Graeme Bush, c/o Zuckerman Spaeder LLP, 1800 M St. NW #1000, Washington, D.C. 20036, Phone: (202)778-1801, Fax: (202)822-8106 and Email: gbush@zuckerman.com.

Section 4.3    NCUA's Address. NCUA hereby designates its notice address as the Associate General Counsel for Enforcement and Litigation, National Credit Union Administration, 1775 Duke St., Alexandria, VA 22314, Phone: (703) 518-6540, Fax (703) 518-6569 and Email: aburch@ncua.gov.

Section 4.4    Communications. Any notice, instruction, statement, or other communication required or contemplated by this Agreement shall be in writing or by email. The giving of any written notice pursuant to this Agreement shall be deemed to have occurred on the date on which such communication is received by the party to whom such communication is sent. In the case of an email communication, such notice shall have deemed to have been given on the date on which such email is acknowledged, whether by phone, fax or response email, by the intended recipient. All such communications shall be addressed to the Separate Trustee or the Indenture Trustee at the addresses provided by the parties for the purposes of such notice; provided that any party may, by notice, designate a different address for purposes of such notice.

## ARTICLE V

## MISCELLANEOUS

Section 5.1    Confidentiality. Except as set forth below, all information of whatever nature furnished by any party to another hereunder, including its agents and employees, shall be treated as confidential and shall not be disclosed to third parties except as required by law or as requested by regulatory authority or upon consent of the Indenture Trustee or the Separate Trustee (as the case may be), provided however, this Agreement may be disclosed to the court as necessary to further the Action and assert the Separate Trustee Claims. Each party will safeguard the confidential information of the other party using the same degree of care as it uses to safeguard its own confidential information, but in no case less than a reasonable degree of care. Each party will limit access to the confidential information of the other party to those employees and agents with a specific need to know for the purpose of performing or receiving services under this Agreement, as applicable. The disclosure of confidential information by one party to the other does not grant any ownership of such information to the receiving party; ownership in the information disclosed and any modifications to that information is retained at all times by the disclosing party.

Confidential information will not require protection under this Section 5.1 to the extent that it is or becomes publicly available other than through any act or omission of the receiving party in breach of this Agreement or the disclosing party has authorized such disclosure.

Except as permitted in this Agreement or when disclosure is compelled pursuant to applicable law, valid court order, legal process or regulation or at the request of a regulatory authority and except as otherwise set forth this Agreement or under any Indenture, neither the Separate Trustee nor the Indenture Trustee nor NCUA will disclose the existence of this

Agreement or the business relationship between the Indenture Trustee, the Separate Trustee and/or NCUA to any outside third party without the other parties' prior written approval. This restriction includes, but is not limited to, using the Indenture Trustee's, the Separate Trustee's or NCUA's name, likeness or logo ("Identity"). By way of example and not limitation, the Separate Trustee or the Indenture Trustee will not use the other party's Identity, directly or indirectly, in conjunction with any other of their respective clients, any client list, advertisements, news releases or releases to any professional or trade publications without the aforementioned approval.

Subject to the ongoing obligations of each of the Indenture Trustee, the Separate Trustee and NCUA under applicable law, in the event of any actual or suspected security breach that any of the Indenture Trustee, the Separate Trustee or NCUA either suffers or learns of that compromises or could compromise the other party's confidential information (e.g., physical trespass on a secure facility, computing systems intrusion/hacking, etc. that directly relates to or impacts the other party's confidential information) (each, a "Security Breach"), the Indenture Trustee, the Separate Trustee or NCUA, as applicable, will immediately notify the other party of such Security Breach.

Section 5.2    Counterparts. This Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument. This Agreement may be executed by exchange of electronic copies of signature pages by the parties, including by facsimile and PDF copies by e-mail, each of which shall be deemed to be an original signature page.

Section 5.3    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 5.4    Representations and Warranties of the Separate Trustee. The Separate Trustee makes the following representations and warranties to the Indenture Trustee and NCUA as of the Effective Date:

(a)    Mr. Bush is a natural person living in the District of Columbia, is legally competent and has the capacity to execute and deliver this Agreement and to consummate the transaction contemplated hereby.

