UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
NATIONAL CREDIT UNION                         :
ADMINISTRATION BOARD, et al.,                 :
                                              :
                 Plaintiff,                   :
                                              :
          -against-                           :          No. 14-cv-8919-SHS
                                              :
DEUTSCHE BANK NATIONAL TRUST                  :
COMPANY,                                      :
                                              :
                 Defendant.                   :
                                              :
------------------------------------------------------------ X
```

**MEMORANDUM OF LAW OF DEFENDANT DEUTSCHE
BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN
OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
A SECOND AMENDED COMPLAINT AND ALSO SUBSTITUTE
NEW PARTIES AS PLAINTIFFS, AND MOTION TO DISMISS
<u>NCUA'S CLAIMS ON THE MERITS (AS FUTILE OR OTHERWISE)</u>**

Bernard J. Garbutt III, Esq.
Jawad B. Muaddi, Esq.
Grant R. MacQueen, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001
bernard.garbutt@morganlewis.com
jawad.muaddi@morganlewis.com
grant.macqueen@morganlewis.com

Attorneys for Defendant
Deutsche Bank National Trust Company, as Trustee

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 2

ARGUMENT ............................................................................................................................ 2

I.      UNDER FRCP 17(A)(3), THE COURT SHOULD DENY NCUA'S REQUESTS
TO SUBSTITUTE THE "SEPARATE TRUSTEE" AS PLAINTIFF FOR THE
NGN-HELD CERTIFICATES TRUST CLAIMS AND TO SUBSTITUTE
ITSELF AS PLAINTIFF, DIRECTLY, FOR THE UNWOUND CERTIFICATES ....... 2

        A.     NCUA Failed To Seek The Substitutions Within A "Reasonable Time" ............ 2

        B.     NCUA Proposed Amendments Are Much More Than "Merely Formal" ............ 5

        C.     NCUA Did Not Make An "Understandable Mistake" When It Chose, For
Deliberate And Tactical Reasons, To Pursue Claims Derivatively ..................... 8

        D.     No Injustice Would Result From Denial Of NCUA's Motion ........................... 11

II.     UNDER FRCP 17(A)(3), THE COURT SHOULD DENY SUBSTITUTION OF
THE SEPARATE TRUSTEE BECAUSE HE LACKS STANDING TO ASSERT
CLAIMS REGARDING THE NGN-HELD CERTIFICATES .................................... 12

        A.     The Separate Trustee Is Not The Real Party In Interest ..................................... 12

        B.     The Separate Trustee Lacks Standing To Sue As BNYM's Assignee ............... 14

III.    UNDER FRCP 15(D), THE COURT SHOULD NOT ALLOW NCUA TO
AMEND REGARDING THE SUBSTITUTIONS OF PLAINTIFFS, THE
SEPARATE TRUSTEE, AND CLAIMS ABOUT THE UNWOUND
CERTIFICATES ........................................................................................................ 15

        A.     NCUA's Requests To Amend Are Futile Under FRCP 12 ................................. 16

        B.     NCUA's Proposed Amendments Would Prejudice The Trustee ....................... 16

        C.     NCUA Unduly Delayed In Requesting Leave To Amend ................................. 17

        D.     NCUA Cannot Demonstrate A Lack Of Bad Faith ............................................ 18

        E.     Any Amended Pleading Would Not Relate Back, And Is Time-Barred ............ 18

IV.    NCUA'S CLAIMS FAIL UNDER FRCP 12 (OR AS FUTILE) ................................... 19

        A.     NCUA's Contract Claims For Breaches of R&Ws Or EODs Fail ..................... 19

                1.     Binding, Intervening New York State Court Appellate Decisions
Preclude Most Of NCUA's Breach Of Contract Claims ........................ 20

                        a.     NCUA Fails To State A Claim For Breach Of The
Trustee's Post-EOD Obligations ................................................. 24

                        b.     NCUA Fails To State A Claim For Breach Of The
Trustee's Pre-EOD Obligations Concerning R&W
Breaches ...................................................................................... 26

## TABLE OF CONTENTS

### (continued)

Page

2.  NCUA's Claims Based Upon Allegedly Incomplete Mortgage Loan Files Fail ....................................................................... 26

3.  NCUA's Contract Claims Fail To The Extent Based On The Trustee's Alleged Failure To Provide Accurate Reports Under Regulation AB ............................................................................. 28

B.  NCUA's Contract Claims As To The Trustee's Right To Indemnification Fail ............................................................................................. 29

1.  Numerous Courts Have Acknowledged An RMBS Trustee's Entitlement To Indemnification In Similar Circumstances .................... 29

2.  The Trustee's Indemnification Is Lawful And Provided For Under The PSAs ............................................................................... 31

3.  The "Unmistakably Clear" Rule Does Not Apply Here Because Plaintiffs Are Not The Trustee's Indemnitors; In Any Event, The Trustee's Entitlement To Indemnification Is Unmistakably Clear ......... 32

   a.  The Trustee's Indemnity Is Through The Covered Trusts, Not From Certificateholders ...................................... 33

   b.  The Trustee's Indemnification Is Unmistakably Clear ............... 34

4.  NCUA's Challenge To The Trustee's Entitlement To Indemnification Is Untimely Under FRCP 15 ......................................... 35

C.  NCUA's Tort Claims All Fail ............................................................ 36

1.  NCUA's Tort Claims Are Barred By The Economic Loss Doctrine ....... 36

2.  NCUA's Tort Claims Should Be Dismissed As Duplicative .................. 37

3.  NCUA's Breach Of Fiduciary Duty Claim Fails ..................................... 38

4.  NCUA's Negligence And Gross Negligence Claims Fail ...................... 40

CONCLUSION ............................................................................................. 40

**TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.,
  634 F.3d 112 (2d Cir. 2011)......................................................................21

55 Gans Judgment LLC v. Romanoff,
  999 N.Y.S.2d 371 (1st Dep't 2014) ...........................................................13

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
  1994 WL 324018 (S.D.N.Y. July 6, 1994) .................................................19

Advanced Magnetics v. Bayfront Partners, Inc.,
  106 F.3d 11 (2d Cir. 1997)...............................................................6, 8, 14

Argonaut P'ship L.P. v. Bankers Tr. Co.,
  2001 WL 585519 (S.D.N.Y. May 30, 2001) ...............................................40

Bakal v. U.S. Bank Nat'l Ass'n,
  2018 WL 1726053 (S.D.N.Y. Apr. 2, 2018).........................................27, 40

BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon,
  180 F.Supp.3d 246 (S.D.N.Y. 2016)..........................................................39

Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n,
  2018 WL 5046640 (1st Dep't Oct. 18, 2018) ................................... passim

Blackrock Balanced Capital Portfolio (FI) v U.S. Bank Nat. Ass'n,
  2018 WL 452001 (N.Y. Sup. Ct. Jan. 17, 2018) ........................................28

Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n,
  165 F.Supp.3d 80 (S.D.N.Y. 2016) ............................................................37

Bleznak v. Wells Fargo Bank, N.A.,
  2010 WL 11463589 (S.D.N.Y. May 5, 2010) .............................................12

BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,
  949 F.Supp.2d 486 (S.D.N.Y. 2013)....................................................37, 39

Borndholdt v. Brady,
  869 F.2d 57 (2d Cir. 1989)........................................................................17

BSC Assocs., LLC v. Leidos,
  91 F.Supp.3d 319 (N.D.N.Y. 2015)...........................................................15

CFIP Master Fund, Ltd. v. Citibank, N.A.,
   738 F.Supp.2d 450 (S.D.N.Y. 2010)................................................................33, 40

City of New York v. Grp. Health Inc.,
   649 F.3d 151 (2d Cir. 2011)..........................................................................18

Commerce Bank v. Bank of New York Mellon,
 2015 WL 5770467 (N.Y. Sup. Ct. N.Y. Cty. Oct. 2, 2015) .......................22, 25, 26, 40

Commerce Bank v. Bank of New York Mellon,
   35 N.Y.S.3d 63 (1st Dep't 2016) ..................................................... passim

Commerce Bank v. U.S. Bank Nat'l Ass'n,
   2017 WL 4682226 (W.D. Mo. Jan. 5, 2017) ............................................38, 39

Cortlandt St. Recovery Corp. v. Hellas Telecomm.,
   790 F.3d 411 (2d Cir. 2015)............................................................... passim

Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.,
   996 N.Y.S.2d 476 (N.Y. Sup. Ct. N.Y. Cty. 2014).............................................40

Crossroads ABL, LLC v. Canaras Capital Mgmt., LLC,
   35 Misc.3d 1238(A) (N.Y. Sup. Ct. N.Y. Cty. 2012) ..........................................36

Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,
   837 F.Supp.2d 162 (S.D.N.Y. 2011).............................................................38, 39, 40

Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co.,
   838 F.2d 66 (2d Cir. 1988)..........................................................................19, 39

Ely-Cruikshank Co. v. Bank of Montreal,
 81 N.Y.2d 399 (1993) ...............................................................................28

EMI Entm't World, Inc. v. Karen Records, Inc.,
   2013 WL 2480212 (S.D.N.Y. June 10, 2013) ........................................................3

In re Estate of Burke,
   492 N.Y.S.2d 892 (N.Y. Sur. Ct. 1985)...............................................................13

Evans v. Syracuse City Sch. Dist. No. 812,
   704 F.2d 44 (2d Cir. 1983)............................................................................17

Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   2004 WL 626180 (S.D.N.Y. Mar. 30, 2014) ......................................................16

Fixed Income Shares: Series M v. Citibank, N.A.,
   61 N.Y.S.3d 190 (N.Y. Sup. Ct. N.Y. Cty. June 26, 2017) ....................23, 25, 26, 27

Fixed Income Shares: Series M v. Citibank, N.A.,
    69 N.Y.S.3d 288 (1st Dep't 2018) .................................................................. *passim*

Gardner v. State Farm Fire & Cas. Co.,
    544 F.3d 553 (3d Cir. 2008).........................................................................10

Gold v. Rowland,
    325 Conn. 146 (2017) .................................................................................35

Hooper Associates, Ltd. v. AGS Computers, Inc.,
    74 N.Y.2d 487 (1989) ................................................................................ *passim*

Interpublic Grp. of Cos. v. Fratarcangelo,
    2002 WL 31720355 (S.D.N.Y. Dec. 4, 2002) ...............................................17

Jackson v. Odenat,
    2012 WL 505551 (S.D.N.Y. Feb. 14, 2012)..................................................16

Jones v. Goord,
    2000 WL 290290 (S.D.N.Y. Mar. 20, 2000) .................................................19

Klein v. Qlik Techs., Inc.,
    2018 WL 4700200 (2d Cir. Oct. 2, 2018).......................................................8

Knife Rights, Inc. v. Vance,
    802 F.3d 377 (2d Cir. 2015) .......................................................................16

Lunney v. United States,
    319 F.3d 550 (2d Cir. 2003)...........................................................................7

Maiden v. Biehl,
    582 F.Supp. 1209 (S.D.N.Y. 1984) .............................................................33

Meckel v. Cont'l Res. Co.,
    758 F.2d 811 (2d Cir. 1985).........................................................................39

Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n,
    2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013).................................................38

Miller v. Wells Fargo Bank Int'l Corp.,
    540 F.2d 548 (2d Cir. 1976).........................................................................14

Monahan v. N.Y. City Dep't of Corr.,
    214 F.3d 275 (2d Cir. 2000).........................................................................16

NCUA v. HSBC Bank USA, Nat'l Ass'n,
    117 F.Supp.3d 392 (S.D.N.Y. 2015).............................................................11

NCUA v. U.S. Bank Nat. Ass'n,
2015 WL 2359295 (S.D.N.Y. May 18, 2015) .................................................4, 8

NCUA v. U.S. Bank Nat'l Ass'n,
2016 WL 796850 (S.D.N.Y. Feb. 25, 2016) ................................................4, 37

NCUA v. U.S. Bank Nat'l Ass'n,
898 F.3d 243 (2d Cir. 2018)................................................................. passim

Oscar Gruss & Son, Inc. v. Hollander,
337 F.3d 186 (2d Cir. 2003)...........................................................................12

Phoenix Light SF Ltd. v. Bank of N.Y. Mellon,
2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015).................................................27

Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.,
172 F. Supp. 3d 700 (S.D.N.Y. 2016) ...........................................................28

Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,
2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) ...........................................15, 37

Pub. Employees' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.,
2011 WL 135821 (S.D.N.Y. Jan. 12, 2011) ...................................................28

Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n,
109 F.Supp.3d 587 (S.D.N.Y. 2015) ..............................................................29

Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n,
2017 WL 9991531 (S.D.N.Y. Jan. 26, 2017) .................................................31

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n,
2017 WL 953514 (S.D.N.Y. Mar. 9, 2017) ....................................................31

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n,
2018 WL 3655781 (S.D.N.Y. Aug. 2, 2018) ..................................................11

Sagittarius Broad. Corp. v. Evergreen Media Corp.,
663 N.Y.S.2d 160 (1st Dep't 1997) ................................................................35

Sly Magazine, LLC v. Weider Publ'ns L.L.C.,
241 F.R.D. 527 (S.D.N.Y. 2007) ....................................................................16

Square Mile Structured Debt (One), LLC v. Swig,
973 N.Y.S.2d 39 (1st Dep't 2013) ...................................................................35

Turczyn v. Shanley,
2015 WL 12748635 (N.D.N.Y. Dec. 14, 2015) ..............................................18

U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC,
    859 F.Supp.2d 602 (S.D.N.Y. 2012).................................................................12

U.S. for Use & Benefit of Wulff v. CMA, Inc.,
    890 F.2d 1070 (9th Cir. 1989) ..........................................................................10

United States v. Pokerstars,
    2016 WL 4411421 (S.D.N.Y. Aug. 19, 2016)..............................................17, 36

Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC,
    651 F. App'x 5 (2d Cir. 2016) ..........................................................................10

VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n,
    2016 WL 3912028 (D.N.J. July 19, 2016).....................................................31, 37

Wilder v. News Corp.,
    2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ......................................................19

Windsor Card Shops, Inc. v. Hallmark Cards, Inc.,
    957 F.Supp. 562 (D.N.J. 1997) ........................................................................18

## Statutes

12 U.S.C. § 1787(b)(14) .............................................................................................7

N.Y. Jud. L. § 489.....................................................................................................15

N.Y. C.P.L.R. §213....................................................................................................9

## Other Authorities

17 C.F.R. §229.1100, et seq......................................................................................29

17 C.F.R. § 249.323 ..................................................................................................29

70 Fed. Reg. 1506-01 ................................................................................................29

FRCP 12 ......................................................................................................... passim

FRCP 15 ......................................................................................................... passim

FRCP 17 ......................................................................................................... passim

Defendant Deutsche Bank National Trust Company, as trustee (the "Trustee") for the 37 RMBS trusts at issue on this motion (the "Covered Trusts"), submits this memorandum of law (under FRCP 12, 15, and 17) in opposition to the "Motion for Leave to File a Second Amended Complaint and Substitute the Separate Trustee as Plaintiff for the NGN Claims" (Dkt.#113, the "NCUA Br.") of National Credit Union Admin. Board, as Liquidating Agent ("NCUA"), and Graeme W. Bush ("Bush" or the "Separate Trustee"), and to dismiss their claims on the merits (as futile or otherwise) if the Court allows amendment.[1]

## PRELIMINARY STATEMENT

For almost four years, as a result of its own strategic decisions, NCUA attempted to derivatively pursue claims regarding 34 of the 37 Covered Trusts.[2]  However, NCUA's lack of derivative standing was obvious from the start; claims of the NGN Trusts always belonged to the indenture trustee of those trusts, Bank of New York Mellon ("BNYM").  At this late stage, NCUA now attempts to reverse the consequences of its strategic decisions, and remedy its lack of standing.  To do so, as to claims for the RMBS certificates of the 37 Covered Trusts (the "Certificates") that are still held by BNYM for the NGN Trusts (the "NGN-Held Certificates"), NCUA seeks to substitute the Separate Trustee for the sole purpose of pursuing such claims.  As to claims for other Certificates (the so-called "unwound" certificates that were previously held

---

[1]      Allegations in NCUA's proposed second amended complaint (Dkt.#114-1, "PSAC") are taken as true solely for purposes of this motion. Cites to "¶__" are to the PSAC's paragraphs.  The PSAC attaches an exemplar "Pooling and Servicing Agreement" (or "PSA") (Dkt.#114-10) and several other documents, which are referred to solely by their ECF Dkt.#.  "GarbEx." refers to an exhibit to the Declaration of Bernard J.  Garbutt III, dated November 5, 2018.  Unless otherwise stated, all quotations and citations are omitted, and all emphasis is added.

