# Morgan Lewis

**Bernard J. Garbutt III**
+1.212.309.6084
bernard.garbutt@morganlewis.com

June 12, 2019

**BY ECF**
Hon. Sidney H. Stein, U.S.D.J.
United States District Court, S.D.N.Y.
500 Pearl Street, Room 1010
New York, NY 10007

Re:   Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Trust Co., No. 14-cv-8919

Dear Judge Stein:

We represent the Trustee[1] in the above-referenced case and write in response to NCUA's letter dated June 3, 2019, Dkt.#160 (the "NCUA Letter"), concerning the findings of Magistrate Judge Netburn ("Mag. Netburn") in Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, N.A., 2019 WL 2223406 (S.D.N.Y. May 22, 2019) ("NCUA/HSBC II").  As an initial matter, NCUA failed to note that HSBC intends to file objections to Mag. Netburn's findings, and HSBC's deadline to do so is June 20, 2019.  NCUA/HSBC, Dkt.#377. Moreover, Mag. Netburn's findings are unpersuasive, especially in light of the different factual circumstances presented herein.

**Mag. Netburn Did Not Address At All The Issue Of Substitution And Amendment Concerning "Unwound Certificates**."  The Trustee demonstrated that as to the Unwound Certificates, NCUA unduly delayed in seeking to substitute itself directly, NCUA acted in bad faith, the amendments are more than merely formal, and substitution would prejudice the Trustee.  Trustee Memo, at 5-12.  Mag. Netburn did not address any of these arguments in NCUA/HSBC II.  That is because **over a year ago**, in NCUA/HSBC, NCUA sought leave to substitute itself as a direct claimant with respect to Unwound Certificates.  NCUA/HSBC, Dkt.#300.  HSBC conditionally **consented** to that substitution and amendment.  NCUA/HSBC, Dkt.#302.  The court granted NCUA's request.  NCUA/HSBC, Dkt.#308.  As NCUA did **over a year ago** in NCUA/HSBC and **over three years ago** in NCUA/U.S. Bank, NCUA should have moved much earlier herein to substitute itself directly as to the Unwound Certificates.  Trustee Memo, at 4.  NCUA has known all along that the NGN Trusts would eventually unwind and that NCUA would have to attempt to assert such claims directly, if at all.  In fact, one trust at issue in this case unwound as early as **December 2015**, nearly three years before NCUA moved to substitute in this case, and three additional NGN Trusts have unwound since.  Trustee Memo, at 5 n.5.  Thus, Mag. Netburn's findings are irrelevant to Unwound Certificates, and Plaintiff's motion herein to substitute and amend as to the Unwound Certificates should be denied for the reasons the Trustee demonstrated.

---

[1]   Unless otherwise stated, capitalized terms used herein shall have the meanings assigned in the Trustee's Glossary included with the Trustee Reply, Dkt.#132, Exhibit "A" hereto.  All quotations and citations are omitted and all emphasis is added.

DB1/ 104511411.9

Morgan, Lewis & Bockius LLP

101 Park Avenue
New York, NY  10178-0060          ☎ +1.212.309.6000
United States                     📠 +1.212.309.6001

Hon. Sidney H. Stein, U.S.D.J.
June 12, 2019
Page 2


**Mag. Netburn's Findings Are Based Upon Entirely Different**
**Factual Circumstances, And, Respectfully, Are In Some Instances Incorrect.**
NCUA's suggestion that NCUA/HSBC II is on all fours is mistaken for several reasons.  **First**, as to NCUA's undue delay in seeking leave to amend, NCUA argues that NCUA/HSBC II involved the "same" circumstances as those in this case.  NCUA Letter, at 1.  However, NCUA/HSBC II presented very different factual and procedural circumstances.

Critically, in NCUA/HSBC II, Mag. Netburn noted that earlier in that case, Judge Scheindlin allowed NCUA to assert derivative standing.  NCUA/HSBC II, *7; Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, N.A., 117 F. Supp. 3d 392 (S.D.N.Y. 2015) ("NCUA/HSBC I").  Mag. Netburn found that, under the law of the case doctrine, NCUA did not need to "abandon a favorable decision whenever a non-precedential and contrary decision is issued by another district court."  NCUA/HSBC II, *8.  Conversely, in this case, NCUA did not have the benefit of such a ruling, and, thus, law of the case never applied herein.  Moreover, on May 1, 2015, the Trustee first objected to NCUA's alleged derivative standing, in the Trustee's motion to dismiss.  Dkt.#46.  Yet, NCUA waited until October 5, 2018, almost three and one-half years later, to seek substitution and amendment.  Trustee Memo, at 3.[2]

NCUA argues that it was proper to pursue derivative standing herein based upon a "split of authority."  NCUA Letter, at 1.  But, NCUA/HSBC I is irrelevant to the analysis because it was issued **after** NCUA filed the FAC herein and thus could not have been the basis for any mistaken belief by NCUA.  NCUA Br., at 6.  NCUA also claims to have acted in the interest of judicial efficiency (NCUA Letter, at 1), even though it waited almost three and one-half years to seek the substitutions.  Trustee Memo, at 3.  However, there was no downside to NCUA earlier pursuing **both** derivative standing and direct standing, which the Second Circuit explained in NCUA/U.S. Bank 2d Cir. was the proper course of action to maximize judicial efficiency, and NCUA's failure to do so renders its request untimely.

