UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/15/18

---

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, *ET AL.*,

                   Plaintiffs,

     -against-

DEUTSCHE BANK NATIONAL TRUST
COMPANY,

                   Defendant.

---

14-cv-8919 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Before the Court is (1) a motion from plaintiff National Credit Union Administration Board ("NCUA") for leave to file a Proposed Second Amended Complaint ("PSAC") and to substitute a Separate Trustee as plaintiff pursuant to Rules 15 and 17 of the Federal Rules of Civil Procedure; (2) a motion to dismiss the PSAC from defendant Deutsche Bank National Trust Company ("Deutsche Bank") pursuant to Rule 12 of the Federal Rules of Civil Procedure; (3) Deutsche Bank's motion to stay plaintiff's claims related to indemnification; and (4) NCUA's motion to strike certain portions of Deutsche Bank's reply memorandum of law.

These motions followed a Court-imposed 2-day stay where the Court dismissed defendant's then-pending motion to dismiss plaintiff's amended complaint without prejudice in anticipation of a decision from the United States Court of Appeals for the Second Circuit in *National Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 17-756. As discussed further below, this case was set to, and did, clarify some of the outstanding issues with plaintiff's standing.

For the reasons set forth below, plaintiff's motion for leave to amend and to substitute is granted; defendant's motion to dismiss is granted in part and denied in part; defendant's motion to stay plaintiff's indemnification claims is granted; and plaintiff's motion to strike is denied.

1

Table of Contents

I.      BACKGROUND ................................................................................................ 3

    A.    Factual Background ................................................................................. 3

    B.    Procedural History .................................................................................. 5

II.     OVERVIEW .................................................................................................... 8

III.    DISCUSSION ................................................................................................. 8

    A.    Plaintiff's Motion for Leave to Amend the First Amended Complaint and
          Substitute a Separate Trustee is Granted. ............................................... 8

        1.    Legal Standard ................................................................................ 8

        2.    NCUA's Proposed Amendment and Substitution is Timely and There Has
              Been No Undue Delay. ..................................................................... 9

        3.    NCUA's Proposed Amendment and Substitution is Not Too Broad in Scope.
              11

        4.    NCUA May Substitute Itself as Plaintiff for the "Unwound" Certificates. ... 14

        5.    Deutsche Bank Does Not Have Standing to Challenge the Separate Trustee
              Agreement. ..................................................................................... 15

        6.    The Separate Trustee Benefits From NCUA's Extender Statute. ...................... 17

        7.    Conclusion ..................................................................................... 17

    B.    Defendant's Motion to Dismiss the Proposed Second Amended Complaint is
          Granted in Part and Denied in Part. ....................................................... 18

        1.    Legal Standard ................................................................................ 18

        2.    Deutsche Bank's Motion to Dismiss NCUA's Breach of Contract Claims is
              Denied. .......................................................................................... 18

        3.    Deutsche Bank's Motion to Dismiss NCUA's Tort Claims is Granted. ......... 25

        4.    Deutsche Bank's Motion to Dismiss NCUA's Indemnification Claims is
              Denied. .......................................................................................... 28

    C.    Defendant's Motion to Stay NCUA's Indemnification Claims is Granted. ... 31

    D.    Plaintiff's Motion to Strike is Denied. ..................................................... 32

IV.     CONCLUSION ............................................................................................... 33

## I.     BACKGROUND

### A.     Factual Background[1]

NCUA is an independent federal agency in the executive branch that regulates federal credit unions pursuant to the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* One of NCUA's powers is to place failed credit unions into liquidation. *Id.* § 1787. Upon liquidation, NCUA succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union." *Id.* § 1787(b)(2)(A)(i). According to NCUA, in 2009 and 2010, in the aftermath of the financial crisis, it placed several failed corporate credit unions into liquidation and thus succeeded those entities. (PSAC ¶¶ 18-26.) The failed corporate credit unions had assets which included residential mortgage-backed securities ("RMBS") in trusts for which Deutsche Bank serves as trustee.

Each trust consists of hundreds of individual residential mortgage loans that were pooled together and securitized for sale to investors. Originators of the residential mortgage loans underwrite individual loans, and the securitization process begins with a sponsor who purchases loans in bulk from one or more originators. (*Id.* ¶¶ 48-49.) The sponsor transfers title of the loans to an entity called a depositor, who in turn transfers the loans to a trust that issues notes and/or certificates, providing certificateholders scheduled principal and interest payments derived from the cash flow from the mortgage pool underlying the securities. (*Id.* ¶¶ 49-51.) Once the loans are deposited into a trust, a master servicer or servicer is tasked with the collection of payments from borrowers, monitoring the loans, and bringing any necessary foreclosure actions against delinquent borrowers who are late on payments. (*Id.* ¶ 56.) The servicers transfer the loan payments from the borrowers to the trusts and the trustee uses those payments to make scheduled principal and interest payments to certificateholders. (*Id.* ¶ 57.)

Deutsche Bank serves as trustee for the RMBS trusts at issue in this litigation and these trusts are governed by agreements called Pooling and Servicing Agreements ("PSAs").[2] (*Id.* ¶ 55.)

Under pressure to stabilize the crashing credit union system, NCUA re-securitized many of the distressed RMBS trust assets it succeeded to from the failed credit unions

---

[1] Plaintiff's PSAC (Doc. 114-1) provides much of the information contained in this factual background and is presumed true for the purposes of these motions.

[2] The PSAs for the trusts at issue in the PSAC vary slightly but are largely similar. Exhibit H to the complaint, Doc. 114-9, contains the relevant language for the PSAs germane to this litigation.

pursuant to its Guaranteed Notes Program. (*Id.* ¶ 29.) It formed several trusts known as NCUA Guaranteed Notes Trusts ("NGN Trusts"), which pooled the RMBS certificates, along with other securitized assets, to issue new NGN Trust certificates, or notes, valued at approximately \$28.3 billion. (*Id.*) The holders of these certificates would receive payments from the underlying assets' cash flows. (*Id.*) These new NGN Trusts were guaranteed by NCUA and backed by the full faith and credit of the U.S. Treasury. (*Id.* ¶ 34.) They were structured to last for a period of years and then unwind after all certificate holders were paid, with the underlying RMBS certificates returned to NCUA after the unwinding as a result of NCUA retaining what it calls "Owner Trust Certificates." (*Id.* ¶ 32.)

The NGN Trusts issued notes pursuant to a set of three agreements: (1) Trust Agreements that conveyed the relevant assets from NCUA as liquidating agent of the credit unions to the NGN Trusts and caused Owner Trust Certificates to be issued to NCUA through Wells Fargo acting as "Owner Trustee"; (2) Indenture Agreements between the NGN Trusts and The Bank of New York Mellon ("BNYM") that appointed BNYM as the Indenture Trustee responsible for holding the NGN Trusts' assets as collateral and caused the NGN Trust certificates to issue; and (3) Guarantee Agreements between NCUA, acting in a capacity as executive agency guarantor, the NGN Trusts, and BNYM.[3] (*Id.* ¶¶ 30-31.) Under the agreements governing the creation of the NGN Trusts, BNYM had the exclusive right to bring suit on behalf of the NGN Trusts. (*Id.* ¶ 35.)

The substance of plaintiff's claims against Deutsche Bank revolve around Deutsche Bank's duties as Trustee to the original RMBS trusts. According to the PSAC, Deutsche Bank had both common law and contractual duties as Trustee to, *inter alia*, (1) review the underlying mortgage files for completeness and accuracy, (2) notify appropriate parties and take various actions should it discover breaches of representations and warranties ("R&Ws") concerning the mortgage loans, and (3) take similar protective actions upon learning of events of default concerning the trust. (*Id.* ¶¶ 5-7.) NCUA alleges that Deutsche Bank was derelict in its duties and failed to perform its obligations. According to plaintiff, reports of systemic problems with the mortgages and the trusts as well as Deutsche Bank's own involvement in the RMBS market support the likelihood that Deutsche Bank had notice of these issues with the underlying mortgages, and yet it allegedly took no remedial action. (*Id.* ¶¶ 8-15.) In addition, NCUA claims that Deutsche Bank is using funds from the trusts to fund its defense of this lawsuit. (*Id.* ¶ 16) As discussed further below, this is a new allegation not contained in the previous complaint. Plaintiff brings claims for:

---

[3] The NGN Agreements for the trusts at issue in this litigation are all substantially similar. Representative examples of an NGN Indenture, NGN Trust Agreement, and NGN Guaranty Agreement from the NCUA 2011-R2 Trusts are attached to the PSAC as Exhibits B, C, and D. (Docs. 114-3, 114-4, 114-5.)

- Count One – Breach of Contract for Deutsche Bank's breaches of the PSAs that govern the RMBS trusts;
- Count Two – Negligence and Gross Negligence under tort law for Deutsche Bank's neglect of its duties as trustee;
- Count Three – Breach of Fiduciary Duty under tort law;
- Count Four – Declaratory Judgment that defendant is not permitted to use trust funds to pay its litigation costs; and
- Count Five – Breach of Contract for Deutsche Bank's unlawful withdrawals from the trust funds to pay its litigation costs.

(*Id.* ¶¶ 523-58.)

## B.    Procedural History

NCUA filed its original complaint in this action on November 7, 2014. (Doc. 1.) In NCUA's amended complaint filed in March 2015, it brought claims on behalf of 97 trusts for which Deutsche Bank served as trustee. (First Amended Complaint ("FAC"), Doc. 38.) Of those 97, NCUA only had a direct interest in 8 – the rest were re-securitized and held in the NGN Trusts for which BNYM served as trustee. (*Id.* ¶ 28; Ex. A.) BNYM, conflicted because it is an RMBS trustee and was in a similar position to Deutsche Bank as a defendant in separate litigation, refused to exercise its authority to bring suit for these claims on behalf of the NGN Trusts. (*See id.* ¶¶ 48-54.) NCUA alleged that it still had derivative standing to pursue claims on behalf of the 89 other trusts on the theory that it had a latent interest in the NGN Trusts after they wound down and as "an express third-party beneficiary under the NGN Indenture Agreements." (*Id.* ¶¶ 43, 55.)

