February 24, 2020

**VIA ECF**
Hon. Sidney H. Stein, U.S.D.J.
United States District Court, S.D.N.Y.
500 Pearl Street, Room 1010
New York, NY 10007

Re:   *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Trust Co.*, No. 14-cv-8919

Dear Judge Stein:

The parties in the above-referenced case write jointly to request that the Court enter an order regarding the format of document productions, including production of electronically stored information (an "ESI Protocol").  The parties engaged in extensive negotiations concerning a stipulated ESI Protocol, and have reached agreement on all aspects of an ESI Protocol, except for one remaining dispute described below.

Please find enclosed for the Court's consideration the proposed ESI Protocol.  See Exh. A.  The parties have agreed upon the language of all paragraphs of the proposed ESI Protocol except Paragraphs 2, 10, 12, and 17.  For those paragraphs, the parties have included each party's proposed version of the paragraph for the Court's consideration.  The parties have highlighted in yellow the portions of each paragraph where the parties' proposals differ.

The parties' only remaining disagreement relates to the format in which Plaintiffs will produce a certain percentage of their emails and other electronically stored information ("ESI").  Plaintiffs have identified a population of approximately 2.8 million emails that they would like to produce in "native format," i.e., as Microsoft Outlook files.  The Trustee would like Plaintiffs to produce those emails as Tagged Image File Format ("TIFF") images, i.e., as static images.[1]  Below, the parties set forth the reasons for their positions.

**Plaintiffs' Position**

The parties have agreed on the terms of a protocol to govern the production of new ESI, but disagree about whether the parties should be required to re-process documents that have already been produced in other litigation. Plaintiffs have proposed that documents produced in other litigation may be re-produced in this litigation without additional costly and unnecessary re-processing. Defendant Deutsche Bank National Trust Company ("Deutsche Bank"), on the other hand, insists that the parties re-process documents that have already been produced in other litigation in "native" format and re-produce those documents here in a different "TIFF" format. Deutsche Bank makes this demand despite the fact that all prior litigants have accepted the "native" productions and managed any resulting issues with ease. Plaintiffs' proposal should be adopted because it will result in the quick, low cost production of millions of responsive documents, whereas Deutsche Bank's proposal will require inefficient, expensive, and

---

[1]   Plaintiffs have agreed to produce all other emails as TIFF images.  Thus, this dispute is limited to only the specific population of approximately 2.8 million emails identified by Plaintiffs.

Hon. Sidney H. Stein, U.S.D.J.
February 24, 2020
Page 2

unnecessary processing that is out of line with Fed. R. Civ. P. 1's aim of "'secur[ing] the just, speedy, and inexpensive determination' of lawsuits." *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (quoting Fed.R.Civ.P. 1).

This dispute is not academic, and will have a meaningful impact on the cost of discovery. By way of background, Deutsche Bank served 215 separate requests for production directed to Plaintiff National Credit Union Administration Board and an additional 186 separate requests for production directed to Plaintiff Graeme W. Bush. In addition to being extraordinarily numerous, Deutsche Bank's requests are also incredibly broad. For example, Request No. 1 demands "[a]ll documents concerning the Covered Trusts, the GAs, the Plaintiff RMBS, the Certificateholders, the Certificate Owners, the Loans, the R&Ws, the Originators, the NCUA Warrantors, and/or the NCUA Servicers." While Request No. 80 to Plaintiff NCUA / Request No. 74 to Plaintiff Bush calls for "[a]ll documents concerning Your purchase or investment of any RMBS . . . ."[2]

To make discovery more efficient and get documents to Deutsche Bank as quickly as possible, Plaintiffs offered to re-produce large collections of documents from nearly identical litigation against other RMBS trustees as a good faith effort to minimize disputes and costs. These prior productions contain documents produced by Plaintiffs in response to requests from other RMBS trustees defending nearly identical claims and feature overwhelming, if not complete overlap, with Deutsche Bank's expansive requests. Such productions of previously collected materials are generally encouraged. *See, e.g.*, *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) ("allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery").

