UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,

                              Plaintiff,                    14-cv-8919 (SHS)

        -against-                                           OPINION & ORDER

DEUTSCHE BANK NATIONAL TRUST
COMPANY,

                              Defendant.

**TABLE OF CONTENTS**

I.    Background ...................................................................................................... 2

    A.    Factual Background ..................................................................................... 2

    B.    Procedural History ...................................................................................... 5

    C.    The Claims ................................................................................................... 6

II.   Claims Relating to HASC 2006-HE2 & HASC 2007-HE1 ....................................... 7

III.  Applicable Law ................................................................................................. 8

IV.   Deutsche Bank's Motion for Partial Summary Judgment ....................................... 9

    A.    Pre-EOD R&W Breach Claims ........................................................................ 9

        1.   Certain Pre-EOD R&W Breach Claims Are Barred by the Statute of
             Limitations. ........................................................................................... 9

        2.   Issues of Fact Preclude Summary Judgment on the Issue of Depositor
             Direction. ............................................................................................ 11

        3.   Certain Pre-EOD R&W Breach Claims Are Dismissed for Lack of
             Notice. ................................................................................................ 13

    B.    Pre-EOD Document Defect Claims ................................................................ 14

        1.   Issues of Fact Preclude Summary Judgment as to Whether Deutsche Bank
             Lacked Notice and Did Not Discover Material Document Defects. ............ 14

        2.   Certain Pre-EOD Document Defect Claims Are Dismissed Because the
             Trustee Was Not Obligated to Take Repurchase Action Under the
             Applicable PSA. .................................................................................... 15

        3.   Issues of Fact Remain as to Whether the Exception Reports Identified
             Document Defects. ................................................................................ 16

4.  Certain Pre-EOD Document Defect Claims Are Dismissed Because There Is No Evidence Deutsche Bank Breached Its Obligations Under the PSAs. .................................................................. 17

5.  Pre-EOD Document Defect Claims Relating to Certificates in the HVMLT 2004-7 Trust That Were Purchased by Southwest Are Time-Barred. .......... 18

C.  Arguments Applicable to All Pre-EOD Claims .................................... 19

1.  Settlement Agreements Bar Further Litigation. ................................. 19

2.  Claims Concerning Certain Bankrupt Warrantors Are Dismissed ............. 20

D.  Post-EOD Claims ................................................................ 21

E.  The Negating Clauses Do Not Require Dismissal. .............................. 23

F.  The Claims Concerning the NGN Trusts Are Timely and Do Not Violate New York Champerty Law. ...................................................... 24

G.  Issues of Fact Preclude Summary Judgment on the Issue of Current NGN Trust Certificate Ownership. .................................................. 27

V.  NCUA's Motion for Partial Summary Judgment ................................... 27

A.  The PSAs Do Not Unambiguously Obligate the Trustee to Litigate In All Circumstances. .................................................................. 28

B.  Deutsche Bank's Duty to Enforce Is Not Conditioned Upon Receiving Direction and Indemnity from Certificateholders. ............................. 30

C.  The Court Will Not Dismiss Deutsche Bank's Affirmative Defense of Failure to Mitigate Damages. .................................................. 31

VI.  Conclusion ..................................................................... 32

SIDNEY H. STEIN, U.S. District Judge.

## I.  BACKGROUND

### A.  Factual Background

This Court has already set forth much of the necessary background concerning the parties, the origins of this action, and the securities at issue in this litigation in its Opinion & Order resolving defendant's motion to dismiss the complaint. *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*, 410 F. Supp. 3d 662, 668-72 (S.D.N.Y. 2019) ("*MTD Op.*"). The reader is referred to that Opinion for the background of this litigation. In brief, plaintiff National Credit Union Administration Board ("NCUA") is an independent federal agency in the executive branch that regulates federal credit unions pursuant to the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq*. One of

NCUA's powers is to place failed credit unions into liquidation. *Id.* § 1787. Upon liquidation, NCUA succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union." *Id.* § 1787(b)(2)(A)(i). In the aftermath of the 2008 financial crisis, NCUA exercised its liquidation powers, placing several failed corporate credit unions into liquidation and thereby succeeding those entities. Among other assets, these failed corporate credit unions contained residential mortgage-backed securities ("RMBS") in trusts.

The Court assumes familiarity with RMBS in general, the RMBS securitization process, and the roles of the various entities in the RMBS trusts. *See, e.g.*, *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 383 (S.D.N.Y. 2017) ("*Wells Fargo I*"), *objections overruled*, No. 14-cv-10067, 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017). The U.S. Court of Appeals for the Second Circuit has provided the following explanation of the RMBS securitization process:

> To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in [governing agreements, frequently styled as PSAs].

*Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*Retirement Board*") (alterations in original) (quoting *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d Cir. 2012)).

Deutsche Bank serves as trustee for the RMBS trusts at issue in this litigation. These trusts are each governed by agreements called Pooling and Servicing Agreements or Pooling Agreements ("PSAs"). (NCUA 56.1 ¶ 1; Deutsche Bank Counter 56.1 ¶ 1.[1])

---

[1] The Court will use the following nomenclature to refer to the parties' voluminous submissions. For Deutsche Bank's motion for partial summary judgment, the Court will use the following terminology: (i) Deutsche Bank's Memorandum of Law in Support of Its Motion for Partial Summary Judgment (ECF No. 306) will be referred to as "Deutsche Bank Mot."; (ii) NCUA's Opposition to Deutsche Bank's Motion for

The great majority of the certificates at issue in this litigation were part of NCUA's Guaranteed Notes Program—a program in which NCUA, under pressure to stabilize the collapsing credit union system, re-securitized distressed RMBS trust assets it had succeeded to. (Deutsche Bank 56.1 ¶¶ 329-31; NCUA Counter 56.1 ¶¶ 329-31.) It formed several trusts known as NCUA Guaranteed Notes Trusts ("NGN Trusts"), which pooled the RMBS certificates, along with other securitized assets, to issue new NGN Trust certificates, or notes. (ECF No. 274, Fourth Am. Compl. ("FAC") ¶ 29; Deutsche Bank 56.1 ¶¶ 373-77; NCUA Counter 56.1 ¶¶ 373-77.) The holders of these certificates would receive payments from the cash flows of the underlying assets. (Deutsche Bank 56.1 ¶ 373; NCUA Counter 56.1 ¶ 373.) The trusts were structured to last for a period of years and then unwind, with the underlying RMBS certificates to be returned to NCUA. In the meantime, NCUA would retain what it called "Owner Trust Certificates." (Deutsche Bank 56.1 ¶ 434; NCUA Counter 56.1 ¶ 434.)

The NGN Trusts issued notes pursuant to trust agreements that conveyed the relevant assets from NCUA to the NGN Trusts and caused Owner Trust Certificates to be issued to NCUA through Wells Fargo acting as "Owner Trustee" (*see, e.g.*, ECF No. 359, Decl. of Nathan Shapiro dated February 28, 2022, Ex. 97) and indenture agreements between the NGN Trusts and The Bank of New York Mellon ("BNYM") that appointed BNYM as the Indenture Trustee responsible for holding the NGN Trusts' assets (*see, e.g.*,

––––––––––––––––––––

Partial Summary Judgment (ECF No. 331) will be referred to as "NCUA Opp."; (iii) Deutsche Bank's Reply in Support of Its Motion (ECF No. 350) will be referred to as "Deutsche Bank Reply"; (iv) Deutsche Bank's Statement of Undisputed Facts Pursuant to Rule 56.1 (ECF No. 357) will be referred to as "Deutsche Bank 56.1"; (v) NCUA's Responses to Deutsche Bank's Statement of Undisputed Facts Pursuant to Rule 56.1 (ECF No. 342) will be referred to as "NCUA Counter 56.1"; (vi) NCUA's Additional Statement of Undisputed Facts Pursuant to Rule 56.1 (ECF No. 333) will be referred to as "NCUA Additional 56.1"; (vii) Deutsche Bank's Replies to NCUA's Responses to Deutsche Bank's Statement of Undisputed Facts (ECF No. 388) will be referred to as "Deutsche Bank Reply 56.1"; and (viii) Deutsche Bank's Responses to NCUA's Additional Statement of Undisputed Facts (ECF No. 352) will be referred to as "Deutsche Bank Additional Counter 56.1."

For NCUA's motion for partial summary judgment, the Court will use the following terminology: (i) NCUA's Memorandum of Law in Support of Its Motion for Partial Summary Judgment (ECF No. 296) will be referred to as "NCUA Mot."; (ii) Deutsche Bank's Opposition to NCUA's Motion (ECF No. 313) will be referred to as "Deutsche Bank Opp."; (iii) NCUA's Reply in Support of Its Motion (ECF No. 345) will be referred to as "NCUA Reply"; (iv) NCUA's Statement of Undisputed Facts Pursuant to Rule 56.1 (ECF No. 297) will be referred to as "NCUA 56.1"; (v) Deutsche Bank's Counterstatement of Undisputed Facts (ECF No. 314) will be referred to as "Deutsche Bank Counter 56.1"; and (vi) NCUA's Replies to Deutsche Bank's Responses to NCUA's Statement of Undisputed Facts (filed as part of ECF No. 346) will be referred to as "NCUA Reply 56.1."

*id.*, Ex. 98). Under the agreements governing the creation of the NGN Trusts, BNYM had the exclusive right to bring suit on behalf of the NGN Trusts. (*See, e.g.*, Deutsche Bank 56.1 ¶ 376; NCUA Counter 56.1 ¶ 376.)