(b)    Mr. Bush is a lawyer in good standing in the District of Columbia, the State of Maryland and the State of New York.

(c)    The Separate Trustee has full power, authority and legal right to execute, deliver and perform the Separate Trustee's obligations under this Agreement.

(d)    The execution, delivery and performance by the Separate Trustee of this Agreement shall not violate any provision of any federal law or any order, writ, judgment or decree of any court, arbitrator or governmental authority applicable to the Separate Trustee or any of the Separate Trustee's assets.

(e)    The execution, delivery and performance by the Separate Trustee of this Agreement does not require the authorization, consent or approval of, the giving of notice to, the

filing or registration with, or the taking of any other action in respect of, any governmental authority or agency regulating the Separate Trustee other than that which has already been obtained.

(f)     This Agreement has been duly executed and delivered by the Separate Trustee and constitutes the legal, valid and binding agreement of the Separate Trustee, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting the enforcement of creditors' rights in general and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law.

(g)     There are no proceedings pending or threatened against the Separate Trustee before any federal, state or other governmental agency, authority, administrator or regulatory body, arbitrator, court or other tribunal, foreign or domestic, that could reasonably be expected to have a material adverse effect on any action taken or to be taken by the Separate Trustee under this Agreement.

Section 5.5     Representations and Warranties of the Indenture Trustee.  The Indenture Trustee makes the following representations and warranties to the Separate Trustee and NCUA as of the Effective Date:

(a)     It is duly organized, validly existing and in good standing under applicable law, and is legally competent and has the capacity to execute and deliver this Agreement and to consummate the transaction contemplated hereby.

(b)     The Indenture Trustee has full power, authority and legal right to execute, deliver and perform the Indenture Trustee's obligations under this Agreement.

(c)     The execution, delivery and performance by the Indenture Trustee of this Agreement shall not violate any provision of any federal law or any order, writ, judgment or decree of any court, arbitrator or governmental authority applicable to the Indenture Trustee or any of the Indenture Trustee's assets.

(d)     The execution, delivery and performance by the Indenture Trustee of this Agreement does not require the authorization, consent or approval of, the giving of notice to, the filing or registration with, or the taking of any other action in respect of, any governmental authority or agency regulating the Indenture Trustee other than that which has already been obtained.

(e)     This Agreement has been duly executed and delivered by the Indenture Trustee and constitutes the legal, valid and binding agreement of the Indenture Trustee, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting the enforcement of creditors' rights in general and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law.

(f)     There are no proceedings pending or threatened against the Indenture Trustee before any federal, state or other governmental agency, authority, administrator or regulatory

9

body, arbitrator, court or other tribunal, foreign or domestic, that could reasonably be expected to have a material adverse effect on any action taken or to be taken by the Indenture Trustee under this Agreement.

Section 5.6    Representations and Warranties of NCUA. NCUA makes the following representations and warranties to the Indenture Trustee and the Separate Trustee as of the Effective Date:

(a)    It is duly organized, validly existing and in good standing under the laws of the United States.

(b)    It has full power, authority and legal right to execute, deliver and perform its obligations under this Agreement, and has taken all necessary action to authorize the execution, delivery and performance by it of this Agreement.

(c)    The execution, delivery and performance by it of this Agreement (i) shall not violate any provision of any federal law governing it or any order, writ, judgment or decree of any court, arbitrator or governmental authority applicable to it or any of its assets, (ii) does not violate any provision of the organizational documents of it or any of its affiliates and (iii) does not create a conflict with its business and operations or the business and operations of any affiliate.

(d)    The execution, delivery and performance by NCUA of this Agreement does not require the authorization, consent or approval of, the giving of notice to, the filing or registration with, or the taking of any other action in respect of, any governmental authority or agency regulating the activities of NCUA other than that which has already been obtained.

(e)    This Agreement has been duly executed and delivered by NCUA and constitutes the legal, valid and binding agreement of NCUA, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or other similar laws affecting the enforcement of creditors' rights in general and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law.