[2]      For these 34 Covered Trusts, NCUA exclusively pursued claims derivatively.  Of the other three Covered Trusts, NCUA pursued claims as to two trusts both derivatively and directly, and pursued claims as to the last trust only directly.  However, the Covered Trusts each issued several different tranches of certificates, requiring an analysis on a certificate-by-certificate basis.  NCUA argues that the Separate Trustee asserts claims as to 17 Covered Trusts, NCUA asserts claims directly for another 14 Covered Trusts (due to the alleged "unwinding" of certain NGN Trusts), and both the Separate Trustee and NCUA assert claims for the remaining six Covered Trusts.  NCUA Br. at 7-8.  A chart breaking down these alleged holdings on a certificate level is at GarbEx. 1.

by BNYM for the NGN Trusts that NCUA now claims to own itself (the "Unwound

Certificates")), NCUA also seeks to substitute itself as a plaintiff directly, rather than

derivatively, to assert those claims.  Procedurally, FRCP 17 and 15 preclude this gamesmanship.

Among other things, NCUA's attempts to substitute and amend are untimely.  If the Court finds

that NCUA has overcome these procedural hurdles, the Court should still deny NCUA's motion,

and/or dismiss the proposed claims, because they are futile and/or fail to state a claim.

<u>**RELEVANT BACKGROUND**</u>

In 2010, the NCUA created the NGN Trust program to, among other things, re-securitize

the Certificates, which allegedly were previously held by five failed corporate credit unions (the

"CCUs").  ¶29.  NCUA transferred the Certificates to BNYM to hold as trustee for the NGN

Trusts, which trusts then issued notes (the "NGN Notes").  <u>Id.</u>  NCUA <u>as guarantor</u> ("NCUA

Guarantor") guaranteed payment on the NGN Notes.  ¶34.  Each NGN Trust was created and

governed by a set of agreements that are discussed more below.

When the NGN Notes have been fully paid, BNYM must allegedly transfer the

Certificates that underlie those NGN Notes back to the NGN Trusts, which in turn must then

transfer those "Unwound Certificates" to NCUA.  NCUA Br. at 6.  This "unwinding" has

allegedly happened with respect to four NGN Trusts at issue here, as described more below.

<u>**ARGUMENT**</u>

I.    **UNDER FRCP 17(A)(3), THE COURT SHOULD DENY NCUA'S REQUESTS
TO SUBSTITUTE THE "SEPARATE TRUSTEE" AS PLAINTIFF FOR THE
NGN-HELD CERTIFICATES TRUST CLAIMS AND TO SUBSTITUTE
<u>ITSELF AS PLAINTIFF, DIRECTLY, FOR THE UNWOUND CERTIFICATES</u>**

A.    <u>**NCUA Failed To Seek The Substitutions Within A "Reasonable Time"**</u>

A court "may not dismiss an action for failure to prosecute in the name of the real party

in interest until, after an objection, a **<u>reasonable time</u>** has been allowed for the real party in

interest to ratify, join, or be substituted into the action."  FRCP 17(a)(3).  In NCUA's case against another RMBS trustee, the Second Circuit held that a "reasonable time" under FRCP 17 is no more than **one year** after an objection to NCUA's assertion of derivative standing.  <u>NCUA v. U.S. Bank Nat'l Ass'n</u>, 898 F.3d 243 (2d Cir. 2018) ("<u>NCUA/U.S. Bank 2d Cir.</u>").[3]

Here, NCUA plainly fails to meet the timeliness requirement both with respect to the NGN-Held Certificates and the Unwound Certificates.  On May 1, 2015, in the Trustee's motion to dismiss, it objected to NCUA's lack of derivative standing.  Dkt.#47, at 27-30.  Yet, NCUA waited until October 5, 2018, almost **three and one-half years later**, to seek these substitutions.

NCUA claims that it "moved expeditiously after" the decision in <u>NCUA/U.S. Bank 2d Cir</u> (NCUA Br. at 11), but even <u>before</u> NCUA filed its first amended complaint herein on March 5, 2015 (Dkt.#38, "FAC"), NCUA was aware that it lacked derivative standing.  In January 2015, NCUA sent a letter to BNYM directing it to "take action to assert" claims against RMBS trustees.  Dkt.# 53-2; <u>NCUA/U.S. Bank 2d Cir.</u>, 898 F.3d at 249.  This letter indicates that NCUA knew it lacked derivative standing (and that BNYM had such standing).  Furthermore, between 2015 and 2017, NCUA was repeatedly reminded of its lack of derivative standing by virtue of motions to dismiss, letters to the courts, and decisions in cases involving substantively identical claims by NCUA against other RMBS trustees.  A chart documenting the relevant events is attached at GarbEx. 2, and they include:

- On **February 20, 2015**, Wells Fargo filed a pre-motion conference letter with the Court in <u>NCUA v. Wells Fargo Bank, National Association</u>, No. 14-cv-10067-KPF-SN ("<u>NCUA/Wells Fargo</u>")—before NCUA filed its FAC herein—arguing that NCUA lacked standing to bring derivative claims on behalf of the NGN Trusts.  GarbEx. 2, Line No. 4.  On March 30, 2017, the court in that case agreed.  <u>Id.</u>, Line No. 21;
- On February 27, 2015, in <u>NCUA v. U.S. Bank N.A.</u>, No. 1:14-cv-9928 (S.D.N.Y.)

---

[3]        Other courts have held that even shorter delays precluded substitution under FRCP 17.  <u>See</u>, <u>e.g.</u>, <u>EMI Entm't World, Inc. v. Karen Records, Inc.</u>, 2013 WL 2480212, *3 (S.D.N.Y.  June 10, 2013) (Preska, J.) (denying substitution because six months had elapsed between the objection and the FRCP 17 motion).

("NCUA/U.S. Bank S.D.N.Y."), U.S. Bank filed its first motion to dismiss—also before NCUA filed its FAC herein—arguing that NCUA lacked standing to bring derivative claims on behalf of the NGN Trusts.  GarbEx. 2, Line No. 5.  In May 2015, Judge Forrest granted U.S. Bank's motion on that basis.  Id., Line No. 10; and

- On July 17, 2015, NCUA filed a second amended complaint in NCUA/U.S. Bank S.D.N.Y., which continued to rely upon derivative standing.  GarbEx. 2, Line No. 11.  On August 28, 2015, U.S. Bank filed a motion to dismiss again arguing NCUA's lack of derivative standing.  Id., Line No. 13.  Notably, on September 23, 2015, NCUA filed its opposition and raised the idea of substituting a separate trustee to cure its lack of standing.  Id., Line No. 14.  On February 25, 2016, Judge Forrest granted U.S. Bank's second motion to dismiss.  Id., Line No. 16.  Then, in April 2016, NCUA sought leave to amend to substitute a separate trustee and to assert claims based upon RMBS certificates from unwound NGN Trusts.  In May 2016, Judge Forrest denied that motion as untimely.  Id., Line No. 18.

Thus, from at least January 2015 through May 2016, NCUA was aware and repeatedly reminded that it lacked derivative standing.  Following Judge Forrest's decision in NCUA/U.S. Bank S.D.N.Y. denying substitution, on May 11, 2016, NCUA proposed in NCUA/Wells Fargo that it "move, in the alternative, for substitution of a separate trustee" to avoid a timeliness bar.  GarbEx. 2, Line No. 19.  NCUA argued there that substitution of a separate trustee was an alternative ground for sustaining its claims in the absence of derivative standing.  GarbEx. 2, Line No. 22.  However, at that time, in this case, NCUA did seek leave to substitute or amend.

NCUA suggests that the Trustee somehow "concurred" with NCUA's further delay in seeking the substitutions and amendments now at issue by pointing to the Trustee's August 5, 2016 letter to the Court (Dkt.#86, at 1-2).  NCUA Br. at 4.  However, that point is as irrelevant as it is incorrect.  The FRCP 17 touchstone is that the Trustee objected to NCUA's derivative standing on May 1, 2015, which triggered NCUA's obligation to substitute the real party in interest.  NCUA did not attempt to do so until now.  NCUA proceeded at its own peril, and may not now blame its own delay on the Trustee.[4]  Moreover, the Trustee's August 5, 2016 letter

---

[4]     Under this Court's Individual Practices, NCUA was free, at any time, to move for leave to amend or

repeatedly made clear that, at that time, NCUA had <u>already</u> unduly delayed in seeking any substitution or amendment, that NCUA had made no cognizable mistake under FRCP 17, and that any future attempt by NCUA to substitute or amend must fail.  Dkt.#86, at 2-4.  Such a letter could hardly be read as concurring with NCUA's further delay.

NCUA argues (NCUA Br. at 16) that it should not have been required to pursue the separate trustee proposal concurrently with the derivative standing theory.  But, in <u>NCUA/U.S. Bank 2d Cir.</u>, the Second Circuit rejected this argument:  NCUA did not "face a true 'Hobson's choice' between abandoning the derivative standing theory and requesting BNYM appoint a separate trustee.  NCUA could have proceeded under both theories by simply alleging that the separate trustee was willing to acquiesce in NCUA's suit."  <u>Id.</u>, 898 F.3d at 258.

And, as to the Unwound Certificates, the unwindings of certain NGN Trusts are irrelevant to a FRCP 17 timeliness analysis because, prior to the unwindings, NCUA still lacked derivative standing for <u>all</u> of its claims, and had an obligation to move to substitute the real party in interest within a year after the Trustee's objection on May 2015.  Between that date, and any unwinding, NCUA could have cured its standing, yet NCUA continued to unreasonably delay.[5]

For all of these reasons, NCUA's motion to substitute new plaintiffs is untimely.