**Second**, NCUA argues that NCUA/HSBC II supports the proposition that NCUA's proposed two-step invocation of Rules 17(a)(3) and 15(d) is historically accepted.  NCUA Letter, at 1-2.  Respectfully, Mag. Netburn's pronouncement that this "is consistent with what has historically been an accepted procedure for curing a complaint's jurisdictional defects," NCUA/HSBC II, *8, is unsupported.  Indeed, NCUA/HSBC II cites only one case, NCUA/Wells Fargo, that permits a party to invoke both Rules 17(a)(3) and 15(d) to substitute a new plaintiff and allege new facts relating to the assignment of claims to that new plaintiff.  Id.  None of the other cases Mag.

---

[2] Furthermore, Judge Scheindlin's decision in NCUA/HSBC I was issued **without** the benefit of the entirety of the NGN governing agreements, but as the Second Circuit and other courts have opined, it was "**clear and unambiguous** under those agreements that NCUA lacked standing to assert derivative claims on behalf of the NGN Trusts, and that BNYM was the real party in interest that had such standing."  NCUA/U.S. Bank 2d Cir., 989 F.3d at 252; NCUA/U.S. Bank S.D.N.Y., 2015 WL 2359295, *8 (S.D.N.Y. May 18, 2015).  As Judge Caproni (who sat on the NCUA/U.S. Bank 2d Cir. panel) later noted, Judge Scheindlin "may have acted under the misapprehension that the NGN Trusts held RMBS certificates."  Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, 2018 WL 3655781, *4 n.7 (S.D.N.Y. Aug. 2, 2018) (denying NCUA's motion to intervene).

Hon. Sidney H. Stein, U.S.D.J.
June 12, 2019
Page 3

Netburn cited concern the invocation of both of these rules to allege facts that occurred <u>after</u> the filing of the complaint in order to cure a standing defect. Other cases Mag. Netburn cited do not involve both Rules 17(a)(3) and 15(d).³

**Third**, NCUA argues that the Trustee's bad faith argument merely "repeats" that of HSBC. NCUA Letter, at 2. However, the Trustee provided much more detail concerning NCUA's bad faith. Trustee Memo at 8-11, 18. HSBC argued that NCUA pursued the theory of derivative standing "in order to control the litigation and argue for application of the Extender Statute." <u>NCUA/HSBC</u>, Dkt.#359. Here, the Trustee demonstrated that at inception NCUA considered having BNYM assert claims on behalf of the NGN Trusts (rather than NCUA asserting them derivatively), but for at least three reasons that did, or could, not happen. Trustee Memo at 9-10. <u>First</u>, by August 5, 2014, NCUA knew that BNYM had a conflict of interest in asserting such claims. <u>Id.</u>; FAC ¶¶750-54. <u>Second</u>, BNYM refused to assert the claims. Trustee Memo at 9-10; FAC ¶49; Dkt.#53-1 &#53-2. <u>Third</u>, the Extender Statute would not apply to claims brought by BNYM (or another assignee). Trustee Memo at 9-10. If the Extender Statute did not apply, the contract claims were already time-barred, at the very latest, by January 1, 2015. <u>Id</u>. And, even if the Extender Statute did apply, and if NCUA had standing (it did not), it would have to assert claims as to two CCUs by March 20, 2015. <u>Id.</u> Faced with all this uncertainty, on March 5, 2015, NCUA chose to attempt to re-file the claims itself derivatively, on behalf of the NGN Trusts, even though it had already been put on notice several times in other litigation in this District that it lacked such derivative standing. Trustee Memo at 9-10; GarbEx. 2 (chart). Simply put, NCUA acted in bad faith when it proceeded under a theory of derivative standing, not because NCUA believed it had the right to do so (because it knew BNYM did), but because time was running out to sue the Trustee. Trustee Memo, at 8-11, 18. Somehow, in the face of this clear timeline and demonstration of game playing, NCUA merely argues that the Trustee "has offered no[]" proof of bad faith. NCUA Letter, at 2.

**Fourth**, NCUA argues that <u>NCUA/HSBC II</u> is on point with respect to the Separate Trustee's standing. NCUA Letter, at 2-3. However, the Trustee made three arguments regarding the Separate Trustee's lack of standing that were **not** raised or considered in <u>NCUA/HSBC II</u>.