NCUA also filed three similar cases against different RMBS trustee defendants: HSBC, U.S. Bank, and Wells Fargo. As those cases went forward, courts in this District weighed in on whether NCUA had standing to bring claims on behalf of the NGN Trusts. First, Judge Forrest granted U.S. Bank's motion to dismiss in May 2015 on the theory that NCUA did not have standing to bring claims on behalf of the NGN Trusts. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n*, No. 14-cv-9928, 2015 WL 2359295 (S.D.N.Y. May 18, 2015). Judge Forrest stated that NCUA did not have standing under 12 U.S.C. § 1787(b)(2)(A)(i) as a liquidating agent of the credit union or as a third-party beneficiary to the trusts and that NCUA did not adequately plead a derivative action. *Id.* at *4-6. Two months later, in *Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392 (S.D.N.Y. 2015), Judge Scheindlin also rejected NCUA's direct standing theories but held that NCUA could assert derivative standing on behalf of the NGN Trusts. *Id.* at 399-400. While Judge Scheindlin pointed to some ministerial defects in NCUA's pleading of derivative standing, she noted her disagreement with Judge Forrest and held that NCUA could be a proper derivative plaintiff. *See id.* at 400, n.45. In February 2016, Judge Forrest again granted U.S. Bank's motion to dismiss after NCUA

amended its complaint, finding that the NGN Indenture Agreements with BNYM precluded NCUA from bringing such a derivative action. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-9928, 2016 WL 796850, at *9-10 (S.D.N.Y. Feb. 25, 2016) ("*U.S. Bank II*"). Two months later, NCUA filed a similar motion in that case to the one before the Court here, asking Judge Forrest to replead and seeking to substitute a newly-appointed separate trustee under Rules 15 and 17; Judge Forrest denied the motion in an order, principally on untimeliness grounds. (14-cv-9928, Doc. 141.)

While the above was occurring, Deutsche Bank had a pending motion to dismiss in this case where it argued, among other things, that NCUA had no standing to bring claims on behalf of the NGN Trusts. (*See* Doc. 47.) After Judge Forrest's second U.S. Bank decision, on July 22, 2016, NCUA wrote a letter to the Court urging that NCUA had standing, but if the Court disagrees, it was "prepared to appoint a Separate Trustee who would replace NCUA as the plaintiff to pursue these claims." (Doc. 83.) NCUA noted that it had offered to substitute a separate trustee in the Wells Fargo case and brief the issues, but Judge Failla, who had not yet issued a ruling on NCUA's standing in that case either, denied NCUA's request as unnecessary, "stating that NCUA could seek leave to amend in the event of an adverse ruling on its derivative standing... [and] that the time during which the motion to dismiss is pending will not factor into an assessment of the timeliness of any subsequent motion to substitute a Separate Trustee." (*Id.*) NCUA urged that it would be "logical, efficient, and fair" to conduct a similar procedure in this case, waiting to substitute a separate trustee until after the Court's ruling on Deutsche Bank's then-pending motion to dismiss. (*Id.*)[4] Deutsche Bank responded that it "agrees with NCUA that this Court should first rule on the Trustee's motion to dismiss before even considering the issues raised in NCUA's letter" but previewed arguments against substitution of a separate trustee, pointing to, among other things, NCUA's "wait[ing] an unreasonable amount of time to request substitution" after court decisions previewed "serious defects" in NCUA's standing. (Doc. 86.) It also added that, with respect to NCUA's discussion of the Wells Fargo case, "NCUA fails to mention that Judge Failla also recognized the potential merits of Wells Fargo's arguments that NCUA had already unduly delayed in seeking substitution and that there were related statute of limitations issues as well." (*Id.*)

In the suit against Wells Fargo, in March 2017, Judge Failla ultimately largely agreed with Judge Forrest and held that NCUA did not have any standing to bring claims on behalf of the NGN Trusts. *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 407-415 (S.D.N.Y. 2017) ("*Wells Fargo I*"). In

---

[4] In addition, in this letter and in another, later letter (Doc. 92), NCUA notified the Court that several of the NGN Trusts had "unwound" and the underlying RMBS certificates returned to NCUA since the FAC was filed.

August 2017, Judge Failla allowed NCUA to replead and substitute a separate trustee for the NGN Trust claims. *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-1006, 2017 WL 3610511, at *13-21 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo II*"). In doing so, she rejected the defense's substantive arguments against the substitution as well as its arguments of unjustified delay, noting that "when the NCUAB offered to undertake a 'fallback' motion with regard to its standing, it was this Court that did not permit it to do so." *Id.* at *19.

In June 2019, after all the briefing on the current motions were completed, Magistrate Judge Netburn granted NCUA's motion to replead and substitute a separate trustee under Rules 15 and 17 in the HSBC case. *Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, No. 15-cv-02144, 2019 WL 2223406 (S.D.N.Y. May 22, 2019) ("*HSBC II*"). The parties here wrote post-briefing letters to the Court discussing the import of this decision. (Docs. 160, 163.) As discussed in detail below, the issues Judges Failla and Netburn dealt with in the Wells Fargo and HSBC cases are largely rehashed in the motion to replead and substitute under Rules 15 and 17 currently before this Court.

Turning back to this case, as noted above, on July 31, 2018, the Court held oral argument on Deutsche Bank's motion to dismiss and stayed the case pending the outcome of NCUA's appeal of Judge Forrest's decision. Two days later, the Second Circuit released its decision, affirming Judge Forrest's decisions to (1) dismiss NCUA's derivative claims for lack of standing and (2) deny as untimely NCUA's motion for leave to file another amended complaint under Rule 15 and to substitute a separate trustee as plaintiff under Rule 17. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243 (2d Cir. 2018). In affirming the denial of leave to amend and substitute, the Second Circuit found that Judge Forrest did not abuse her discretion and noted that even though she was clear about NCUA's standing defects in her first decision and stated that NCUA would receive a "single opportunity to replead," NCUA "nevertheless decided to use its final amendment to double down on its already-dismissed theory of standing." *Id.* at 257. Writing for the panel, Judge Cabranes added that "our conclusion in this respect does not mean that a district court's *grant* of leave to supplement in a similar situation would be an abuse of discretion," citing *Wells Fargo II* and explaining that, "[b]ecause this is a discretionary call, the two are not mutually exclusive." *Id.* at 256 n.86 (emphasis in original).

Per the Second Circuit's decision, claims for 89 out of 97 trusts listed in NCUA's FAC in this case were no longer viable because NCUA did not have standing to bring them. Accordingly, plaintiff now seeks to file a second amended complaint and substitute Graeme W. Bush, a newly appointed Separate Trustee, as plaintiff for claims made on behalf of the NGN Trusts.

## II.    OVERVIEW

On October 5, 2018, NCUA filed a motion (1) for leave to file a proposed second amended complaint and (2) to substitute the Separate Trustee as plaintiff for the NGN claims.  (Doc. 112.)  In its memorandum of law, plaintiff states that "[b]y agreement executed August 29, 2018, BNYM appointed Graeme W. Bush as Separate Trustee to bring the claims held by BNYM against Deutsche Bank." (Pl.'s Mem., Doc. 113, at 7; *see* Doc. 114-7, Attaway Ex. 1.F.)[5]  NCUA now attempts to bring claims on behalf of 37 trusts. "[F]or 14 trusts NCUA directly holds all pertinent certificates; for another 17 trusts NGN Indenture Trustee BNYM holds all pertinent certificates; and for the remaining 6 trusts, both NCUA and the NGN Indenture Trustee hold one or more certificates." (Pl.'s Mem at 7-8; *see* Doc. 114-2, Attaway Ex. 1.A.)  As Deutsche Bank points out, NCUA had originally brought claims derivatively for 34 out of the 37 trusts it now brings claims for, but 13 trusts had completely unwound in the interim, and 4 trusts had certain certificates unwind and returned to NCUA since the FAC was filed. (Def.'s Mem., Doc. 118, at 1 n.2; *see* Doc. 119-1, Garbutt Ex. 1.)

NCUA outlines the differences between the FAC and the PSAC.  Those are: (1) updating facts related to the Separate Trustee's appointment and re-conveyance of certificates from unwound NGN Trusts; (2) adding authorization from Cede & Co. to bring suit; (3) facts and claims regarding Deutsche Bank's use of the RMBS trust funds to pay for its litigation defense; (4) eliminating claims NCUA has voluntarily dismissed pursuant to the Court's July 31 order (Doc. 98; *see also* Doc. 104); and (5) "changes that clarify, but do not materially alter, the FAC claims." (Pl.'s Mem. at 7-9.)  Deutsche Bank opposes all the above changes pursuant to Rules 15 and 17 and moves to dismiss the allegations contained in the PSAC on the merits pursuant to Rule 12.  Deutsche Bank also separately moves to stay plaintiffs' new claims related to Deutsche Bank's use of the trust funds to pay for its litigation defense.

## III.    DISCUSSION

### A.    Plaintiff's Motion for Leave to Amend the First Amended Complaint and Substitute a Separate Trustee is Granted.

#### 1.    *Legal Standard*

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15.  "Courts, however, may deny leave in cases of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

---

[5] Plaintiff also states that "[t]he Separate Trustee Agreement here is identical in all material respects to the agreement construed in *Wells Fargo II*."  (*Id.*)

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 516 (S.D.N.Y. 2013) (quoting *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008)) (internal quotation marks omitted).[6] The Second Circuit has noted its "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal citation omitted).

Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to … be substituted into the action." Fed. R. Civ. P. 17. Further, "[a]fter … substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). But "[a] district court may deny a Rule 17(a) motion as untimely if it is not filed within a reasonable time after a standing objection is raised." *U.S. Bank*, 898 F.3d at 256 (quoting *Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 814 F.3d 641, 643 (2d Cir. 2016)) (internal quotation marks omitted).

## 2. *NCUA's Proposed Amendment and Substitution is Timely and There Has Been No Undue Delay.*

As noted above, Rule 17 allows for "a reasonable time" after an objection has been lodged for the real party in interest to be substituted into the action. Fed. R. Civ. P. 17. Deutsche Bank contends that, for tactical reasons, NCUA waited almost three-and-a-half years from when Deutsche Bank filed its motion to dismiss the FAC objecting to NCUA's standing (on May 1, 2015) until NCUA made this motion to substitute (on October 5, 2018), which Deutsche Bank proffers is not within "a reasonable time." (Def.'s Mem. at 2-5.) Deutsche Bank points to many instances in other litigations where NCUA was made aware of its lack of standing, including the defendants' arguments in the U.S. Bank and Wells Fargo cases as well as the subsequent court decisions in those cases. (*Id.*) NCUA counters that the split among the district judges on the validity of NCUA's derivative standing showed that reasonable minds differed on the complex standing issue,[7] and that

---

[6] To the extent plaintiffs are also seeking to amend pursuant to Rule 15(d), which states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," the same standard applies. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *Klein v. PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016).