Plaintiffs' best estimate is that these collections would result in the almost immediate production of nearly 6 million documents including 2.8 million emails. It would also drastically minimize any disputes about the scope of Deutsche Bank's document requests. In addition to turning over these previously collected materials, Plaintiffs have also offered to conduct additional collection and search efforts to address any unique requests or concerns from Deutsche Bank. Nothing in the at-issue dispute about the form of Plaintiffs' production implicates the scope or breadth of discovery available to Deutsche Bank.

Where the parties disagree, however, is in regards to the format the production of previously collected and produced materials should take. Plaintiffs propose producing the emails and associated documents from prior litigation in the same format that they were previously collected

---

[2] While beyond the scope of this letter, the majority of the documents Deutsche Bank requests are irrelevant and disproportionate to the needs of the case. Overwhelming support for this proposition can be found in a ruling from Magistrate Judge Moses in a similar action by RMBS investors against Deutsche Bank. In that ruling, Judge Moses found that Deutsche Bank was "not entitled" to documents concerning the "state of mind," "knowledge," and "conduct" of the original purchasers. *Royal Park Investments SA/NV v. Deutsche Bank Natl. Tr. Co.*, 2016 WL 4613390, at *11 (S.D.N.Y. Aug. 31, 2016). Even more tellingly, Judge Moses found that many of the exact same requests that Deutsche Bank has propound here are facially unreasonable including many that were "objectionable on grounds that do not require extended discussion" and "plainly violate Fed. R. Civ. P. 34(b)(1)(A)." *Id.* at 10 and fn. 8. Plaintiffs maintain their objections to Deutsche Bank's requests and reserve the right to contest them.

Hon. Sidney H. Stein, U.S.D.J.
February 24, 2020
Page 3

and produced, namely in "native" format. Deutsche Bank contends that such productions should be processed to conform to their desired "TIFF" format, despite that fact that such "native" productions have been acceptable to all prior litigants.

Plaintiffs' proposed "native" production of email is entirely permissible under the Federal Rules, and many litigants even demand production of all documents in "native" format. Rule 34(b)(2)(E) requires production "*either* in the format in which e-mail is ordinarily maintained, *i.e.* 'native format,' *or* another usable format." *Covad Commun. Co. v. Revonet, Inc.*, 267 F.R.D. 14, 20 (D.D.C. 2010) (emphasis in original). Here, Deutsche Bank did not even specify in their document requests their desired "TIFF" formatting.

Given the immense size of the collection, over 2.8 million emails, the costs associated with converting these prior collections to Deutsche Bank's desired format is prohibitive and would undercut the time and cost savings underpinning Plaintiffs' proposed compromise. While the parties have received competing quotes, Plaintiffs estimate that the costs associated with the conversion process would be roughly $200,000 and would delay production of the documents by nearly a month. NCUA again notes that production in "native" format was ultimately acceptable to similar defendants. While "TIFF" formatting may be more convenient for Deutsche Bank and is certainly something that is commonly agreed to by litigants, "native" documents are perfectly useable and any claimed hardships by Deutsche Bank are overblown and largely ameliorated by the use of slipsheets which Plaintiffs will provide. Moreover, if Deutsche Bank truly values the extra convenience of "TIFF" formatting, any costs associated with conversion to TIFF format are more easily controlled by Deutsche Bank. Whereas NCUA would need to convert all 2.8 million "native" emails, Deutsche Bank could convert only those relatively few documents it chose to use in this litigation. That is exactly what prior litigants have done.

Given that production in "native" format is permissible and Deutsche Bank has cited no case to the contrary,[3] Plaintiffs ask that the Court not force Plaintiffs to undertake the costly conversion process on such a large volume of voluntarily produced material. Such an outcome would undermine Plaintiffs' good faith efforts to expedite discovery and reach compromise on the breadth of Deutsche Bank's requests. Rather, Plaintiffs ask the Court defer to the pragmatism embodied in Rules 1 and 26(b)(2)(C)(iii) which allow the Court to manage discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(iii). Accordingly, Plaintiffs respectfully submit that this Court should enter a version of the ESI Protocol that would permit Plaintiffs to reproduce these previously collected materials in their current format including "native" email files.

---

[3] Deutsche Bank cites to the Sedona Principles for the proposition that "native" production is "inappropriate," but the excerpt merely acknowledges that parties "commonly" transform email into other formats and that these alternate formats "may" be more efficient or useable.