## B. Procedural History

In November 2014, NCUA filed this action against Deutsche Bank. (ECF No. 1.) NCUA later amended its complaint, bringing claims on behalf of 97 trusts for which Deutsche Bank served as trustee. (ECF No. 38, Am. Compl.) At that time, NCUA only had a direct interest in 8 trusts—the other 89 were re-securitized and held in the NGN Trusts for which BNYM served as the Indenture Trustee. (*Id.* ¶ 28; *see id.*, Ex. A.) BNYM, conflicted because it was an RMBS trustee and in a similar position to Deutsche Bank as a defendant in separate litigation, refused to exercise its authority to bring suit for these claims on behalf of the NGN Trusts. (*See id.* ¶¶ 48-54; Deutsche Bank 56.1 ¶¶ 445-50; NCUA Counter 56.1 ¶¶ 445-50.) NCUA contended that it still had derivative standing to pursue claims on behalf of the 89 other trusts on the theory that it had a latent interest in the NGN Trusts after they wound down and as "an express third-party beneficiary of the NGN Indenture Agreements." (Am. Compl. ¶¶ 43, 55.)

Meanwhile, NCUA brought similar actions against other RMBS trustees. These cases allowed several courts across this District to weigh in on NCUA's derivative standing theory, creating a split in authority. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n*, No. 14-cv-9928, 2015 WL 2359295, at *4-6 (S.D.N.Y. May 18, 2015) (rejecting derivative standing theory); *Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392, 399 (S.D.N.Y. 2015) (allowing NCUA to proceed on a theory of derivative standing). Eventually, the Second Circuit rejected NCUA's theory of derivative standing, dismissing NCUA's claims for lack of standing. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243 (2d Cir. 2018).[2]

In light of the Second Circuit's decision, many of NCUA's claims in this litigation were no longer viable. As a result, NCUA sought leave to file a second amended complaint and substitute in Graeme W. Bush as plaintiff for the claims made on behalf

---

[2] In affirming the denial of leave to amend, the Second Circuit explained that the court did not abuse its discretion, noting that even though the court was clear about NCUA's standing defects in its first decision and stated that NCUA would receive a "single opportunity to replead," NCUA "nevertheless decided to use its final amendment to double down on its already-dismissed theory of standing." *Id.* at 257. Writing for the panel, Judge Cabranes added that "our conclusion in this respect does not mean that a district court's *grant* of leave to supplement in a similar situation would be an abuse of discretion," and explaining that, "[b]ecause this is a discretionary call, the two are[] not mutually exclusive." *Id.* at 256 n.86 (emphasis in original).

of the NGN Trusts. (ECF No. 113.) NCUA took several steps to effectuate this substitution. Cede & Co, the certificateholder for the NGN Trusts (Shapiro Decl., Ex. 83) provided authorization for these suits. Specifically, Cede & Co. authorized BNYM "or its designee" to "take . . . any and all actions and exercise any and all rights and remedies" that Cede & Co. would be entitled to take as the certificateholder. (*Id.*)[3] Bush was appointed as a "Separate Trustee" for the trusts pursuant to the Separate Trustee Agreement or the Instrument of Appointment and Acceptance ("IAA"). (Shapiro Decl., Ex. 146.) In this agreement, the Indenture Trustee—BNYM—"appoints the Separate Trustee"—Bush—and transfers to him "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee" with respect to the claims in this action. (*Id.*)

This Court permitted NCUA's proposed substitution over Deutsche Bank's objection. Deutsche Bank contended that, for tactical reasons, NCUA waited too long to request to substitute plaintiffs. The Court rejected that argument, concluding that the substitution was timely and the mistake—asserting derivative standing—was "understandable" in light of the split in authority across this District. *MTD Op.*, 410 F. Supp. 3d at 677. The Court similarly permitted NCUA to substitute itself as plaintiff for the NGN Trusts that had unwound by that point. *Id.* at 678.

Now, all of the NGN Trusts have unwound and, at least NCUA asserts, the certificates have been returned to NCUA. (ECF No. 273.) The Court allowed NCUA to substitute itself in as plaintiff for the remaining NGN Trusts (ECF No. 275), leaving NCUA as the sole plaintiff in this action.[4]

### C.  The Claims

NCUA's claims against Deutsche Bank arise out of Deutsche Bank's role as trustee to the original RMBS trusts. In its complaint, NCUA points to three primary duties that Deutsche Bank had as trustee. First, the trustee had certain duties with respect to the mortgage files. Specifically, the trustee (either itself or through a custodian) "must take possession and acknowledge receipt of the mortgage files, review the documents in the mortgage files, identify any mortgage files that lack a complete chain of title or that have missing documents, and then certify that the mortgage files are complete and accurate." (FAC ¶ 5.) "If the trustee identifies defects in the mortgage files, it must

---

[3] Immediately following the conclusion of summary judgment briefing, Cede & Co. issued new authorizations for NCUA to sue for certain trusts that contain negating clauses. (ECF No. 413.)

[4] Deutsche Bank took "no position" on NCUA's further requests to substitute but did not waive its right to "later challenge and/or oppose the amended pleading" nor did it concede the "completeness or accuracy of any of Plaintiffs' statements or representations" concerning the substitutions. (ECF No. 272.)

notify the appropriate parties and take steps to enforce the warrantor's obligation to cure, substitute, or repurchase any mortgage loans with defective mortgage files." (*Id.*) Second, the trustee had certain duties concerning breaches of representations and warranties ("R&Ws") of the underlying mortgage loans. If the trustee discovered or received notice of a breach of the R&Ws, the trustee must "notify the appropriate parties and take steps to enforce the warrantor's obligation to cure, substitute, or repurchase the defective mortgage loans." (*Id.* ¶ 6.) Third, "the trustee must act to protect the interests of the trust and the certificateholders when it becomes aware of events of defaults concerning the trust." (*Id.* ¶ 7.) NCUA alleges that the trustee failed to perform each of these duties.

From these allegations, NCUA brought the following claims: breach of contract for Deutsche Bank's breaches of the PSAs that govern the RMBS trusts (Count One); negligence and gross negligence under tort law for Deutsche Bank's neglect of its duties as trustee (Count Two); breach of fiduciary duty under tort law (Count Three); declaratory judgment that defendant is not permitted to use trust funds to pay its litigation costs (Count Four); and breach of contract for Deutsche Bank's unlawful withdrawals from the trust funds to pay its litigation costs (Count Five).

In October of 2018, Deutsche Bank moved to dismiss the then-operative complaint. (ECF No. 117.) The Court granted in part and denied in part that motion. *See MTD Op.*, 410 F. Supp. 3d 662. Specifically, the Court denied Deutsche Bank's motion to dismiss the breach of contract count but dismissed NCUA's tort count. *Id.* at 681-90. The Court also denied defendant's motion with respect to the indemnification claims and instead stayed it until a determination was made with respect to the other claims. *Id.* at 692-94.

The parties then proceeded to discovery. (*See* ECF No. 205.) Now, both parties have moved for partial summary judgment. (ECF Nos. 296, 306.)[5] The Court addresses these motions in turn.

## II. CLAIMS RELATING TO HASC 2006-HE2 & HASC 2007-HE1.

Following the submission of the parties' summary judgment briefing, the New York Court of Appeals conclusively decided whether certain language in a PSA imposes an affirmative duty upon the trustee to enforce repurchase rights. *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 287 (2023). The Court of Appeals held that this language did not impose such a duty. *Id.* In light of that decision, the parties agree that pre-event of default claims related to the HASC 2006-HE2 and HASC 2007-HE1 trusts

---

[5] Around the same time, the parties each filed *Daubert* motions seeking to preclude the other's experts. (*See* ECF Nos. 390, 431.) The Court will address those motions in a forthcoming Opinion.

may be dismissed. (ECF No. 457; ECF No. 458.) Because NCUA does not assert any other claims as to these two trusts, the Court hereby dismisses all claims relating to the HASC 2006-HE2 and HASC 2007-HE1 trusts.

## III. APPLICABLE LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For contract-based claims, summary judgment is appropriate "where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996) (internal quotation marks and citations omitted).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If he or she has done so, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). "[C]onclusory allegations" and "unsubstantiated speculation" will not suffice. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). Rather, "[t]here must be evidence on which the jury could reasonably find for the [non-movant]" to defeat summary judgment. *Anderson*, 477 U.S. at 252. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

When both sides move for summary judgment, courts "are required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Claims arising out of RMBS trusts "'must be proved loan-by-loan and trust-by-trust,' and not based on generalized, non-specific evidence of breaches." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 582-83 (S.D.N.Y. 2022) ("*Phoenix Light – Deutsche Bank*") (quoting *Retirement Board*, 775 F.3d at 162), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023); *see also Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104, 2017 WL 3973951, at *7–8 (S.D.N.Y. Sep. 7, 2017) ("*Phoenix Light – BNYM*") ("[B]y summary judgment or trial the plaintiffs must present evidence that proves a specific breach of a [R&W] as to any loan

or trust for which plaintiffs allege there was a breach."); *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 665 F. Supp. 3d 483, 489 (S.D.N.Y. 2023) ("*NCUA – U.S. Bank*") (same).

## IV. DEUTSCHE BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Deutsche Bank has moved for summary judgment on a variety of NCUA's claims. First, Deutsche Bank contends that many of NCUA's pre-event of default ("EOD") claims concerning the trustee's alleged failure to take repurchase action in the face of R&W breaches ("Pre-EOD R&W Breach Claims") must be dismissed. Second, it asserts that all of NCUA's pre-EOD claims concerning document defects in the mortgage files ("Pre-EOD Document Defect Claims") fail. Third, Deutsche Bank presents two arguments that, in its view, demonstrate that all pre-EOD breach claims as to certain trusts fail. Fourth, it contends that many post-EOD claims—including all those arising from servicer breaches—should be dismissed. In addition, Deutsche Bank raises several arguments concerning timeliness and standing. The Court addresses each contention in turn below.

As set forth below, Deutsche Bank's motion is denied in part and granted in part.