(f)    There are no proceedings pending or threatened against NCUA or any of its affiliates before any federal, state or other governmental agency, authority, administrator or regulatory body, arbitrator, court or other tribunal, foreign or domestic, that could reasonably be expected to have a material adverse effect on any action taken or to be taken by NCUA under this Agreement.

(g)    It is not engaged in investment banking or underwriting services.

(h)    Mr. Bush (i) is qualified to act as Separate Trustee, and (ii) possesses the qualifications and experience necessary to exercise and perform the Separate Trustee Powers.

Section 5.7    Headings. Section headings used in this Agreement are for convenience of reference only and are not a part of this Agreement for any other purpose.

Section 5.8    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to its choice of law rules.

Section 5.9    Service of Process.  Each party waives personal service of any summons, complaint or other process and agrees that service thereof may be made by certified or registered mail directed to such person at such person's address for purposes of notices hereunder.

Section 5.10    Severability.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

Section 5.11    Waiver of Jury Trial.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 5.12    Entire Agreement and Amendments.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior communications, agreements or understandings, written or oral, with respect thereto.  This Agreement may only be supplemented, amended or modified by a writing duly executed by all parties.

Section 5.13    Termination or Resignation of the Separate Trustee.  The Indenture Trustee, with the written consent or at the written direction of the Guarantor or NCUA, as applicable, (which such consent or direction, as applicable, shall not be unreasonably withheld) may terminate the Separate Trustee's obligation to exercise and perform the Separate Trustee Powers with respect to an Indenture and such Indenture shall be removed from Schedule I (or any supplement thereto), upon the occurrence of any of the following: (a) all Separate Trustee Claims under such Indenture are satisfied or otherwise settled, (b) the Separate Trustee no longer has any Separate Trustee Powers with respect to such Indenture, (c) the Separate Trustee no longer has the requisite trust powers to exercise and perform the Separate Trustee Powers with respect to such Indenture, (d) the Separate Trustee is in breach of any representation, warranty or covenant hereunder, (e) the Indenture is satisfied and discharged in accordance with such Indenture, or (f) the Separate Trustee and the Indenture Trustee otherwise mutually agree to the termination of the Separate Trustee's obligation to exercise and perform the Separate Trustee Powers with respect to such Indenture.  The Separate Trustee has the right to resign with respect to an Indenture upon prior written notice to the Indenture Trustee and NCUA and upon appointment by the Separate Trustee of a successor separate trustee to exercise and perform the Separate Trustee Powers acceptable to the Indenture Trustee and NCUA and in accordance with the terms of the Indentures.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers, thereunto duly authorized, as of the date first above written.

THE BANK OF NEW YORK MELLON,
as Indenture Trustee under the Indentures listed on
Schedule I

By: _____

      Name:  Alison Kowalski-Mingione
      Title:    Vice President

MR. GRAEME BUSH, as Separate Trustee

By: _____

      Name:  Graeme Bush
      Title:    Separate Trustee

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for U.S. Central Federal Credit Union

By:_____

      Name:    Larry Fazio
      Title:     Authorized Representative

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Western Corporate Federal Credit Union

By:_____

      Name:    Larry Fazio
      Title:     Authorized Representative

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Members United Corporate Federal
Credit Union

By:_____

      Name:    Larry Fazio
      Title:     Authorized Representative

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers, thereunto duly authorized, as of the date first above written.

THE BANK OF NEW YORK MELLON,
as Indenture Trustee under the Indentures listed on
Schedule I

By: _____
    Name:  Loretta A. Lundberg
    Title:   Managing Director

MR. GRAEME BUSH, as Separate Trustee

By: _____
    Name:  Graeme Bush
    Title:   Separate Trustee

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for U.S. Central Federal Credit Union

By:_____
    Name:   Larry Fazio
    Title:    Authorized Representative

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Western Corporate Federal Credit Union

By:_____
    Name:   Larry Fazio
    Title:    Authorized Representative

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Members United Corporate Federal
Credit Union

By:_____
    Name:   Larry Fazio
    Title:    Authorized Representative

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers, thereunto duly authorized, as of the date first above written.