**B.      NCUA Proposed Amendments Are Much More Than "Merely Formal"**

FRCP 17 allows only amendments that are "merely formal" and do not alter the substance of the action.  <u>Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.</u>, 790 F.3d

---

substitute to pursue the alternative theories of a separate trustee, or that NCUA directly held claims as to the Unwound Certificates.  NCUA strategically chose not to do so, and now it must live with the consequences.

[5]      The "unwinding" process has allegedly happened with respect to four NGN Trusts.  In December 2015, the NGN 2011-R6 trust unwound.  ¶27, n.1; <u>see also</u> GarbEx. 4 (NCUA Corporate System Resolution Program Update).  In July 2016, NGN 2011-R5 trust unwound.  GarbEx. 4.  In October 2017, the NGN 2010-R2 and NGN 2011-R4 trusts unwound.  ¶27, n.1; <u>see also</u> GarbEx. 5 (Bloomberg data reflecting month of unwinding).  Thus, since December 2015, NCUA was aware that it could abandon its derivative standing theory, which had already been rejected by Judge Forrest, and seek to substitute itself directly as to Unwound Certificates.  By continuing to incorrectly assert derivative standing after that, NCUA is precluded from relying upon FRCP 17.

411, 424 (2d Cir. 2015).  Here, the substitutions of the Separate Trustee for the NGN-Held

Certificates and NCUA directly for the Unwound Certificates, and the alleged assignments at

issue, are more than "merely formal," requiring substantive modifications, beyond simply

changing the names and roles of parties.  Id.  ("pleading the existence of a new and substantively

different assignment would require more than a 'merely formal' alteration of the complaint.

Such an attempt to employ Rule 17(a)(3) to cure the standing problem here would thus be fated

to fail."); Advanced Magnetics v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997).

Even a cursory review of the redline (Dkt.#115-1, GarbEx. 6) comparing NCUA's

proposed amendments (PSAC, Dkt# 114-1) against NCUA's FAC (Dkt.#38), reveals that

NCUA's proposed amendments are substantive and extensive.  The redline (which, tellingly,

NCUA itself did not submit with its motion to amend, which is typical practice) reveals that the

PSAC includes **78** entirely new paragraphs and revises **131** prior paragraphs, and clearly

demonstrates that NCUA has not merely "substitute[d] one name for another," leaving "the

factual and legal allegations of the complaint . . . unaltered."  Cortlandt, 790 F.3d at 422.

As to the NGN-Held Certificates, the proposed amendments rely on an entirely new (and

as discussed in **Section II** below, legally deficient) transaction, styled as an "appointment."  ¶36.

Not only do NCUA's factual allegations change, but the Trustee's burden to defend against

NCUA's claims increases, as the PSAC raises new legal and factual issues, including:  (1)

whether Bush (the "Separate Trustee") is in fact a real party in interest who may assert these

claims (he is not); (2) whether he may act independently of BNYM as he purports to do here (he

may not); (3) whether BNYM divested itself of the claims (it did not); and (4) whether NCUA

properly can pay Bush to bring BNYM's claims (it may not).

As to the Unwound Certificates, NCUA makes numerous substantive revisions, which

also raise new legal and factual issues and increase the Trustee's burden of defense, including those concerning the circumstances of the unwindings and any alleged related assignments.

As to both substitutions, they raise the issues of what statutes of limitation should apply to the claims of the new plaintiffs and whether those claims are time-barred.[6]

Finally, NCUA proposes to have the new plaintiffs assert two <u>entirely new</u> causes of action (Counts IV and V) regarding the Trustee's right to indemnification.

NCUA concedes that its changes are far too significant to fall under FRCP 17(a)(3)'s narrow strictures; it argues that the Court should first allow it to make those substantive changes under a different provision—FRCP 15(d), which allows parties to amend their pleadings to allege new facts. NCUA Br. at 11. Once the complaint has been amended, NCUA argues, FRCP 17(a)(3) should permit the "merely formal" substitution of Bush as a plaintiff and NCUA as direct claimant. <u>Id.</u>, at 12-13. But even if NCUA could amend under FRCP 15(d) (which, as discussed in **<u>Section III</u>**, it cannot), it could not then rely upon FRCP 17(a)(3). NCUA's "two-step" invocation of FRCP 15(d) and FRCP 17(a)(3)—a transparent attempt to avoid the holding in <u>Cortlandt</u>—finds no support in the law, and would broaden the scope of FRCP 17(a)(3) far beyond the "merely formal" change in parties for which it was intended.

Because NCUA's proposed amendments and substitutions are far beyond the "merely formal" amendments that Rule 17(a)(3) allows, are "highly questionable" in their own right, and would "raise a host of vexed questions for the district court," the Court should deny NCUA's motion. See <u>Lunney v. United States</u>, 319 F.3d 550, 557 (2d Cir. 2003).

---

[6]     The NCUA Br. makes no mention of what statute of limitations applies to any new plaintiff's claims. NCUA may argue that the extender statute of limitations, 12 U.S.C. §1787(b)(14) ("Extender Statute") traveled with the NGN Trusts' claims through several sets of assignments. The Trustee will address that argument at the appropriate time if NCUA asserts it. Suffice it to say that a separate statute of limitations analysis applies to the Separate Trustee, and NCUA as a direct claimant, and, if amendment is allowed, those claims would be futile as time-barred.

**C.** **NCUA Did Not Make An "Understandable Mistake" When It Chose, <u>For Deliberate And Tactical Reasons, To Pursue Claims Derivatively</u>**

FRCP 17 precludes substitution of a "real party in interest" when the incorrect party initially brought the suit for "deliberate or tactical" reasons and not because of an "understandable mistake." <u>See</u> <u>Advanced Magnetics</u>, 106 F.3d at 20-22; <u>see also</u> <u>Cortlandt</u>, 790 F.3d at 424; FRCP 17, Advisory Comm. Note, 1966 Amendment (Rule applies "when determination of the proper party to sue is difficult or when an <u>understandable mistake</u> has been made."). Courts find bad faith or an effort to deceive or prejudice a defendant where the decision to name the wrong party was deliberate or tactical. <u>Klein v. Qlik Techs., Inc.</u>, 2018 WL 4700200, *6 (2d Cir. Oct. 2, 2018).[7] NCUA has the burden of establishing that it named the wrong party in interest for innocent, rather than deliberate or tactical, reasons. NCUA cannot meet its burden, because it knew all along that BNYM was the real party in interest, but made a deliberate, tactical choice to attempt to pursue claims derivatively. Thus, NCUA's motion to substitute should be denied.

In 2010, NCUA itself created the NGN Trust program and drafted the agreements that created and govern the NGN Trusts. As the Second Circuit and other courts have opined, it was "clear and unambiguous" under those agreements that NCUA lacked standing to assert derivative claims on behalf of the NGN Trusts, and that BNYM was the real party in interest that had such standing. <u>NCUA/U.S. Bank 2d Cir.</u>, 989 F.3d at 252; <u>NCUA/U.S. Bank</u>, 2015 WL 2359295, *8 (S.D.N.Y. May 18, 2015); Dkt.#114-4 [NGN 2011-R2 Trust Agreement, §§ 3.01, 2.14(b)]; Dkt.#114-3 [NGN 2011-R2 Indenture Agreement, at 5].

Notwithstanding this clarity, NCUA itself sought to pursue claims derivatively, on behalf

---

[7]     <u>Klein</u> explains that it is not departing from prior precedent. <u>Klein</u>, 2018 WL 4700200, *7. In <u>Klein</u>, there was no question that the plaintiff had standing at the outset of the litigation. <u>Id.</u>, *1.

of the NGN Trusts, not because NCUA believed it had the right to do so, but because time was running out to sue the Trustee.  As explained below, NCUA needed to buy itself time to address a series of vexing hurdles that threatened the viability of NCUA's claims, including BNYM's refusal to assert the claims and several thorny statute of limitations ("SOL") issues.

Indeed, according to NCUA, the contract claims at issue herein accrued no later than January 1, 2009.  ¶126.  Moreover, on March 20, 2009, NCUA placed two of the five CCUs at issue into conservatorship.  ¶25.  Thus, generously applying a six-year SOL to a contract claim (see, e.g., N.Y. C.P.L.R. §213) those claims would be time-barred on January 1, 2015.  Even if the six-year Extender Statute applied (and it does not, see supra n. 6), the contract claims of the two CCUs would have been time-barred by March 20, 2015.  NCUA knew that, without the benefit of the Extender Statute, its claims would fail under FRCP 12.

Facing an approaching deadline, NCUA itself commenced this lawsuit on November 7, 2014 (Dkt.#1, "Orig. Comp."), seeking to bring claims directly as to the same Certificates as to which NCUA later attempted to sue derivatively (see FAC; compare Dkt.#1-1 with Dkt.#38-1), and as to which NCUA now seeks to substitute the new plaintiffs.  Dkt.#114-2.  The Orig. Comp. was silent as to any basis for NCUA's standing to assert claims on behalf of Certificates held for the NGN Trusts by BNYM.  See Dkt.#1, ¶¶19-26.  Thus, even at the start of this action, NCUA lacked standing to bring the claims herein.

NCUA apparently considered having BNYM assert the claims herein on behalf of the NGN Trusts.  But for at least three reasons, NCUA instead chose to assert the claims itself, as quickly as possible, and try to sort out its standing issues later.  **First**, by August 5, 2014, NCUA knew that BNYM had a conflict of interest in asserting such claims.  FAC,¶¶50-54.  **Second**, BNYM refused to assert the claims.  FAC,¶49; Dkt.##53-1 & Dkt.#53-2.  **Third**, the Extender

Statute would not apply to claims brought by BNYM (or another assignee).[8]  If the Extender Statute did <u>not</u> apply, the contract claims were already time-barred, at the very latest, by January 1, 2015.  And, even if the Extender Statute <u>did</u> apply, and if NCUA had standing (it did not), it would have to assert claims as to two CCUs by March 20, 2015.  Faced with all this uncertainty, on March 5, 2015, NCUA chose to attempt to re-file the claims itself derivatively, on behalf of the NGN Trusts, even though it had already been put on notice several times in other litigation in this District that it lacked such derivative standing.  GarbEx. 2 [chart]; <u>see</u> FAC, Dkt.#38.

Now, NCUA seeks to rely on a belated assignment to the Separate Trustee and its own direct standing to bring claims that NCUA could not bring—and that the real party in interest, BNYM, declined to bring—at the outset of this litigation.  FRCP 17 does not allow such gamesmanship.[9]  Courts routinely deny applications for substitution under FRCP 17(a)(3) when a party that lacks standing commences a lawsuit and then attempts to rely upon an assignment of the claims at issue <u>after</u> the commencement of the lawsuit to establish standing.[10]  Yet NCUA seeks to do just that.  The proposed substitution of the Separate Trustee for the NGN-Held Certificates is an attempt to avoid the fact that the real party in interest, BNYM, declined to bring these claims years ago.  In fact, the Instrument of Appointment and Acceptance was not signed until August 29, 2018. Dkt.#114-7 (the "IAA").  And the proposed substitution of NCUA as a direct claimant for the Unwound Certificates is an attempt to avoid the fact that, had NCUA not filed this placeholder lawsuit <u>when it lacked standing to do so</u>, it would be time-barred from

---

[8]      Relatedly, the Extender Statute would not apply to claims relating to Certificates within NGN Trusts that were going to be unwound later (<u>i.e.</u>, the Certificates that later became the Unwound Certificates).

[9]      <u>See</u> <u>Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC</u>, 651 F. App'x 5, 7 (2d Cir. 2016) (plaintiff who assigned all claims prior to filing suit cannot use FRCP 17(a)(3) to remedy standing defect).

[10]     <u>See</u> <u>U.S. for Use & Benefit of Wulff v. CMA, Inc.</u>, 890 F.2d 1070, 1075 (9th Cir. 1989); <u>Gardner v. State Farm Fire & Cas. Co.</u>, 544 F.3d 553, 562-63 (3d Cir. 2008).

asserting claims as to those Certificates.  Such tactics fail under FRCP 17.

NCUA maintains that a "split of authority in this district confirms that derivative standing was a complex legal question about which reasonable minds can and did differ."  NCUA Br. at 17.  But in reality, there was no split.[11]  Even if there were a split, it only developed well after NCUA made the deliberate and tactical decisions (for the reasons explained above) to first attempt to bring the claims itself (first directly, then derivatively), when it knew all along that it lacked standing to do so and that only BNYM had such standing.  See, e.g., GarbEx. 2 [chart].  Thus, NCUA did not file the FAC herein, and then persist in pursuing derivative standing, based on some purported split in authority.  NCUA simply doubled down on its deliberate and tactical (yet clearly erroneous) attempt to pursue derivative standing.