- The assignment of claims to the Separate Trustee is invalid because it violates New York's prohibition on champerty. Trustee Memo, at 15; Trustee Reply, at 7. New York law prohibits the transfer of any legal claims "with the intent and for the purpose of bringing an action or proceeding thereon." Trustee Memo, at 15; N.Y. Jud. L. §489. The champertous intent of the assignment is evident from the IAA's recitals, and Bush previously never owned any of the Certificates or claims at issue and is being paid to pursue this litigation. Trustee Memo, at 15; Trustee Reply, at 7.

---

³ For example, in <u>Basic Books, Inc. v. Kinko's Graphics Corp.</u>, 758 F.Supp. 1522, 1541 (S.D.N.Y. 1991), the court permitted the plaintiff to amend its complaint to allege that the patent at issue was recorded, which was required for standing even though the recordation did not occur until after the filing of the complaint. Importantly, that plaintiff did <u>not</u> invoke FRCP 17(a)(3), which, as the Trustee demonstrated requires that substitution be "merely formal." Trustee Memo, at 5-7; Dkt.#138**,** <u>Dennis v. JPMorgan Chase & Co.</u>, 342 F. Supp. 3d 404, 417 (S.D.N.Y. 2018) (denying motion to substitute under FRCP 17(a)(3) where "amended complaint would necessarily reflect the contents of the relevant assignments in order to establish FLH's standing").

Hon. Sidney H. Stein, U.S.D.J.
June 12, 2019
Page 4

- The IAA violates the NGN Indentures' provisions for compensation of separate trustees, which is limited to the "Indenture Trustee Fee" or payment from BNYM. Trustee Memo, at 13-14; Trustee Reply, at 4-5. The IAA also violates the NGN Indenture by providing for compensation from NCUA, indemnifying NCUA, and relieving BNYM from any responsibility as to the Separate Trustee. Id.
- NCUA has no authority to direct litigation unless and until NCUA Guarantor makes a Guaranty Payment for which it is not reimbursed. Trustee Memo, at 14; Trustee Reply, at 5. Otherwise, the right to direct litigation is exercisable only at the direction of more than 50% of the NGN Trust's Noteholders. Id. NCUA does not allege that any unreimbursed Guaranty Payments were made or that a majority of the NGN Trusts' Noteholders have directed the appointment of the Separate Trustee.

**Fifth**, as to prejudice to the Trustee, NCUA argues that NCUA/HSBC II presented the "same" circumstances as those in this case. NCUA Letter, at 3. The circumstances in the two cases are very different. Most importantly, unlike in NCUA/HSBC, **no** favorable ruling on NCUA's theory of derivative standing was issued in this case, and thus law of the case is inapplicable. And, on May 1, 2015, the Trustee first objected to NCUA's alleged derivative standing, in the Trustee's motion to dismiss. Dkt.#46. Yet, NCUA waited until October 5, 2018, almost three and one-half years later, to seek substitution and amendment. As the court explained in NCUA/HSBC II, "the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." Id., *4. Here, the Trustee's burden of establishing prejudice is minimal because there simply is no good explanation for NCUA's delay given the Second Circuit's explanation that NCUA never faced a "Hobson's Choice." The Trustee met this standard. As the Trustee demonstrated, the Trustee will be prejudiced by amendment because the Trustee will forced to spend even more time and money litigating NCUA's claims, which additional expense could have been avoided if NCUA had not engaged in pleading gamesmanship. Trustee Memo, at 16.

**Mag. Netburn Did Not Address Futility Arguments Under FRCP 12**. As the Trustee demonstrated, NCUA's contract, tort, and indemnification claims fail under FRCP 12 and, therefore, substitution and amendment should be denied as futile. Trustee Memo, at 19-40; Trustee Reply, at 10-20. In NCUA/HSBC, HSBC's FRCP 12 motion to dismiss was fully briefed and decided almost four years ago, and thus FRCP 12 futility was not addressed in NCUA/HSBC II. As detailed in the Trustee's prior submissions, New York law on contract and tort claims in RMBS trustee matters has dramatically shifted in recent years. Trustee Memo, at 19-40; Trustee Reply, at 10-20. The emerging consensus, including through multiple decisions from the Second Circuit and the New York Appellate Division, First Department is that contract and tort claims like those of Plaintiffs' herein cannot survive a motion to dismiss. Trustee Memo, at 21-24; Trustee Reply, at 10-15; Dkt.#141, 147, 150 (supp. auth. ltrs.). Likewise, Plaintiffs' indemnification claims also fail. Dkt.#148 (supp. auth. ltr.).

Respectfully submitted,
*Bernard J. Garbutt III*

cc:   Counsel of Record (via ECF)