[7] Deutsche Bank argues (Def.'s Mem at 11 n.11) that there really was no split in authority, pointing to a district court decision by Judge Caproni (who sat on the Second Circuit *U.S. Bank* panel) where she discussed the split in authority on NCUA's standing but stated that Judge Scheindlin "may have acted

NCUA was not required to "abandon a theory before a pending motion to dismiss is decided in the face of split authority in the same district." (Pl.'s Mem. at 16.)

NCUA cites *Loreley Financing v. Wells Fargo Securities*, 797 F.3d 160 (2d Cir. 2015) in support. In *Loreley*, the Second Circuit wrote that the district court's procedure in which it denied leave to amend was improper, where, after a pre-motion conference in which the defense previewed its arguments to dismiss the plaintiff's complaint, the district court "presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." *Id.* at 190. NCUA argues that this case is similar – Deutsche Bank's arguments alone without this Court's ruling on the motion to dismiss cannot suffice to prevent NCUA from repleading.

However, the Second Circuit in *U.S. Bank* rejected this precise argument. In affirming Judge Forrest's decision to disallow NCUA from repleading on untimeliness grounds, it noted that NCUA had notice of its standing issues and distinguished *Loreley*: "Nor did NCUA face a true 'Hobson's choice' between abandoning the derivative standing theory and requesting BNYM appoint a separate trustee. NCUA could have proceeded under both theories by simply alleging that the separate trustee was willing to acquiesce in NCUA's suit." 898 F.3d at 258. However, as noted above, even though *U.S. Bank* affirmed Judge Forrest's decision, it specified that because this is a discretionary call reviewed for abuse of discretion, its conclusion "does not mean that a district court's *grant* of leave to supplement in a similar situation would be an abuse of discretion." *Id.* at 256 n.86 (emphasis in original).

Both sides make hay of the parties' acknowledgements and concessions in their 2016 letters to the Court, discussed above, but the arguments made are unavailing. While NCUA did offer to appoint a separate trustee if the Court did not agree it had derivative standing, that offer does not change the calculus – it is clear NCUA knew of potential standing issues, but NCUA was waiting for a Court ruling on the issue and offered in the alternative to substitute in a separate trustee. And while Deutsche Bank did agree with NCUA that the best procedure was for the Court to first rule on the then-pending motion to dismiss before any substitution was made, it did reserve room to argue that NCUA

---

under the misapprehension that the NGN Trusts held RMBS certificates." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 2018 WL 3655781, *4 n.7 (S.D.N.Y. Aug. 2, 2018) (denying NCUA's motion to intervene). NCUA points to a different aspect of the HSBC litigation to make the opposite argument. It notes that HSBC, a sophisticated party represented by able counsel, did not even argue that the NGN Trusts no longer held the claims, and rather argued that NCUA failed to meet certain demand requirements in its pleading. (Pl.'s Mem. at 17-18; Pl.'s Reply Mem., Doc. 126 at 8-9.) Clearly, this standing issue led to differing opinions at the district court level, and it is a fair inference that NCUA's assertion of derivative standing in the FAC was made in good faith.

had *already* delayed too much before seeking substitution. Therefore, the parties' letters to the Court are of no consequence to the issue of timeliness.

Ultimately, the crucial difference between this case and the U.S Bank/Wells Fargo/HSBC cases is that this Court never ruled on NCUA's derivative standing. Judge Forrest denied leave to replead and substitute a separate trustee because she had already dismissed NCUA's complaint twice, alerting NCUA to the standing issues after her first ruling and warning NCUA that it would have only a "single opportunity to replead." The Second Circuit affirmed that decision. Judge Failla rejected NCUA's derivative standing theory as well and still allowed it to replead in the same manner it seeks to do here. Judge Netburn similarly allowed NCUA to replead and substitute a separate trustee against HSBC in the wake of Second Circuit's *U.S. Bank* decision. Because this Court never ruled on the standing issue, it now denies Deutsche Bank's objections of untimely substitution under Rule 17 and undue delay, bad faith, and dilatory motive under Rule 15.

### 3. NCUA's Proposed Amendment and Substitution is Not Too Broad in Scope.

Next, Deutsche Bank urges that a Rule 17 substitution is only liberally allowed "when the change is *merely formal* and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20 (emphasis added). Here, by contrast, Deutsche Bank argues that the substitution requires more than a "merely formal" changing of the parties' names and would require plaintiff to plead the execution of the Separate Trustee agreement and the unwinding of certain NGN Certificates in addition to the new allegations contained in the PSAC (regarding indemnification, etc.). (Def.'s Mem. at 5-7.)

In *Advanced Magnetics*, one of the leading Second Circuit cases on Rule 17(a), the Second Circuit reversed the district court's denial of the plaintiff's motion for leave to amend its complaint. The plaintiff had brought securities fraud claims on behalf of itself and as assignee for several individual shareholders. When the assignments were brought into question during discovery, the plaintiff sought leave to amend its complaint in order for the individual shareholders to bring claims on behalf of themselves. The district court (1) ruled that the assignments merely transferred the right to sue but did not transfer full ownership, which was insufficient to allow the plaintiff to bring claims on behalf of the shareholders, and (2) denied the plaintiff leave to amend because the amendment would not "relate back" under Rule 15(c) and would thus be time-barred under the applicable statute of limitations. The Second Circuit upheld the district court's decision regarding the insufficiency of the assignments, but reversed the denial for leave to amend, finding that the court should have allowed amendment under Rule 17(a), which then would have "related back." *Id.* at 17-21. The reversal was premised on three reasons: (a) "[t]he complaint's only pertinent flaw was the identity of the party pursuing those claims" and

the factual and legal allegations of the complaint would remain unaltered, (b) there was no indication of "bad faith or . . . an effort to deceive or prejudice the defendants," and (c) there was no unfairness to defendants to allow a Rule 17(a) substitution because not only were the defendants on notice of the plaintiff's substantive claims, "[l]eave to amend was requested even prior to defendants' motion to dismiss." *Id.* at 20-21.

In *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, the Second Circuit upheld the district court's denial of leave to plead a new assignment under Rule 17(a)(3) and distinguished itself in part from *Advanced Magnetics* by observing that the proposed assignment at issue, which was sought by the plaintiff to cure standing defects, would have required substantive amendments to the complaint to "necessarily reflect the contents of the new assignment" and would thus "require more than a merely formal alteration of the complaint." 790 F.3d 411, 424 (2d Cir. 2015).

At first glance, it appears as though NCUA is trying to make the exact move rejected in *Cortlandt*[8] by making a substitution under Rule 17(a)(3) which would require further pleading as to the nature of the new assignment. However, there are several ways to distinguish this case from Deutsche Bank's proposed narrow reading of *Cortlandt*.

First, *Wells Fargo II* distinguished *Cortlandt* when granting NCUA leave in that case. Judge Failla noted that the *Cortlandt* panel specifically distinguished itself from *Advanced Magnetics* by pointing to the fact that in *Advanced Magnetics*, the plaintiff had standing on at least *some* of the claims from the outset, whereas the plaintiff in *Cortlandt* never had any Article III standing, so "there was no valid lawsuit pending ... in which to permit an amended complaint." 2017 WL 3610511, at *17 (quoting *Cortlandt*, 790 F.3d at 422). Here too, NCUA had standing at the outset on at least the few certificates that it never re-securitized.

Second, the reasoning provided by *House of Europe Funding I Ltd. v. Wells Fargo Bank*, No. 13-cv-519, 2015 WL 5190432 (S.D.N.Y. Sept. 4, 2015) also supports granting NCUA leave to substitute. In that decision, Judge Sullivan, sitting in the district court, permitted the plaintiff to amend its complaint to plead its newly-acquired authorization to pursue the litigation despite the fact that doing so would entail new factual allegations, noting that "the sole change in the amended pleading would be the inclusion of a single sentence asserting that Wells Fargo authorized the instant litigation." *Id.* at *4. He distinguished *Cortlandt* in part by asserting that this was indeed a "'merely formal' alteration, akin to substituting the name of the party. "Amending a complaint to incorporate the fact that the ratifying party duly authorized a lawsuit cannot, on its own, be considered too substantial of a change to fall within Rule 17(a)." *Id.* at *7. *See also Wells*

---

[8] Or, more precisely, rejected by the district judge there and upheld by the Second Circuit in *Cortlandt* for lack of abuse of discretion...

*Fargo II*, 2017 WL 3610511, at *17-18 (citing *House of Europe* when granting NCUA leave to amend).

Other grounds for granting NCUA leave show how the "merely formal" inquiry under Rule 17 bleeds into considerations of bad faith. In *Wells Fargo II*, Judge Failla pointed to *Cortlandt*'s description of Rule 17(a)(3) that the Rule "had been amended specifically 'to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought,' as well as to 'codif[y] the modern judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff.'" 2017 WL 3610511, at *17 (quoting *Cortlandt*, 790 F.3d at 421). In *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, the Second Circuit focused the Rule 17(a)(3) inquiry on the plaintiff's lack of bad faith (consistent with *Advanced Magnetics*) and reversed the district court's denial of leave to substitute, emphasizing that "[e]nsuring that an otherwise proper suit is not dismissed for want of a proper party when that party is ready and willing to join the fray is the very purpose of 17(a)(3)." 906 F.3d 215, 226 (2d Cir. 2018). Here, as discussed with respect to the issue of timeliness, the split in authority in the Southern District of New York on the validity of NCUA's derivative standing supports the view that NCUA's delay was not made in bad faith.

Deutsche Bank counters that there was no "mistake" – rather, NCUA delayed for "deliberate and tactical" reasons. (*See* Def.'s Mem. at 8-11.) Deutsche Bank points to the substantial notice NCUA had of its standing issues and argues that NCUA decided to file the lawsuit and figure out the standing issues later because of the impending statute of limitations deadline it was facing. (*Id.*) However, even in *Advanced Magnetics* – which Deutsche Bank focuses on – the plaintiff originally brought the case as an assignee because it gave them some benefit to sue on behalf of the individual shareholders, but once it realized the assignment was invalid, it sought to substitute. The *Advanced Magnetics* court did not deem that to be "deliberate or tactical" because the plaintiff made a mistake as to the legal effects of the assignments. 106 F.3d at 20-21. So too here, there was an understandable mistake as to the legality of NCUA's purported derivative standing– as evidenced by the split of authority in this district. And as *Klein* emphasized, the focus is on bad faith overall – there is no prerequisite that there have been an "honest mistake." 906 F.3d at 227.