Hon. Sidney H. Stein, U.S.D.J.
February 24, 2020
Page 4

**Trustee's Position**

As an initial matter, this dispute concerns only the technical issue (in the context of an "ESI" protocol dispute) of the format in which Plaintiffs will produce certain emails. Yet Plaintiffs argue at length about the breadth of the Trustee's document requests and the relevance of the documents the Trustee seeks. Not only are those issues irrelevant to this dispute, they are not ripe (the parties have been meeting and conferring about both parties' document requests), and it is unfair for Plaintiffs to raise these issues in an attempt to color this Court's view of a technical matter. Plaintiffs' suggestion that the subject emails are irrelevant, and therefore the format in which they are produced is also irrelevant because the Trustee is not entitled to them anyway, is not only inapposite, it is inconsistent with Plaintiffs' argument that Plaintiffs already produced these emails to other RMBS trustees "defending nearly identical claims" in response to document requests that "feature overwhelming, if not complete overlap, with" the Trustee's requests herein. If the emails were sufficiently relevant to produce in Plaintiffs' cases against other trustees, they are sufficiently relevant to produce to the Trustee herein. Thus, Plaintiffs' suggestion that producing the emails alone (in any format) somehow represents a "compromise" is specious.

In any event, for the reasons demonstrated below, Plaintiffs should produce the subject emails as TIFF images.

**First**, litigants almost exclusively produce emails as TIFF images, especially in large, complex litigation. For example, no other RMBS investor that sued the Trustee in this District produced emails in native format. Judges in this District have entered ESI Protocols requiring the parties to produce emails as TIFF images. See Royal Park v. Deutsche Bank Nat'l Trust Co. ("DBNTC"), No. 14-cv-4394, Dkt.# 263, ¶ 9; BlackRock v. DBNTC, No. 14-cv-9367, Dkt.# 126, ¶ 9; Phoenix Light v. DBNTC, No. 14-cv-10103 ("PL/DBNTC"), Dkt.# 78, ¶ 9; Commerzbank v. DBNTC, No. 15-cv-10031 ("CZ/DBNTC"), Dkt.# 43, ¶ 9. In fact, Plaintiffs themselves have agreed to produce all other emails as TIFF images.

**Second**, the Sedona Principles recognize that emails are generally not produced in their native format. The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 176 (2018). **Third**, from a practical perspective, if Plaintiffs produce the emails in native format, it will impose unnecessary administrative burdens upon the Trustee and the Court. Emails produced in native format do not bear any Bates prefixes, Bates numbers, or confidentiality designations on their face. As a result, it would be very difficult for the Trustee and the Court to organize and track the native emails.

For example, without Bates stamps and confidentiality designations on the face of the emails, one could not readily determine, using the face of the email, among other things:

> (i)   who produced each email (this can typically be determined by looking at a printed Bates prefix);
> (ii)  when each email was produced (this can typically be determined by matching the printed Bates number to the Bates ranges listed in each production cover letter);

Hon. Sidney H. Stein, U.S.D.J.
February 24, 2020
Page 5

> (iii) whether multiple emails are part of the same "family," e.g., an email and its attachments (this can typically be determined by examining whether the emails are consecutively Bates numbered); and
>
> (iv) whether the email is subject to a confidentiality designation (this can typically be determined by looking at a printed confidentiality stamp).

As a result, the Court and the parties would encounter undue burdens when the Trustee sought to introduce, authenticate, and/or admit these emails in motion papers, in depositions, or at trial.

Plaintiffs' argument that prior litigants "accepted the 'native' productions and managed any resulting issues with ease" is wrong. To the contrary, the Trustee's counsel understands that both HSBC and Wells Fargo were displeased with the production of the native emails, faced the same administrative burdens described above, and then, to remedy the situation, were forced to expend their own money to create TIFF images. The Trustee should not be forced to do the same. Why those litigants chose not to seek court intervention could be attributable to a variety of factors other than that the situation was acceptable to them. Plaintiffs should not be permitted to rely upon their own inappropriate production practices in prior cases to justify the perpetuation of those practices herein and essentially shift their discovery costs onto the Trustee.