### A. Pre-EOD R&W Breach Claims

Deutsche Bank asserts that many of NCUA's Pre-EOD R&W Breach Claims fail due to (i) the statute of limitations; (ii) the lack of depositor direction to take repurchase action; and (iii) the lack of notice of an R&W breach.[6]

#### 1. *Certain Pre-EOD R&W Breach Claims Are Barred by the Statute of Limitations.*

Before an event of default occurs, Deutsche Bank's obligation to take repurchase action is triggered by its discovery or receipt of written notice of an R&W breach. (*See* Shapiro Decl., Ex. 8 (listing PSA provisions governing repurchase obligations for material R&W breaches); *see, e.g., id.* HVMLT 2006-6 PSA § 2.03(a) ("Upon its discovery or receipt of written notice . . . of the breach by the related Originator of any representation, warranty or covenant . . . .").) NCUA's expert contends that Deutsche Bank received notices of R&W breaches for 5,935 loans across ten trusts. (*See* Shapiro

---

[6] In addition, Deutsche Bank contends that certain Pre-EOD R&W Breach Claims fail due to post-notice events. (Deutsche Bank Mot. at 5.) This argument only applies to loans contained in the two trusts for which the Court dismissed all claims in Section II. (*See* Shapiro Decl. ¶¶ 54-56; *id.*, Exs. 51-53.) Thus, the Court need not address this argument.

Decl. ¶ 52; *id.*, Ex. 49.)[7] In seeking summary judgment, Deutsche Bank asserts that approximately 75% of these notices were received after the applicable statute of limitations had expired. Deutsche Bank is correct; accordingly, the Court dismisses these claims.

As the New York Court of Appeals has explained, "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999). If the claimed injury is an economic one, the cause of action typically accrues "where the plaintiff resides and sustains the economic impact of the loss." *Id*. at 529. The parties agree that a lawsuit initiated by a trustee to take repurchase action stemming from an R&W breach accrues on the closing date of the trust at issue. (NCUA Opp. at 9 (citing *ACE Secs. v. Deutsche Bank*, 25 N.Y.3d 581, 595-99 (2015)); Deutsche Bank Mot. at 2.) The trusts in question all closed between 2006 and 2007. (Deutsche Bank 56.1 ¶¶ 26-41; NCUA Counter 56.1 ¶¶ 26-41.) Deutsche Bank asserts that because its residence is in California and it administers the trusts from there (FAC ¶ 38; ECF No. 277, Answer ¶ 38), California's statute of limitations controls, yielding a four-year limit. Thus, Deutsche Bank urges, any claim premised on a breach notice received after that four-year period must fail.[8]

The New York Court of Appeals has addressed this issue. *Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 34 N.Y.3d 327 (2019). There, Deutsche Bank, as trustee of an RMBS trust, brought suit against Barclays, the warrantor, alleging breaches of the R&Ws Barclays had made about the underlying mortgages. *Id*. at 331-32. Barclays urged that "as a resident of California, [Deutsche Bank] had suffered economic injury in California, and therefore plaintiff's causes of action accrued in California for the purposes of CPLR 202." *Id*. at 332. The New York Court of Appeals sided with Barclays, concluding that because "plaintiff is authorized to enforce, on behalf of the certificateholders, the representations and warranties in the relevant agreements . . . , it is appropriate for us to look to plaintiff's residence as the place where the economic

---

[7] Five of these loans are in either HASC 2006-HE2 or HASC 2007-HE1. (*See* Shapiro Decl., Ex. 49.) Because the Court has dismissed all claims arising out of those two trusts, those five loans are excluded from this analysis.

[8] There is no genuine dispute as to when the earliest date of notification occurred for the specific loans in question. (*See* Deutsche Bank 56.1 ¶¶ 26-41; NCUA Counter 56.1 ¶¶ 26-41; Deutsche Bank Reply 56.1 ¶¶ 26-41.)

injury was sustained and, consequently, where plaintiff's causes of action accrued for purposes of CPLR 202." *Id.* at 339.

This Court is "bound . . . by the law of New York as interpreted by the New York Court of Appeals." *10012 Holdings, Inc. v. Sentinel Ins. Co. Ltd.*, 21 F.4th 216, 221 (2d Cir. 2021) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013)).[9] Accordingly, this Court follows *Barclays* and concludes that California's four-year statute of limitations applies. *Accord Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 581-83 (S.D.N.Y. 2022) ("*Phoenix Light – Deutsche Bank*") (rejecting similar argument, noting that it "appears to be foreclosed by *Barclays*"). Thus, the Court grants Deutsche Bank's motion in this respect and dismisses the claims listed in Shapiro Exhibit 49.

**2.    *Issues of Fact Preclude Summary Judgment on the Issue of Depositor Direction.***

Deutsche Bank contends that Pre-EOD R&W Breach Claims as to certain trusts[10] must be dismissed because it never received direction from depositors to take enforcement action. Specifically, Deutsche Bank points to four trusts that contain the following (or substantially similar) language:

> Upon **discovery by any of the parties** hereto of a breach of a representation or warranty made by the Depositor or a

---

[9] Rather than follow New York's highest court, NCUA urges this Court to follow the approach suggested by Judge Wilson in his dissent in *Barclays*—namely, that the residence of the assignor controls in this statute-of-limitations analysis. *Barclays Bank PLC*, 34 N.Y.3d at 342-55 (Wilson, J., dissenting). Applying that approach here, NCUA contends, would yield a more forgiving statute of limitations, as many of the assignors reside in states with six-year statutes of limitations. The *Barclays* majority explained, however, that it was presented with "no occasion to address the dissent's theory" because it was not raised by the parties. *See id.* at 334 n.3 (majority op.). That the New York Court of Appeals did not have "occasion" to address a "theory" does not change the fact that New York's highest court has espoused a rule of decision on this issue. Moreover, as Deutsche Bank highlights, no court has yet adopted the dissent from *Barclays*. This Court declines to be the first.

[10] Deutsche Bank contends this argument applies to eight trusts. Two of these trusts—HASC 2006-HE2 and HASC 2007-HE1—are the trusts discussed in Section II and for which the Court has dismissed all claims. As for another two trusts—IXIS 2005-HE4 and SVHE 2005-OPT4—it appears NCUA concedes that Pre-EOD R&W Breach Claims should not proceed to trial. (NCUA Opp. at PDF page 7.) Specifically, there is no "Y" marked in the column indicating that it is NCUA's position that it should proceed to trial on these claims. (*Id.*) In light of NCUA's apparent abandonment of those claims, the Court grants Deutsche Bank's motion as to the pre-EOD claims arising from these two trusts. That leaves four trusts for which this analysis applies.

> Responsible Party, as applicable, under this Agreement, that materially and adversely affects the value of any Mortgage Loan or the interests of the Trustee or the Certificateholders therein, ***the party discovering such breach shall give prompt written notice*** thereof to the other parties. . . . The ***Trustee shall pursue all legal remedies*** available to the Trustee against the applicable Responsible Party under this Agreement, ***if the Trustee has received written notice from the Depositor directing the Trustee to pursue such remedies***.

(Shapiro Decl., Ex. 8 (quoting MSAC 2005-HE7 PSA § 2.03(f) (emphasis added)); *id.* (MSAC 2006-HE2 PSA § 2.03(f) (same)); *id.* (MSAC 2006-HE7 PSA § 2.03(f)(same)); *id.* (SVHE 2005-B PSA § 2.03(a) (substantially similar language).)

This provision clearly predicates the trustee's enforcement duty on direction from the depositors. In support of its argument, Deutsche Bank contends that it gave notice to the depositors but never received direction to take enforcement action. From NCUA's perspective, however, Deutsche Bank did not give adequate notice, and the prevention doctrine excuses the depositors' failure to direct the trustee to take repurchase action. This Court has explained that "[t]he 'prevention doctrine' stands for the proposition that a party cannot argue that its performance under a contract has not been triggered by a condition precedent, when the party itself prevented the triggering of that condition precedent." *MTD Op.*, 410 F. Supp. 3d at 685.

This question ultimately hinges on whether the communications sent by Deutsche Bank constituted sufficient notice. Deutsche Bank points to several communications in the record that it asserts provided the depositors with the requisite notice: (i) exception reports sent by the trustee to depositors (Deutsche Bank Additional 56.1 ¶¶ 172-74, 198-99, 230-32, 250); (ii) so-called "Two-Percent Letters" (*id.* ¶¶ 175-77, 200-04, 233-38, 252-56); and (iii) notices of alleged R&W breaches (*id.* ¶¶ 178-97, 205-29, 239-49).[11] NCUA

---

[11] Exception reports are (often) large spreadsheets that identify (i) missing loan documents and (ii) loan documents containing defects. (*See* Deutsche Bank 56.1 ¶ 54; NCUA Counter 56.1 ¶ 54; ECF No. 308, Decl. of Christopher Corcoran dated February 25, 2022 ¶ 10; *see also* Shapiro Decl., Ex. 58 (exception report).) "Two-Percent Letters" are letters Deutsche Bank sent to the depositors for any trust that suffered 2% or more in losses. (Deutsche Bank 56.1 ¶ 267; NCUA Counter 56.1 ¶ 267; NCUA 56.1 ¶¶ 108-12; Deutsche Bank Counter 56.1 ¶¶ 108-12.) In these letters, Deutsche Bank attaches an exception report and asks the recipient to "notify us promptly if you . . . believe that the reported exceptions . . . materially impair . . . the value of the affected loans." (Deutsche Bank 56.1 ¶ 268; NCUA Counter 56.1 ¶ 268; Shapiro Decl., Ex. 70 (sample Two Percent Letter).) Deutsche Bank further writes that any response "will be used in determining whether remedial action is required to be taken" and a lack of a response means that the

insists that these communications did not provide sufficient notice because they do not identify if any of the alleged breaches or other defects were material. Deutsche Bank disclaims any responsibility to decide materiality. (Deutsche Bank Mot. at 6; Deutsche Bank 56.1 ¶ 60; NCUA Counter 56.1 ¶ 60.)

Neither party, however, identifies to whom the PSAs assign that responsibility. Deutsche Bank's practice in its Two-Percent Letters—asking the warrantors to voluntarily identify which defects were material—runs counter to common sense. Indeed, it is the warrantors who bear the financial responsibility to repurchase the breaching loans and are thus incentivized to avoid classifying any breach as material so as to trigger their repurchase obligation.

Ultimately, on Deutsche Bank's motion, when the Court must draw all reasonable inferences in favor of NCUA, the Court cannot conclude that as a matter of law these communications constituted sufficient notice such that the lack of depositor direction dooms these claims. Deutsche Bank's motion is thus denied in this respect.

### 3. Certain Pre-EOD R&W Breach Claims Are Dismissed for Lack of Notice.

Deutsche Bank asserts that Pre-EOD R&W Breach Claims fail as to five trusts—HVMLT 2004-7, HVMLT 2004-11, HVMLT 2006-SB1, SVHE 2005-B, and SVHE 2005-OPT4—because there is no evidence that it received *any* written notice of an alleged R&W breach for these trusts. (Deutsche Bank Mot. at 4.) NCUA again concedes that Deutsche Bank did not receive any written notices of breaches for these trusts. Instead, NCUA urges that various pieces of information the trustee possessed required Deutsche Bank to "pick up the scent and nose to the source." (NCUA Opp. at 12 (quoting *Wells Fargo I*, 247 F. Supp. 3d at 393).) Specifically, NCUA contends that the following facts would have led "a reasonable person to inquire further" (*id.* (quoting *BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-10067, 2017 WL 3610511, at *10 (S.D.N.Y. Aug. 21, 2017) ("*Wells Fargo II*")): (i) 7,951 loans—30% of the loans in these five trusts—contained mortgage file breaches; (ii) loans in all five of these trusts were securitized by entities that Deutsche Bank "knew

---

recipient "d[id] not believe that the noted exceptions have the [negative] effects described above." (*Id.*) Finally, in the notices of alleged breaches, Deutsche Bank informs the depositors that certain breaches are alleged to have occurred and requests that the responsible parties "cure any material breaches." (*E.g.*, Paul Decl., Ex. 179; Deutsche Bank Additional 56.1 ¶ 182.) When the responsible parties failed to do so, Deutsche Bank would inform the depositor that "[i]f, within 10 business days . . . , the Trustee has not received written confirmation from [depositor] that the Repurchase Demand is still active and outstanding . . . , the Trustee will consider this matter closed and will take no further action with respect to the Repurchase Demand." (Paul Decl., Ex. 179.)

operated fundamentally defective assembly lines, making Deutsche Bank aware of underwriting problems necessarily applicable to the specific loans" (*id.* at 13); (iii) loans in three of these trusts were originated by "Countrywide, an entity plagued by systematic failures indicative of R&W breaches—failures of which Deutsche Bank was aware" (*id.*); and (iv) "Deutsche Bank received and tracked multiple large scale R&W breach notices for trusts with common originators and sponsors as these five Trusts." (*Id.*)

Courts across this District have granted summary judgment in favor of a trustee when the plaintiff has offered "no evidence that [the trustee] discovered or received any written notice alleging any R&W breach." *Phoenix Light – Deutsche Bank*, 585 F. Supp. 3d at 589; *see also Phoenix Light – BNYM*, 2017 WL 3973951, at *8 ("Plaintiffs' lack of loan- or Trust-specific proof relative to [trustee's] knowledge of any breach is fatal to their claims."). Courts have similarly held that evidence of "pervasive breaches" at originators or securitizers is insufficient to show discovery or knowledge on the part of a trustee. *See, e.g., Phoenix Light – BNYM*, 2017 WL 3973951, at *7-9 (citing cases); *NCUA - U.S. Bank*, 665 F. Supp. 3d at 494 (rejecting argument that loan details contained "'red flags' that should have put [trustee] on notice of an R&W breach").

The Court agrees with its sister courts and thus grants summary judgment in favor of Deutsche Bank on this issue. Pre-EOD R&W Breach Claims as to HVMLT 2004-7, HVMLT 2004-11, HVMLT 2006-SB1, SVHE 2005-B, and SVHE 2005-OPT4 are dismissed.

### B.  Pre-EOD Document Defect Claims

Deutsche Bank contends that NCUA's Pre-EOD Document Defect Claims fail because (i) Deutsche Bank did not have notice or discover material document defects; (ii) it did not have any obligation to take repurchase action under certain PSAs; (iii) there were no actual document defects in certain loans; (iv) there is no evidence Deutsche Bank breached its mortgage file obligations with respect to certain loans; and (v) certain claims are time barred. The Court addresses each argument in turn.

#### 1.  *Issues of Fact Preclude Summary Judgment as to Whether Deutsche Bank Lacked Notice and Did Not Discover Material Document Defects.*

Deutsche Bank contends that it lacked notice of and otherwise did not discover *material* document defects in the mortgage files because the exception reports it either created or received, depending on the trust, "cannot constitute notice of any material Document Defects." (Deutsche Bank Mot. at 6.) This is because, Deutsche Bank argues, exception reports do not identify which report entries are "material" document defects and the PSAs do not obligate the trustee to make that assessment.

14

NCUA contends that this amounts to willful blindness: upon receipt of these reports—containing tens of thousands of exceptions—Deutsche Bank could not simply turn a blind eye. Rather, the receipt of these reports made it "incumbent upon the Trustee to pick up the scent and nose to the source." *Wells Fargo I*, 247 F. Supp. 3d at 393 (citation omitted). "[W]here certain facts indicated a party *should have been* aware of a breach, that party cannot disclaim its discovery simply because it avoided express actual knowledge. At some point, 'when "it can *almost* be said that [Defendant] actually knew" because [Defendant] suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge,' there arises a duty to nose to the source." *Wells Fargo II*, 2017 WL 3610511, at *10 (emphasis and alterations in original) (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007)).

While the Court is mindful of a trustee's "essentially ministerial" role before an EOD occurs, *IKB Int'l*, 40 N.Y.3d at 285, the Court cannot conclude, on Deutsche Bank's motion, that it was not willfully blind. *Accord Commerzbank v. U.S. Bank*, 457 F. Supp. 3d 233, 258-59 (S.D.N.Y. 2020). Ultimately, the Court cannot conclude as a matter of law that these claims fail.

### 2. *Certain Pre-EOD Document Defect Claims Are Dismissed Because the Trustee Was Not Obligated to Take Repurchase Action Under the Applicable PSA.*

As an initial matter, for two of the trusts Deutsche Bank contends this argument applies (IXIS 2005-HE4 and SVHE 2005-OPT4), the Court has already granted summary judgment in favor of Deutsche Bank due to NCUA's apparent abandonment of its pre-EOD claims in those trusts. Thus, the Court does not address those trusts here.[12]

For another trust—MSAC 2007-NC4—Deutsche Bank asserts that it "had no contractual obligation whatsoever to take any DD Repurchase Action." (Deutsche Bank Mot. at 7 (emphasis omitted).) A plain reading of the relevant provision of the PSA indicates that Deutsche Bank is correct. The provision reads as follows:

> In the event any Mortgage Loan does not conform to the requirements as determined in the Trustee's review of the related Custodial File, *the Trustee shall notify* the Certificate Insurer, the Servicer and the Depositor by delivery of the

---

[12] The Court similarly does not address the claims arising out of HASC 2006-HE2 and HASC 2007-HE1 because the Court has already dismissed in Section II all claims related to those trusts.

> certification of the Trustee required by Section 2.02 to such
> parties, which shall be a request that the Depositor correct or
> cure, or cause to be corrected or cured such defect. ***If such
> defect cannot be cured, the Depositor shall cause the Sponsor
> to repurchase*** the Mortgage Loan (a 'Deleted Mortgage Loan')
> at the Repurchase Price or, if permitted hereunder, substitute
> a Substitute Mortgage Loan for such Mortgage Loan.

(Shapiro Decl., Ex. 12 (quoting MSAC 2007-NC4 PSA § 2.03(i)) (emphasis added).) This provision clearly places the repurchase obligation in the event of a document defect *on the depositor*. NCUA does not address this contention in its opposition brief. Thus, the Court will grant Deutsche Bank's motion in this regard because the PSA does not appear to impose a repurchase obligation on the trustee and thus dismisses all Pre-EOD Document Defect Claims arising out of MSAC 2007-NC4.

Next, Deutsche Bank asserts that Pre-EOD Document Defect Claims fail for four trusts—MSAC 2005-HE7, MSAC 2006-HE2, MSAC 2006-HE7, and SVHE 2005-B—because the trustee only had an obligation to take repurchase action if it was directed to do so by depositors. Because the depositors did not do so, Deutsche Bank reasons, the claims should be dismissed. This is the same argument that Deutsche Bank raised in connection with the Pre-EOD R&W Breach Claims that the Court analyzed in Section IV.A.2, concluding that issues of fact preclude summary judgment. The Court reaches that same conclusion here.

In sum, the Court grants Deutsche Bank's motion with respect to the Pre-EOD Document Defect Claims in the MSAC 2007-NC4 trust but otherwise denies the motion.

### 3. *Issues of Fact Remain as to Whether the Exception Reports Identified Document Defects.*

Deutsche Bank next contends that Pre-EOD Document Defect Claims relating to more than one thousand loans fail because the exception report entries associated with these loans do not actually identify document defects, as that term is defined in the PSAs. From Deutsche Bank's perspective, because these errors do not constitute "document defects" under the PSAs, they cannot give rise to an obligation to take repurchase action. Specifically, Deutsche Bank points out that for many of these loans, the errors identified in the exception reports consisted of (i) certified copies of

mortgages in lieu of the originals and (ii) title commitments and preliminary title reports in lieu of title policies.[13]

The entirety of Deutsche Bank's argument with respect to these loans is six sentences. To support its cursory argument, Deutsche Bank simply cites to the PSA provisions concerning mortgage file requirements. (*Id.* at 7-8 (citing Shapiro Decl., Ex. 4).) But nowhere does Deutsche Bank address how the language in those provisions means—much less that it unambiguously means—that certified copies are acceptable substitutes for original mortgages and that preliminary title documents are acceptable substitutes for a title policy. Drawing all permissible inferences against it, as the Court must on the moving party's motion, the Court concludes that Deutsche Bank has not met its burden to show that there is no genuine dispute of material fact at issue with respect to Pre-EOD Document Defect Claims for these loans. Thus, Deutsche Bank's motion for summary judgment is denied in this respect.

### 4. *Certain Pre-EOD Document Defect Claims Are Dismissed Because There Is No Evidence Deutsche Bank Breached Its Obligations Under the PSAs.*

Deutsche Bank identifies 68 loans across six trusts for which the exception reports contain the notation "upon reinstatement." (Deutsche Bank Mot. at 8; Deutsche Bank 56.1 ¶¶ 82-85; NCUA Counter 56.1 ¶¶ 82-85; Deutsche Bank Reply 56.1 ¶¶ 82-85; Shapiro Decl., Ex. 56.) For 59 of those loans, "upon reinstatement" is the only notation listed in the respective exception report entry. (*See* Shapiro Decl., Ex. 56.) Deutsche Bank offers testimony from Christopher Corcoran, an employee in Deutsche Bank's Document Custody Administration Group, in which he explains that this notation means that the loan documents were initially in acceptable form, but the custodian later made a new entry after the servicer obtained the mortgage file and returned only some of its contents. (Corcoran Decl. ¶¶ 3, 15.) Thus, Deutsche Bank contends that it is not responsible for these errors since they occurred *after* the initial delivery of the mortgage files. NCUA concedes that these 59 loans "may not be Mortgage File breaches." (NCUA Opp. at 7 n.8.) Accordingly, the Pre-EOD Document Defect Claims arising out of the 59 loans for which "upon reinstatement" is the only notation are dismissed.

---

[13] Deutsche Bank also states that for several loans, the only errors identified in the exception reports were "endorsement of notes made with facsimile signatures," which it urges were not document defects. (Deutsche Bank Mot. at 8.) The only loans that this argument applies to are found in the two trusts for which the Court has already dismissed all claims in Section II. (*See* Shapiro Decl., Ex. 55.) Accordingly, the Court does not address that contention here.

For the remaining 9 loans, however, the exception report entries contain notations in addition to "upon reinstatement." (NCUA Opp. at 7 n.8; NCUA Counter 56.1 ¶¶ 82-85; Shapiro Decl., Ex. 56.) NCUA urges that the presence of other notations indicates that there are other defects beyond the "upon reinstatement" issue. Deutsche Bank does not offer evidence that explains what this notation means, simply arguing that NCUA's interpretation is wrong. (Deutsche Bank Reply at 6 n.23.) Drawing all reasonable inferences against Deutsche Bank, summary judgment is inappropriate at this stage with respect to these 9 loans. Deutsche Bank's motion with respect to these 9 loans is denied.

### 5. Pre-EOD Document Defect Claims Relating to Certificates in the HVMLT 2004-7 Trust That Were Purchased by Southwest Are Time-Barred.

Deutsche Bank contends that the Pre-EOD Document Defect Claims relating to certificates in the HVMLT 2004-7 trust that were purchased by the credit union Southwest are time-barred. Deutsche Bank's argument proceeds as follows. In a breach of contract action, the statute of limitations clock begins to run at the time of breach. *See, e.g., Phoenix Light – Deutsche Bank*, 585 F. Supp. 3d at 577. In this case, then, the clock began after Deutsche Bank received the exception reports and the cure period provided for in the PSA expired. For HVMLT 2004-7, the mortgage file cure period ended on June 3, 2005. (*See* Deutsche Bank 56.1 ¶ 87; NCUA Counter 56.1 ¶ 87; Shapiro Decl., Ex. 19 (HVMLT 2004-7 PSA § 2.03).) Thus, on that same day, the causes of action accrued to Southwest. Because Southwest is located in Texas, a four-year statute of limitations applies. *See* Tex. Civ. Prac. & Rem. Code § 16.051. In September of 2010, NCUA conserved Southwest—more than four years after the claims accrued to Southwest. (Deutsche Bank 56.1 ¶ 89; NCUA Counter 56.1 ¶ 89.) Accordingly, Deutsche Bank argues, NCUA's extender statute does not apply, and the claims are not timely.

In response, NCUA urges that under Texas's discovery rule, the claim does not accrue "until the injured party learned of, or in the exercise or reasonable diligence should have learned of, the wrongful act causing the injury." (NCUA Opp. at 8 (quoting *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015).) However, the Supreme Court of Texas in *Cosgrove* goes on to explain that Texas courts only "apply the discovery rule in limited circumstances where 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" 468 S.W.3d at 36 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). By contrast, "[i]n most cases [in Texas], the legal injury rule applies, under which 'a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Suter v. Univ. of Tex. at San Antonio*, 495 F. App'x 506, 509 (5th Cir. 2012) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998)).

Thus, the Court concludes these claims are time-barred and hereby dismisses these claims.

### C.  Arguments Applicable to All Pre-EOD Claims

Deutsche Bank contends that certain pre-EOD claims must fail because (i) Deutsche Bank entered into settlements for three trusts and (ii) certain warrantors entered bankruptcy. As set forth below, Deutsche Bank is correct, and the Court dismisses these claims.

### 1.  *Settlement Agreements Bar Further Litigation.*

For three trusts, Deutsche Bank contends it took repurchase action and reached settlements in exchange for releases barring further litigation. Thus, Deutsche Bank urges, the pre-EOD claims arising from these trusts must fail. Specifically, for HVMLT 2006-5 and HVMLT 2006-9, Bank of America was the primary warrantor for loan-level R&Ws as well as a party obligated to take repurchase action in the event of a material document defect in the mortgage file (a "responsible document defect party"). (Deutsche Bank 56.1 ¶¶ 90-93, 104-06; NCUA Counter 56.1 ¶¶ 90-93, 104-06.) As for MSAC 2007-NC4, Morgan Stanley was the primary warrantor and a responsible document defect party. (Deutsche Bank 56.1 ¶¶ 124-25; NCUA Counter 56.1 ¶¶ 124-25.) Deutsche Bank reached settlements with both Bank of America and Morgan Stanley. (Deutsche Bank 56.1 ¶¶ 103, 122; NCUA Counter 56.1 ¶¶ 103, 122; ECF No. 318, Decl. of Ronaldo Reyes dated March 29, 2022 ("Reyes Opp. Decl.") ¶¶ 111-14; *id.*, Ex. 49.)

In connection with the settlement process, Deutsche Bank, as trustee, sent informational notices and requests for direction to the certificateholders, informing them of the terms of the settlement. (ECF No. 358, Decl. of Ronaldo Reyes dated February 24, 2022 ("Reyes Decl."), Exs. 2, 5, 13.) The certificateholders then approved the settlements. (Deutsche Bank 56.1 ¶¶ 101-02, 118-19; NCUA Counter 56.1 ¶¶ 101-02, 118-19; Reyes Opp. Decl. ¶¶ 111-14; *id.*, Ex. 49.) These settlements encompass claims for both R&W breaches and document defects.[14]

A sister court in this District dismissed similar claims. *See Phoenix Light – Deutsche Bank*, 585 F. Supp. 3d 540. There, as here, the trustee sought summary judgment dismissing certain claims that had been released through settlement agreements. In that case, plaintiffs contended that these settlement agreements "did not encompass all

_____

[14] NCUA contends that these settlements were limited to R&W breach claims. The plain text of these agreements proves otherwise. (Deutsche Bank 56.1 ¶¶ 98, 111, 138.)

repurchase claims." *Id.* at 583. The court rejected that argument, concluding that "the language in the releases is unambiguous, broad, and clearly encompasses the Plaintiffs' claims." *Id.* The court further rejected plaintiffs' argument that the settlement agreements were void as a result of "fraud, bad faith, or involving material misstatements." *Id.* at 584. To the contrary, the court acknowledged that the trustee's "notices to the certificateholders explaining the [] settlement are clear, attached the settlement agreements, and encouraged certificateholders to review the agreement with advisors and to vote." *Id.*

NCUA does not explain why this Court should chart a different course. Ultimately, NCUA's protestations largely boil down to concerns that the value of the settlements is too low. It is not for the Court to evaluate the attractiveness of these settlements, which have been approved by the certificateholders. Thus, the Court grants Deutsche Bank's motion for summary judgment in this respect and dismisses all pre-EOD claims arising out of HVMLT 2006-5, HVMLT 2006-9, and MSAC 2007-NC4.

### 2. *Claims Concerning Certain Bankrupt Warrantors Are Dismissed.*

Deutsche Bank similarly contends that it took repurchase actions against several warrantors and responsible document defect parties that went bankrupt. Specifically, Deutsche Bank points out that New Century, American Home, Accredited, Indy Mac, and First NLC all went bankrupt (or entered receivership) between 2007 and 2009. (Deutsche Bank 56.1 ¶¶ 148, 174, 197, 219, 234; NCUA Counter 56.1 ¶¶ 148, 174, 197, 219, 234.) Deutsche Bank filed proofs of claims in those bankruptcies or receivership proceedings. (Deutsche Bank 56.1 ¶¶ 153-58, 179-85, 202-06, 222-26, 240-245; NCUA Counter 56.1 ¶¶ 153-58, 179-85, 202-06, 222-26, 240-245; Deutsche Bank Reply 56.1 ¶¶ 153-58, 179-85, 202-06, 222-26, 240-245.) Deutsche Bank contends that filing these proofs of claims constitutes repurchase action and thus these claims must be dismissed.

NCUA concedes that these warrantors filed for bankruptcy and otherwise does not contest that Deutsche Bank fulfilled its duty with respect to the loans guaranteed by these warrantors. NCUA instead urges that the claims related to these loans must proceed to trial because each of the trusts containing loans with warrantors and/or responsible document defect parties that went bankrupt also had loans guaranteed by warrantors that remained solvent. (NCUA 56.1 ¶¶ 151-289.) However, at this stage, NCUA "must present evidence that proves a specific breach of a [R&W or document defect] as to any loan or trust for which plaintiffs allege there was a breach." *Phoenix Light – BNYM*, 2017 WL 3973951, at *8. Because NCUA fails to do so here and will ultimately bear the burden of proof at trial, these claims are dismissed.

In addition, Deutsche Bank identifies ten warrantors that went bankrupt (Deutsche Bank 56.1 ¶¶ 148, 174, 197, 219, 234, 250, 254, 258, 261, 264) and seeks summary

judgment dismissing certain Pre-EOD R&W breach claims related to them (Shapiro Decl., Ex. 63) because Deutsche Bank received the notices of alleged breaches *after* the bar date for filing a proof of claim in the relevant bankruptcy proceeding had passed. Thus, the trustee could not have taken any repurchase action. NCUA largely concedes this argument, simply protesting that the "proper time to assess bankrupt warrantors is in Phase II" and claims that its damages expert "will be instructed to exclude loans from warrantors that truly could not have paid at the appropriate points in time." (NCUA Opp. at 17.) That is not enough to survive a motion for summary judgment. *See Phoenix Light – Deutsche Bank*, 585 F. Supp. 3d at 581 (concluding that similar claims "suffer from a fatal timing defect" because the "bankruptcy stays preclude [trustee] from . . . bringing any new claims after the bankruptcy bar date had passed" and granting summary judgment in favor of defendant-trustee). The Court thus grants Deutsche Bank's motion in this respect.

### D.  Post-EOD Claims

Deutsche Bank asserts that all of NCUA's post-EOD claims arising from asserted breaches by servicers or master servicers must be dismissed for a variety of reasons. Because the Court concludes that NCUA has not put forth sufficient evidence to demonstrate that an EOD occurred (and that failure is not excused by the prevention doctrine), the Court need not reach the rest of Deutsche Bank's arguments. Accordingly, the post-EOD claims arising from servicer breaches are dismissed.[15]

Deutsche Bank contends that the post-EOD claims arising from servicer breaches fail because Deutsche Bank lacked the requisite notice of a breach under the PSA. EODs arising from a servicer breach require either written notice of the breach to the servicer requiring that the breach be remedied *or* that a servicing officer acquire actual knowledge of the breach. (*See, e.g.*, Shapiro Decl., Ex. 15 (HVMLT 2006-6 PSA § 7.01(a)(ii) (servicer EOD occurs when the servicer breach occurs and it "continues

---

[15] Briefly, Deutsche Bank contends that "all post-EOD claims as to 10 Trusts fail for lack of the requisite actual knowledge of, or written notice to, the Trustee that an EOD occurred." (Deutsche Bank Mot. at 12.) For certain of these trusts, NCUA asserts non-servicer-related EODs. (*See, e.g.*, Shapiro Decl., Ex. 69 (listing HVMLT 2006-5 as one of the ten trusts Deutsche Bank challenges); NCUA Additional 56.1 ¶ 339 (alleging that an EOD occurred in HVMLT 2006-5 due to the trustee's failure to cure mortgage file breaches).) Deutsche Bank's argument with respect to non-servicer breaches consists of a single conclusory sentence. (Deutsche Bank Mot. at 13.) As such, the Court grants Deutsche Bank's motion only insofar as it reaches EODs relating to servicer breaches. Specifically, the servicer-based EODs Deutsche Bank challenges are as follows: servicer failure to submit accurate certifications, servicer failure to ensure pool assets are maintained, servicer non-compliance, and imprudent servicing.

unremedied for a period of 60 days, in each case after the date (A) on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Trustee . . . or (B) on which a Servicing Officer of the Master Servicer has actual knowledge of such failure . . . .")); *see id.* (listing relevant PSA provisions for each trust).)

The parties focus on written notice and agree no such notice was issued. (Deutsche Bank Reply at 8; NCUA Opp. at 21-22.) NCUA, however, urges that the prevention doctrine excuses that failure. As stated *supra*, "[t]he 'prevention doctrine' stands for the proposition that a party cannot argue that its performance under a contract has not been triggered by a condition precedent, when the party itself prevented the triggering of that condition precedent." *MTD Op.*, 410 F. Supp. 3d at 685. "[T]he prevention doctrine applies where the party seeking to rely on the non-existence of a condition precedent (i) had a duty to bring about the condition precedent or (ii) actively frustrated its occurrence." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17-cv-1388, 2018 WL 1382105, at *10 (S.D.N.Y. Mar. 16, 2018). NCUA does not argue that the PSAs imposed on the trustee such a duty. Thus, "[w]here a promisor has no duty to bring about the condition precedent to his promise, only active conduct by the promisor to frustrate the occurrence of the condition precedent constitutes waiver of that condition precedent." *In re Bankers Tr. Co.*, 450 F.3d 121, 128 (2d Cir. 2006).

Deutsche Bank advanced this same notice argument in its motion to dismiss. *See MTD Op.*, 410 F. Supp. 3d at 685. This Court disagreed, concluding that the failure to send notice can constitute active conduct "when such failure could plausibly have been intentional or due to active frustration by the trustee." *Id.* Now, with the benefit of discovery, Deutsche Bank renews its argument, contending that there is no evidence of "active conduct" on its part preventing servicers from receiving written notice. (Deutsche Bank Mot. at 17-18.) On this record, Deutsche Bank is correct. While this Court concluded that failure to send notice may be active conduct when it is intentional or due to active frustration, NCUA has identified evidence of neither. NCUA instead contends that the trustee's "acceptance of the [servicer] certifications without calling them into question—which . . . continued to hide the existence of rampant Mortgage File breaches from investors for many years—certainly qualifies as active conduct." (NCUA Opp. at 21-22.) The PSAs, however, allow Deutsche Bank to rely on the certifications it receives from servicers without verifying their accuracy. (*See, e.g.*, Shapiro Decl., Ex. 23 (HVMLT 2006-8 PSA § 8.02(i) ("[T]he Trustee . . . may request and conclusively rely upon, and shall be fully protected in acting or refraining from acting upon, any resolution, Officers' Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties.").) NCUA has pointed to no

evidence of active conduct by the trustee demonstrating that the failure to send notice was intentional or that it actively frustrated other deal parties from providing the requisite notice. Accordingly, the post-EOD claims arising from servicer breaches are dismissed. NCUA has not shown that an EOD occurred because NCUA failed to present evidence that creates a dispute of fact over whether Deutsche Bank had the requisite notice of a servicer breach or a servicing officer had acquired knowledge of the breach.

### E.    The Negating Clauses Do Not Require Dismissal.

Deutsche Bank contends that NCUA is barred from asserting any claims with respect to the seven trusts that contain negating clauses. Negating clauses limit the parties who may pursue actions to enforce contractual rights. *E.g., Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 606 (S.D.N.Y. 2015) ("*Royal Park – HSBC*"). In this case, the negating clauses limit who may bring claims concerning breaches of the PSAs to the parties to the agreements and the certificateholders. (*E.g.*, Deutsche Bank 56.1 ¶¶ 316-20; NCUA Counter 56.1 ¶¶ 316-20.) NCUA is neither a party to the PSAs nor a certificateholder. Thus, Deutsche Bank contends, these claims must be dismissed.

A "[b]eneficial owner[] may 'obtain[ ] . . . permission to sue from the registered holder' even if a negating clause would ordinarily bar such a suit." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394, 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016) (quoting *Allan Applestein TTEE FBO D. C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005)). In addition, a beneficial owner who lacks standing "may receive authorization to sue from the registered Holder, and that authorization may be granted subsequent to the filing of the lawsuit." *Royal Park – HSBC*, 109 F. Supp. 3d at 607.

Here, Cede & Co, as the certificateholder for the NGN Trusts, provided authorization for these suits. Specifically, Cede & Co. authorized BNYM, as the Indenture Trustee, or BNYM's "designee" to "take . . . any and all actions and exercise any and all rights and remedies" that Cede would be entitled to take as the certificateholder. (Shapiro Decl., Ex. 83.) BNYM then appointed Bush to be a "separate trustee" and transferred to him, *inter alia*, "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee" with respect to claims in this action. (Shapiro Decl., Ex. 146.) Since then, as time has passed, the NGN Trusts have unwound, and NCUA claims the certificates have been re-conveyed to it. (*E.g.*, ECF No. 272.)

The issue Deutsche Bank now raises is whether Cede & Co.'s authorization travelled with the certificates when they were re-conveyed to NCUA as the NGN Trusts unwound or whether they stayed with BNYM (and, in turn, Bush).

"[U]nder New York law, contracts are assignable absent language that prohibits assignment"—it is on this basis that "[c]ourts in this district have allowed plaintiffs to seek authorization from Cede & Co. even when the contract does not specifically authorize them to do so." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 712 (S.D.N.Y. 2016). As NCUA points out, it would be unworkable if the sale of a security did not, by default, include all rights and remedies associated with that security. *Cf. FDIC v. Citibank N.A.*, No. 14-cv-6574, 2016 WL 8737356, at *4 (S.D.N.Y. Sep. 30, 2016) (citing N.Y. Gen. Obl. Law § 13-107) ("When a security or bond is sold, the property rights associated with the bond, travel with the bond, including any claims arising out of breach of the rights associated with the bond.").

There is no evidence or authority to suggest that the authorizations remained with BNYM when the certificates were re-conveyed to NCUA.[16] The Court thus denies Deutsche Bank's motion in this respect.

### F. The Claims Concerning the NGN Trusts Are Timely and Do Not Violate New York Champerty Law.

Focusing on the NGN Trusts, Deutsche Bank contends that most of NCUA's claims as to these trusts are time-barred "because no plaintiff with standing ever asserted them before the applicable [statutes of limitations] had run." (Deutsche Bank Mot. at 20-21.) Specifically, Deutsche Bank contends that NCUA lacked standing to bring claims arising out of the NGN Trusts in both the original complaint and the first amended complaint. By the time a proper plaintiff was inserted, Deutsche Bank urges, the statutes of limitations had expired. Further, Deutsche Bank asserts that "relation back under [Federal Rule of Civil Procedure] 15 does not save these NGN Claims" because "there was no mistake about which party had standing as to any of the complaints." (*Id.*

---

[16] Following summary judgment briefing, as a fallback measure, NCUA obtained new authorizations from Cede & Co., authorizing NCUA to prosecute these actions as beneficial owners of the certificates. (ECF Nos. 413, 414.) Because the Court concludes that the authorizations travelled with the certificates when they were re-conveyed to NCUA, the Court need not rely on the new authorizations. But assuming *arguendo* that the prior authorizations did not travel with the certificates, these authorizations would be sufficient to confer standing upon NCUA. *See Royal Park – HSBC*, 109 F. Supp. 3d at 607 (beneficial owner "may receive authorization to sue from the registered Holder, and that authorization may be granted subsequent to the filing of the lawsuit"); *NCUA – US Bank*, 665 F. Supp. 3d at 493 (concluding that the issue of standing was moot because NCUA received authorization during summary judgment briefing). *Contra Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 14-cv-10102, 2022 WL 2702616, at *17 (S.D.N.Y. July 12, 2022) (concluding authorizations were "untimely and ineffective" when sought five years after the issue of standing was raised), *aff'd sub nom. Commerzbank AG v. Wells Fargo Bank, N.A.*, No. 22-1879, 2024 WL 4555081 (2d Cir. Oct. 23, 2024).

24

at 22.) Rather, Deutsche Bank asserts, NCUA filed its original and first amended complaints "*knowing* that it lacked standing" and that it pursued a "deliberate strategy[] to obtain a tactical advantage." (*Id.* (emphasis in original).)

The Court rejected this argument at the motion-to-dismiss stage. Specifically, the Court concluded that there was "an understandable mistake as to the legality of NCUA's purported derivative standing—as evidenced by the split of authority." *MTD Op.*, 410 F. Supp. 3d at 677. This understandable mistake evinced "no bad faith by NCUA, rather a 'genuine belief in its standing, which belief was reasonable in light of the law then-existing in this District.'" *Id.* (citation omitted).

Deutsche Bank urges that this Court's prior ruling "does not preclude a different ruling now," because that decision was made without the benefit of discovery. (Deutsche Bank Reply at 9.) None of the evidence Deutsche Bank identifies, however, moves the needle.[17] Thus, the law-of-the-case doctrine applies. *See, e.g.*, *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 224 (S.D.N.Y. 2000) (law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"). Accordingly, Deutsche Bank's motion is denied in this regard.

Deutsche Bank's champerty argument fails as well. Specifically, Deutsche Bank contends that the "attempted assignment" of claims arising out of the NGN Trusts to Bush "violated champerty statutes," thus leaving BNYM as the only party with standing to bring these claims. (Deutsche Bank Mot. at 29.) New York's champerty law "restricts individuals and companies from purchasing or taking an assignment of notes or other securities with the intent and for the purpose of bringing an action or

---

[17] Among other evidence, Deutsche Bank highlights negotiations between BNYM and NCUA in which NCUA sought to have BNYM itself assert or otherwise ratify NCUA's claims. (Deutsche Bank 56.1 ¶¶ 439-42.) In those negotiations, BNYM writes to NCUA, asking "if—as they say—[NCUA has] the authority to take the action you desire, why would you want [BNYM] to assert those claims?" (*Id.* ¶ 443.) In response, NCUA explains that it "believe[s] under these circumstances that [it has] the authority to take the action to ensure [its] interests . . . are protected" but also stated that it "want[ed] to follow the form of the NGN transactions." (*Id.* ¶ 444.) These communications do not demonstrate that NCUA *knew* that it lacked standing. Indeed, courts across this district reached differing conclusions. From this evidence, it is certainly a permissible inference that NCUA was proceeding on multiple tracks— derivative standing, if permitted, or BNYM would assert the claims. Further, Deutsche Bank's analysis glosses over BNYM's conflict of interest. As this Court recognized, BNYM was "conflicted because it [wa]s an RMBS trustee and was in a similar position to Deutsche Bank as a defendant in separate litigation" and thus "refused to exercise its authority to bring suit for these claims on behalf of the NGN Trusts." *MTD Op.*, 410 F. Supp 3d. at 670. In sum, this evidence does not convince the Court to chart a different course than it followed on the motion to dismiss.

proceeding thereon." *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 280-81 (S.D.N.Y. 2020) (quoting *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (2016)), *aff'd sub nom. Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312, 2021 WL 4515256 (2d Cir. Oct. 4, 2021). Fundamental to Deutsche Bank's argument is the conclusion that the transfer of claims from BNYM to Bush through the "Separate Trustee Agreement" or "Instrument of Appointment and Acceptance" ("IAA") (Shapiro Decl., Ex. 146) was an assignment and thus covered by champerty law.

In its motion to dismiss, Deutsche Bank challenged the propriety of this agreement. Specifically, Deutsche Bank contended that the IAA violated the NGN Indentures Agreement. The Court concluded that Deutsche Bank lacked standing to "challenge the validity of a trust agreement it is not a party to." *MTD Op.*, 410 F. Supp. 3d at 679 (citing *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79 (2d Cir. 2014)). Following this conclusion, the Court remarked that:

> Deutsche Bank attempts to rebut a point NCUA says it never made, namely that even if Bush lacks authority to sue as a trustee, he can pursue the claims as BNYM's assignee. Deutsche Bank argues that Bush cannot bring claims on behalf of BNYM as its assignee because (1) Bush has no standing to bring claims because BNYM, which receives the proceeds of the lawsuit under the Separate Trustee Agreement, did not divest itself from all control in the claims and (2) such an assignment would violate New York's prohibition on champerty.

*Id.* at 680. The Court concluded that "[f]undamentally, these arguments fail because nowhere is Bush purported to be an assignee. He was appointed as a *trustee* pursuant to the Separate Trust[ee] Agreement. Indeed, the word 'assign' is nowhere in the Separate Trustee Agreement." *Id.*

Deutsche Bank acknowledges the Court's prior ruling but asserts that evidence produced in discovery demonstrates that it was a champertous assignment. (Deutsche Bank Mot. at 30 n.47.) Specifically, Deutsche Bank points out that Bush did not take possession of any property, own the certificates at issue, or receive principal or interest payments. (Deutsche Bank 56.1 ¶¶ 485-91.) But that is entirely consistent with the role of a trustee—each of those items more properly falls to a trust beneficiary. *Cf. Wells Fargo II*, 2017 WL 3610511, at *15 ("[A] trustee is a real party to the controversy where it possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." (internal quotation marks and citation omitted)).

Indeed, none of the cases cited by the trustee involves a transfer of rights among trustees. *See, e.g., Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312, 2021 WL

4515256, at * 1 (2d Cir. Oct. 4, 2021) (concluding that assignment of claims from RMBS trustees to investors was champertous). Rather, the Separate Trustee Agreement or IAA gave to Bush, as the Separate Trustee, one aspect of BNYM's responsibilities as the Indenture Trustee—namely, "full legal title, power, right, and authority" to "assert any claims on behalf of [BNYM] or the NGN Trusts." (Shapiro Decl., Ex. 146 at 1, sch. II.) In sum, the Court reiterates its prior conclusion that the Separate Trustee Agreement or IAA does not run afoul of New York champerty law.

### G. Issues of Fact Preclude Summary Judgment on the Issue of Current NGN Trust Certificate Ownership.

As discussed *supra*, all of the NGN Trusts have unwound and, at least NCUA claims, the certificates have been re-conveyed to it. Deutsche Bank contends there is no evidence that this re-conveyance actually occurred. That is wrong; at the very least, there is sufficient evidence to create a genuine dispute of fact for the jury.

NCUA has explained how the reconveyance occurred and provided evidence to support that explanation. The reconveyance occurred in five steps: (1) BNYM notified NGN noteholders of the dissolution; (2) NCUA instructed BNYM to "cause [the Depository Trust Corporation] to credit all remaining Underlying Securities" into a specified account; (3) the certificates were withdrawn from the NGN Trust account; (4) the certificates were then posted to an NCUA account; and (5) the Delaware Secretary of State issued a notice of cancellation for the NGN Trusts. (ECF No. 340, Decl. of Timothy Dodds dated March 28, 2022 ¶¶ 6-13.) That is sufficient to overcome Deutsche Bank's motion.

Deutsche Bank faults NCUA for not providing this documentation in discovery. But NCUA responds that documentation supporting the first, second, and fifth steps were produced in discovery. Thus, even if the Court were to ignore Dodds' declaration, there is still sufficient evidence in the record to create a genuine dispute of fact as to whether the certificates have been re-conveyed to NCUA. Deutsche Bank's motion is denied in this respect.

* * *

In sum, as set forth above, Deutsche Bank's motion for partial summary judgment is denied in part and granted in part.

### V. NCUA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NCUA moves for partial summary judgment concerning the majority of the trusts in this litigation. *First*, NCUA asks the Court to conclude that, as a matter of law, the terms of the PSAs in sixteen trusts unambiguously required Deutsche Bank, as trustee,

"to *compel* warrantors to repurchase materially breaching loans, including through litigation if necessary." (NCUA Mot. at 1 (emphasis in original).) *Second*, NCUA asks the Court to find as a matter of law that Deutsche Bank's obligation to enforce warrantor repurchases is not contingent on direction or indemnity from certificateholders. *Third*, NCUA asks this Court to dismiss Deutsche Bank's affirmative defense that NCUA failed to mitigate its damages. The Court addresses each argument in turn below.

### A. The PSAs Do Not Unambiguously Obligate the Trustee to Litigate In All Circumstances.

NCUA contends that language in the PSAs of fourteen[18] trusts unambiguously requires Deutsche Bank to enforce repurchase compliance through litigation. The terms of the PSAs across these trusts vary, so the Court will address them in two groups.

Nine trusts contain the following provision:

> Upon its discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File or of the breach by the related Originator of any representation, warranty or covenant under the related Purchase Agreement in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders, the Trustee shall promptly notify such Originator of such defect, missing document or breach and request that such Originator deliver such missing document or cure such defect or breach within 90 days from the date that the Seller was notified of such missing document, defect or breach, and if such Originator does not deliver such missing document or cure such defect or breach in all material respects during such period, **the Trustee shall enforce** such Originator's obligation under the related Purchase Agreement and cause such Originator to repurchase that Mortgage Loan from the Trust Fund at the Repurchase Price . . . .

---

[18] All claims arising from two of the trusts to which NCUA advances this argument have been dismissed in Section II and are thus omitted from this analysis.

(Shapiro Decl., Ex. 19 (HVMLT 2004-7 PSA § 2.03(a) (emphasis added)).)[19]

NCUA contends that, as a matter of law, this language requires Deutsche Bank to enforce repurchase compliance through litigation because the term "enforce"—which is not defined in the PSAs—requires compulsion and the only way to compel an unwilling warrantor to repurchase a loan is through litigation. (NCUA Mot. at 12-13.) That is not so. In *NCUA – U.S. Bank*, NCUA advanced this same argument. 665 F. Supp. 3d 483. There, as here, NCUA asserted "that for trusts in which the PSAs state that [trustee] 'shall enforce' a warrantor's obligation to repurchase defective loans, [trustee's] duty to enforce requires, as a matter of law, [trustee] to initiate repurchase litigation." *Id.* at 495. And NCUA similarly urged that "a plain reading of the word 'enforce' requires [trustee] to compel the warrantor to carry out its duty to repurchase and that to 'compel' the warrantors requires litigation." *Id.* That court concluded that NCUA's reading "goes an inference too far." *Id.* This Court agrees.

While NCUA is correct that "[t]he words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning" (NCUA Mot. at 12 (quoting *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996)), the plain meaning of "enforce" does not mean litigate. NCUA refers to several dictionary definitions which it asserts "all define 'enforce' to require compulsion, thus *effectively* bringing about compliance with an obligation." (*Id.* at 12-13 (emphasis in original).) But even accepting NCUA's contention that "enforce" plainly means compulsion or the effectuation of compliance, there is still a gap between that reading and the ruling NCUA seeks now—namely, that the only way to compel or effectuate compliance is through litigation. *Accord NCUA – U.S. Bank*, 665 F. Supp. 3d at 495 ("A plain reading of the word 'enforce' does not require litigation, and nowhere in its dictionary definition is there reference to litigation."). Indeed, "[a] means to compel obedience with a legal obligation is to bring a lawsuit"—it is not the *only* means by which to do so. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 632 F. Supp. 3d 517, 532 (S.D.N.Y. 2022) (concluding that "enforce" may include litigation and denying trustee's motion for summary judgment on this issue).

---

[19] The other trusts containing this language are: HVMLT 2004-11, HVMLT 2006-5, HVMLT 2006-6, HVMLT 2006-8, HVMLT 2006-9, HVMLT 2006-14 HVMLT 2006-SB1, and HVMLT 2007-5. (NCUA Mot. at 2 n.2; NCUA 56.1 App'x E.) In addition, a tenth trust instructs that the "Trustee shall pursue such legal remedies available to the Trustee . . . as may be necessary or appropriate to enforce the rights of the Trust with respect thereto, in accordance with customary industry practices as if such asset were its own property." (Shapiro Decl., Ex. 32 (MSAC 2007-NC4 PSA § 2.07).) For the purposes of the foregoing analysis, the Court will treat this language as equivalent to the "shall enforce" language.

Drawing all reasonable inferences in Deutsche Bank's favor—which, on NCUA's motion, the Court must—the Court cannot conclude that as a matter of law the language "the Trustee shall enforce" requires litigation. To the extent the only appropriate means for Deutsche Bank to "enforce" in the fact-specific circumstances of the many breaches NCUA alleges was litigation, NCUA may argue as much to the jury. "Because the term 'enforce' 'is broad enough to embrace such a lawsuit as a means of enforcement,' whether enforcement litigation was required to carry out [trustee's] enforcement duty is a question of fact to be decided at trial." *NCUA – U.S. Bank*, 665 F. Supp. 3d at 495 (quoting *Ambac*, 632 F. Supp. 3d at 533).

Next, the PSAs for three trusts provide that the "Trustee shall pursue all legal remedies available to the Trustee . . . ." (Shapiro Decl., Ex. 29 (MSAC 2005-HE7 PSA § 2.03(f)); *see also id.*, Ex. 30 (MSAC 2006-HE2 PSA § 2.03(g)) (same); *id.*, Ex. 31 (MSAC 2006-HE7 § 2.03(h) (same).) Another trust's PSA states that the trustee "shall use commercially reasonable efforts to attempt to enforce such Originator's obligation under the related Master Agreement." (Shapiro Decl., Ex. 33 (SVHE 2005-B PSA § 2.03(a)).) In both cases, a plain reading of the language seems to directly contemplate the notion that different legal remedies are available in different circumstances. Again, it may be true that in these circumstances the only legal remedy available was litigation. That is a question of fact for the jury, not the Court on summary judgment.

In sum, the PSAs for the fourteen trusts identified by NCUA do not unambiguously require the Deutsche Bank to litigate to enforce repurchase obligations. The Court thus denies NCUA's motion for partial summary judgment in this respect.

## B.  Deutsche Bank's Duty to Enforce Is Not Conditioned Upon Receiving Direction and Indemnity from Certificateholders.

NCUA asks this Court to conclude as a matter of law that Deutsche Bank was required to enforce warrantor repurchases *without* direction and indemnity from certificateholders. NCUA contends that the enforcement provisions (often found in PSA § 2.03) are "on [their] face . . . self-executing and not conditioned on any such direction." (NCUA Mot. at 21.) In opposition, Deutsche Bank points to another section of the PSAs, which provides, in relevant part, that:

> the Trustee shall not be under any obligation to exercise any of the rights or powers vested in it by this Agreement, or to institute, conduct or defend any litigation hereunder or in relation hereto, at the request, order or direction of any of the Certificateholders or any NIMS Insurer pursuant to the provisions of this Agreement, unless such Certificateholders or any NIMS Insurer shall have offered to the Trustee

> reasonable security or indemnity satisfactory to it against the
> costs, expenses and liabilities which may be incurred therein
> or thereby.

(*E.g.*, Shapiro Decl., Ex. 24 (HVMLT 2006-9 PSA § 8.02(iii)).) This provision, however, does not support Deutsche Bank's proposed reading. It simply states that Deutsche Bank, as trustee, is not obligated to litigate *at certificateholders' direction* unless it is indemnified. Nowhere in this provision is Deutsche Bank limited from initiating repurchase litigation *without* direction from certificateholders. Two courts in this District have come to the same conclusion. *See NCUA – U.S. Bank*, 665 F. Supp. 3d at 496 (concluding that this language "shows that [trustee] needs Certificateholders' indemnity for litigation *only* if that litigation is conducted at the request or direction of any Certificateholder" and that it "does not prevent [trustee] from initiating repurchase litigation unilaterally" (emphasis added)); *Ambac*, 632 F. Supp. 3d at 532 (analyzing similar provision and concluding that it "merely sets a condition precedent for litigation commenced *at the direction of a certificate-holder*" whereas the duty to enforce "applies *regardless* of certificate-holder input" (emphasis in original)). In addition, the language in this provision notes only that the trustee is under no obligation to exercise any of the *rights or powers* vested in it by the PSA absent direction. It does not speak to the *duties* imposed by the PSA. *Cf. IKB*, 40 N.Y.3d at 287 (differentiating between a right and a duty).

Thus, the Court concludes that the trustee's enforcement duty is not limited or circumscribed by the need for direction and indemnity from certificateholders. NCUA's motion is granted in this respect.

## C.  The Court Will Not Dismiss Deutsche Bank's Affirmative Defense of Failure to Mitigate Damages.

Finally, NCUA seeks a ruling dismissing one of Deutsche Bank's affirmative defenses—namely, that NCUA failed to mitigate its damages. "A duty to mitigate damages arises when (1) a contract is breached and (2) it appears that the breaching party has abandoned or repudiated his obligations under the contract." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 441 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). In general, "[w]hether a party puts forth sufficient effort to mitigate damages is a question of fact and typically resolved during trial." *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021) (citation omitted).

Nevertheless, NCUA asserts that this affirmative defense must fail because Deutsche Bank never repudiated the PSAs and "identified no evidence whereby NCUA knew [Deutsche Bank] was abandoning its duties." (NCUA Mot. at 25.) In response,

Deutsche Bank points to an abundance of evidence it contends should have made the credit unions and/or NCUA aware of certain breaches, including correspondence to and between NCUA personnel discussing potential breaches and remediation strategies (Deutsche Bank Counter 56.1 ¶¶ 164-67, 319-23), as well as information available to investors and/or the public that discussed deficiencies in the loans. (*Id.* ¶¶ 514-1254.) In light of this evidence and drawing all reasonable inferences in favor of Deutsche Bank, the Court cannot conclude that as a matter of law Deutsche Bank's affirmative defense fails at this stage.[20]

\* \* \*

In sum, the Court grants NCUA's motion for partial summary judgment insofar as it concludes that Deutsche Bank's enforcement duty is not limited by the need for direction and indemnity from certificateholders; in all other respects, the Court denies NCUA's motion.

## VI. Conclusion

In conclusion, the Court grants in part and denies in part Deutsche Bank's motion for partial summary judgment as set forth in Section IV. The Court similarly grants in part and denies in part NCUA's motion for partial summary judgment as set forth in Section V. In addition, all claims arising out of the HASC 2006-HE2 and HASC 2007-HE1 trusts are dismissed as set forth in Section II.

Dated:  New York, New York
       August 15, 2025

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[20] Deutsche Bank proceeds in the alternative with this affirmative defense. Its primary defense is that it did not breach the PSAs. At this juncture, Deutsche Bank need not abandon its primary defense and offer a date of breach. "It is well settled that the alternative pleading principles of Rule 8(d) apply even at the summary judgment stage of litigation." *Polanco v. City of New York*, No. 14-cv-7986, 2018 WL 1804702, at *10 (S.D.N.Y. Mar. 18, 2018) (citations omitted).