THE BANK OF NEW YORK MELLON, as Indenture Trustee under the Indentures listed on Schedule I

By: _____

    Name:  Loretta A. Lundberg
    Title:   Managing Director

MR. GRAEME BUSH, as Separate Trustee

By: _____

    Name:  Graeme Bush
    Title:   Separate Trustee

NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent for U.S. Central Federal Credit Union

By: _____

    Name:  Larry Fazio
    Title:   Authorized Representative

NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent for Western Corporate Federal Credit Union

By: _____

    Name:  Larry Fazio
    Title:   Authorized Representative

NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent for Members United Corporate Federal Credit Union

By: _____

    Name:  Larry Fazio
    Title:   Authorized Representative

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Southwest Corporate Federal Credit
Union

By:_____

    Name:    Larry Fazio
    Title:    Authorized Representative


NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as Liquidating
Agent for Constitution Corporate Federal Credit
Union

By:_____

    Name:    Larry Fazio
    Title:    Authorized Representative

## Schedule I

### Indentures

Indenture by and between NCUA Guaranteed Notes Trust 2010-R1 and the Indenture Trustee, dated as of October 27, 2010

Indenture by and between NCUA Guaranteed Notes Trust 2010-R2 and the Indenture Trustee, dated as of November 17, 2010

Indenture by and between NCUA Guaranteed Notes Trust 2010-R3 and the Indenture Trustee, dated as of December 9, 2010

Indenture by and between NCUA Guaranteed Notes Trust 2011-R1 and the Indenture Trustee, dated as of January 27, 2011

Indenture by and between NCUA Guaranteed Notes Trust 2011-R2 and the Indenture Trustee, dated as of February 11, 2011

Indenture Supplement by and between NCUA Guaranteed Notes Master Trust and the Indenture Trustee, dated June 16, 2011

## Schedule II

### Separate Trustee Powers, Rights, and Authorities

Upon the Effective Date, the Separate Trustee shall, pursuant to his appointment as trustee for the NGN Trusts under Section 5.13 of the Indentures and for the benefit of the Holders under each applicable Indenture, have full legal title, power, right and authority to:

(i)     retain special legal counsel for purpose of reviewing and analyzing the Separate Trustee Claims;

(ii)    join the operative Complaint as an additional plaintiff to assert some or all of the Separate Trustee Claims (the "Amended Complaint") on behalf of the NGN Trusts and/or, if required by the court, on behalf of the Indenture Trustee;

(iii)   move to substitute himself as a plaintiff or otherwise intervene in the Action to protect the interests of the NGN Trusts;

(iv)    file a new action asserting the Separate Trustee Claims, if necessary;

(v)     engage in discovery and pursue requests for mortgage loan files and related files/information;

(vi)    continue litigation through trial and appeal in respect of the Amended Complaint, including the enforcement of any orders or judgments obtained in connection therewith;

(vii)   engage in settlement discussions, and approve settlement agreements resolving any or all of the Separate Trustee Claims; provided, that any recoveries obtained on claims (less any court-approved fees, costs and expenses (to the extent such deduction is permitted under the Indentures or is ordered by a court of competent jurisdiction)) will be remitted to the Indenture Trustee for deposit into the Note Account(s) (or other account(s) specified by the Indenture Trustee) under the related Indenture(s); and

(viii)  take such additional actions as are necessary and appropriate to give effect to (i) through (vii) above.

In each case above, the Separate Trustee shall have full power, right and authority to take such additional actions and execute and deliver such additional agreements and documents as he may deem reasonably necessary or appropriate to exercise and perform the Separate Trustee Powers, including without limitations, entering into any non-disclosure agreements or direction and indemnity letters in accordance with the applicable Indenture.  Nothing herein shall create or expand the scope of any trustee duties under the relevant Indenture.

The Separate Trustee shall act in his own discretion, or at the direction of Holders or the Guarantor and NCUA, as applicable, pursuant to the terms of the Indentures, in discharging the Separate Trustee Powers.