###    D.    No Injustice Would Result From Denial Of NCUA's Motion

NCUA argues that denial of its motion would "creat[e] serious potential prejudice" and that it would be "unjust" for the claims at issue to be foreclosed.  NCUA Br. at 19.  However, any alleged "injustice" here is, as explained above, a problem of NCUA's own strategic making.  And, the "injustice" that FRCP 17(a)(3) seeks to prevent is forfeiture of the claim by the real party in interest.  As to the NGN-Held Certificates, the real party in interest, BNYM, would not forfeit the claims; to date, BNYM simply has taken no action.  As to the Unwound Certificates, NCUA knew that the NGN Trusts would eventually unwind after the statute of limitations expired.  No injustice would result from denying NCUA the opportunity to bring claims that

---

[11]    Judge Scheindlin's decision, NCUA v. HSBC Bank USA, Nat'l Ass'n, 117 F.Supp.3d 392, 400 n.45 (S.D.N.Y. 2015) ("NCUA/HSBC"), allowing derivative standing, was based on an incomplete record created by NCUA, which apparently failed to provide Judge Scheindlin with the NGN governing agreements.  As Judge Caproni (who sat by designation on the NCUA/U.S. Bank 2d Cir. panel) later noted in a different case, Judge Scheindlin "may have acted under the misapprehension that the NGN Trusts held RMBS certificates."  Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, 2018 WL 3655781, *4 n.7 (S.D.N.Y. Aug. 2, 2018) (denying NCUA's motion to intervene).  In any event, NCUA/HSBC is irrelevant to the analysis because it was issued after NCUA filed the FAC herein and thus could not have been the basis for any mistaken belief.  NCUA Br. at 16.

NCUA knew would be time-barred by the time it owned them, if not for relation-back.

## II.    UNDER FRCP 17(A)(3), THE COURT SHOULD DENY SUBSTITUTION OF THE SEPARATE TRUSTEE BECAUSE HE LACKS STANDING TO ASSERT CLAIMS REGARDING THE NGN-HELD CERTIFICATES

NCUA may not substitute the Separate Trustee pursuant to FRCP 17(a)(3) because the Separate Trustee does not have the right to assert the claims in the PSAC, therefore lacks standing to bring those claims, and thus his substitution would be futile under FRCP 12.[12]

### A.    The Separate Trustee Is Not The Real Party In Interest

A party may invoke FRCP 17 only to substitute the "real party in interest"; otherwise, the amendment would be futile under FRCP 12.  See FRCP 17(a)(3).  The "real party in interest" is "the person who, according to the governing substantive law, is entitled to enforce the right" at issue.  Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003).  Here, that party is—and always has been—BNYM.  Bush has no authority to bring these claims in his own name because his "appointment" through the IAA is invalid under the NGN Indenture, and he does not have authority to direct this litigation regardless of any "appointment."

When a party asserts that it is the real party in interest for claims on behalf of a trust, courts look to the underlying trust document to determine whether that is in fact the case.  See, e.g., U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC, 859 F.Supp.2d 602, 606-07 (S.D.N.Y. 2012); Cortlandt, 790 F.3d at 418-20.  In the IAA, BNYM purported to "appoint[ ] the Separate Trustee pursuant to section 5.13 of the [NGN] Indenture[] and ... transfer to the Separate Trustee ... all legal title, claims, powers, rights, authorities and duties of the Indenture

---

[12]    NCUA may argue that the Trustee is precluded from arguing that Bush is not the real party in interest.  That has been rejected.  NCUA/U.S. Bank 2d Cir., 989 F.3d at 255 (rejecting argument that the defendant trustee lacked standing to make an argument based upon contracts to which it was not a party; "[b]ut Defendants are not challenging actions taken by BNYM as trustee.  They are simply relying on the [NGN] Trust and [NGN] Indenture Agreements to demonstrate" that NCUA lacked standing).

Trustee, including pursuit of the Separate Trustee Claims" (defined to include the claims against the Trustee herein. Dkt.#114-7 [IAA, §1.1].  However, that "appointment" through the IAA is invalid because the appointment violates the NGN Indenture in four ways.

**First**, the "Separate Indenture Trustees and Co-Trustees" provision under which Bush allegedly was appointed allows for the appointment of a separate trustee solely to the extent necessary "for the purpose of meeting legal requirements applicable to [BNYM] in the performance of its duties."  Dkt.#114-3 [NGN 2011-R2 Indenture Agreement, §5.13(a)]. However, NCUA makes no demonstration, and there is nothing in the IAA, that the Separate Trustee's appointment was necessary to meet any legal requirement of BNYM.  Furthermore, the IAA is inconsistent with the requirement in the NGN Indenture that a separate trustee may only act "jointly with the Indenture Trustee," not independently.  Dkt.#114-3 [NGN 2011-R2 Indenture Agreement, §§5.13(a), (b)(i)]; Dkt.#114-7 [IAA, §1.1 & Sched. II].[13]  Here, BNYM apparently has attempted to surrender all control to the Separate Trustee.

**Second**, the IAA violates the NGN Indentures' provisions for compensation of separate trustees, which is limited to the "Indenture Trustee Fee" or payment from BNYM.  Dkt.#114-3 [NGN 2011-R2 Indenture Agreement, §5.13(f)].  Rather, the IAA provides for (1) compensation from NCUA to the Separate Trustee (Dkt.#114-7 [IAA §3.1]); (2) indemnification by NCUA, not BNYM (id., §3.3); and (3) relief of BNYM of any duty to compensate, reimburse, or indemnify the Separate Trustee.  Id., §3.4.  **Third**, although the NGN Indentures state that any appointment of a separate trustee must occur "without ...  releasing [BNYM] from any of its duties," NGN Indenture §5.13(a), the express purpose of the IAA is to relieve BNYM from a

---

[13]        The joint action requirement in the NGN Indentures accords with the common law rule that where a trust has "two or more trustees, they must exercise their powers collectively."  In re Estate of Burke, 492 N.Y.S.2d 892, 895 (N.Y. Sur. Ct. 1985); see also 55 Gans Judgment LLC v. Romanoff, 999 N.Y.S.2d 371, 373 (1st Dep't 2014).

duty to supervise Bush or his prosecution of claims.  Dkt.#114-7 [IAA, §2.1].

**Fourth**, NCUA has no authority to direct litigation unless and until NCUA Guarantor makes a Guaranty Payment for which it is not reimbursed.  Dkt.#114-3 [NGN 2011-R2 Indenture Agreement, §§4.11, 11.01].   Absent that condition being met, the right to direct litigation is exercisable only at the direction of more than 50% of the NGN Trust's Noteholders.  Id., §4.11.  NCUA does not allege that any unreimbursed Guaranty Payments were made or that a majority of the NGN Trusts' Noteholders have directed the appointment of the Separate Trustee.

Thus, under the NGN Trusts' governing agreements, the appointment of the Separate Trustee was invalid, and he lacks standing under FRCP 12 to prosecute the claims herein.

### B.    The Separate Trustee Lacks Standing To Sue As BNYM's Assignee

NCUA argues that if Bush lacks authority to sue as a trustee, he can pursue the claims as BNYM's assignee.  NCUA Br. at 14.  This alternative argument fails for at least two reasons.

**First**, BNYM did not assign ownership of its claims to Bush.  An effective assignment requires a "completed transfer of the entire interest of the assignor in the particular subject of assignment."  Cortlandt, 790 F.3d at 418.  The assignment must reflect "an intent to divest the assignor of **all** control and right to his claim, thereby empowering the assignee to control the cause of action and to receive its fruits."  Advanced Magnetics, 106 F.3d at 20-21.  In contrast, an assignment does not occur when "one person grants another the power to sue on and collect on a claim" or "confers on the grantee a power of attorney."  Id., at 17–18.  Thus, the assignor may not "retain[] control over the [subject matter] or any authority to collect or any power to revoke."  Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 558 (2d Cir. 1976).

Here, the IAA establishes that BNYM did <u>not</u> divest itself of ownership of the claims as to the NGN-Held Certificates.  To the contrary, the IAA contemplates that Bush will "assert ... claims on behalf of [BNYM] or the NGN Trusts."  Dkt.#114-7 [IAA, at 1].  Likewise, under the

IAA, BNYM retains the rights to "any recoveries obtained" with respect to claims as to the NGN-Held Certificates.  Dkt.#114-7 [IAA, Sched.  II].  This does not effectuate a complete assignment to Bush.  See Cortlandt, 790 F.3d at 418.

**Second**, alternatively, any such assignment would violate New York's prohibition on champerty.  New York law prohibits the transfer of any legal claims "with the intent and for the purpose of bringing an action or proceeding thereon."  N.Y. Jud. L. §489.  Dismissal is appropriate where "the foundational intent to sue on that claim [was] at least ... the primary purpose for, if not the sole motivation behind, entering into the transaction."  Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, 2016 WL 1169515, *7-8 (S.D.N.Y. Mar. 22, 2016) (Failla, J.).

Here, unlike in Phoenix Light, no further factual development is necessary to reveal the purely champertous intent of the alleged assignment to Bush and that Bush "had [no] preexisting proprietary interest" in the claims.  Id., *8.  This intent is clearly stated in the IAA's recitals: "NCUA desires ... to add [Bush] as a substituted or additional plaintiff ... to assert any claim on behalf of [BNYM] or the NGN Trusts."  Dkt.#114-7 [IAA, at 1].  Bush previously never owned any of the Certificates or claims at issue (nor does he now); as NCUA alleges (¶36), he "acquired solely [BNYM's] cause of action."  BSC Assocs., LLC v. Leidos, 91 F.Supp.3d 319, 328 (N.D.N.Y. 2015).  And, as demonstrated above, he is being paid to pursue this litigation.  Thus, Bush also lacks standing as an assignee because any assignment violates N.Y. Jud. L. §489.

## III.  UNDER FRCP 15(D), THE COURT SHOULD NOT ALLOW NCUA TO AMEND REGARDING THE SUBSTITUTIONS OF PLAINTIFFS, THE SEPARATE TRUSTEE, AND CLAIMS ABOUT THE UNWOUND CERTIFICATES

NCUA's motion to amend under FRCP 15(d) should also be denied.  A motion to amend under FRCP 15(d) may be denied if the Court finds "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility."  Jackson v. Odenat, 2012 WL 505551, *2 (S.D.N.Y. Feb. 14, 2012).  For many of the reasons NCUA's

FRCP 17(a)(3) motion should be denied (**Sections I & II**), so too should its FRCP 15(d) motion.

### A.      NCUA's Requests To Amend Are Futile Under FRCP 12

The Court should deny NCUA's motion under FRCP 15(d) because NCUA's proposed amendments are futile.  See, e.g., Knife Rights, Inc. v. Vance, 802 F.3d 377, 389 (2d Cir. 2015). Proposed amendments are futile where the newly-added claims would not withstand a motion to dismiss.  See Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2004 WL 626180, *3-4 (S.D.N.Y. Mar. 30, 2014) (Stein, J.).  That is the case here.  For example, with respect to the Separate Trustee, amending to allege his appointment would not cure the defects in standing because he also lacks standing.  See **Section II**.  Moreover, as demonstrated in **Section III.E.**, the new claims would not relate back and are therefore time-barred.  Finally, with respect to both the NGN and Unwound Certificates, the claims should be dismissed.  See **Section IV**.

### B.      NCUA's Proposed Amendments Would Prejudice The Trustee

The Trustee would be prejudiced by the proposed substitution and amendment because the Trustee will be forced to spend even more time and money litigating NCUA's claims, which additional expense could have been avoided if NCUA had not engaged in pleading gamesmanship.  In evaluating potential prejudice, the Court should consider whether the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute."  Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000).  Notably, "the concepts of undue delay and prejudice are interrelated."  Sly Magazine, LLC v. Weider Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007).  In particular, "[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."  Evans v. Syracuse City Sch. Dist. No. 812, 704 F.2d 44, 47 (2d Cir. 1983).

As already explained, NCUA's delay in this case was substantial and wholly unjustified.

See **Sections I.A.** & **C.** above and **III.C.** below.  Even minimal prejudice would, accordingly, justify denial of NCUA's motion.  Here, significant prejudice would result from allowing NCUA to add new parties, new claims (see **Section IV.B.**), and new allegations nearly four years after this case was commenced.  Allowing NCUA's amendments now would be a significant set-back.

Accordingly, this is not a case in which amendment "will promote the economic and speedy disposition of the controversy between the parties."  Borndholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989).  To the contrary, "efficient judicial administration and case management suggest that this litigation move along the tracks, efficiently and expeditiously, without idling on a siding for the assertion of collateral and extraneous matters."  Interpublic Grp. of Cos. v. Fratarcangelo, 2002 WL 31720355, *3 (S.D.N.Y. Dec. 4, 2002).

Ultimately, NCUA made a strategic but ill-advised choice to proceed for almost three and a half years based on derivative standing rather than attempt to appoint the Separate Trustee for the NGN-Held Certificates and assert direct standing for the Unwound Certificates.  With respect to NGN Trusts that may unwind in the future, NCUA believes it can add them to this litigation in piecemeal fashion even if its Separate Trustee strategy fails.  NCUA Br. at 8.  This openly-declared strategy is highly prejudicial to the Trustee who would be subjected to persistent, subsequent motions for leave to amend and concomitant shifts in the scope of the case.

C.    **NCUA Unduly Delayed In Requesting Leave To Amend**

A plaintiff "unduly delays" in moving to amend its pleadings when it "attempts to assert new facts or theories that it could have raised sooner."  United States v. Pokerstars, 2016 WL 4411421, *6 (S.D.N.Y. Aug. 19, 2016), aff'd sub nom., U.S. v. Cardroom Int'l LLC, 726 F.App'x 98 (2d Cir. 2018).  NCUA fails the "undue delay" test for amendment under FRCP 15(d) for the same reasons its purported substitutions did not come within a "reasonable time" for purposes of FRCP 17(a)(3): NCUA knew about the derivative standing issue years ago and

had repeated opportunities to address it, and there was no justification for NCUA's failure to do so.  See **Sections I.A.** & **I.C.**  Accordingly, amendment should be denied on delay grounds.  See, e.g., City of New York v. Grp. Health Inc., 649 F.3d 151, 158 (2d Cir. 2011) (affirming denial of leave to amend where plaintiff knew about the issue justifying the proposed amendment long before moving to amend).  These standards require denial of NCUA's FRCP 15(d) motion for many of the same reasons its FRCP 17 motion fails.

### D.      NCUA Cannot Demonstrate A Lack Of Bad Faith

A plaintiff's request for leave to amend is made in bad faith when the plaintiff was aware of the facts or arguments purportedly giving rise to the need to amend at the time of filing of the operative complaint but failed to allege them for strategic reasons.[14]  Here, NCUA knew when this action was commenced that only BNYM had the right to assert the claims.  NCUA/U.S. Bank 2d Cir., 989 F.3d at 249.  Likewise, as demonstrated above, before it filed the FAC herein, NCUA knew from briefing in similar actions that it lacked derivative standing.  Yet, NCUA declined to add address these issues in its FAC for strategic reasons.  Thus, NCUA cannot demonstrate that its attempt to amend now is not made in bad faith.

### E.      Any Amended Pleading Would Not Relate Back, And Is Time-Barred

If the Court permits NCUA to substitute the Separate Trustee and itself directly, and allege new claims based upon the Separate Trustee's appointment and the unwinding of certain NGN Trusts, the newly-alleged claims would not relate back to any prior filing under FRCP 15(c).  Thus, they would be time-barred and amendment would be futile.

---

[14]       See, e.g., Windsor Card Shops, Inc. v. Hallmark Cards, Inc., 957 F.Supp. 562, 571 & n.12 (D.N.J. 1997) (denying leave to amend because "[i]t is obvious that plaintiffs had knowledge of this potential claim when the governing complaint was filed"; "Modern pleading doctrine and efficient case management prohibits parties from holding back claims for strategic reasons.  If the claims are known to counsel, they should be plead in the alternative."); Turczyn v. Shanley, 2015 WL 12748635, *4 (N.D.N.Y. Dec. 14, 2015) (denying leave to amend claim that could have been asserted in prior complaint "given plaintiff's counsel's repeated failure to address strong defense arguments that the factual allegations in various version [sic] of the complaint").

FRCP 15(c)(ii) allows relation back only if NCUA failed to bring in the real party in interest at commencement as the result of a "mistake" that "was not the result of a deliberate strategy" to obtain a "tactical advantage." Jones v. Goord, 2000 WL 290290, *3 (S.D.N.Y. Mar. 20, 2000); Wilder v. News Corp., 2015 WL 5853763, *16 (S.D.N.Y. Oct. 7, 2015). As established in **Section I.C.**, NCUA did not make a mistake, but, rather, made a deliberate, tactical choice to attempt to pursue claims derivatively. Relation back is unavailable under these circumstances. "[T]he mistake requirement makes clear that FRCP 15(c) does not exist merely to keep the door open for any tardy plaintiff … ." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 1994 WL 324018, *3 (S.D.N.Y. July 6, 1994).

Thus, for all the foregoing reasons, NCUA's motion under FRCP 15 should be denied.

## IV.   NCUA'S CLAIMS FAIL UNDER FRCP 12 (OR AS FUTILE)

### A.   NCUA's Contract Claims For Breaches of R&Ws Or EODs Fail

NCUA's contract claims are precluded by the plain terms of the contracts it alleges were breached, i.e., the PSAs. Prior to a defined "Event of Default" ("EOD"), a trustee's obligations are strictly limited to those explicitly found in the PSAs (Elliott Assocs. v. J. Henry Schroder Bank & Tr. Co., 838 F.2d 66, 70 (2d Cir. 1988)), and the PSAs here provide that "no implied covenants or obligations shall be read into [the PSAs] against the Trustee." Dkt.#114-10 [HVMLT 2006-6 PSA §8.1(i)]; see also Fixed Income Shares: Series M v. Citibank, N.A., 69 N.Y.S.3d 288, 290 (1st Dep't 2018) ("Fixed Income Shares 1st Dept.") ("the PSA bars covenants from being implied in the PSA against defendant [RMBS trustee]").

The PSAs also limit the Trustee's obligations with respect to the Warrantors' R&Ws concerning the nature and quality of the loans to be conveyed to the Trusts.[15] The PSAs provide

---

[15]     NCUA refers to the parties that made representations and warranties ("R&Ws") about the mortgage loans in the Covered Trusts as "responsible parties." ¶95. "Warrantor" is used herein.

that the Trustee is entitled to rely upon such R&Ws and has no obligation to investigate their veracity.  See, e.g., id. [§§8.1, 8.2(v)].  In fact, the Trustee expressly disclaims any R&Ws regarding the loans.  See, e.g., id. [§8.3].

Likewise, the PSAs limit the Trustee's obligations with respect to the servicing of the mortgage loans in the Covered Trusts by mortgage loan servicers ("Servicers").  The Trustee has no obligation to service loans or supervise Servicers.  See, e.g., Dkt.#114-10 [HVMLT 2006-6 PSA §8.1(iv) ("none of the provisions contained in this Agreement shall in any event require the Trustee to perform, or be responsible for the manner of performance of, any of the obligations of the Servicer under this Agreement.")].  Rather, Servicers annually certify that they complied with the servicing criteria.  See, e.g., id., [§§3.16 & 3.17].  The PSAs provide that the Trustee may "conclusively rely" upon the accuracy of such a certificate.  See, e.g., id., [§8.1(i)].

Significantly, despite this PSA language, NCUA's contract claims are based upon what the Trustee would have learned had it conducted an investigation into matters concerning the specific loans at issue here.  But, prior to an EOD, the Trustee is not obligated to initiate an investigation until "Certificateholders" with the required percentage of voting rights direct such an investigation "in writing" and agree to indemnify the Trustee.  See, e.g., id. [§8.2(iii), (v), & §8.1(iii)-(iv)].  Other "Certificateholders" have availed themselves of this process after the "Certificateholders" conducted their own investigation into the loans.[16]

### 1.    Binding, Intervening New York State Court Appellate Decisions Preclude Most Of NCUA's Breach Of Contract Claims

---

[16]    See Deutsche Bank Nat'l Tr. Co. v. Morgan Stanley Mortg. Capital Holdings LLC, No. 651959/13 (N.Y. Sup. Ct. N.Y. Cty. Nov. 6, 2013), Dkt.#13 (as to the MSAC 2007-NC3 Trust).  See GarbEx. 7.  NCUA conducted such investigations, and has sued warrantors over R&Ws.  NCUA has brought at least nine such lawsuits where at least one of the Covered Trusts was at issue.  See GarbEx. 8.  This demonstrates that NCUA appreciated that it bore this burden.  For example, in NCUA v. Morgan Stanley & Co., 13-cv-2418 (D. Kan. Nov. 17, 2014), Dkt.#138 (GarbEx. 9), NCUA sued warrantors, bringing claims relating to two of the Covered Trusts at issue here after NCUA conducted its own investigation into the loans in those trusts.  ¶¶313-35; see also Dkt.# 114-6, p.31 [NGN Trust 2011-R2 Offering Memorandum (see ¶32 & n.3) (describing NCUA's RMBS investigations)].

A federal court sitting in New York must follow a decision from a New York intermediate appellate court unless it finds persuasive evidence that the New York Court of Appeals would reach a different conclusion.  10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co., 634 F.3d 112, 120 n.10 (2d Cir. 2011).  NCUA relies on several decisions from this District that have denied motions by trustees to dismiss breach of contract claims to argue its amendments are not futile.  NCUA Br. at 3 n.2.  However, those federal decisions largely predate three contrary decisions of the New York Appellate Division in similar cases, each of which involved claims by RMBS investors against trustees, and each of which was interpreting New York law, which governs the PSAs.  Read together, these three decisions make clear that New York State Courts view an RMBS trustee's duties under a PSA much more narrowly than their Federal counterparts.  Specifically, these courts **rejected** the notions that:  (i) an RMBS trustee's alleged general awareness of problems through publicly-available information is sufficient to give the trustee the knowledge required to trigger the trustee's obligations as to specific breaches; (ii) an RMBS trustee has an alleged duty to investigate (so-called "nose to the source") potential breaches; and (iii) an RMBS trustee should be held to a post-EOD standard, even though the elements of an EOD have not allegedly occurred, because the trustee failed to send a notice that could trigger an EOD, rejecting the so-called "prevention doctrine" in this context.

In Commerce Bank v. Bank of New York Mellon, 35 N.Y.S.3d 63 (1st Dep't 2016) ("Commerce 1st Dept."), the First Department affirmed dismissal of contract claims by investors against an RMBS trustee and reversed the denial of the trustee's motion to dismiss as to other contract claims.  The Commerce 1st Dept. plaintiffs alleged contract claims based upon (i) the alleged occurrence of EODs and the trustee's alleged discovery of those EODs and failure to provide notice of them to certificateholders, and (ii) the trustee's alleged discovery of R&W

breaches and failure to provide notice of them to certificateholders.

As to the first theory, the court affirmed dismissal of contract claims based on the occurrence of EODs and the trustee's alleged failure to give notice of EODs.  The court found that plaintiffs failed to allege facts demonstrating any EODs in the first place, but rather only alleged "events that, with time, might ripen into [EODs]."  Commerce 1st Dept., 35 N.Y.S.3d at 64-65.  Moreover, the court further held that, even if the plaintiffs had adequately alleged EODs, their contract claim would still fail because the PSAs provided that the trustee would only be deemed to have knowledge of an EOD if a "Responsible Officer" of the trustee received written notice of an EOD and plaintiffs failed to allege any such written notice.  Id.  As to the argument that the trustee should have learned of EODs on its own, critically, the court held that an RMBS trustee has no duty to investigate potential breaches of a PSA:  "the trustee of an RMBS ... trust does not have a duty to 'nose to the source'" to determine "if [EODs] … occurred."  Id., at 65.  As to the second theory, concerning R&W breaches, the court reversed the trial court's finding that the plaintiffs had adequately alleged the trustee's discovery of R&W breaches through awareness of general information about potential breaches.[17]  The First Department held that the plaintiffs failed to adequately allege that the trustee actually discovered R&W breaches (Commerce 1st Dept., 35 N.Y.S.3d at 64), and rejected the argument that the trustee should have investigated potential R&W breaches.  Id., at 65 (trustee does not have a duty to "nose to the source" to determine if "PSA breaches" occurred).[18]

---

[17]     Commerce Bank v. Bank of New York Mellon, 2015 WL 5770467, *3 (N.Y. Sup. Ct. N.Y. Cty. Oct. 2, 2015) ("Commerce Sup.").

[18]     In a letter to the Court, NCUA attempted to distinguish Commerce 1st Dept. on the basis that "this case is materially different from [Commerce 1st Dept.] and NCUA's allegations are far more robust" and criticized the decision as "cryptic."  Dkt.# 82, at 2.  The Trustee explained to the Court that, to the contrary, the Commerce 1st Dept. court was ruling on allegations similar to NCUA's in this case.  GarbEx. 10, Dkt.#85.  The Trustee further demonstrated that Commerce 1st Dept. was not cryptic when understood in the context of the Supreme Court's decision in that case, which the Trustee described for the Court in detail.  GarbEx. 11, Dkt.#74.

Also, in January 2018, the First Department in <u>Fixed Income Shares 1st Dept.</u>, a case by investors against an RMBS trustee, considered and rejected an argument under the so-called "prevention doctrine," and also affirmed the dismissal of plaintiffs' contract claims premised upon the trustee's alleged discovery of EODs and failure to provide notice of them to certificateholders.  As to the prevention doctrine, like NCUA (<u>see</u> ¶480), the investors argued that, even though they did not plead the elements of an EOD (<u>i.e.</u>, servicer breach, notice to servicer, and servicer's failure to cure within the specified period), the trustee should nonetheless be held to a post-EOD standard because the trustee <u>could</u> have sent a notice of breach to the servicer but did not.  <u>Fixed Income Shares 1st Dept.</u>, 69 N.Y.S.3d at 289-90.  <u>First</u>, the court held that the PSA provision cited by plaintiffs "does not <u>require</u> defendant to give that notice to cure; it merely defines [an EOD]." <u>Id.</u>, at 290.[19]  <u>Second</u>, the court held that the prevention doctrine is a variant of the implied covenant of good faith, which did not apply, because PSAs expressly bar the imposition of implied duties.  <u>Id.</u>; <u>see</u> Dkt.#114-10 [HVMLT 2006-6 PSA §§8.1(i) ("no implied covenants or obligations shall be read into this Agreement against the Trustee") & 8.2(viii) ("the right of the Trustee ... to perform any discretionary act ... shall not be construed as a duty")].  <u>Third</u>, the court held that that the prevention doctrine requires "<u>active conduct</u> ... preventing or hindering the fulfillment of the condition" and held that the trustee's "<u>failure to send a notice to cure to the servicers is not 'active conduct</u>.'" <u>Id.</u>  <u>Fourth</u>, plaintiffs could not rely upon the trustee's alleged failure to send a notice to the servicer to hold the trustee to a post-EOD standard of care when plaintiffs themselves could have sent a notice but did not.  <u>Id.</u>

---

[19]    As to the threshold issue of whether the trustee discovered breaches, the First Department left undisturbed the Supreme Court's holding that "[g]eneral knowledge [of problems], under the express terms of the PSA, is simply insufficient" to put the trustee on notice of events that could ripen into an EOD, and that a trustee has "no duty to nose to the source." <u>Fixed Income Shares: Series M v. Citibank, N.A.</u>, 61 N.Y.S.3d 190, *5 (N.Y. Sup. Ct.  N.Y. Cty. June 26, 2017) ("<u>Fixed Income Shares Sup.</u>").

Finally, in October 2018, in <u>Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n</u>, 2018 WL 5046640 (1st Dep't Oct. 18, 2018) ("<u>Blackrock 1st Dept.</u>"), the First Department affirmed the Supreme Court's rejection of the plaintiffs' contract claims premised upon the "prevention doctrine."  <u>Id.</u>, *1.  That court again found that "the PSAs do not require [the trustee] to send a notice to cure, but merely designate it as one of the parties that is permitted to send such notice."  <u>Id.</u>  The court again noted that certificateholders were also permitted to send a notice, and again held that the prevention doctrine requires the trustee's "active conduct" and the "<u>failure to send a notice … is not 'active conduct.</u>'"  <u>Id.</u>

Following the clear, controlling authority of the Appellate Division, this Court should dismiss NCUA's breach of contract claims, which are premised upon (i) the Trustee's alleged general awareness of problems, (ii) a duty to investigate or "nose to the source" on the Trustee's part, and (iii) the "prevention doctrine."

### a.      NCUA Fails To State A Claim For Breach Of The Trustee's Post-EOD Obligations

NCUA's breach of contract claim based upon the Trustee's alleged breach of its <u>post</u>-EOD obligations (¶¶410-80) should be dismissed because NCUA fails to allege that an EOD occurred or that the Trustee had knowledge or notice of EODs, <u>and</u> because the Trustee did not have an obligation to provide notice to Servicers of events that could ripen into an EOD.

**<u>No EOD Because of Lack of Notice to Servicers</u>**.  NCUA does not allege that Servicers were on actual notice of a breach of the PSAs or had an opportunity to cure that breach, as required to allege an EOD.  Rather, NCUA alleges that the Trustee failed to provide notice of breaches to servicers—relying upon the "prevention doctrine"—to attempt to allege EODs. ¶480.  Critically, under the Appellate Division decisions, NCUA cannot rely upon the "prevention doctrine" because NCUA does not allege that the Trustee engaged in active conduct

to prevent an EOD from occurring.  Fixed Income Shares 1st Dept., 69 N.Y.S.3d at 290;

Blackrock 1st Dept., 2018 WL 5046640, *1.  Thus, NCUA's post-EOD contract claims fail.

**No Knowledge of EOD by the Trustee's Responsible Officer**.  The PSAs provide that

the Trustee shall not be charged with knowledge of any EOD unless a "Responsible Officer" of

the Trustee has "actual knowledge" or "written notice" of the EOD.  Dkt.#114-10 [HVMLT

2006-6 PSA, §8.1(iv)].  NCUA fails to allege actual knowledge or written notice.  Instead,

NCUA alleges that the Trustee had knowledge of EODs through general, publicly-available

information like the existence of government investigations of servicers.  ¶¶470-480.  But, in

Commerce 1st Dept., the First Department rejected the contention that similar general, publicly-

available information, including "as described in multiple government actions," could provide

knowledge of an EOD.  Id., 35 N.Y.S.3d at 64-65[20]; see also Fixed Income Shares Sup., 61

N.Y.S.3d 190, *5 (dismissing breach of contract claim fails with respect to post-EOD obligations

because plaintiffs failed to plead the trustee's knowledge or notice; "[g]eneral knowledge, under

the express terms of the PSA, is simply insufficient").[21]  Thus, NCUA's contract claims premised

upon the Trustee's knowledge of EODs fails.

**No Obligation to Provide Notice of Events That Could Ripen Into an EOD**.  NCUA

---

[20]      The lower court's decision, Commerce Sup., explained that the general, publicly available information also included "various sources including government investigations and lawsuits, private lawsuits, and news media reports."  Commerce Sup., 2015 WL 5770467, *4

[21]      NCUA makes allegations about a January 17, 2017 settlement agreement between the DOJ and Deutsche Bank AG.  ¶¶13, 111, 486-90.  That settlement stemmed from a DOJ investigation into "the marketing, structuring, sponsorship, arrangement, underwriting, issuance, and sale" of certain RMBS.  See Settlement Agrmt., available at https://www.justice.gov/opa/press-release/file/928096/download, at p. 1)) and concerned the conduct of other entities, not the Trustee.  See Settlement Agreement, Stmt. Of Facts (available at https://www.justice.gov/opa/press-release/file/927271/download).  Therefore, it is not surprising that the settlement does not mention the Trustee.  Moreover, the Covered Trusts at issue here were not at issue in the settlement.  Compare Dkt.#114-2 with list of trusts at issue in settlement (available at  https://www.justice.gov/opa/press-release/file/927286/download).  Because the settlement does not concern, let alone mention, the Trustee or the Covered Trusts, it does not, as NCUA suggests (¶111), support any inference that a "Responsible Officer" of the Trustee had "actual knowledge" or "written notice" of EODs as to the Covered Trusts.  The settlement also does not support NCUA's conflict of interest claim (¶¶486-90), because this type of speculation regarding conflicts has been rejected.  See **Section IV.C.3.**

alleges that the Trustee should be held to a post-EOD standard because it allegedly failed to provide notice of events that could ripen into EODs.  ¶480.  But, contrary to NCUA's allegations, the PSAs do not impose such a duty upon the Trustee.  In <u>Commerce 1st Dept.</u>, the court dismissed a contract claim premised upon the defendant trustee's alleged obligation to provide notice of a letter describing "events that, with time, might ripen into [EODs]."  35 N.Y.S.3d at 64-65.  Thus, NCUA's contract claims premised upon the Trustee's alleged failure to provide notice of events that could ripen into EODs fails.

      **b.**      **NCUA Fails To State A Claim For Breach Of The <u>Trustee's Pre-EOD Obligations Concerning R&W Breaches</u>**

NCUA has not sufficiently alleged that the Trustee had knowledge of breaches of R&Ws. To begin with, NCUA's allegations about publicly-available information regarding practices in the mortgage industry, default rates, delinquencies, and ratings downgrades (¶¶110-365) are insufficient to establish knowledge of <u>specific</u>, actual breaches of R&Ws.  <u>See</u> <u>Commerce 1st Dept.</u>, 35 N.Y.S.3d at 65; <u>Fixed Income Shares Sup.</u>, 61 N.Y.S.3d 190, *5 (allegations of general, publicly-available information insufficient to establish trustee's knowledge of specific breaches); <u>Commerce Sup.</u>, 2015 WL 5770467, *4 (same).  And, prior to an EOD, the Trustee does not have a duty to investigate potential R&W breaches, absent written direction from, and indemnification by, certificateholders with the requisite percentage of voting rights.  <u>Commerce 1st Dept.</u>, 35 N.Y.S.3d at 65 (the trustee "does not have a duty to nose to the source" to determine if breaches occurred); <u>Fixed Income Shares Sup.</u>, 61 N.Y.S.3d 190, *5 (same).

      **2.**      **NCUA's Claims Based Upon <u>Allegedly Incomplete Mortgage Loan Files Fail</u>**

NCUA alleges that EODs occurred when the Trustee allegedly failed to "take physical possession of many of the operative documents for the mortgage loans in the trusts" (¶529(a)), and failed to provide notice of document defects to "Certificateholders."  ¶529(f).  However,

such failures are not EODs under the PSAs.  See, e.g., Dkt.#114-10 [HVMLT 2006-6 PSA §7.1];

see also Bakal v. U.S. Bank Nat'l Ass'n, 2018 WL 1726053, *10-11 (S.D.N.Y. Apr. 2, 2018)

(Castel, J.) (dismissing plaintiff's similar contract claims based on trustee's alleged failure to

take physical possession of mortgage files and certify their contents because the governing PSA

"[did] not create an obligation on the part of [the trustee] to possess mortgage documents or

undertake its own, independent review for document defects"); Phoenix Light SF Ltd. v. Bank of

N.Y. Mellon, 2015 WL 5710645, *5 (S.D.N.Y. Sept. 29, 2015) (Caproni, J.) (dismissing

plaintiffs' contract claim based on the trustee's alleged duty to take possession of complete loan

files, finding there was no such duty).  Thus, NCUA's claim that the Trustee's alleged failures to

take physical possession of mortgage loan documents were EODs must fail.

      Moreover, even generously applying a six-year statute of limitations, claims concerning

the Trustee's obligations as to mortgage loan files are time-barred because they all accrued more

than six years before NCUA commenced this action.  As NCUA alleges, within a certain number

of days after a Covered Trust's "closing date," the Trustee, or a custodian, had to review all the

loan files and deliver an "exception report" listing all missing or defective loan file documents.

At that time, the Trustee had to enforce other deal parties' obligations to cure any document

deficiencies or repurchase any loans with document deficiencies.  NCUA alleges that the Trustee

breached this obligation.  SAC ¶¶ 64-73 & 97-109.

      Taking NCUA's allegations as true, any breach by the Trustee would have occurred (and

thus any claims would have accrued) on or shortly after the dates the final exception reports were

issued, which were all more than six years before NCUA brought this action.  "[A] breach of

contract cause of action accrues at the time of the breach," even if "no damage occurs until

later." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402-03 (1993).[22]

Here, the Covered Trusts all closed by July 19, 2007, and the exception reports all had to be delivered by January 8, 2008 (GarbEx. 13), more than six years before NCUA commenced this action on November 7, 2014 (even if such claim could relate back to that date, and it cannot). Any obligation the Trustee had with respect to incomplete mortgage loan files arose on or shortly after the dates of the exception reports. If the Trustee breached any such obligation (and it did not), it did so at those times, and thus the claims also accrued at those same times – all more than six years before NCUA commenced this action. Therefore, any claims based upon incomplete mortgage loan files are time-barred.

### 3. NCUA's Contract Claims Fail To The Extent Based On The Trustee's Alleged Failure To Provide Accurate Reports Under Regulation AB

NCUA claims that alleged violations of Reg. AB can serve as a basis for its contract claim. ¶¶57, 529(d). However, no decision from any jurisdiction has applied any theory of recovery where a defendant was found liable for violating Reg. AB. In contrast, defendants have used Reg. AB as a shield to liability. See, e.g., Pub. Employees' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc., 2011 WL 135821, *10 (S.D.N.Y. Jan. 12, 2011). There is no precedent for using Reg. AB offensively. Even if NCUA had a viable theory of recovery under Reg. AB, its bald allegations that the Trustee violated Reg. AB by failing to provide accurate remittance and other reports (¶¶57, 529(d)) fail because NCUA does not identify any facts detailing how remittance or other reports required by Reg. AB were inaccurate or failed to satisfy any requirement under Reg. AB. Furthermore, NCUA's Reg. AB contract claims are time-barred

---

[22]   In cases by other RMBS investors against trustees, courts have held that claims based upon alleged incomplete mortgage loan files were time-barred. See, e.g., Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 709 (S.D.N.Y. 2016) (Koeltl, J.) (claims time-barred where trusts closed by July 2007 and final exception report was issued in April 2008, more than six years before the December 2014 complaint); Blackrock Balanced Capital Portfolio (FI) v U.S. Bank Nat. Ass'n, 2018 WL 452001, *3 (N.Y. Sup. Ct. Jan. 17, 2018) (same).

because, for each Covered Trust, the issuer filed a notice of suspension of duty to file reports

under Reg. AB pursuant to 17 C.F.R. § 249.323 more than six years before NCUA commenced

this action on November 7, 2014.  GarbEx. 14; <u>Royal Park Investments SA/NV v. HSBC Bank</u>

<u>USA, Nat. Ass'n</u>, 109 F.Supp.3d 587, 608 (S.D.N.Y. 2015).[23]

      **B.**      <u>**NCUA's Contract Claims As To The Trustee's Right To Indemnification Fail**</u>

      For the first time in the PSAC, NCUA attempts to add Counts IV and V challenging the

Trustee's entitlement to indemnification for its legal fees and expenses (collectively, the

"Indemnification Claims").[24]  NCUA's Indemnification Claims are flawed and untimely.

      **1.**      **Numerous Courts Have Acknowledged An RMBS Trustee's**
                  **Entitlement To Indemnification In Similar Circumstances**

      NCUA's amendment to add these claims would be futile because numerous courts that

have considered this issue have acknowledged RMBS trustees' entitlement to indemnification.

      NCUA alleges that the Trustee is not entitled to indemnification because (i) NCUA is the

Trustee's indemnitor and, relying upon <u>Hooper Associates, Ltd. v. AGS Computers, Inc.</u>, 74

N.Y.2d 487 (1989), the PSAs are not "unmistakably clear" that they provide for first-party

indemnification (¶¶495-511), and (ii) NCUA alleges that the Trustee was negligent and engaged

in willful misconduct, bringing the Trustee's legal fees and expenses in defending this action

within the indemnification's carveout for negligence and willful misconduct.  ¶¶515-517, 552.

      In <u>PIMCO Absolute Return Strategy v. Wells Fargo Bank</u>, No. 654743/17 (N.Y. Sup. Ct.

N.Y. Cty.) ("<u>PIMCO/WF</u>"), the court dismissed an action brought by an RMBS investor (the

---

[23]     As to eight Covered Trusts, NCUA's claim about the Trustee's alleged failure to comply with Reg. AB
fails for another reason.  Reg. AB only governs securitizations occurring after December 31, 2005.  17 C.F.R.
§229.1100, <u>et seq.</u>; 70 Fed. Reg. 1506-01 (applying to "[a]ny registered offering of asset-backed securities
commencing … after December 31, 2005").  Eight of the Trusts at issue here closed on or before December 31,
2005 and, therefore, do not fall within Reg. AB's purview.  <u>See</u> GarbEx. 15 (establishing closing dates).

[24]     Count IV, for "Declaratory Judgment Regarding Right To Indemnification From The Trust Funds" and
Count V, for "Breach Of Contract Regarding Unlawful Withdrawals From Trust Funds And Disgorgement."

"PIMCO Plaintiffs") asserting the same claims as NCUA.  The court found that the PIMCO

Plaintiffs were <u>not</u> first parties to the PSAs, holding they "didn't execute the PSA. … [T]his is a

<u>third-party action</u> as far as Wells Fargo is concerned."  GarbEx. 16 [Tr. of 11/13/17 hearing in

<u>PIMCO/WF</u>], at 19:14-25.  Further to this argument, the court stated that it had read <u>Hooper</u>,

upon which this argument was based, and found that "[i]t doesn't help [plaintiffs]."  GarbEx. 16,

at 14:18-19.  The court held that a claim by a certificateholder is exactly the type of claim for

which an RMBS trustee is entitled to be indemnified: "[t]hat's exactly the situation where the

certificate holders would be suing" (GarbEx. 16, at 20:12-13); "[t]his is exactly the kind of claim

that a certificate holder would bring."  <u>Id.</u>, at 21:7-8.

As to the indemnification's carveouts, the court held that the exceptions for negligence

and willful misfeasance were of no help to the PIMCO Plaintiffs <u>prior</u> to a final adjudication:

> In order for the plaintiffs to prevail in this action, you have to allege **and prove** that
> Wells Fargo's activities fall within the purview of the carveout.  …  Ultimately, at the
> end of the road, perhaps, if there is a **finding** that Wells Fargo has acted in a way that you
> say they've acted, well, you can certainly recover.  But … you have to **establish** that they
> don't have the right otherwise granted to them under the PSA to take these payments out.
> GarbEx. 16, at 18:3-17.

Courts in this District have also confirmed RMBS trustees' right to indemnification in

nearly identical cases.  First, in <u>Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n</u>

("<u>RPI/HSBC I</u>"), the court found that the "governing agreements vest in HSBC a right of

indemnification for legal fees."  2017 WL 9991531, *3 (S.D.N.Y. Jan. 26, 2017).  Second, in

<u>Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.</u> ("<u>RPI/WF I</u>"), the court found that

"the governing agreements vested in Wells Fargo a right of indemnification for legal fees."  2017

WL 953514, *6 (S.D.N.Y. Mar. 9, 2017).  And, in <u>Royal Park Investments SA/NV v. Deutsche</u>

<u>Bank Nat'l Trust Co.</u>, No. 14-cv-4394 (S.D.N.Y.) ("<u>RPI/DBNTC I</u>"), the plaintiff challenged the

trustee's entitlement to indemnification for legal fees and expenses, arguing that as a purported

certificateholder, its claims were first-party claims.  <u>RPI/DBNTC I</u>, Dkt.#340, at 2-3; <u>see also</u>

GarbExs. 17-21 (full briefing).  The Court denied the motion, finding that "an action where the

certificate holders sue the trustee for failing to enforce the repurchase remedy"—the exact

scenario presented by NCUA's other claims herein—is an action brought by a <u>third party</u> to the

trust agreement.  GarbEx. 21 (<u>RPI/DBNTC I</u>, Dkt.#359, at 17:18-18:10).[25]

> **2.     The Trustee's Indemnification
> Is Lawful And Provided For Under The PSAs**

Under the PSAs, it is clear that the Trustee "shall be indemnified by the Trust Fund and

held harmless" for <u>any</u> legal fees or expenses incurred in connection with <u>any</u> legal action or

claim relating to: (i) the PSAs, (ii) the Certificates, or (iii) the performance of any of the

Trustee's duties under the PSAs.  <u>See</u>, <u>e.g.</u>, GarbEx. 22 [Trust Agreement for the BCAP Trust

LLC 2007-AA1 (the "BCAP 2007-AA1 TA"), §8.06].[26]

The waterfall provisions of the PSAs entitle the Trustee to be indemnified for its legal

fees and expenses <u>before</u> any funds are distributed to certificateholders.  Certificateholders are

only entitled to distributions "to the extent of the Group I Available Funds."  GarbEx. 22, §4.01.

In turn, the term "Group I Available Funds" is defined to be funds net of amounts payable to the

Trustee (among other expenses), and are to be "reduced by … amounts" as to which the Trustee

is "entitled to be paid or reimbursed."  GarbEx. 22, p. 43-44.  And, the PSAs provide that the

Trustee "shall be indemnified by the Trust Fund" for <u>any</u> legal fees or expenses as they are

---

[25]     In <u>VNB Realty, Inc. v. U.S. Bank Nat'l Ass'n</u>, 2016 WL 3912028 (D.N.J. July 19, 2016), an RMBS
investor challenged a trustee's right indemnification.  The investor argued that, because it alleged negligence, the
trustee was not entitled to indemnification because the relevant provision excepted "willful malfeasance, bad faith,
or negligence."  <u>Id.</u>, *1.  The court found that mere allegations of negligence did not preclude indemnification
because, at the time of the investor's motion, there was "no final disposition on the merits."  <u>Id.</u>, *3, n.2.

[26]     To the extent NCUA attempts to challenge the Trustee's entitlement to indemnification for its legal fees
and expenses in defending claims by other purported investors as to trusts <u>not</u> at issue in this action (¶¶548-51),
NCUA lacks standing to assert those claims and they should be dismissed.

incurred (GarbEx. 22, §8.06), i.e., before any funds are distributed to certificateholders.

As to NCUA's allegations that the Trustee is not entitled to indemnification for its legal fees and expenses in defending against NCUA's mere allegations of negligence and willful misconduct (¶552), the PSAs exclude from the Trustee's indemnification rights only "loss, liability, or expense … **incurred because of** willful misfeasance, bad faith, or negligence in the performance of any of the Trustee's duties."  GarbEx. 22, §8.06.  Critically, prior to an adjudication on the merits, no legal fee or expense can be said to have been "<u>incurred because of</u>" the Trustee's willful misfeasance or negligence.

NCUA incorrectly alleges that the Court should reject the Trustee's interpretation of the indemnification provision because it is "commercially unreasonable."  ¶513.  Critically, the indemnification provisions were the result of negotiations among the deal parties to the PSAs. Indeed, the Trustee's robust right to indemnification makes sense in light of the Trustee's modest relative other compensation—mere "pocket change in comparison to all other economic aspects of [the] transaction."  <u>CFIP Master Fund, Ltd. v. Citibank, N.A.</u>, 738 F.Supp.2d 450, 474 (S.D.N.Y. 2010).[27]  The Trustee's negotiated indemnification is not commercially unreasonable.

### 3. The "Unmistakably Clear" Rule Does Not Apply Here Because Plaintiffs Are Not The Trustee's Indemnitors; In Any Event, The <u>Trustee's Entitlement To Indemnification Is Unmistakably Clear</u>

NCUA alleges that, under <u>Hooper</u>, an indemnification provision should not be read to include first-party claims unless it is unmistakably clear that it applies to first-party claims. ¶502.  NCUA further alleges that NCUA is the Trustee's indemnitor, making NCUA's claims first-party claims.  ¶¶496-507.  Finally, NCUA alleges that it is not unmistakably clear that the indemnification provisions of the PSAs apply to first-party claims.  ¶¶508-11.  These theories

---

[27]     For that same reason, the PSAs provide that "the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties."  GarbEx. 22, §8.03(f).

fail because, as NCUA admitted, it is <u>not</u> a party to the PSAs.  FAC, ¶582 ("As current holders

of certificates issued by each trust, Plaintiffs are … third party beneficiaries under the PSAs").

Moreover, this theory is inapposite because the Trustee's source of indemnification is through

the "Trust Fund" of the Covered Trusts, not from certificateholders generally.  <u>Hooper</u> therefore

does not apply.  And, in any event, the Trustee's indemnification <u>is</u> unequivocal.

### a.      The Trustee's Indemnity Is Through<br><u>The Covered Trusts, Not From Certificateholders</u>

NCUA's reliance on the text of the Certificates themselves (¶¶496-99) is misplaced.

They state: "[t]his Certificate does not purport to summarize the [PSA] and reference is made to

the [PSA] for the interests, rights and limitations of rights, benefits, obligations and duties

evidenced thereby."  GarbEx. 22, at "Exhibit A."  In any event, the Certificates only reinforce

the waterfall provisions of the PSAs, providing for the distribution of payment in "<u>the amount

required to be distributed to Holders of Certificates … pursuant to the [PSA]</u>."  GarbEx. 22.

NCUA alleges unpersuasively that certificateholders are the Trustee's indemnitors

because they are the beneficial owners of the Trust Funds.  ¶¶495-96, 505, 549.  But, the

certificateholders' interests in the Covered Trusts' Trust Funds are delineated in the PSAs.  And,

the PSAs' waterfall provisions provide that the Trustee has an interest in monies paid on the

underlying mortgage loans before distribution to certificateholders.  <u>See</u> <u>supra</u> **<u>Section IV.B.2</u>**.

NCUA alleges that the "Covered Trusts" cannot be the source of the Trustee's

indemnification because they are not juridical entities and therefore "cannot own property, enter

contracts, or sue or be sued."  ¶495.  This theory is irrelevant.  As the Trustee demonstrated,

certificateholders are not the Trustee's indemnitors.  Rather, the Trustee is indemnified from the

cash flows of the Covered Trusts through the PSAs' waterfall provisions.

NCUA's attempt to set up the argument that the PSAs should be construed in NCUA's

favor as the non-drafting party (¶503) fails.  **First**, the contra proferentem doctrine applies only to ambiguous contracts.  The Trustee demonstrated that the PSAs unambiguously provide for the Trustee's indemnification.  **Second**, the doctrine is not applicable because NCUA is not a party to the PSAs.  It is at most a third-party beneficiary.[28]  **Third**, the PSAs were drafted primarily by other deal parties to the PSAs, such as the sponsor or depositor.  And, the indemnification provision was not really "drafted" by any parties to the PSAs for the Covered Trusts; it is based upon a model in Commentaries on Model Debenture Indenture Provisions 1965.[29]

### b.    The Trustee's Indemnification Is Unmistakably Clear

Assuming arguendo that NCUA is a first-party, NCUA's allegations (¶¶504-11) fail because the Trustee's indemnification is unequivocal.  Indeed, as Hooper makes clear, a first-party indemnification can be "clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances."  74 N.Y.2d at 491-92.  The language of the Trustee's right to indemnification indicates that it is not limited to third-party claims.[30]

Hooper is also easily factually distinguishable.  **First**, Hooper addressed a dispute between parties to an indemnity agreement; NCUA is not a party to the PSAs.  **Second**, the indemnification provision in Hooper was much narrower than the Trustee's indemnification. The indemnity provision in Hooper applied to only five types of actions, none of which could be construed solely as "claims between the parties themselves."  74 N.Y.S.2d at 487, 492.

---

[28]    Gold v. Rowland, 325 Conn. 146, 197 (2017) ("It would be a perverse rule indeed, however, if any person claiming to be the intended beneficiary of an ambiguous contract to which he was not a party were automatically entitled to have the contract construed in his favor precisely because he had played no part in its drafting.").

[29]    That provision indemnifies a trustee for, and holds it harmless against, "any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder."  Commentaries, p. 262.

[30]    Square Mile Structured Debt (One), LLC v. Swig, 973 N.Y.S.2d 39, 40 (1st Dep't 2013) (indemnification clause applicable to "intra-party disputes" in light of broad scope); Sagittarius Broad. Corp. v. Evergreen Media Corp., 663 N.Y.S.2d 160, 161 (1st Dep't 1997) (clause could not "be interpreted as limited to third-party claims").

Moreover, the court found that other indemnity provisions—e.g., provisions requiring notice to the indemnitor and authorizing the indemnitor to assume the defense of claims—would have been rendered "meaningless" if the indemnification provision extended to litigation between the parties. Id., at 492-93. In contrast to the Hooper provisions, the Trustee's indemnification provisions clearly evince the intent to extend indemnification to first-party disputes. The Trustee's indemnification contains no terms—such as a notice requirement or assumption-of-defense provision—that would make sense only in the context of third-party claims. Also, by including within its scope claims relating to the PSAs and claims relating to the Trustee's "performance" under the PSAs, the Trustee's indemnification unequivocally includes first-party contract claims. Thus, even if the indemnification was not clear on its face (and it is), here, unlike in Hooper, the Trustee's right to indemnification can be "implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." Id. at 491-92.[31]

### 4. NCUA's Challenge To The Trustee's Entitlement To Indemnification Is Untimely Under FRCP 15

NCUA unduly delayed in seeking to challenge the Trustee's entitlement to indemnification because it is "attempt[ing] to assert new facts or theories that it could have raised sooner." Pokerstars, 2016 WL 4411421, *6. NCUA offers no excuse for its delay. NCUA has long known about the Trustee's entitlement to indemnification for its legal fees and expenses. Indeed, in the Trustee's May 2015 motion to dismiss, it made NCUA aware that the Trustee is indemnified for all of its legal fees and expenses.[32]

---

[31]    See also Crossroads ABL, LLC v. Canaras Capital Mgmt., LLC, 35 Misc.3d 1238(A) (N.Y. Sup. Ct. N.Y. Cty. 2012) (distinguishing Hooper on these grounds), aff'd, 963 N.Y.S.2d 645 (1st Dep't 2013).

[32]    In demonstrating why a trustee is not obligated to investigate potential breaches absent direction and indemnification, the Trustee stated that "the only funds available to finance such an investigation are trust assets in which the Trustee has no beneficial interest," "an investigation would consume monies that would otherwise be available for distribution to 'Certificateholders' (the Trustee is not required to expend its own funds)," and "[t]his provision also protects the Trustee (including from lawsuits like this)." Dkt.#47, p. 8.

NCUA would also have been aware of challenges by other investor plaintiffs to defendant RMBS trustees' entitlement to indemnification for their legal fees and expenses. Beginning in June 2016, investor plaintiffs in actions against RMBS trustees began to challenge the trustees' entitlement to indemnification.  See VNB, 2016 WL 3912028 July 2016); GarbExs. 20-21, RPI/DBNTC I, Dkt.## 355 & 359 (March 2017).  Moreover, beginning in December 2017, NCUA itself attempted to intervene in two actions by other investors against RMBS trustees, and filed a purported amicus brief in a third action, all in order to address this indemnification issue.[33]  Yet, here, NCUA waited until October 2018, making its attempt untimely.

### C.    NCUA's Tort Claims All Fail

#### 1.    NCUA's Tort Claims Are Barred By The Economic Loss Doctrine

NCUA's tort claims (for breach of fiduciary duty, negligence, and gross negligence) should be dismissed because a plaintiff cannot recover in tort for purely economic losses.  BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F.Supp.2d 486, 505 (S.D.N.Y. 2013) (Sweet, J.).  Thus, just as other courts in this District have done in cases by RMBS investors against trustees, this Court should dismiss NCUA's tort claims as barred by the economic loss doctrine.  See Blackrock v. DBNTC, No. 14-cv-09367, Dkt.# 215, at 5:17-6:16 (S.D.N.Y. Feb. 2, 2017) (Furman, J.) (dismissing fiduciary duty claim alleging conflict of interest), GarbEx. 29; NCUA-U.S. Bank, 2016 WL 796850, *12 (S.D.N.Y. Feb. 25, 2016) (Forrest, J.) ("while the cause of action for breach of fiduciary duty may arise from common law duties and not from the PSA, the injury and the manner in which the injury occurred and the damages sought persuade us that

---

[33]    Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A., No. 17-cv-6687 (S.D.N.Y.) ("RPI/WF II"), Dkt.## 23 & 32 (GarbExs. 23-24); RPI/HSBC II, Dkt.## 36, 51, & 63 (GarbExs. 25-27); RPI/DBNTC II, Dkt.#43 (GarbEx. 28).

plaintiff's remedy lies in the enforcement of contract obligations, and are barred by the economic

loss doctrine"); Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, 2016 WL 1169515, *9-10

(S.D.N.Y. Mar. 22, 2016) (Forrest, J.) (same); Blackrock Core Bond Portfolio v. U.S. Bank Nat'l

Ass'n, 165 F.Supp.3d 80, 106 (S.D.N.Y. 2016) (Forrest, J.) (dismissing fiduciary duty claims

under economic loss doctrine); Commerce Bank v. U.S. Bank Nat'l Ass'n, 2017 WL 4682226,

*5 (W.D. Mo. Jan. 5, 2017) ("Commerce Mo.") (same).

      Moreover, an October 2018 New York State Court appellate decision, which is binding

upon this Court, also dismissed tort claims (fiduciary duty and negligence) premised upon an

alleged conflict of interest asserted by an RMBS investor against a trustee.  In Blackrock 1st

Dept., 2018 WL 5046640, *2 the court held that the Supreme Court had "correctly determined

that the tort claims are barred by the economic loss doctrine."[34]

### 2.    NCUA's Tort Claims Should Be Dismissed As Duplicative

      NCUA predicates all of its tort claims upon the Trustee's alleged breaches of its

obligations under the PSAs, bases them on the same underlying allegations, and seeks the same

damages.  However, a "tort claim cannot be sustained if it do[es] no more than assert violations

of a duty which is identical to and indivisible from the contract obligations which have allegedly

been breached."  Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n, No. 12-cv-7581, 2013 WL

1655990, *4 (S.D.N.Y. Apr. 17, 2013), aff'd, 654 F.App'x 507 (2d Cir. 2016); see also Ellington

Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F.Supp.2d 162, 177-78 (S.D.N.Y.

2011).  "Merely charging a breach of a duty of due care, employing language familiar to tort law,

---

[34]     The Supreme Court below held that "because plaintiffs' allegation for damages arising from a conflict of interest come from U.S. Bank's alleged failure to take contractual actions – for example, its failure to prevent the servicers from engaging in activities outside of customary and usual standards of practice of prudent mortgage service – the claim is barred by the economic loss doctrine."  Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank N.A., No. 652204/15, Dkt.#211, at 11 & 13 (N.Y. Sup. Ct. N.Y. Cty. Jan. 17, 2018), GarbEx. 30.

does not, without more, transform a simple breach of contract into a tort claim." <u>Ellington</u>, 837

F.Supp.2d at 203.  For this reason, NCUA's tort claims should be dismissed.

 NCUA's fiduciary duty and negligence claims precisely track its contract claims.[35]  NCUA

does not allege any duties apart from those arising from the terms of the PSAs.  Thus, just as other

courts in this District have done in cases by RMBS investors against trustees, this Court should

dismiss NCUA's fiduciary duty and negligence claims as duplicative.  <u>See</u>, <u>e.g.</u>, <u>BlackRock</u>

<u>Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon</u>, 180 F.Supp.3d 246, 261

(S.D.N.Y. 2016) (Daniels, J.) (dismissing claims for breach of fiduciary duty and negligence

because they were based upon "essentially the same allegations that give rise to Plaintiffs' breach

of contract claims"); <u>see also</u> <u>BNP Paribas</u>, 949 F.Supp.2d at 504-05; <u>Commerce Mo.</u>, 2017 WL

4682226, *5 (dismissing tort claims premised upon the "failure to perform a contractual duty").

### 3. <u>NCUA's Breach Of Fiduciary Duty Claim Fails</u>

 NCUA's breach of fiduciary duty claim should be dismissed for two reasons.  **First**,

NCUA fails to adequately allege a fiduciary relationship.  <u>Ellington</u>, 837 F.Supp.2d at 188-89;

<u>Blackrock 1st Dept.</u>, 2018 WL 5046640, *2 (failure to allege the breach of any professional

duty).  <u>Before</u> an EOD, a trustee's duties are defined by the terms of the PSAs, not by a fiduciary

relationship as with an ordinary trustee.  <u>See</u> <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 816 (2d Cir.

1985) ("Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in

the trust agreement, an indenture trustee[s'] … duties and obligations are exclusively defined by

the terms of the indenture agreement."); <u>Elliott Assocs.</u>, 838 F.2d at 71; Dkt.#114-10 [HVMLT

---

[35] <u>See</u> ¶¶12, 109, & 539 (alleging that "Defendant breached its contractual, fiduciary, common law, and statutory duties" in the <u>same</u> ways); <u>compare</u> ¶529 (breach of contract allegations) <u>with</u> ¶¶544-45 (breach of fiduciary duty allegations); ¶¶541-46 (failing to allege breach of any specific implied duty); <u>compare</u> ¶529(alleging the Trustee breached a list of nine alleged contractual duties) <u>with</u> ¶¶544-45 (breach of fiduciary duty allegation as to the same duties); <u>compare</u> ¶¶537-39 (negligence claim) <u>with</u> ¶¶526-31 (contract claim).

2006-6 PSA §8.1(i) ("[T]he Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement ... .")]; see also Fixed Income Shares 1st Dept., 69 N.Y.S.3d at 290 (dismissing claim based upon implied duty because "the PSA bars covenants from being implied in the PSA against defendant").

After an EOD, a trustee's duties are defined by the PSAs, not common law fiduciary duties applicable to ordinary trustees.  Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 996 N.Y.S.2d 476, 494 n.11 (N.Y. Sup. Ct. N.Y. Cty. 2014) ("[A]n obligation will be imposed upon the indenture trustee post-default to act prudently, but its duties will continue to be circumscribed by the indenture."), aff'd 37 N.Y.S.3d 505; see also Dkt.#114-10 [HVMLT 2006-6 PSA §8.01].

**Second**, to the extent NCUA's fiduciary duty claim is based on an alleged conflict of interest, NCUA's conclusory allegations fail.  ¶¶541-46.  In Commerce 1st Dept., in consolidated appeals in two cases, the court affirmed dismissal of fiduciary duty claims, holding that one complaint "merely contains conclusory allegations" and that the other contained factual allegations that were "not sufficient" because the "existence of a conflict of interest cannot be inferred solely from a relationship between an issuer and an indenture trust that is mutually beneficial and increasingly lucrative."  Commerce 1st Dept., 35 N.Y.S.3d at 65-66.[36]

Decisions from this District are in accord.  Bakal, 2018 WL 1726053, *11 (dismissing conflict of interest claims based on allegations that securitization participant was "economically beholden to other parties to the PSA, and was concerned about its own liability for its roles in other RMBS trusts"); CFIP, 738 F.Supp.2d at 475.  NCUA's claim is likewise inadequate.

---

[36]      The Supreme Court held that the fiduciary duty claim failed because plaintiffs did not allege both "a failure … to avoid conflicts of interest, thereby advancing [the trustee's] own interests at the expense of certificateholders" and "that [the trustee] personally benefitted from its actions."  Commerce Sup., 2015 WL 5770467, *5.

4.      **NCUA's Negligence And Gross Negligence Claims Fail**

NCUA's negligence claims also fail because the Trustee owes <u>only</u> those duties set forth in the PSAs.  Where PSA language "exculpates [the trustee] from liability for negligence in the performance of duties not expressly set forth in the Indenture," a negligence claim is barred. <u>Argonaut P'ship L.P. v. Bankers Tr. Co.</u>, 2001 WL 585519, *2 (S.D.N.Y. May 30, 2001).

Here, the PSAs limit the Trustee's duties.  Like the language in Section 8.01 of the trust agreement at issue in <u>Argonaut</u>, Section 8.01 of the PSAs at issue here provides that the Trustee undertakes to perform only such duties as are specifically set forth in the PSAs and that no implied duties of the trustee should be read into the PSA.  Dkt.#114-10 [HVMLT 2006-6 PSA §8.01]; <u>Fixed Income Shares 1st Dept.</u>, 69 N.Y.S.3d at 290 ("the PSA bars covenants from being implied in the PSA against [the trustee]").  Thus, prior to an EOD, when the Trustee's duties are solely contractual, a negligence claim fails.  <u>See</u> <u>Ellington</u>, 837 F.Supp.2d at 203 ("The negligence claim against all Defendants does not allege the violation of any legal duty independent of the PSA."); <u>see also</u> <u>BlackRock 1st Dept.</u>, 2018 WL 5046640, *2 (affirming dismissal of negligence claim because "plaintiffs have not sufficiently alleged the breach of <u>any professional duty</u> that could support" such a claim).  And, <u>after</u> an EOD, a trustee's "prudent person" duties are defined solely by the PSAs.  <u>Cortlandt St.</u>, 996 N.Y.S.2d at 494 n.11.

## CONCLUSION

NCUA's motion should be denied, and/or all of its claims should be dismissed.

Dated:      New York, New York      Respectfully submitted
            November 5, 2018        MORGAN, LEWIS & BOCKIUS, LLP
                                    By: <u>/s/ Bernard J. Garbutt III</u>