Summing up the three *Advanced Magnetics* factors and applying them to NCUA's motion there, Judge Failla concluded that (a) "the only pertinent flaw" in NCUA's previous complaint was the identity of the party, (b) there was no bad faith by NCUA, rather a "genuine belief in its standing, which belief was reasonable in light of the law then-existing in this District," and (c) the proposed substitution did not "prejudice Defendant, who has had notice of the substance of the allegations, the relevant actors,

and their claims for several years." *Wells Fargo II*, 2017 WL 3610511, at *18. She therefore granted NCUA's motion for leave. The same considerations apply here.

Last, and perhaps most importantly, NCUA is attempting what the Second Circuit described as a "two-prong maneuver," *U.S. Bank*, 898 F.3d at 251, which makes it distinguishable from the facts in *Cortlandt*. Here, NCUA is seeking to amend its complaint under Rule 15. On such motions, courts are to "freely give leave when justice so requires." Fed. R. Civ. P. 15. Once the complaint is amended under Rule 15, Rule 17(a)(3) would permit the "merely formal" substitution of the Separate Trustee for the NGN Trust claims. Although Deutsche Bank contends that the use of both Rules 15 and 17 "finds no support in law," (Def.'s Mem. at 7,) that is not quite true. In fact, *Cortlandt* specifically underscored this: "We cannot rule out the possibility that Cortlandt might have avoided these challenging procedural pitfalls through a request for leave to obtain a valid assignment *under some other rule of civil procedure*. It did not. It has relied upon only Rule 17 in the present appeal." *Cortlandt*, 790 F.3d at 424-25 (emphasis added). Here, NCUA is indeed using "some other rule of civil procedure" in conjunction with Rule 17 – that is, Rule 15. *See HSBC II*, 2019 WL 2223406 at *8 (distinguishing *Cortlandt* on similar reasoning).[9]

Consistent with the emphasis in the case law on liberally allowing Rule 17(a)(3) substitutions and the fact that NCUA is framing this as a conjoined motion under Rules 15 and 17, the Court rejects defendant's argument that these changes are invalid due to their broad scope.

### 4. NCUA May Substitute Itself as Plaintiff for the "Unwound" Certificates.

As set forth above, NCUA originally sued on behalf of the NGN Trusts in the FAC, but the Second Circuit determined that it did not have standing to do so. Since the FAC was filed in 2015, several NGN Trusts have "unwound" and the underlying RMBS certificates have been returned to NCUA. Now, in the PSAC, in addition to seeking to substitute the Separate Trustee as plaintiff for the NGN Trusts, NCUA seeks to substitute *itself* as a direct plaintiff for those NGN Trusts that have "unwound."

Although Deutsche Bank objects to this substitution on grounds of bad faith and untimeliness as well, the analysis is the same here as the above analysis. Deutsche Bank's

---

[9] For this reason, Deutsche Bank's reliance on Judge Kaplan's post-briefing decision in *Dennis v. JPMorgan Chase & Co.*, 342 F. Supp. 3d 404 (S.D.N.Y. 2018) is unavailing. (*See* Deutsche Bank Letter dated Jan. 4, 2019, Doc. 138.) In *Dennis*, Judge Kaplan ruled that the plaintiffs could not make a Rule 17(a) substitution of the "real party in interest" because the substitution would require more than a "merely formal" amendment to the complaint. 342 F. Supp. 3d at 417 (citing *Cortlandt*, 790 F.3d at 424). However, Judge Kaplan never entertained a proposed substitution under Rule 15 as NCUA contemplates here. Therefore, *Dennis* is inapposite.

arguments fail. Also, as discussed above, NCUA had Article III standing at the outset on some certificates and is allowed to now amend and substitute to reflect the events that have occurred in the interim. *See Wells Fargo I*, 247 F. Supp. 3d at 415-16 (rejecting defendant's argument that NCUA had no standing to assert claims on "recently unwound" trusts).

## 5. *Deutsche Bank Does Not Have Standing to Challenge the Separate Trustee Agreement.*

As noted above, BNYM, as Indenture Trustee, was originally the party with the power to bring suit against Deutsche Bank, and the Second Circuit ruled in *U.S. Bank* that NCUA did not have standing to bring this suit derivatively. Now, NCUA attempts to substitute Graeme W. Bush, a Separate Trustee appointed on August 29, 2018, to bring claims on behalf of the NGN Trusts. Deutsche Bank insists that regardless of its other arguments, Bush as Separate Trustee is not the "real party in interest" under Rule 17(a)(3) because the Separate Trustee Agreement between NCUA, BNYM, and Bush (Doc. 114-7, Attaway Ex. 1.F), which appointed Bush and granted him the rights to bring this case, is invalid under the NGN Indenture Agreements between the NGN Trusts and BNYM (Doc. 114-3, Attaway Ex. 1.B). Deutsche Bank contends that the NGN Indenture Agreements are violated by the Separate Trustee Agreement in four ways: (1) the provision in the NGN Indentures which governs the appointment of a Separate Trustee allows a Separate Trustee to be appointed for the purposes of helping BNYM in the performance of its duties and must act jointly with BNYM, and Bush is doing neither here; (2) Bush is compensated beyond what is permissible under the NGN Indentures; (3) Bush's appointment improperly releases BNYM of its duties; and (4) NCUA has no authority to direct litigation here.

Regardless of the merits of its arguments, Deutsche Bank does not have standing to challenge the validity of a trust agreement it is not a party to. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79 (2d Cir. 2014). In *Rajamin*, the Second Circuit rejected mortgage borrowers' purported standing where the borrowers sued the trustee of the trusts to which their loans were assigned. The borrower plaintiffs there sought a declaratory judgment that the trusts did not own their mortgages on the grounds that that parties to the assignment agreements failed to comply with certain terms of those agreements. *See id.* at 86-90. The *Rajamin* facts are analogous to those before the Court here. Deutsche Bank is seeking to challenge the Separate Trustee Agreement, an agreement to which it is not a party, as noncompliant with the NGN Indenture Agreements, to which Deutsche Bank is not party either. It does not have standing to do so. *See Wells Fargo II*, 2017 WL 3610511, at *16 (citing *Rajamin* and noting that the court was "not convinced that [the defendant has] standing to challenge the validity of the

Separate Trustee Agreement as a means of challenging the Separate Trustee's real-party-in-interest status").

On the standing issue, Deutsche Bank points to the Second Circuit's decision in *U.S. Bank*, where the panel rejected NCUA's argument that the defendants lacked standing to challenge actions taken by BNYM as trustee by pointing out that the defendants were "not challenging actions taken by BNYM as trustee"; rather, they were "simply relying on the Trust and Indenture Agreements to demonstrate that NCUA Liquidating Agent and the NGN Trusts assigned their claims to BNYM." 898 F.3d at 255. While Deutsche Bank argues that it too is simply using the NGN Indenture Agreements to "demonstrate" that the Separate Trustee lacks standing (Def.'s Mem. at 12 n.12), there is a distinction between the two cases. *U.S. Bank* simply confirmed that an entity can point to an agreement to which it is not a party in order to show the court that an assignment has occurred, but, per *Rajamin*, that party does not have standing to challenge the *validity* of that assignment by arguing that the terms of the contract or assignment were not abided by.

Even if the Court were inclined to engage with Deutsche Bank's challenges to the Separate Trustee Agreement on the merits, it would find the challenges to be based on contract language that is ambiguous enough for the pleadings to survive at this stage. "Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004).

In addition to advancing arguments about the validity of the Separate Trustee Agreement, Deutsche Bank attempts to rebut a point NCUA says it never made, namely that even if Bush lacks authority to sue as a trustee, he can pursue the claims as BNYM's assignee. Deutsche Bank argues that Bush cannot bring claims on behalf of BNYM as its assignee because (1) Bush has no standing to bring claims because BNYM, which receives the proceeds of the lawsuit under the Separate Trustee Agreement, did not divest itself from all control in the claims and (2) such an assignment would violate New York's prohibition on champerty. (Def.'s Mem. at 14-15.) Fundamentally, these arguments fail because nowhere is Bush purported to be an assignee. He was appointed as a *trustee* pursuant to the Separate Trust Agreement. Indeed, the word "assign" is nowhere in the Separate Trustee Agreement. NCUA never argued in its opening memorandum of law that Bush could bring the claims as an assignee. (*See* Pl.'s Reply Mem. at 5.) The Court will accordingly disregard Deutsche Bank's arguments against the non-existent assignment.

### 6. *The Separate Trustee Benefits From NCUA's Extender Statute.*

12 U.S.C. § 1787(b)(14) (the "Extender Statute") sets the period for NCUA to bring contract claims at "the longer of" "the 6-year period beginning on the date the claim accrues" or "the period applicable under State law." 12 U.S.C. § 1787(b)(14)(A)(i); *see also id.* § 1787(b)(14)(A)(ii) (similarly measured "3-year period" for tort claims). The extender period runs from "the later of" "the date of the appointment of [NCUA] as conservator or liquidating agent" or "the date on which the cause of action accrues" under state law. *Id.* § 1787(b)(14)(B). Under the Extender Statute, claims would have only started accruing on March 20, 2009, the day the first credit unions went into conservatorship – thus those claims would expire six years later on March 20, 2015. Any claims that accrued after the NGN re-securitizations in 2010 and 2011 would have accrued to BNYM as Indenture Trustee, who would benefit from New York's statutes of limitation – six years for contract claims and three years for tort claims. NCUA filed its original complaint on November 7, 2014. (Doc. 1.) Thus, NCUA's claims are all timely.

Deutsche Bank claims that the Extender Statute only applies to actions brought by NCUA and does not travel to the Separate Trustee. (*See* Def.'s Reply Mem., Doc. 132 at 9.) However, five federal courts of appeal have ruled that, with respect to extender statutes for other federal agencies (*e.g.* the FDIC's), the benefit of the extender statutes passes to an assignee of the federal agency. *See, e.g., UMLIC VP LLC v. Matthias*, 364 F.3d 125, 133 (3d Cir. 2004); *Beckley Capital L.P. v. DiGeronimo*, 184 F.3d 52, 57 (1st Cir. 1999); *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1177 n.3 (10th Cir. 1999); *United States v. Thornburg*, 82 F.3d 886, 890-91 (9th Cir. 1996); *FDIC v. Bledsoe*, 989 F.2d 805, 809-12 (5th Cir. 1993).

The Court finds no articulable reason for NCUA's Extender Statute to be treated differently than another federal agency's, like the FDIC's. After all, the extender statutes for both the FDIC and NCUA were enacted pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and are "materially identical." *FDIC v. First Horizon Asset Sec.*, 821 F.3d 372, 375 n.1 (2d Cir. 2016). NCUA's claims are timely.

### 7. *Conclusion*

For the reasons articulated above, the Court grants leave for NCUA to amend its complaint and substitute the Separate Trustee as plaintiff for claims made on behalf of the NGN Trusts and itself as plaintiff on behalf of the unwound certificates pursuant to Rules 15 and 17.

**B.      Defendant's Motion to Dismiss the Proposed Second Amended Complaint[10] is Granted in Part and Denied in Part.**

### 1.    Legal Standard

On a motion to dismiss pursuant to Rule 12, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015)). "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To state a plausible claim, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

### 2.    Deutsche Bank's Motion to Dismiss NCUA's Breach of Contract Claims is Denied.

Count One in the PSAC charges Deutsche Bank with breaching its contractual duties as trustee under the PSAs. (PSAC ¶¶ 523-33.) "The PSAs are contracts between, in addition to others, the depositor, the master servicer or servicer, and the trustee, which govern the trusts that issued the certificates... [and] set forth Defendant's contractual duties and obligations, which are substantially similar for each trust." (*Id.* ¶¶ 62-63.)[11] The PSAC points to various provisions in the PSAs outlining Deutsche Bank's duties, which include (1) pre-Event of Default ("EOD")[12] obligations such as taking possession of and reviewing mortgage files conveyed to the trust and notifying relevant parties of

---

[10] Deutsche Bank filed a motion to dismiss the PSAC in its entirety if the Court granted NCUA's motion for leave to file the PSAC and substitute the Separate Trustee as plaintiff for the NGN claims. (Doc. 117.) Because the Court grants plaintiff's motion, it now turns to Deutsche Bank's motion to dismiss the PSAC.
[11] Each PSA is several hundred pages long. Doc. 114-10, Attaway Ex. 1.I, is a sample PSA for one of the trusts. Doc. 114-9, Attaway Ex. 1.H contains excerpts of key language from all the PSAs at issue.
[12] "Section 7.01 of the PSAs identifies several types of failures by the servicer that may give rise to such an event. The other PSAs contain substantially similar provisions. *See* [Doc. 114-9, Attaway] Exhibit H § VIII." (PSAC ¶ 88; *see also id.* ¶¶ 410-19 (specific allegations of EODs).)

any defects as well as providing notice of and enforcing repurchase rights with respect to mortgages that are found to be in breach of representations and warranties ("R&Ws"), and (2) post-EOD obligations where, after Deutsche Bank has notice of an EOD, it is required to provide notice to all certificateholders and act prudently in managing the EOD. (*See id.* ¶¶ 64-94.)

Crucially, NCUA alleges that Deutsche Bank had notice of problems related to the mortgages held in the trust. For defects in the mortgage files, the PSAC points to the trustee's usual reports which would have flagged issues as well as "numerous reports, litigation, and investigations [that] have revealed the widespread misconduct of servicers to the trusts at issue here to cover-up the systemic failure of depositors and sponsors to properly assign the underlying mortgage loans to issuing trusts, including through the use of robo-signers." (*Id.* ¶¶ 105-06.) With respect to notice of breaches of R&Ws, the PSAC alleges that Deutsche Bank would have had notice through various internal procedures it likely would have conducted as trustee as well as:

> (A) general reports concerning originators' systematic abandonment of their underwriting standards and reports concerning the sponsors' pervasive disregard of prudent securitization standards (¶¶ 112-126); (B) specific reports concerning the originators of loans in the trusts abandoning their underwriting standards and sponsors of the securitizations failing to follow prudent practices (¶¶ 127-365); (C) the high number of borrower delinquencies and defaults on mortgages in the trusts' loan pools and enormous losses to the trusts (¶¶ 366-375); (D) the collapse of the certificates' credit ratings from high, investment-grade ratings when purchased to much lower ratings, including numerous "junk" ratings (¶¶ 376-379); and (E) Deutsche Bank's settlement with the Department of Justice concerning its securitization of loans originated by systematic abandonment of loan originator underwriting guidelines, together with the numerous lawsuits brought against Defendant and its affiliates alleging the systematic abandonment of originator underwriting guidelines (¶¶ 380-409).

(*Id.* ¶¶ 110-11.). With respect to knowledge of EODs, NCUA alleges that Deutsche Bank knew of widespread master servicer defaults (which trigger EODs) through numerous public lawsuits, investigations, and reports as well as "servicing reports and monthly remittance reports" defendant would have received. (*Id.* ¶¶ 470-80.)

> i)   *NCUA Has Plausibly Alleged That Deutsche Bank Had Notice of Pre-EOD Breaches of R&Ws and of EODs.*

One of Deutsche Bank's key arguments is that it had no knowledge or notice of any pre-EOD breaches of R&Ws or of EODs. It asserts that it was under no general obligation to conduct any investigations under the PSAs and could, prior to an EOD,

simply take representations made to it about the mortgages at face value. (*See* Def.'s Mem. at 19-20.) Deutsche Bank also contends that NCUA fails to allege that Deutsche Bank had knowledge of any EODs. (*Id.* at 24.)

At least 13 decisions by 10 judges in the Southern District of New York have allowed similar breach of contract claims against RMBS trustees to proceed; no decision is to the contrary. *See, e.g., Royal Park Investments SA/NV Individually & on Behalf of all Others Similarly Situated v. Bank of New York Mellon as Tr.*, No. 1:14-cv-6502, 2016 WL 899320, at *5 (S.D.N.Y. Mar. 2, 2016) ("join[ing] the chorus of judges in this district" in finding that the plaintiff met its Rule 8 burden at the motion to dismiss stage). This Court agrees with those decisions. Deutsche Bank's knowledge (both of pre-EOD breaches of R&Ws and of the EODs themselves) and breach is sufficiently pled in the PSAC to survive a motion to dismiss. *See Wells Fargo I*, 247 F. Supp. 3d at 389-90 ("It is true that to prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis… [b]ut this is not a pleading requirement, because at the pleading stage such information is uniquely in the possession of defendants.") (internal citations and quotation marks omitted) (quoting other decisions in this district); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394, 2016 WL 439020, at *6 (S.D.N.Y. Feb. 3, 2016) ("Plaintiff's detailed allegations of high default rates, staggering economic losses, and widespread investigation into RMBS securitization are sufficient to allow the court to draw the reasonable inference that R&Ws were breached on a loan-by-loan basis.") (internal citations and quotation marks omitted) (quoting other decisions in this district).

Deutsche Bank acknowledges the unfavorable case law in the Southern District of New York, but argues that an intervening decision from the New York State Supreme Court, Appellate Division, First Department demonstrates that New York law has moved in its favor. (Def.'s Mem. at 20-24.)

In *Commerce Bank v. Bank of New York Mellon*, 141 A.D.3d 413 (1st Dept. 2016), the First Department affirmed the trial court's dismissal in part of the plaintiff's breach of contract claims against an RMBS trustee in which the plaintiff alleged that the defendant trustee did not give notice of breaches of R&Ws and of occurrences of EODs. Despite agreeing with the Southern District of New York judges that allegations do not need to be made on a trust-by-trust basis at the motion to dismiss stage, the First Department still found that the relevant claims were to be dismissed because the plaintiff failed to sufficiently allege that the defendant trustee had knowledge of the relevant events. *Id.* at 414-15. The *Commerce Bank* court added that the defendant trustee had no duty to investigate whether these events indeed did occur, i.e. it had no "duty to 'nose to the source.'" *Id.* at 415. Deutsche Bank claims that this proves that "New York State Courts

view an RMBS trustee's duties under a PSA much more narrowly than their Federal counterparts." (Def.'s Mem. at 21.)

While *Commerce Bank* throws a wrench into the uniform authority in this district, the Court finds that the three-page opinion is simply not enough and not sufficiently specific to overcome the weight and reasoning of the aforementioned authority. In fact, *Commerce Bank* does not purport to change the law and cites the Southern District of New York RMBS cases favorably. "Decisions of New York's intermediate appellate courts are helpful indicators of how the [New York] Court of Appeals would decide, but we are not strictly bound by decisions of the Appellate Division, particularly when we have persuasive data that the Court of Appeals would decide otherwise." *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted). Here, the ambiguity in *Commerce Bank* and the weight of authority in plaintiff's favor amounts to the requisite "persuasive data." *See Wells Fargo I*, 247 F. Supp. 3d at 392 (*Commerce Bank* was "not sufficiently specific for this Court to determine the precise manner in which the First Department concluded that the plaintiffs therein had not alleged the defendant's discovery."); *Commerzbank AG v. Bank of New York Mellon*, No. 15-cv-10029, 2017 WL 1157278, at *5 (S.D.N.Y. Mar. 21, 2017) ("*Commerzbank/BNYM*") (distinguishing *Commerce Bank* and allowing RMBS breach of contract claims to proceed).

Additionally, looking at the complaint at issue in *Commerce Bank*, it is fair to say that NCUA's pleading is considerably more robust than the *Commerce Bank* complaint. The *Commerce Bank* complaint alleged the defendant's knowledge of R&W breaches through various external events and the defendant's involvement in the RMBS market in the same way NCUA does (*see Commerce Bank* Compl., Doc. 119-12, Garbutt Ex. 12 ¶ 167), but NCUA certainly does so in more length and detail. Regarding the defendant in *Commerce Bank*'s knowledge of EODs, the focus in the complaint was on a letter from a nonparty that the plaintiff alleged constituted "written notice" of an EOD (*see Commerce Bank* Compl. ¶¶ 172-76) – a proposition that the *Commerce Bank* court rejected. *Commerce Bank*, 141 A.D.3d at 414-15. Here, NCUA has pled more avenues through which Deutsche Bank likely received notice of EODs. In the end, "[*Commerce Bank*] did not explain what precisely it found lacking [in the pleadings]. This Court cannot therefore determine precisely where the *Commerce Bank* court would draw a line; the insufficiency of the allegations in that case do not preclude the Court from finding the far more robust allegations in this case to be sufficient." *Wells Fargo I*, 247 F. Supp. 3d at 392.

Similar reasoning applies to *Commerce Bank*'s assertion that a trustee has no duty to "nose to the source." It is true that there is no duty to investigate, just as Deutsche Bank urges. However, once Deutsche Bank does receive notice of these events, it is required to take action under the PSAs, as established above. And NCUA has plausibly pled that Deutsche Bank did indeed receive notice and should have thus acted. There is

therefore no inconsistency. *See Wells Fargo I,* 247 F. Supp. 3d at 393 ("In *Commerce Bank,* there was no notice, no discovery, and therefore no duty to 'nose to the source.' This is consistent with the law in this Circuit; it does not undermine it."); *Commerzbank AG v. U.S. Bank Nat'l Ass'n.,* 277 F. Supp. 3d 483, 492 (S.D.N.Y. 2017) ("*Commerzbank/U.S. Bank*") ("[*Commerce Bank*] sensibly held that an RMBS trustee does not have a duty to monitor or a duty to nose to the source of improper servicing if there is no reason to know about it. But where, as here, the Complaint alleges a number of circumstances plausibly raising an inference that the Trustees knew, or should have known, of a breach, the duty to monitor arises.") (internal quotation marks omitted).

Therefore, the Court rejects Deutsche Bank's argument that its knowledge of pre-EOD breaches of R&Ws and of EODs was insufficiently pled, consistent with the overwhelming authority in this district.

However, Deutsche Bank makes additional arguments to dismiss NCUA's breach of contract claim. Those arguments focus separately on Deutsche Bank's (1) post-EOD obligations and (2) pre-EOD obligations – both of which NCUA alleges Deutsche Bank breached. The Court will now turn to those arguments.

>    ii)    *Deutsche Bank's Remaining Challenges to NCUA's Post-EOD Contract*
>           *Claims Are Meritless.*

Deutsche Bank argues that not only was its knowledge of EODs insufficiently pled (as discussed above), but also that there was *never any EOD at all* because the servicers never received notice of any breaches of the PSAs – a requirement under the PSAs for an EOD to occur. (Def.'s Mem. at 24-25; *see* PSA § 7.01, Doc. 114-9, Attaway Ex. 1.H, Section VIII.) Deutsche Bank cites further recent decisions from the First Department in support.

In *Fixed Income Shares: Series M v. Citibank, N.A.,* 157 A.D.3d 541 (1st Dept. 2018) and *Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n,* 165 A.D.3d 526 (1st Dept. 2018), the First Department limited the application of the "prevention doctrine." The "prevention doctrine" stands for the proposition that a party cannot argue that its performance under a contract has not been triggered by a condition precedent, when the party itself prevented the triggering of that condition precedent. Those cases held that, where a defendant trustee in the RMBS context argues that its EOD obligations were not triggered because the trustee never gave notice of breaches – and providing notice of breaches is a condition precedent to triggering the trustee's EOD obligations – the plaintiffs could not counterargue that the prevention doctrine prevents the defendant from benefitting from not providing notice. The First Department reasoned that the prevention doctrine "is not applicable because it requires the party's active conduct preventing or hindering the fulfillment of the condition .... A defendant's failure to send a notice to cure to the servicers is not active conduct within the meaning of the prevention

doctrine." *Blackrock Balanced Capital Portfolio (FI)*, 165 A.D.3d at 527 (citing *Fixed Income Shares*) (internal citations and quotation marks omitted).

Prior to the aforementioned First Department decisions, "several courts in this District have applied the prevention doctrine" to situations just like the one here, where defendant trustees claim that no EOD occurred because the servicers never received notices to cure from the trustee. *Commerzbank/U.S. Bank*, 277 F. Supp. 3d at 491 (citing cases).

On this issue as well, the Court finds the authority in this district to be better reasoned than the short, vague First Department decisions cited by Deutsche Bank. The First Department decisions do not explain why failure to send notice is not "active conduct" when such failure could plausibly have been intentional or due to active frustration by the trustee nor did the decisions explain why "active conduct" is required to apply the logic of the prevention doctrine. Because the First Department never expounded on its "active conduct" distinction nor explained why an RMBS trustee should be able to avoid alleged liability for breach of contract on a technicality that came about through its own alleged wrongdoing, the Court is persuaded that "the [New York] Court of Appeals would decide otherwise." *Reddington*, 511 F.3d at 133. NCUA has plausibly alleged that EODs did occur, and the Court will not dismiss its breach of contract claims on grounds that they did not.[13]

Deutsche Bank makes a separate, additional argument to dismiss post-EOD claims on the grounds that NCUA only alleged that Deutsche Bank did not provide notice of "events that could ripen into EODs" as opposed to actual EODs, which is one ground that *Commerce Bank* upheld the trial court's dismissal of post-EOD claims. (Def.'s Mem. at 25-26.) This argument can be dispensed with for the same reason that the lack of knowledge argument can be – NCUA has plausibly alleged at this stage that the breaches by the servicers were indeed EODs and not just events that could ripen into EODs.

> *iii)* *Deutsche Bank's Remaining Challenges to NCUA's Pre-EOD Contract Claims Are Meritless.*

---

[13] Deutsche Bank argues that *Bakal v. U.S. Bank Nat'l Ass'n*, 747 F. App'x 32 (2d Cir. 2019) (summary order), decided after the briefing in this case was completed and about which the parties exchanged post-briefing letters (*see* Docs. 141, 143, 147), supports its position. There, the Second Circuit ruled that an EOD did not occur under the PSA at issue. In addition to other reasons specific to the facts there, the panel found that because the plaintiff did not allege that the trustee or anyone else provided notice to the master servicer, an event of default did not occur under the PSA. 747 F. App'x at 35. That, however, was an alternative ground for its ruling that an EOD had not occurred. The Court will still apply the prevention doctrine here. In addition to the fact that the *Bakal* decision was made in a summary order and that the portion cited by Deutsche Bank was not its holding, the *Bakal* panel did not mention the prevention doctrine nor engage with the aforementioned First Department cases.

In addition to taking action upon knowledge of breaches of R&Ws, another pre-EOD obligation NCUA alleges Deutsche Bank breached relates to the mortgage file. First, NCUA alleges that Deutsche Bank had a duty to take physical possession of the mortgage file, review it, and certify its completeness. (PSAC ¶¶ 64-69.) Second, NCUA claims that Deutsche Bank was required to, upon review of the file, notify the relevant parties of any defects and, if required, enforce any repurchase rights with respect to defective files. (*Id.* ¶¶ 70-73.) Deutsche Bank makes two counterarguments: (1) it had no duty to take possession of completed loan files and (2) the six-year statute of limitations would have already run on these claims. (Def.'s Mem. at 26-28.)

With respect to Deutsche Bank's first argument, although it cites the district court decision in *Bakal v. U.S. Bank Nat'l Ass'n*, No. 15-cv-6976, 2018 WL 1726053 (S.D.N.Y. Apr. 2, 2018), *aff'd*, 747 F. App'x 32 (2d Cir. 2019), where the court ruled that under the PSA at issue there, the defendant trustee was not the entity responsible for reviewing and physically taking possession of the mortgage file, 2018 WL 1726053, at *10, *Bakal* did not address NCUA's separate allegations related to Deutsche Bank's failure to enforce repurchase rights. Those allegations are clearly pled with the requisite specificity and plausibility to survive a motion to dismiss. With respect to the portion of NCUA's mortgage file allegations related to Deutsche Bank's duty to review and physically take possession of the file, because there are numerous trusts at issue here, plaintiff is not required to "demonstrate breach on a loan-by-loan and trust-by-trust basis" at the motion to dismiss stage. *Wells Fargo I*, 247 F. Supp. 3d at 389 (citing other cases in this district). Accordingly, the Court will not dismiss NCUA's pre-EOD claims related to the mortgage file.

Turning to Deutsche Bank's second assertion that these mortgage file defect claims are time-barred, Deutsche Bank urges that an "exception report" relating to any defects would have been due for the latest-formed trust by January 8, 2008, thus making the six-year statute of limitations expire on January 8, 2014 at the latest. (Def.'s Mem. at 28; *see* Doc. 119-13, Garbutt Ex. 13.) The original complaint in this case was filed on November 7, 2014. Deutsche Bank cites *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 709 (S.D.N.Y. 2016) ("*Phoenix Light/DB*"), where the court held that "claims for document delivery failures" were time-barred, whereas other breach of contract claims were not. However, because, as discussed above, the Court finds that NCUA's Extender Statute applies, claims did not start accruing until March 20, 2009. These claims are thus also timely. By contrast, the plaintiff in *Phoenix Light/DB* did not receive the benefit of any extender statute.[14]

---

[14] The Court swiftly addresses two other arguments put forward by Deutsche Bank. First, Deutsche Bank argues that NCUA's allegations that Deutsche Bank did not comply with its reporting requirements under Regulation AB (specifically 17 C.F.R. § 229.1121) cannot form a claim of breach of contract. (Def.'s

### 3.   *Deutsche Bank's Motion to Dismiss NCUA's Tort Claims is Granted.*

NCUA brings two tort claims in the PSAC: (1) negligence and gross negligence (Count Two, ¶¶ 534-40) and (2) breach of fiduciary duty (Count Three, ¶¶ 541-46). The negligence claim stems from Deutsche Bank's alleged duty to "administer the trusts without negligence" which it purportedly violated though "fail[ure] to avoid conflicts of interest" and thus "protect the interests of the certificateholders," specifically by not "(1) acting in good faith; (2) providing notice to certificateholders when appropriate... and (3) acting with undivided loyalty to certificateholders." (*Id.* ¶¶ 537-39.) The breach of fiduciary duty claim stems from Deutsche Bank's alleged fiduciary duty "following Events of Default to act in good faith, with due care and undivided loyalty, and without conflicts of interest, when performing the obligations set forth in the PSAs," which NCUA alleges that Deutsche Bank failed to do. (*Id.* ¶¶ 544-45.)

Deutsche Bank argues that these tort claims should be dismissed on four grounds: (1) they are barred by the economic loss doctrine; (2) they are duplicative of plaintiff's contract claim; (3) the fiduciary duty claim fails because there was no fiduciary duty and the allegations of conflicts of interest are conclusory; and (4) the negligence claim fails because Deutsche Bank's duties are limited under the PSAs. (Def.'s Mem. at 36-40.) Because the Court grants the motion to dismiss plaintiff's tort claims on the first two grounds, it will not address the latter two.

### i)   *NCUA's Tort Claims Are Dismissed Pursuant to the Economic Loss Doctrine.*

Under New York's economic loss doctrine, "[a] plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." *Phoenix Light/DB*, 172 F. Supp. 3d at 718–19 (citing *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013)). "Plaintiffs' allegations that Defendant breached duties independent of its contracts do not, themselves, 'allow evasion of the economic loss rule, which presents

---

Mem. at 28-29.) NCUA responds that it is not in fact raising Deutsche Bank's alleged violation of Regulation AB as an independent breach of contract claim. (Pl.'s Reply Mem. at 19-20.) The argument is therefore moot. Second, in a post-briefing letter to this Court, Deutsche Bank submitted "supplemental authority from the Ohio Court of Appeals" in *Western & Southern Life Insurance Co. v. Bank of New York Mellon*, 2019 WL 495581 (Ohio Ct. App. Feb. 8, 2019). (Doc. 150.) In that letter, Deutsche Bank attempted to raise a new argument for the first time with respect to Deutsche Bank's pre-EOD obligations as it pertains to breaches of R&Ws, arguing that the language in the PSAs for some of the trusts do not place any obligation on the trustee to take any action to enforce R&W breaches even upon notice. (*Id.*) However, the Court rejects this argument for being raised for the first time in a post-briefing letter. *See United States v. Strock*, No. 15-cv-0887, 2018 WL 647471, at *5 (W.D.N.Y. Jan. 31, 2018). This is especially so when the impetus for the new argument is a nonbinding Ohio intermediate appellate decision affirming a *post-trial* decision by the lower court.

a second, distinct barrier' to tort claims stemming from contractual relationships." *Wells Fargo I,* 247 F. Supp. 3d at 399 (quoting *Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n,* 109 F. Supp. 3d 587, 599 (S.D.N.Y. 2015)). "The economic-loss rule provides that 'a contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding the use of familiar tort language in its pleadings.'" *Wells Fargo I,* 247 F. Supp. 3d at 399 (quoting *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,* No. 14-cv-10116, 2016 WL 1169515, at *9 (S.D.N.Y. Mar. 22, 2016)). *See also Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n,* 328 F. Supp. 3d 141, 157-60 (S.D.N.Y. 2018) (providing insight by distinguishing between New York's "economic loss rule," which is likely only applicable in the products-liability context, with its "economic loss doctrine," applicable here).

In the very same scenario as the one before the Court, where tort claims of negligence and/or breach of fiduciary duty are asserted simultaneously with breach of contract claims against RMBS trustees, courts have split on whether the economic loss doctrine applies. *Compare Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n,* 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016) and *Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon,* No. 16-cv-1597, 2018 WL 1417850, at *6-7 (S.D.N.Y. Mar. 8, 2018) (Buchwald, J.), *aff'd sub nom. Triaxx Prime CDO 2006-1, Ltd. v. U.S. Bank Nat'l Ass'n,* 741 F. App'x 857 (2d Cir. 2018) (summary order) (dismissing tort claims as barred by the economic loss doctrine) *with Phoenix Light/DB,* 172 F. Supp. 3d at 719 and *Commerzbank/U.S. Bank,* 277 F. Supp. 3d at 496-97 (allowing tort claims to proceed).

This Court agrees with those judges who have found the economic loss doctrine to apply and have dismissed tort claims against RMBS trustees. NCUA asserts that it pled "a legal duty *separate* from the contract claim" (Pl.'s Reply Mem. at 23 (emphasis in original)), but even if true, the economic loss doctrine "presents a second, distinct barrier" to the tort claims. *Wells Fargo I,* 247 F. Supp. 3d at 399. Even where a claim "may arise from common law duties and not from the PSA, 'the injury' and 'the manner in which the injury occurred and the damages sought persuade us that plaintiff's remedy lies in the enforcement of contract obligations,' and are barred by the economic loss doctrine." *U.S. Bank II,* 2016 WL 796850, at *11 (quoting *Bellevue S. Associates v. HRH Const. Corp.,* 78 N.Y.2d 282, 293 (1991)). Here too, the basis for plaintiff's damages sound in Deutsche Bank's failures to take actions under the PSAs, for which the asserted contractual remedies would be appropriate. In addition to the aforementioned district court decisions, Deutsche Bank's position that the economic loss doctrine applies is further bolstered by (1) the Second Circuit's affirmance of Judge Buchwald's opinion in *Triaxx,* 741 F. App'x 857 (2d Cir. 2018) (summary order), and (2) the First Department's decision in *Blackrock Balanced Capital Portfolio (FI)* affirming the New York Supreme Court's dismissal of the plaintiff's tort claims against the RMBS trustee, finding that "the court correctly determined that the tort claims are barred by the economic loss doctrine." 165 A.D.3d at 528.

There is also reason to doubt that NCUA has actually asserted any separate duty owed by Deutsche Bank; although the PSAC contains the proper words to make out an independent tort claim, the pleading is quite hollow on substance. The fact that Deutsche Bank's alleged duty stems from the PSAs is revealed by the glaring oxymoron nestled within the PSAC's negligence allegations: "Defendant owed the certificateholders, including Plaintiffs, *extracontractual duties under the PSAs*." (PSAC ¶ 537 (emphasis added).) NCUA references the contract to demonstrate that there were "*extra*contractual duties," an inherently untenable position seemingly taken purely to avoid the economic loss doctrine. NCUA "seem[s] to contend that merely labeling these claims 'extra-contractual' will somehow transmogrify them into extracontractual claims. It does not." *Triaxx*, 2018 WL 1417850 at *6. Less conspicuous but also consistent is the reference to the PSAs in the fiduciary duty count: "Defendant owed Certificateholders, including Plaintiffs, a fiduciary duty following Events of Default to act in good faith, with due care and undivided loyalty, and without conflicts of interest, *when performing the obligations set forth in the PSAs*." (*Id.* ¶ 544 (emphasis added).) Because, among other indicators, the consistent references to the PSAs reveal how reliant NCUA's tort claims are on the contracts at issue, the Court grants defendant's motion to dismiss plainitff's tort claims on economic loss grounds.

       ii)       *NCUA's Tort Claims Are Also Largely Duplicative of Its Contract Claims.*

For similar reasons, the Court independently grants Deutsche Bank's motion to dismiss these tort claims because they are duplicative of the contract claims – with one exception. Where "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). In *Bakal*, the Second Circuit recently affirmed dismissal of the plaintiffs' fiduciary duty claim because it "reproduce[d] the allegation that [gave] rise to the Certificateholders' breach of contract claim." 747 F. App'x at 37. In the *Bakal* district court decision that was affirmed, Judge Castel elaborated that "[w]hen a PSA establishes a duty of prudence on the part of a trustee if an event of default occurs, a claim directed to that duty sounds in contract, and not an independent fiduciary duty." 2018 WL 1726053, at *13. Thus, Count Three – the fiduciary duty count – is dismissed as duplicative.

With respect to the negligence count as it relates to pre-EOD duties the trustee owed NCUA, "[p]rior to an Event of Default, an indenture trustee's duty is governed solely by the terms of the indenture, with two exceptions: a trustee must still [i] avoid conflicts of interest, and [ii] perform all basic, non-discretionary, ministerial tasks with due care." *Wells Fargo I*, 247 F. Supp. 3d at 395 (quoting *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*, 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011)) (internal quotation marks

omitted). Allegations of breach of an independent duty to avoid conflicts of interest are properly pled as negligence claims, not as breaches of any fiduciary duty. *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-cv-10104, 2015 WL 5710645, at *7 (S.D.N.Y. Sept. 29, 2015). Therefore, solely to the extent that plaintiff's negligence claim in Count Two alleges a breach of duty to avoid conflicts of interest, that claim is not duplicative. *See Commerzebank/BNYM*, 2017 WL 1157278, at *6 (dismissing all tort claims as duplicative save for claims relating to trustee's conflict of interest); *Fixed Income Shares: £Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 857-58 (S.D.N.Y. 2015) (same). However, as described above, that claim is independently dismissed because of the economic loss doctrine. *See Blackrock v. Deutsche Bank*, Garbutt Ex. 29, Tr. 5:17-6:16 (Furman, J.) (Feb. 2, 2017 oral decision) (granting dismissal of conflict-of-interest tort claims on economic loss grounds and avoiding deciding the duplicative argument because "even if they are [duplicative] … plaintiffs fail to allege any damages that arise from those extra-contractual obligations[.] Instead, the damages alleged in the amended complaint are limited to those that sound in defendants' failures to take actions under the governing agreements.").

### 4. Deutsche Bank's Motion to Dismiss NCUA's Indemnification Claims is Denied.

The PSAC next asserts two counts related to Deutsche Bank's use of the trust funds to underwrite its defense in this case. Count Four seeks a declaratory judgment from this Court barring Deutsche Bank from indemnifying itself from the trust (¶¶ 547-53) and Count Five is a claim for breach of contract arising from Deutsche Bank's indemnification withdrawals from the trust fund (¶¶ 554-58). These indemnification claims were not alleged in the FAC.

NCUA contends that the PSAs are "binding contracts between the certificateholders and Deutsche Bank, as trustee," thus establishing a "first-party" relationship between the certificateholders and Deutsche Bank [i.e. as contracting counterparties as opposed to any side being deemed a third party to the contract]. (*See id.* ¶¶ 495-503.) NCUA relies on *Hooper Assocs. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989). *Hooper* stands for the proposition that, with respect to an indemnity clause in a contract, such indemnification is deemed only to apply to claims made by third parties to the contract unless the contract is "unmistakably clear" that the intent of the indemnifying party was to also indemnify its counterparty in litigation between the two. *See id.* at 491-92. Otherwise, the general rule applies that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser." *Id.* at 491.

The PSAs do allow Deutsche Bank to draw indemnification from the trust funds in relatively broad terms. As excerpted in the PSAC, a standard indemnification provision reads in part:

> [T]he Trustee and the Securities Administrator will be entitled to recover from the Distribution Account . . . all reasonable out-of-pocket expenses, disbursements and advances and the expenses of the Trustee . . . including without limitation, in connection with . . . any Event of Default, any breach of this Agreement or any claim or legal action (including any pending or threatened claim or legal action) incurred or made by the Trustee . . . in the performance of its duties or the administration of the trusts hereunder (including, but not limited to, the performance of its duties under Section 2.03 hereof) except any such expense, disbursement or advance as may arise from its negligence or intentional misconduct . . . .

(PSAC ¶ 504; *see* PSA § 8.05, Doc. 114-9, Attaway Ex. 1.H, Section X.) NCUA makes two general arguments: (1) Pursuant to *Hooper*, the PSAs are not "unmistakably clear" that Deutsche Bank can indemnify itself from the trust funds when defending itself against lawsuits made on behalf of the certificateholders themselves, and therefore Deutsche Bank cannot do so, and (2) even if *Hooper* does not apply, indemnification nevertheless would be impermissible because in all events the PSAs expressly preclude indemnification for fees, expenses, and liability incurred as a result of "negligence or intentional misconduct," which are precisely the allegations made against Deutsche Bank in this lawsuit. (*See generally* PSAC ¶¶ 495-518.)

The Court finds that *Hooper*'s presumption does not apply to the PSAs at issue. Certificateholders are not contracting parties to the PSAs. Even in the sample PSA cited in the PSAC, the parties to the PSA are listed as the Depositor, the Seller, the Master Servicer, and the Trustee. (*See* PSAC ¶ 499; Doc. 114-10, Attaway Ex. 1.I.) The case law on these indemnity provisions in RMBS PSAs also supports Deutsche Bank's position that certificateholders are third parties to the PSAs and *Hooper* therefore does not apply. In *MBIA Ins. Corp. v. Nationstar Mortg. LLC*, No. 18-cv-938, 2019 WL 357932 (S.D.N.Y. Jan. 29, 2019), a certificate insurer of RMBS trusts sued the trusts' Master Servicer because of the servicer's indemnification payments made to the trustee of the trusts. The servicer made those payments pursuant to the relevant PSAs because the trustee was defending separate lawsuits brought by certificateholders. The *MBIA* court ruled that *Hooper*'s "unmistakably clear" standard was inapplicable to suits brought by certificateholders against trustees because those "were third-party actions." *Id.* at *5 (citing *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 133 (S.D.N.Y. 2014)). *See also Greenwich Fin. Servs. Distressed Mortg. v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 197 (S.D.N.Y. 2009) (finding that, in the context of determining whether an exception to the Class Action Fairness Act applied with respect to RMBS PSAs, "just as bondholders are beneficiaries of, but not parties to, indentures, so too are the certificateholders beneficiaries of, but not parties to, the PSAs."); *PIMCO Absolute Return Strategy v. Wells Fargo Bank*, No. 654743/17 (N.Y. Sup. Ct. N.Y. Cty.), Garbutt Ex. 16, Tr. 19:14-25 (Ramos,

J.) (Nov. 13, 2017 oral decision) (finding that plaintiff certificateholders in RMBS action "didn't execute the PSA. ... [T]his is a third-party action as far as [the defendant trustee] is concerned.")

Accordingly, *Hooper* does not apply because certificateholders are not parties to the PSAs and the indemnification provision can be read as broadly as the plain language implies. Under the provision, Deutsche Bank is indemnified for expenses related to "any claim or legal action (including any pending or threatened claim or legal action) incurred or made by the Trustee . . . in the performance of its duties or the administration of the trusts hereunder" as long as there is no finding of misfeasance, bad faith, or negligence. (*See* PSAC ¶ 504; PSA § 8.05, Doc. 114-9, Attaway Ex. 1.H, Section X.) On its face, Deutsche Bank is entitled to indemnification for this lawsuit unless and until there is a determination of misfeasance, bad faith, or negligence.[15]

NCUA urges in the PSAC and its brief that if this provision is construed to indemnify Deutsche Bank, it would amount to "commercially unreasonable" judgment shifting. (PSAC ¶¶ 512-13; Pl.'s Reply Mem. at 40.) Not so. There is a clear exception in the indemnification provision if it is determined that Deutsche Bank acted with misfeasance, bad faith, or negligence. Those are precisely the allegations NCUA makes against Deutsche Bank in this breach of contract action.

---

[15] Additionally, even if the Court were to find that *Hooper* applies, as NCUA urges, the indemnification provision is arguably "unmistakably clear" that Deutsche Bank receives indemnification here. *Hooper* noted that the analysis of the contract should take into account "the language and purpose of the entire agreement and the surrounding facts and circumstances." 74 N.Y.2d at 492. Specifically, the New York Court of Appeals emphasized that even with a broad indemnification provision, if the enumerated subjects of indemnification are "susceptible to third-party claims" and if "other provisions in the contract [] unmistakably relate to third-party claims" – as they did in the computer equipment supply contract at issue there – then the indemnification provision does not apply to first-party claims unless unequivocal. *Id.* at 492. Here, by contrast, the indemnification provision – which covers a legal action incurred by the Trustee "in the performance of its duties or the administration of the trusts hereunder" – contemplates indemnification for a lawsuit exactly like this one brought by certificateholders against the trustee for breach of the PSA. This provision does not unmistakably relate to third party claims. In fact, there are sparingly few third party actions that would be covered by this provision. Additionally, one reason for the outcome in *Hooper* was that interpreting the contract at issue to include a lawsuit brought by the indemnitor would have "rendered [other] provisions [in the contract] meaningless." 74 N.Y.2d at 492. Here, NCUA has not provided any other PSA terms rendered meaningless if the Court interprets the indemnification clause as encompassing this suit. *See Crossroads ABL LLC v. Canaras Capital Mgmt., LLC*, 105 A.D.3d 645, 645–46 (1st Dept. 2013) (distinguishing *Hooper* on similar grounds); *PIMCO Absolute Return Strategy*, Tr. 20:9-16 ("[T]he [indemnification] provision is so broad and ... the carveout itself explains if there is some malfeasance on the part of Wells Fargo, then they are not to be indemnified. That's exactly the situation where the certificate holders would be suing. So ... it clearly contemplates that they are to be indemnified.").

Accordingly, the PSAs allow for indemnification *at this stage* of the litigation. However, Counts Four and Five of the PSAC will not be dismissed. If there ends up being a determination against Deutsche Bank in this action, Deutsche Bank may have to return the indemnification monies it withdrew from the trust fund. That is yet to be determined.

## C.    Defendant's Motion to Stay NCUA's Indemnification Claims is Granted.

Deutsche Bank has moved separately to stay NCUA's indemnification claims – Counts Four and Five of the PSAC. (Doc. 120.) Deutsche Bank contends that the Court should stay discovery on those claims until a determination is made with respect to NCUA's other claims; only then would the Court be able to determine whether Deutsche Bank acted with misfeasance, bad faith, or negligence. (*Id.*) In response, NCUA makes essentially one argument: The Court should primarily decide in its favor because *Hooper* applies and the PSAs are not "unmistakably clear" about indemnification here, which is a matter of law that can be decided by the Court without discovery. As above, NCUA's arguments do not win the day, and Deutsche Bank is entitled to indemnification for this lawsuit unless and until there is a determination of misfeasance, bad faith, or negligence. The Court therefore grants defendant's motion to stay discovery on Counts Four and Five. This conclusion is supported by decisions in this district.

In RMBS litigation between Royal Park and Deutsche Bank (as trustee), Royal Park filed a separate action with claims that track Counts Four and Five of the PSAC here arguing that Deutsche Bank was improperly indemnifying itself from the trust funds. Judge Nathan stayed the action pending resolution of the underlying litigation. *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-cv-5916, 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018). "[C]ourts generally consider five factors: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" *Id.* at *2 (quoting *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

Applying these factors, Judge Nathan found that: (1) there was "no prejudice to Royal Park if resolution were delayed" because there was no allegation that Deutsche Bank would not be able to repay if the Court ended up requiring it to do so and Royal Park's three-year delay in bringing the action showed a lack of exigency; (2) the burden on Deutsche Bank weighed "slightly" in favor of the defendant; and (3) it was most efficient for the court to grant a stay, which "may be necessary to avoid unnecessary determinations" such as whether Deutsche Bank incurred the expenses "because of

willful misconduct, bad faith, or negligence."[16] *Id.* at *2-3. The same reasoning applies towards granting a stay here.

In the Royal Park/U.S. Bank litigation, Royal Park also filed a separate complaint alleging that U.S. Bank was improperly indemnifying itself from the trust funds. The court consolidated that action with the underlying litigation. In addition to denying NCUA's motion to intervene in that case, Judge Marrero granted a stay on the indemnification claims. *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287 (S.D.N.Y. 2018). He reasoned that those claims "may well turn on determinations made in the Underlying Suit," and specifically noted the parties' debate over the "exception to the indemnification clauses for expenses incurred as a result of U.S. Bank's alleged willful malfeasance" and that "whether U.S. Bank acted grossly negligently is a central factual question in the Underlying Suit." *Id.* at 299. Judge Marrero also noted his agreement with Judge Nathan's analysis in the Royal Park/Deutsche Bank indemnification suit. *Id.*

Consistent with this authority and the plain language of the PSAs' indemnification provision and accompanying carveout, Deutsche Bank's motion to stay Counts Four and Five of the PSAC is granted.

## D.    Plaintiff's Motion to Strike is Denied.

NCUA separately filed a motion to strike Parts I-III of Deutsche Bank's reply memorandum. (Doc. 134.) NCUA refers to the Court's scheduling order providing that Deutsche Bank's reply memorandum was to be "limited to arguments regarding futility of amendment by reference to Rule 12" (Doc. 111), whereas Parts I-III of Deutsche Bank's reply memorandum address issues under Rules 15 and 17. (Pl.'s Mem. of Law in Support of Mot. to Strike, Doc. 135.)

Even though NCUA is correct that Deutsche Bank did not comply with the Court's scheduling order, NCUA cites no authority for the proposition that the remedy for such conduct is to strike that portion of the brief from the record. Ultimately, none of Deutsche Bank's arguments in the sections at issue sway the Court. The Court notes Deutsche Bank's improper argumentation and denies the motion to strike.

---

[16] Judge Nathan noted that Royal Park's arguments with respect to factors 4 and 5 were "largely a repeat of its arguments about the harm that would befall itself were the Court to stay resolution." *Id.* at *3.

## IV. CONCLUSION

For the reasons set forth above, NCUA's motion for leave to file a Proposed Second Amended Complaint and to substitute the Separate Trustee as a plaintiff (Doc. 112) is GRANTED; (2) Deutsche Bank's motion to dismiss (Doc. 117) is GRANTED in part and DENIED in part; (3) Deutsche Bank's motion to stay NCUA's indemnification claims (Doc. 120) is GRANTED; and (4) NCUA's motion to strike certain portions of Deutsche Bank's reply memorandum of law (Doc. 134) is DENIED. NCUA shall file its Second Amended Complaint on or before October 21, 2019.


Dated: New York, New York
       October 15, 2019

                              SO ORDERED:

                              Sidney H. Stein, U.S.D.J.

33