**Fourth**, it would be proportional to the needs of the case for Plaintiffs to produce the emails as TIFF images. Based on conversations with several vendors, the Trustee's counsel understands that it costs $0.01 to $0.03 per page to create TIFF images. Even at $0.03 per page, and estimating that Plaintiffs would be required to create an average of 2 additional TIFF image pages per email, it would cost $168,000 for Plaintiffs to produce Bates-stamped TIFF images for the 2.8 million emails. Given the amount in controversy—Plaintiffs allege over $8.5 billion in total losses in the relevant trusts (see SAC, ¶ 374)—and the significance of the burdens caused by native-produced emails, that cost is appropriate for this type of case.

Plaintiffs' inflated cost estimate of $200,000 does not change the analysis.[4] Even though Plaintiffs alone have access to the emails, Plaintiffs have not provided any bases for their estimates. Rather, during a January 31st meet and confer call, Plaintiffs conceded that their vendor included, in a preliminary estimate, the costs of other services that Plaintiffs must pay for even if they produce the emails in native format—not the precise cost for creating the TIFF images. Although the Trustee repeatedly requested that Plaintiffs provide that precise cost estimate, Plaintiffs never did. In any event, even a cost of $200,000 to create TIFF images

---

[4] To drum up their burden argument, Plaintiffs falsely state that creating TIFF images would require Plaintiffs to "re-process" the emails. Plaintiffs know better. As the Trustee pointed out to Plaintiffs, and Plaintiffs conceded, "processing," in the ESI context, means a project far more substantial and expensive than creating TIFF images. See The Sedona Conference Glossary, 15 Sedona Conf. J. 305, 348 (2014) (defining "Processing data" as "[t]he automated ingestion of Electronically Stored Information into a program for the purpose of extracting metadata and text; and in some cases, the creation of a static image of the source Electronically Stored Information files according to a predetermined set of specifications, in anticipation of loading to a database."). Here, the emails have already been processed and loaded into a database and the metadata and text have already been extracted. Thus, as Plaintiffs admitted in a February 10th email, they need not re-process the emails to create TIFF images.

Hon. Sidney H. Stein, U.S.D.J.
February 24, 2020
Page 6

would be proportional to the needs of the case for the reasons explained above.

**Fifth**, the Court should disregard Plaintiffs' argument that creating TIFF images for the emails "would delay production of the documents by nearly a month." That is a non sequitur. The Trustee has never pushed Plaintiffs to rush a production of these emails, let alone in an impracticable format. In any event, given that the emails are currently in native format, expenditure of a month (at least) as a result of their format is inevitable, whether on the Plaintiffs' side of the ledger or the Trustee's. The Trustee would inevitably have to expend time and resources to render the emails usable for litigation (even if the Trustee did not TIFF the emails, which would take even more time). Nor is there any other reason to rush the production. Under the parties' proposed scheduling order, the deadline for substantial completion of production of responsive, non-privileged documents is not until May 21, 2020, approximately three months from now. Dkt.# 184-2. Importantly, creating TIFF images would not divert Plaintiffs' attorney resources. The only "delay" would be the "machine time" necessary to create the TIFF images. Finally, to alleviate their timing concerns, Plaintiffs could produce the emails on a rolling basis, as the TIFF images are completed.

**Sixth**, the fact that the Trustee's document requests did not specify that emails should be produced as TIFF images is irrelevant. By the time the Trustee served document requests on October 30th, the Trustee already sent Plaintiffs (via an October 11th email) a proposed ESI protocol providing that all emails would be produced as TIFF images. Notably, certain of Plaintiffs' counsel herein also represented the plaintiffs in both the PL/DBNTC and CZ/DBNTC cases, in which the parties also addressed this issue in stipulated and so-ordered ESI protocols. This is the appropriate method to address issues like this in complex litigation, not in document requests and objections thereto, which would have inevitably led to the same dispute.

\* \* \*

The parties are available to answer any questions the Court has or make any revisions to the proposed ESI Protocol as directed by the Court. We thank the Court for its attention to this matter.

Respectfully submitted,

| | |
|---|---|
| _/s/ John Libra_ | _/s/ Bernard J. Garbutt III_ |
| John Libra | Bernard J. Garbutt III |
| Korein Tillery, LLC | Morgan Lewis & Bockius LLP |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |